**SKOLOFF & WOLFE, P.C.**
*A Professional Corporation*
    David B. Wolfe, Esq.
    Jonathan W. Wolfe, Esq.
    Barbara A. Schweiger, Esq.
293 Eisenhower Parkway
Livingston, NJ 07039
Telephone: (973) 992-0900
Fax: (972) 992-0301
dwolfe@skoloffwolfe.com
jwolfe@skoloffwolfe.com
bschweiger@skoloffwolfe.com

**NICHOLAS & BUTLER LLP**
    Matthew Butler, Esq. (pro hac vice to be filed)
225 Broadway, 19th Floor
San Diego, CA 92101
Telephone: (619) 325-0492
Fax: (619) 325-0496
mbutler@nblaw.org

*Attorneys for Plaintiff Maria Johnson*

**THE ROSEN LAW FIRM, P.A.**
    Laurence Rosen, Esq.
236 Tillou Road
South Orange, NJ 07079
Telephone: (973) 313-1887
Fax: (973) 833-0399
lrosen@rosenlegal.com

*Attorneys for Plaintiff Kurt Scheuerman*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARIA JOHNSON, an individual, and KURT SCHEUERMAN, an individual, on behalf of themselves and all others similarly situated, and ROES 1 through 100, inclusive,<br><br>                             **Plaintiffs,**<br><br>vs.<br><br>NESTLÉ HEALTHCARE NUTRITION, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>                             **Defendants.** | Docket No. 2:10-cv-03684-FSH -PS<br><br><br>**CONSOLIDATED CLASS ACTION COMPLAINT FOR**<br><br>**(1) VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT, N.J.S.A. 56:8-1, ET SEQ. ("NJCFA")**<br><br>**(2) NEGLIGENT MISREPRESENTATION;**<br><br>**(3) BREACH OF WARRANTY.**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Maria Johnson and Kurt Scheuerman, individually and on behalf of all others similarly situated, hereby complain and allege on information and belief as follows:

## I.

## INFORMATION PURSUANT TO LOCAL CIVIL RULE 10.1

1.   The names and addresses of the parties are as follows:

    a.   Plaintiff MARIA JOHNSON ("Mrs. Johnson") resides at 7335 El Fuerte Street, Carlsbad, California 92009.

    b.   Plaintiff KURT SCHEUERMAN ("Mr. Scheuerman") resides at 7743 Albright Avenue, Elkins Park, Pennsylvania 19027.

    c.   Defendant Nestlé Healthcare Nutrition, Inc. ("Nestlé") has its principal place of business at 12 Vreeland Road, Florham Park, New Jersey 07932.

## II.

## INTRODUCTION

2.   This is a class action brought on behalf of all United States consumers who purchased Defendant's drink products called "BOOST Kid Essentials" (sometimes referred to as "BOOST" or the "Product"). Defendants market and sell BOOST Kid Essentials, targeting children, particularly those aged 1 through 13, and their parents, and extolling purported health benefits that are supposedly "clinically shown."  Defendants claim, expressly and impliedly, among other things, that BOOST:

    a.     prevents upper respiratory tract infections in children,

    b.     provides "Immunity Protection,"

    c.     is a "Nutritionally Complete Drink with PROBIOTICS to Help Keep Kids Healthy,"

    d.     strengthens the immune system,

    e.     protects against cold and flu viruses,

    f.     reduces the duration of diarrhea, and

    g.     actually reduces absences from daycare or school due to illness.

3.   These claims are all deceptive and misleading or have the capacity to deceive or mislead.  Defendants made these bold claims in advertisements and on the product containers, without any reasonable basis for doing so and without substantiating them.  Earlier this year Nestlé settled a lawsuit filed by the Federal Trade Commission regarding their misleading health claims concerning BOOST. For the types of marketing claims at issue, the Federal Trade Commission ("FTC") rules require that Nestlé have competent and reliable scientific evidence for the Product's health claims at the time the claims were made.  However, Nestlé did not and does not possess the requisite substantiation for these purported health claims for its Product. According to the complaint drafted by the FTC and revealed to the public on July 14, 2010, contrary to Nestlé's assertions about clinical studies supporting Nestlé's claims about the Product, "clinical studies do not prove that drinking BOOST Kid Essentials reduces the general incidence of illness in children, including respiratory tract infections, reduces the duration of acute diarrhea in children up to the age of thirteen, or strengthens the immune system, thereby providing protection against cold and flu viruses."   Therefore, the FTC concluded, based upon its investigation of Nestlé and review of the purported health claims about the Product, that any such representations by Nestlé "were, and are, false and misleading." Rather than refute the FTC's findings set forth in the FTC complaint, Nestlé agreed to the entry of a consent order concerning the allegations in the FTC complaint.

4.   By this Complaint, the Plaintiffs seek an injunction to halt Defendants' unlawful, unfair, and fraudulent conduct; as well as damages, restitution, and all other appropriate remedies to compensate all similarly-situated purchasers for their losses.

### III.

### PARTIES

5.   Plaintiff Mrs. Johnson is an individual who at all times herein relevant resided, and continues to reside in, and is a citizen of Carlsbad, San Diego County, California.  Since 2008, Mrs. Johnson has been routinely purchasing "BOOST Kid Essentials" for her young children, as a part of her regular grocery shopping.  Mrs. Johnson believed that the beverage product was

clinically shown to provide health benefits for her children because of what Defendants said on the packaging of BOOST Kid Essentials; in their print, media and online advertising; and through marketing materials provided by her pediatrician.  She believed the benefits included preventing upper respiratory tract infections, strengthening the immune system thereby protecting against cold and flu viruses, reducing the duration of diarrhea, and reducing absences from daycare or school due to illness, among other health benefits.  Defendants' representations were a material factor in Mrs. Johnson's decision to purchase the BOOST Kid Essentials drink.  After a recent purchase, Mrs. Johnson was upset to learn that the advertised health benefits were not clinically shown and were false and/or misleading.

6.    Plaintiff Mr. Scheuerman is an individual who at all times herein relevant resided, and continues to reside in and is a citizen of Elkins Park, Montgomery County, Pennsylvania. Mr. Scheuerman is the father of three children. During the fall of 2009 and continuing through the summer of 2010, Mr. Scheuerman regularly purchased the BOOST Kid Essentials drink at various retail outlets in Pennsylvania and New Jersey for two of his young children, ages four and one. At all relevant times herein, Mr. Scheuerman was exposed to and saw Defendants' claims about the purported health benefits of the Product for children and purchased the BOOST Kid Essentials drink in reliance on such claims. Particularly, Mr. Scheuerman saw and relied on, among other things, the claims made and conveyed in Nestlé's stock television commercials, stock print advertisements, and BOOST Kid Essentials drink label. The purported health benefits conveyed by Nestlé's marketing and advertising campaign were the sole reason Mr. Scheuerman purchased the BOOST Kid Essentials drink. Mr. Scheuerman and Mrs. Johnson are collectively referred to hereinafter as "Plaintiffs."

7.    Plaintiffs are informed and believe that Defendant Nestlé is a Delaware corporation whose principal place of business is 12 Vreeland Road, Florham Park, Morris County, New Jersey.  Plaintiffs are informed and believe that Nestlé's advertising and marketing campaign regarding BOOST Kid Essentials was planned and/or executed from its principal place of business.  Plaintiffs are informed and believe Nestlé is a subsidiary or related corporate entity of

Societé des Produits Nestlé, S.A. of Switzerland, a worldwide corporate conglomerate producing myriad consumer products. Nestlé dishonestly manufactured, marketed, and sold BOOST Kid Essentials by misrepresenting expressly and impliedly to its customers that the Product was clinically shown to and would have the health benefits mentioned above. Despite Defendants' extensive marketing scheme made in advertisements, online, on product containers, and through pediatricians, Defendants did not possess or rely upon any reasonable basis that substantiated these purported health benefits. Defendants' marketing team is based in Florham Park, New Jersey. Defendants' advertising and representations about BOOST Kid Essentials made to consumers was and continues to be conceived, reviewed, approved, and otherwise controlled from Nestlé's Florham Park, New Jersey headquarters.

8. Plaintiffs are unaware of the true names, identities or capacities, whether individual, corporate, associate or otherwise, of those Defendants sued herein as DOES 1 through 100, inclusive. Plaintiffs therefore sue said Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to set forth the true names and capacities of these Defendants when they are ascertained.

9. Plaintiffs are informed and believe, and on that basis allege, that Defendants sued herein as DOES 1 through 100, inclusive, and each of them, are in some way responsible for the acts and events complained of herein, and proximately caused the injuries and damages to Plaintiffs which are described in this Complaint. Plaintiffs will seek leave of court to amend this Complaint to more specifically set forth these Defendants' wrongful conduct when it has been ascertained. Nestlé and DOES 1 through 100, are collectively referred to in this complaint as "Defendants."

10. Plaintiffs are informed and believe and on that basis allege that at all times herein mentioned, Defendants, and each of them, were the parent companies, subsidiary companies, agents, and/or employees of the remaining Defendants and, in doing the things herein complained of, were acting within the course and scope of such parent/subsidiary relationship, agency and/or employment, and that each and every Defendant when acting as a principal, was negligent in the

selection and hiring of each and every other Defendant as an agent, employee and/or joint venturer.  All actions of each Defendant as alleged herein were ratified and approved by every other Defendant or their officers or managing agents.

## IV.

## JURISDICTION AND VENUE

11.  This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. § 1332(d)(2).

12.  The Court has jurisdiction over the named corporate Defendant, Nestlé, because Nestlé is an entity whose principal place of business at all times herein relevant was and is in the State of New Jersey. The matter in controversy, exclusive of interest and costs, exceeds the sum of $5,000,000 and members of the class of plaintiffs are citizens of different states than Defendants.

13.  The Court has jurisdiction over each of the entity Defendants because each of them is licensed to do business in New Jersey, and/or has continuous and systematic business contacts with New Jersey, and has sufficiently and purposefully availed themselves of the benefits of doing business within New Jersey such that they may reasonably expect to be hailed into New Jersey courts.  Nestlé's headquarters are located in Florham Park, Morris County, New Jersey. Nestlé's marketing team is based in Florham Park, New Jersey. The false advertising campaign alleged in this Complaint was originated and disseminated across the country from Florham Park, New Jersey.

14.  Venue is proper in this district pursuant to 28 U.S.C. §1391 because the acts and transactions giving rise to this action occurred in this district and because Nestlé is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district, does substantial business in this district; and is subject to personal jurisdiction in this district. Defendant Nestlé's principal place of business is in Morris County, New Jersey and Plaintiffs are

informed and believe that Nestlé sells its products such as BOOST Kid Essentials in Morris County, New Jersey, including but not limited to supermarkets and grocery stores in Morris County. Also, the District of New Jersey encompasses Florham Park, Morris County, New Jersey, where the Defendants' headquarters is located and Defendants' marketing team is based in Florham Park, New Jersey. The false advertising campaign alleged in this Complaint was originated and disseminated across the country from Florham Park, New Jersey.

V.

**FACTUAL ALLEGATIONS**

15. Plaintiffs allege and incorporate by reference each and every allegation contained above, as if set forth at this point.

16. "Probiotics" are defined by the United Nations Food and Agricultural Organization and the World Health Organization as "live microorganisms, which, when administered in adequate amounts, confer a health benefit on the host." Any definition of probiotics, however, has been subject to debate. (Richard Walker & Merry Buckley, *Probiotic Microbes: The Scientific Basis*, at 2 (2006)[1].) As part of a significant trend in the consumer food and drink trade to provide healthier and "greener" food options, many food and drink purveyors such as Defendants are resorting to the manufacture and sale of products containing probiotics in the American marketplace.

17. Any health benefits of probiotics and consumer products containing probiotics are disputed. For example, the American Academy for Microbiology's seminal study of probiotics' benefits, if any, in humans indicated that "there is no conclusive evidence that altering microbiota of a healthy human adult is beneficial." (*Id.* at 4.)

18. If probiotic bacteria do have any health benefits, they must survive the digestive tract in sufficient quantities to achieve the possible benefit. However, there is no scientific consensus

---

[1]     Available at <http://academy.asm.org/images/stories/documents/probioticmicrobesfull.pdf>.

on the quantities of probiotics people might require to achieve a probiotic effect, or whether probiotics do have any such effect in healthy people.

19.  Beginning in or around January 2008, Defendant Nestlé began promoting BOOST Kid Essentials utilizing various media outlets, including but not limited to print advertisements, Internet websites, and television, as well as on the actual product packaging.  Further, Nestlé's advertising campaign extended to pediatricians, to whom Nestlé provided materials so that the pediatricians would promote BOOST Kid Essentials.

20.  Despite the lack of any hard and clear evidence regarding the efficacy of probiotics in adults and children, Defendants marketed and sold BOOST Kid Essentials across the United States, targeting children and their parents, and extolling purported health benefits that are supposedly "clinically shown."  Defendants made numerous claims in the marketing of their BOOST Kid Essentials product relating primarily to the probiotic ingredients.

21.  Defendants claim, expressly and impliedly, among other things, that BOOST Kid Essentials:

        a.      prevents upper respiratory tract infections in children,

        b.      strengthens the immune system,

        c.      protects against cold and flu viruses,

        d.      reduces the duration of diarrhea, and

        e.      actually reduces absences from daycare or school due to illness.

22.  Among other ways, Defendants claimed these supposed health benefits were obtained through "immune-strengthening probiotics in the straw" "to help kids stay healthy."  In one television advertisement, Defendants claim that the "Probiotic Straw" is "Clinically shown to help strengthen the immune system."  Defendants misleadingly claim explicitly and impliedly that BOOST Kid Essentials has been proven to be effective against viruses.

23.  Defendants made these claims as part of a national marketing strategy, permeating all forms of media to advertise their BOOST Kid Essentials product. These claims were made on the product packaging distributed nationally, in television advertisements broadcast in markets across

the United States, on the Internet, in national print publications and other media, and through pediatricians.

24. Defendants' uniform marketing scheme and advertising message that BOOST Kid Essentials prevents illness in children is intentionally designed to cause consumers to buy its product.

25. These claims are all deceptive and misleading or have the capacity to deceive or mislead. Defendants made these bold claims in advertisements and on the product containers without any reasonable basis for doing so and without substantiating them. The deceptive marketing and advertising campaign successfully caused Plaintiffs to purchase the Defendants' product.

26. For example, on every label of BOOST Kid Essentials, Nestlé claimed that the product provided "Immunity Protection*," was a "Nutritionally Complete Drink with PROBIOTICS to Help Keep Kids Healthy," and included a "Patented PROBIOTIC straw."

27. On the side of the packaging label, Nestlé made the following additional claims:

Complete, Balanced Nutrition for Your Child's
Healthy Growth and Strong Immune System!

BOOST ®Kid Essentials provides complete, balanced nutrition for kids 1-13.

Only BOOST Kid Essentials has the vitamins and minerals kids need plus immune-supporting probiotics and antioxidants to help keep them healthy!...

Talk to your pediatrician about using BOOST Kid Essentials as a supplement with a meal or as a snack. To learn more about immunity, probiotics, and antioxidants, visit www.kidsessentials.com...

A copy of the stock BOOST Kid Essentials packaging is attached hereto as Exhibit A, and is incorporated herein by reference.

28. On the Nestlé website for BOOST Kid Essentials, www.Kidessentials.com, titled "FAQ" (which stands for Frequently Asked Questions), Defendants listed several questions and answers relating to the health benefits of the Product. In the following series of questions and answers, Defendants made misrepresentations regarding probiotics:

8

Q:      When is it most beneficial to take probiotics?

A:      To gain the most benefits from probiotics, they should be consumed on a daily basis. By taking them regularly, probiotics are able to live in, or "colonize" the digestive tract and fight off bad bacteria. If your child has stomach problems, such as diarrhea caused by antibiotics, probiotics may help rebuild a healthy colony of good bacteria, which can aid the immune system when your child may need it most.[1-3]

        . . .

Q:      What exactly do probiotics protect my kids from?

A:      Probiotics are healthy bacteria that must be consumed in order to build up in our digestive system – in the lining of the GI tract. While they occur throughout nature, they are less likely to be present in large numbers in our own GI tract, and therefore need to be consumed to derive a benefit. They help balance and keep levels of bad bacteria in check. Most importantly, they help keep our immune system healthy by increasing disease-fighting antibodies.[1,2]

        . . .

Q:      Are probiotics effective against viruses?

A:      Yes, certain probiotics have been shown to help fight viruses such as Rotaviral diarrhea.[1] Lactobacillus reuteri Protectis (the probiotic found in BOOST Kid Essentials Drink) has been shown to reduce the duration of diarrheal illness in children[3] and reduce the number of days that infants miss daycare due to illness.[3]

        . . .

(References omitted.) A copy of the FAQ is attached hereto as Exhibit B and is incorporated by this reference

29.   These types of representations have not been proven to be true.  In fact, studies cited by Defendants on Nestlé's website described above were not as conclusive as represented by Defendants. These studies do not support the claims made expressly or impliedly by the Defendants of the particular benefits of probiotics.

30.  In one such study, *Probiotics in Gastrointestinal Diseases in Children: Hard and Not-So-Hard Evidence of Efficacy* cited in support of the above-quoted portion of Defendants' FAQ page on Nestlé's website for BOOST Kid Essentials, the authors make clear in the abstract of the article that "only a few of the potential health benefits attributed to probiotics have been confirmed in well-designed, well-conducted, randomized, controlled trials." Hania Szajewska, et

al., *Probiotics in Gastrointestinal Diseases in Children: Hard and Not-So-Hard Evidence of Efficacy*, 42 J. PEDIATRIC GASTROENTEROLOGY AND NUTRITION 454, 458 (2006).[2]  The authors did conclude there are some benefits to children with acute watery diarrhea.  There was evidence of "moderate beneficial effect" for diarrhea associated with consuming antibiotics but that evidence involved strains of probiotics not found in BOOST Kid Essentials. *Id.* at 460.

31.  Most notably, the authors concluded that there is insufficient evidence to support a theory that probiotics can prevent upper respiratory infections or gastrointestinal infections in healthy children:

> We believe that there is a potential role for probiotics in preventing respiratory and gastrointestinal infections in healthy children. However, currently available evidence is not strong enough to give specific recommendation concerning these indications.

*Id.* at 464.

32.  While the studies were hopeful, but inconclusive at best, Defendants touted these studies – and the health benefits of probiotics – as proven fact, *i.e.*, "clinically shown." Defendants made these claims in advertisements without any support for the claims based on competent and reliable scientific evidence and/or without any basis in fact for doing so.

33.  Nestlé's stock television commercial is summarized as follows. A copy of the story board is attached hereto as part of the materials contained in Exhibit C to this Complaint and incorporated by reference herein:

(A girl pops into frame and takes a big enjoyable sip of Kid Essentials.).

*Female Announcer*: "Introducing NEW BOOST Kid Essentials, the only nutritionally complete drink that gives kids the power of immune strengthening probiotics."

**ON SCREEN**: *L. reuteri Protectis* has been clinically shown to help

---

[2]     Available at <http://journals.lww.com/jpgn/Fulltext/2006/05000/Probiotics_in_Gastrointestinal_Diseases_in.2.aspx#>.

strengthen the immune system when consumed daily. For more information about clinical trials involving *L. reuteri Protectis*, go to www.kidessentials.com.

(The girl runs along playfully as the straw twirls around her. She encounters a boy who sneezes. The straw quickly forms a protective barrier around her. The girl continues on her way and as she approaches a basketball net, the straw forms stairs for her to step up on.)

**ON SCREEN:** muscle-building protein

*Female Announcer*: "Plus the power to grow strong – with muscle-building protein and 25 vitamins and minerals."
(She takes a shot and hits a perfect swoosh.)

**ON SCREEN:** 25 vitamins & minerals

(Cut to straw popping back into drink box. The vortex of wellness swirls around the box, highlighting product attributes.)


**ON SCREEN: Immunity strengthening probiotics/7 g protein/25 vitamins & minerals.**

*Female Announcer*: "NEW BOOST Kid Essentials: complete nutrition for your child's healthy growth, **and probiotics clinically shown to help strengthen the immune system."**

(The straw bends forwards, and probiotics titles emerge, followed by animated probiotic bubbles and a twirling arrow.)

**ON SCREEN: Probiotic straw/Clinically shown to help strengthen the immune system.** (emphasis added).

(Close up of the girl grabbing the drink box and enjoying another sip)

*Female Announcer*: And that means the power to do anything is possible every day.

(She finishes her sip, turns and skips out of frame.)

**ON SCREEN:** BOOST Kid Essentials Nutritionally Complete Drink

KidEssentials.com. . . .

11

34.  Defendant Nestlé made similar false and misleading representations in a magazine advertisement in the materials attached as Exhibit D to this Complaint, one such advertisement that appeared in the national magazine *People*:

> First Page:
> Do your kids have the power?
> [Depiction of BOOST Kid Essentials package with the probiotic straw, which reads:
> NEW!
> BOOST
> Kid Essentials
> Nutritionally Complete Drink
> Immunity Protection*
> Patented PROBIOTIC Straw
> *Nutritionally Complete Drink with PROBIOTICS to Help
> Keep Kids Healthy]
>
> Second Page:
> The power of immune-strengthening probiotics1, 2
> Probiotic straw to help keep kids healthy
> [Depiction of the probiotic straw (continued from the previous page) forming a complete
>     circle around a girl, while a boy sneezes in her direction]
> (referenced omitted).
>
> Third Page:
> The power to grow strong
> 25 vitamins & minerals
> 7g of muscle-building protein
> [Depiction of the probiotic straw (continued from the previous page) forming stairs for the
>     girl to climb, as she tosses a basketball into a basketball hoop]
>
> Fourth Page:
> The power
> to do anything!
> Every day.
>
> NEW BOOST® Kid Essentials
> Nutritionally Complete Drink:
> • Immune-strengthening probiotics in the straw
> • 25 vitamins & minerals + 7g of protein to support healthy growth
> • Kid preferred taste vs. Pediasure®...

A copy of the People Magazine print advertisement is attached hereto as Exhibit D, and is incorporated herein by reference.

35.  Earlier this year Nestlé settled a lawsuit filed by the Federal Trade Commission ("FTC")[3] regarding its misleading health claims.  Nestlé agreed to discontinue the deceptive

---

[3]      Complaint available at <http://www.ftc.gov/os/caselist/0923087/index.shtm>.

marketing and advertising campaign.

36.     The falsity and misleading nature of Nestlé's health claims about the Product are further demonstrated by the FTC's findings.  According to the FTC complaint, contrary to Nestlé's assertions about clinical studies supporting their claims about the Product, "clinical studies do not prove that drinking BOOST Kid Essentials reduces the general incidence of illness in children, including respiratory tract infections, reduces the duration of acute diarrhea in children up to the age of thirteen, or strengthens the immune system, thereby providing protection against cold and flu viruses."  Therefore, the FTC concluded, any such representations by Nestlé "were, and are, false and misleading."

37.     The FTC complaint also states that Nestlé had no reasonable basis that substantiated its claims that drinking the Product would: (a) prevent upper respiratory infections in children; (b) strengthen immune systems, thereby providing protection against cold and flu viruses; and (c) reduce absences from daycare or school due to illness.

38.     According to an announcement issued by the FTC on July 14, 2010, Nestlé agreed to resolve the claims in the FTC complaint through the entry of a proposed consent order.  The proposed consent order was open for public comment until August 16, 2010.

39.     The consent order directs Nestlé, for the next 20 years:

   a.   not to make any representations that the Product "prevents or reduces the risk of upper respiratory tract infections, including, but not limited to, cold or flu viruses, unless the representation is specifically permitted in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990";

   b.   not to make any representations that the Product "[r]educes the duration of acute diarrhea in children up to the age of thirteen; or reduces absences from daycare due to illness unless the representation is non-misleading and, at the time of making such representation, the respondent possesses and relies upon competent and reliable scientific evidence that substantiates that the representation is true";

c.  not to "misrepresent, in any manner, expressly or by implication, the existence, contents, validity, results, conclusions, or interpretations of any test, study or research."

d.  Nestlé also agreed not to make any representations about the health performance, benefits, and efficacy, of the Product unless such representations are not misleading at the time made and Nestlé relies upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

(Agreement & Consent Order, *In the Matter of Nestlé Healthcare Nutrition, Inc.*, File No. 092 3087 (May 18, 2010)[4].)

## VI.

## CLASS ALLEGATIONS

40.  Plaintiffs allege and incorporate by reference each and every allegation contained above, as if set forth at this point.

41.  This action may properly be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

42.  Plaintiffs bring this Complaint on behalf of the Class.  The Class is defined as:

**NATIONWIDE CLASS:   All persons in the United States who purchased BOOST Kid Essentials from July 22, 2004 to the present.**

43.  **Numerosity:**  Plaintiffs are informed and believe that the Class consists of millions of consumers throughout the United States who purchased BOOST Kid Essentials.  The members of the Class are so numerous that separate joinder of each member is impractical.   However, appropriate discovery can determine the number of class members.  The disposition of claims in a

---

[4]    Available at <http://www.ftc.gov/os/caselist/0923087/100714nestleorder.pdf>.

class action will provide substantial benefits to the parties and the Court.

44. **Commonality**:  The claims of the representative Plaintiffs raise questions of law and fact that are common to questions of law and fact raised by the claims of each member of the Class.

45. **Typicality**:  Plaintiffs' claims are typical of the claims of the Class in that the claims of all members of the Class result from Defendants' sale and marketing of BOOST Kid Essentials as having specific, clinically shown health benefits, while Defendants had no clinical showing or reason to believe their product provided such health benefits.  The marketing campaign and resulting representations originated from Defendants' principal place of business in New Jersey.

46. **Representation**:  There is no conflict between the representative Plaintiffs and other members of the Class with respect to this action, or with respect to the claims for relief herein set forth.

47. The named Plaintiffs are the representative parties for the Class and are able to and will fairly and adequately protect the interests of the Class.

48. **Predominance**:   The questions of law or fact common to the claims of the representative Plaintiffs and the claims of each member of the class predominate over any questions of law or fact affecting individual members of the Class.  Class representation is superior to other available methods for the fair and efficient adjudication of this controversy.

49. Questions of law and/or fact that are common include, but are not limited to:

(A)     Whether Defendants had a reasonable basis for making the above claims, *e.g.*, whether Defendants conducted any reliable clinical studies regarding the Product's alleged health effects and whether or not those purported studies reasonably supported Defendants' claims.

(B)     Whether or not the Defendants' above-described health claims were indeed "clinically shown."

(C)     What Defendants said about the alleged health benefits of BOOST.  For example, Plaintiffs are informed and believe that Defendants, in a uniform and pervasive manner,

deceptively marketed the express and implied health benefits of BOOST.

(D)     Whether Defendants misrepresented the health benefits, expressly and impliedly, of BOOST Kid Essentials.

(E)     Whether Defendants engaged in unlawful conduct in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2.

(F)     Whether Defendants engaged in unfair, deceptive, and/or unlawful practices that violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*

(G)     Whether Defendants made a materially false statement to induce consumers to purchase BOOST.

(H)     Whether the Defendants unfairly or unlawfully received and/or retained revenue acquired through the scheme alleged in this Complaint.

(I)     Whether Plaintiffs and Class members sustained monetary or other losses and the proper measure of those losses;

(J)     Whether Plaintiffs and Class members are entitled to declaratory relief;

(K)     Whether Plaintiffs and Class members are entitled to injunctive relief.

50. A class certified for injunctive relief is appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

51. Conjunctively or alternatively, a class certified for damages is also appropriate. Common questions of law and fact predominate over individual questions.  For instance, all injuries sustained by any member of the class arise out of the singular conduct of Defendants in uniformly providing false and misleading information, expressly and impliedly, regarding BOOST Kid Essentials and in offering and selling their Product through unfair and illegal conduct and false and misleading advertising and misrepresentations.

52. **Superiority**:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because class actions are generally considered the superior form of disposing of cases involving consumer fraud, especially where there is a

common nucleus of law and facts, and the amount of money at stake for each potential member is too small to warrant prosecution of separate actions. Even if any group of class members itself could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court.

53. Unless a class is certified, Defendants will retain monies as a result of its unlawful conduct that was taken from Plaintiffs and proposed Class members.

## VII.

### FIRST CLAIM
**(Violation of the New Jersey Consumer Fraud Act, <u>N.J.S.A.</u> 56:8-1, et seq. ("CFA"))**
**(Against All Defendants)**

54. Plaintiffs allege and incorporate by reference each and every allegation contained above, as if set forth at this point.

55. The New Jersey Consumer Fraud Act ("NJCFA"), <u>N.J.S.A.</u> 56:8-2, makes it unlawful for companies like Defendant Nestlé to employ "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, . . . in connection with the sale or advertisement of any merchandise . . . whether or not any person has in fact been misled, deceived, or damaged thereby . . . ."

56. Plaintiffs, other members of the Class, and Nestlé are "persons" within the meaning of the NJCFA.

57. The BOOST Kid Essentials manufactured and sold by Nestlé are "merchandise" within the meaning of the NJCFA, and Plaintiff and other members of the Class are "consumers" within the meaning of the NJCFA and thus entitled to the statutory remedies made available in the NJCFA. Nestlé's production, marketing, advertising, sales and/or distribution of BOOST at issue met the definition of "advertisement" and "sale" within the meaning of the NJCFA.

58. Moreover, a person who suffers "any ascertainable loss of moneys or property, real or

personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under" the NJCFA "may bring an action . . . therefore in any court of competent jurisdiction" for "legal or equitable relief," including treble damages "sustained by any person in interest," pursuant to <u>N.J.S.A.</u> 56:8-19.

59.  Defendants violated the NJCFA by dishonestly representing BOOST Kid Essentials provided particular express and implied health benefits to children who ingested the Product when such claims were unsubstantiated by Defendants.   Defendants misrepresentations include that BOOST Kid Essentials was "clinically shown" to :

a.      Prevent upper respiratory tract infections;

b.      Strengthen the immune system;

c.      Protect against cold and flu viruses;

d.      Reduce the duration of diarrhea; and

e.      Overall reduce absences from daycare or school due to illness.

60.  These misrepresentations and omissions of Defendants were intended to result and did result in the sale of products sold and/or manufactured by Defendants to the consuming public and violated and continue to violate the NJCFA.

61.  Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate.

62.  As a result of Defendants' conduct, Plaintiffs and the Class are entitled to restitution and damages equal to the amounts that they expended in the purchase of BOOST.  Plaintiffs also seek treble damages pursuant to the NJCFA.

63.  In the alternative, Plaintiffs and the Class are entitled to restitution and damages equal to the amounts that they paid in excess of what they would have paid for similar consumer products that did not fraudulently tout such non-existent health benefits.  Plaintiffs also seek treble damages pursuant to the NJCFA.

64.  Plaintiffs have standing to bring an action pursuant to the NJCFA on behalf of themselves and the Class because Plaintiffs and the members of the Class have sustained

ascertainable losses as a result of Defendants' wrongful conduct, *i.e.*, Plaintiffs and the members of the Class received something less than, and different from, what they reasonably expected in view of Nestlé's representations on the Product packaging.

65.   Plaintiffs have incurred attorneys' fees and costs in connection with the filing of this Complaint and anticipate incurring additional attorneys' fees and costs in connection with the prosecution of this action.   An award of attorneys' fees, filing fees, and reasonable costs of suit is therefore appropriate pursuant to, among other grounds, <u>N.J.S.A.</u> 56:8-19.

66.   The NJCFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

## VIII.

### SECOND CLAIM
### (Negligent Misrepresentation)
### (Against All Defendants)

67.   Plaintiffs allege and incorporate by reference each and every allegation contained above, as if set forth at this point.

68.   When Defendants made the above-referenced representations about BOOST Kid Essentials being clinically shown to provide specific health benefits, they had no reasonable ground for believing them to be true.

69.   Defendants made the above-referenced representations with the intention of inducing Plaintiffs to act in reliance on these express and implied representations by purchasing BOOST Kid Essentials.

70.   Defendants had superior knowledge and information regarding the truth about BOOST Kid Essentials and the Class members did not have access to this information.

71.   Defendants' unlawful conduct arose, was directed, and emanated from New Jersey to the detriment and injury of Class members throughout the United States, including Plaintiffs.

72.   Plaintiffs and the Class members reasonably relied on the Defendants' representations

regarding clinically-shown health benefits and had no reason to believe they were false. The Defendants' representations and omissions concerned issues material to the transactions in question. Plaintiffs and other Class members would not have purchased BOOST Kid Essentials, absent Defendants' misrepresentations, if the true facts had been known.

73. The foregoing misrepresentations and practices proximately caused Plaintiffs and the Class members to suffer damages in that they purchased the Product without knowing that the alleged express and implied health benefits of BOOST Kid Essentials were not clinically shown, in general, and specifically in comparison to alternative, and significantly less expensive, children's drinks.

74. As a direct and proximate result of Defendants' wrongful acts, Plaintiffs and the Class have suffered and continue to suffer damages. Plaintiffs seek compensatory damages in an amount to be proven at the time of trial.

**IX.**
**THIRD CLAIM**
**(Breach of Warranty)**
**(Against All Defendants)**

75. Plaintiffs allege and incorporate by reference each and every allegation contained above, as if set forth at this point.

76. Plaintiffs, and each member of the Class, formed a contract with Nestlé at the time Plaintiffs and the Class members purchased the Product. The terms of that contract include the promises and affirmations of fact made by Nestlé on its Product labels and through its marketing campaign, as described above. This product labeling and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiffs and the Class on the one hand, and Nestlé on the other.

77. All conditions precedent to Nestlé's liability under these contracts has been performed by the Plaintiffs and the Class.

78. Nestlé has breached the terms of these contracts, including the express warranties,

with Plaintiffs and the Class by not providing the Product which could provide the benefits described above.

79.    As a result of Nestlé's breach of its contract, Plaintiffs and the Class have been damaged in the amount of the purchase price of the Product.

## IX.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1.    for an order certifying the Class;

2.    for damages in an amount to be proven at trial on the First, Second, and Third Claims;

3.    for an award of disgorgement and restitution of Defendants' revenues to Plaintiffs and the Class, including accrued interest;

4.    for declaratory relief finding that Defendants have engaged in unfair, unlawful, or fraudulent business acts or practices in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*;

5.    for a temporary restraining order and a preliminary and permanent injunction enjoining Defendants and their officers, directors, agents, distributors, servants, employees, attorneys, and all others in active concert or participation with Defendants, or any of them, jointly and severally, during the pendency of this action and permanently thereafter from engaging in the scheme described above;

6.    for interest at the maximum rate allowed by law;

7.    for treble damages;

8.    for costs of suit;

9.    for attorneys' fees and all litigation expenses pursuant to N.J.S.A. 56:8-19; and

10.    for such other and further relief as the Court may deem just and proper.

# X.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury for all issues so triable.

SKOLOFF & WOLFE, P.C.

NICHOLAS & BUTLER, LLP

Dated: December 10, 2010        By:  _/s/ Barbara A. Schweiger_____
David B. Wolfe
Jonathan W. Wolfe
Barbara A. Schweiger
Attorneys for Plaintiff Maria Johnson

THE ROSEN LAW FIRM, P.A.

Dated: December 10, 2010        By:  _/s/ Laurence M. Rosen_____
Laurence M. Rosen
Attorneys for Plaintiff Kurt Scheuerman

# EXHIBIT A



# EXHIBIT B



## FAQ

**Q:** **Is BOOST® Kid Essentials Nutritionally Complete Drink a meal replacement?**

**A:** Making healthy food choices and eating proper meals is always recommended; however, BOOST Kid Essentials Drink is an excellent alternative when a meal replacement is required. Each serving of BOOST Kid Essentials Drink provides 244 calories, 25 essential Vitamins and Minerals and 7 grams of muscle-building protein. Talk to your pediatrician about healthy eating and meal replacements.

Back to top

**Q:** **When is it most beneficial to take probiotics?**

**A:** To gain the most benefits from probiotics, they should be consumed on a daily basis. By taking them regularly, probiotics are able to live in, or "colonize" the digestive tract and fight off bad bacteria. If your child has stomach problems, such as diarrhea caused by antibiotics, probiotics may help rebuild a healthy colony of good bacteria, which can aid the immune system when your child may need it most.[1-3]

References:
1. Szajewska H et al. Probiotics in gastrointestinal diseases in children: hard and not-so-hard evidence of efficacy. J Pediatr Gastroenterol Nutr 2006;42 (5):454-75.
2. Tuohy KM et al. Using probiotics and prebiotics to improve gut health. DDT 2003;8(15):692-700.
3. Isolauri E et al. Probiotics: effects on immunity. Am J Clin Nutr 2001;73(suppl):440S-50S.

Back to top

**Q:** **What exactly do probiotics protect my kids from?**

**A:** Probiotics are healthy bacteria that must be consumed in order to build up in our digestive system -in the lining of the GI tract. While they occur throughout nature, they are less likely to be present in large numbers in our own GI tract, and therefore need to be consumed to derive a benefit. They help balance and keep the levels of bad bacteria in check. Most importantly, they help keep our immune system healthy by increasing disease-fighting antibodies.[1,2]

References:
1. Tuohy KM et al. Using probiotics and prebiotics to improve gut health. DDT 2003;8(15):692-700.
2. Isolauri E et al. Probiotics: effects on immunity. Am J Clin Nutr 2001;73(suppl):440S-50S.

Back to top

**Q:** **Are probiotics effective against viruses?**

**A:** Yes, certain probiotics have been shown to help fight viruses such as Rotaviral diarrhea.[1] *Lactobacillus reuteri Protectis* (the probiotic found in BOOST Kid Essentials Drink) has been shown to reduce the duration of diarrheal illness in children[3] and reduce the number of days that infants miss daycare due to illness.[2]

References:
1. Szajewska H et al. Probiotics in gastrointestinal diseases in children: hard and not-so-hard evidence of efficacy. J Pediatr Gastroenterol Nutr 2006;42 (5):454-75.
2. Weizman Z et al. Effect of a probiotic infant formula on infections in child care centers: comparison of two probiotic agents. Pediatrics 2005;115;5-9.
3. Shornikova AV et al. Bacteriotherapy with Lactobacillus reuteri in rotavirus gastroenteritis. Pediatr Infect Dis J. 1997;16:1103-7.

Back to top

**Q:** **Are probiotics safe for my young child?**

A: Absolutely. The safety and efficacy of probiotic use has been documented for 100 years all around the world. Probiotic-supplemented infant formula has been available for over 15 years, in over 30 countries. *Lactobacillus reuteri Protectis* specifically has been thoroughly tested in infants, children and adults and has shown to be safe and effective.

Back to top

**Q:** Why do I need to use the straw that is attached to the package?

A: Only BOOST Kid Essentials Drink delivers immune-supporting probiotics – and the straw is the only way to get them. If BOOST Kid Essentials Drink isn't served with the straw, your child won't receive the immune benefits from the probiotics.

Back to top

**Q:** Can I re-use the BOOST Kid Essentials Drink straw?

A: No. The probiotics are in the straw. They are consumed along with the BOOST Kid Essentials Drink. Re-using the straw will not provide the benefits of probiotics.

Back to top

**Q:** How do antioxidants help my child?

A: Antioxidants help kids fight the damaging effects of free radicals in their young, growing bodies. These immune-supporting agents can help kids fight off sickness at school, the playground, at home, or anywhere on-the-go.

Back to top

**Q:** Where can I find BOOST Kid Essentials Drink?

A: BOOST Kid Essentials Drink is available at your local grocery, discount or drug store.

Back to top

**Q:** Can I heat BOOST Kid Essentials Drink to make a drink like hot chocolate?

A: The immune support offered by the probiotic straw is most effective when BOOST Kid Essentials Drink is chilled, or remains under [77 degrees F]. Store BOOST Kid Essentials Drink in the fridge to maximize the immune benefits and to make it a refreshing treat. And remember, drinking hot beverages through a straw is not advised because your child may burn his or her throat or fingers.

Back to top

**Q:** Is BOOST Kid Essentials Drink lactose-free?

A: Yes.

Back to top

**Q:** My child is already a healthy eater. Is BOOST Kid Essentials Drink still beneficial?

A: Yes, the complete nutrition and probiotic immunity support found in BOOST Kid Essentials Drink provides benefits for most any child. To learn more, click here.

Back to top

**Q:** My child is a picky eater, how can BOOST Kid Essentials Drink help?

A: BOOST Kid Essentials Drink offers a delicious option with complete nutrition and probiotic immunity support for even the pickiest eaters. To learn more, click here.

Back to top

**Q:** My child is lagging behind on the growth curves, how can BOOST Kid Essentials Drink help?

A: As a nutritious and delicious snack or meal, BOOST Kid Essentials Drink helps provide a proper balance of key nutrients growing kids need. To learn more, click here.

Back to top

**Q: Is BOOST Kid Essentials Drink an energy drink?**

A: No. Energy drinks typically contain some type of stimulant, such as caffeine or ginseng, along with high levels of sugar. BOOST Kid Essentials Drink provides the complete nutrition that children need without stimulants or large amounts of sugar.

Back to top

**Q: Is BOOST Kid Essentials Drink kosher?**

A: At this time, BOOST Kid Essentials Drink is not certified as kosher.

Back to top

**Q: Do BOOST Kid Essentials Drink contain gluten?**

A: No, BOOST Kid Essentials Drink is gluten free.

Back to top

**Q: How many times a day can my child drink BOOST Kid Essentials Drink?**

A: BOOST Kid Essentials Drink may be consumed with meals, or as a snack, and may therefore be consumed more than once per day. In order to make sure a child receives nutrition from a variety of sources, you may wish to limit daily intake to 2-3 servings. Speak with your pediatrician for more detail regarding how frequently your child may wish to use BOOST Kid Essentials Drink.

Back to top

**Q: Does BOOST Kid Essentials Drink contain the recommended daily levels of key nutrients like iron and calcium?**

A: BOOST Kid Essentials Drink provides 100% or more of the NAS-Recommended Dietary Allowances (RDA's) for protein, vitamins and minerals:
In 1000 mL (approx. 34 fl. oz.) for children 1-8 years of age*
In 1500 mL (approx. 51 fl. oz.) for children 9-13 years of age*

* 100% of the RDA for children 4-8 years of age for vitamins B6 and K is provided in 1500 mL.

Not intended for infants under 1 year of age

Back to top

**Q: Is there sugar in BOOST Kid Essentials Drink?**

A: BOOST Kid Essentials Drink contains sugar but no high-fructose corn syrup.

Back to top

**Q: What are the benefits of no high fructose corn syrup?**

A: High fructose corn syrup has been linked to the recent rise in obesity.* That's why it's usually not considered an ideal alternative to other more natural sweeteners such as sucrose.

*Bray GA. Consumption of high-fructose corn syrup in beverages may play a role in the epidemic of obesity. *AJCN.* 2001;79:537-543.

Back to top

**Q: Is BOOST Kid Essentials Drink appropriate for children with diabetes?**

A: According to the American Dietetic Association and the American Diabetic Association, individuals with diabetes may consume some sugar, and primarily need to be aware of their total carbohydrate intake. BOOST Kid Essentials Drink provides 33 grams of carbohydrate, which is the equivalent of 2 slices of bread. Speak with your child's healthcare provider regarding how to incorporate BOOST Kid Essentials Drink into a carbohydrate counting or diabetic meal plan.

Back to top

**Q:** **Is BOOST Kid Essentials Drink available through the WIC program?**

**A:** BOOST Kid Essentials Nutritionally Complete Drink (retail) is a WIC eligible medical food for the medical condition of failure to thrive. The WIC approval for institutional* BOOST Kid Essentials Nutritionally Complete Drink is still pending.

*Healthcare Facilities

Back to top

Register Now | Nestlenutrition.com/us | Site Map | Contact Us | Privacy Policy | Legal

Except where noted, all trademarks and other intellectual property on this site are owned by Société des Produits Nestlé S.A., Vevey, Switzerland. All rights reserved.
**WIC is a registered trademark of the US Department of Agriculture and an abbreviation for the Special Supplemental Nutrition Program for Women, Infants and Children.

# EXHIBIT C

**Straw Power :30 (location)**                                                1/3

1 

A girl pops into frame and takes a big enjoyable sip of Kid Essentials.

V/O: "Introducing NEW Boost Kid Essentials..."

2 

She is amazed as the straw takes on a life of it's own, jumping out of the drink box and twirling around her head.

V/O: "....the only nutritionally complete drink..."

3 

The girl runs along playfully as the straw twirls around her.

V/O: "...that gives kids..."

4 

She encouters a boy who sneezes. The straw quickly forms a protective barrier around her.

LEGAL TITLE: L. reuteri Protectis has been clinically shown to help strengthen the immune system when consumed daily.   For more information about clinical trials involving L. reuteri Protectis, go to www.kidessentials.com

V/O: "..the power of immune strengthening probiotics."

## Straw Power :30 (location)

5



The girl continues on her way and as she approaches a basketball net, the straw forms stairs for her to step up on.

TITLE: Muscle-building protein

V/O: "PLUS the power to grow strong - with muscle-building protein..."

6



She takes a shot and hits a perfect swoosh.

TITLE: 25 vitamins & minerals

V/O: "....and 25 vitamins & minerals."

7



Cut to straw popping back into drink box. The vortex of wellness swirls around the box, highlighting product attributes.

TITLES: Immunity-strengthening probiotics / 7 g protein / 25 vitamins & minerals

V/O: "NEW Boost Kid Essentials: complete nutrition for your child's healthy growth..."

8



The straw bends forwards, and probiotics titles emerge, followed by animated probiotic bubbles and a twirling arrow.

TITLES: Probiotic straw / Clinically shown to help strengthen the immune system

V/O: "...and probiotics clinically shown to help strengthen the immune system."

## Straw Power :30 (location)

8 

Cut to close-up of the girl grabbing the drink box and enjoying another sip

V/O: "...So the power to do anything..."

9 

She finishes her sip, turns and skips out of frame...

V/O: "..is possible every day."

10 

....revealing the logo and website.

V/O: "Look for us next to Pediasure."

LEGAL TITLE: To find out more, talk to your pediatrician.

# EXHIBIT D



Good when she was bad: Sheridan (center) with Neal McDonough and Kathryn Joosten.

## 3 REASONS I'LL MISS *DESPERATE HOUSEWIVES'*
# NICOLLETTE SHERIDAN

**1 SHE KNEW THE SCORE** When Edie Britt exits the show this spring, Sheridan takes with her a special knowing humor. Edie, a smirker, seemed to comprehend just how petty the wives' traumas really are.
**2 SHE WAS AN UBER COUGAR** Proud poacher of neighbors' husbands and boyfriends, Edie sauntered around Wisteria Lane in short shorts and tight tops, refusing to cede sexuality to age. Tacky, but defiant.
**3 SHE TOO WAS DESPERATE—QUIETLY** In the end Edie just wanted a little love, usually from the wrong guy (like Neal McDonough, as her crazy spouse). Let's never forget: *Edie* rhymes with *needy.*

## TAHMOH PENIKETT
# WORKING DOUBLE-TIME

*The Canadian actor, 33, is juggling two series: Sci Fi's Battlestar Galactica and the new FOX drama Dollhouse.*

**YOU KICK BUTT ON BOTH SHOWS!** I've been practicing this beautiful martial art, Muay Thai, for years. The "jumping knee" is one of my specialties. I'm not Jackie Chan or anything, but it looks pretty cool when a 6'3" dude jumps in the air. **HOW DO YOU LIKE HAVING YOUR OWN BATTLESTAR ACTION FIGURE?** It was surreal when it came out. What's funny is all my friends have bought Helo action figures. They've threatened to do some funny things [using] those dolls and put it on YouTube! --CYNTHIA WANG





Do your kids have the power?

NEW!

BOOST

Kid Essentials

Nutritionally Complete Drink

Immunity Protection

Patented PROBIOTIC Straw

*Nutritionally Complete Drink with PROBIOTICS to Help Keep Kids Healthy

CHOCOLATE



NEW SEASON!

Tyson Beckford mentors the male models, including Jonathan (left).

## Make Me a Supermodel

*Bravo, March 4, 10 p.m. ET* | ★★★☆

REALITY

The title has a sort of infantile insistence to it. You want to chide, "Make me a supermodel, *please*." The show itself, though, is a painlessly smooth runway stroll, thanks to the unvarnished attractiveness of its young contestants. It almost seems beside the point to learn that Colin, a college student, is a virgin or that one of the girls—named Salome—has displeased her Mennonite family with her fashion aspirations. In the opening challenge of the second-season premiere, the models are paired off, hoisted far above the ground in a Plexiglas box and told to strike an intimate pose. Make them come down, *now*.

## SHE'S BACK TOO!

For the cycle 12 premiere of *America's Next Top Model* (CW, March 4, 8 p.m. ET/PT), Tyra Banks makes her ritualist grand entrance in ancient Greco-Roman costume, proclaiming herself the goddess of fierce. I sometimes wish she'd just ride down an escalator waving. Of the girls in the first hour, the most intriguing are burn victim Tahlia, street preacher London and Allison, who has huge, *Coraline*-like eyes and an unhealthy interest in blood. ★★★☆



**TV**

FROM LEFT: BARBARA NITKE/BRAVO; JOHN SPELLMAN/RETNA LTD./COSTINING; ANDREA BRANCH/WIRTGE MCMILLAN

**In the premiere Rivers lets them eat cupcake.**

# The Celebrity Apprentice
*NBC, March 1, 9 p.m. ET* | ★★★☆☆

**REALITY**  Even if Donald Trump's casinos have hit a rough patch, cheap TV formats can be a resilient investment during a downturn. The second season of his *Apprentice*-with-stars has one major plus going in: no Omarosa. On the other hand, it's hard to imagine how eagerly viewers will root for Claudia Jordan, a briefcase model on *Deal or No Deal*. At least there's Joan Rivers—bullheaded and shrewd, both in business and in comedy. Consider her the show's stimulus package.

## MISSY PEREGRYM
# GRIN *REAPER*

*The actress, 26, is back on the CW comedy after cheering on her boyfriend, Pittsburgh Steelers QB Ben Roethlisberger, at the Super Bowl.*



**YOUR COSTARS ON *REAPER* ARE MOSTLY MEN.** It's perfect. Growing up I was a tomboy. I was never emotional and feminine until a few years ago. I'm finally a woman!
**YOU PLAY A WAREHOUSE MANAGER. EVER WORK IN RETAIL?** I worked at a Sport Chek in Vancouver, only so I could get the discount off snowboard gear. But I hated the job so much, I quit before I got my discount.
**WHAT WAS IT LIKE SEEING BEN WIN THE SUPER BOWL?** It was the happiest, most emotional weekend of my life. It felt like *I* was playing—and I didn't want to lose! —**PAUL CHI**



The power to grow strong

25 vitamins & minerals

7g of muscle-building protein

Kid Essentials

## The power to do anything! Every day.

**NEW BOOST® Kid Essentials Nutritionally Complete Drink:**
- Immune-strengthening probiotics in the straw
- 25 vitamins & minerals + 7g of protein to support healthy growth
- Kid preferred taste vs. Pediasure®



### Kid Essentials
BOOST

Anything is possible at kidessentials.com

**TV**



Feeling the *Love* with Ginnifer Goodwin (left) and Jeanne Tripplehorn

## TV'S FAVORITE POLYGAMIST, BILL PAXTON, *BIG* MAN ON CAMPUS

● On the HBO drama *Big Love*, the actor, 53, plays a polygamist with 3 wives and 8 children. But at home it's just wife Louise and kids James, 15, and Lydia, 11.

**AFTER SO MANY FILMS, HOW DO YOU LIKE TV?** I was so into *The Sopranos* and always wanted to do an ongoing character. It's so original, so keep it coming!
**DID YOU FOLLOW THE NEWS ON THE FLDS CULT LAST YEAR?** Oh, yeah. When that happened in Texas, the image of those children being taken away from their mothers; in a weird way our show has given a face to a culture that's so alien to Americans.
**DO YOU EVER WATCH YOUR OLD MOVIES?** I found a VHS copy of a film I did called *Mortuary*. I showed it to my son and daughter, and we had a good laugh. My son said, "You sure have gotten a lot better!"
**ARE YOUR KIDS STAR-STRUCK?** Justin Long was at the *Big Love* premiere; my daughter has seen *Accepted* 100 times. He talked to her, and it was so cute to see her trying to play it cool, even though she was jumping out of her skin. —LISA INGRASSIA

