UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIA JOHNSON, an individual, and KURT SCHEUERMAN, an individual, on behalf of themselves and all others similarly situated, and ROES 1 through 100, inclusive,<br><br>Plaintiffs,<br><br>v.<br><br>NESTLÉ HEALTHCARE NUTRITION, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | No. 2:10-CV-03684-FSH-PS<br><br>Motion Date: February 7, 2011<br><br>**Oral Argument Requested** |

### DEFENDANT'S MEMORANDUM OF LAW
### IN SUPPORT OF ITS MOTION TO DISMISS
### PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

Defendant Nestlé Healthcare Nutrition, Inc. ("Nestlé") respectfully submits this brief in support of its motion to dismiss plaintiffs Maria Johnson's and Kurt Scheuerman's (together, "Plaintiffs") Consolidated Class Action Complaint (the "Consolidated Complaint") pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).

### PRELIMINARY STATEMENT

This Consolidated Complaint represents Plaintiffs' fourth attempt to transform a run-of-the-mill Federal Trade Commission ("FTC") investigation, which ended without any ruling that Nestlé falsely advertised or marketed its

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................... 1

BACKGROUND ................................................................................... 3

    A. Allegations of the Complaint .................................................... 3

    B. The FTC's Complaint and Consent Order ................................ 4

ARGUMENT ........................................................................................ 6

I.    LEGAL STANDARD ON MOTION TO DISMISS ..................... 6

II.   CALIFORNIA AND PENNSYLVANIA LAW APPLY TO
     PLAINTIFFS' FRAUD CLAIMS BECAUSE THOSE STATES
     HAVE THE MOST SIGNIFICANT RELATIONSHIP TO THIS
     CASE ......................................................................................... 7

III.  PLAINTIFFS' CONSUMER FRAUD CLAIM FAILS AS A
     MATTER OF LAW UNDER CALIFORNIA, PENNSYLVANIA, OR
     NEW JERSEY LAW ................................................................. 11

    A.   Plaintiffs Fail to Plead Their Consumer Fraud Claim with
       Sufficient Particularity as Required by Fed. R. Civ. P. 9(b) ............. 11

    B.   Plaintiffs' New Jersey Consumer Fraud Claim Fails Because
       California and Pennsylvania Law Applies ........................................ 16

       1.   California's and Pennsylvania's Unfair Trade Practices
          and Consumer Protection Laws Conflicts With New
          Jersey's Consumer Fraud Act ................................................. 16

       2.   California and Pennsylvania Law Should Apply to the
          Consumer Fraud and Negligent Misrepresentations
          Claims .................................................................................... 19

    C.   Plaintiffs' Consumer Fraud Claim Fails to Set Forth a Prima
       Facie Violation of California's UCL or Pennsylvania's
       UTPCPL ........................................................................................ 22

       1.   Plaintiffs Cannot Demonstrate Reliance Under The UCL
          or UTPCPL As A Matter Of Law ........................................... 23

       2.   Plaintiffs Have Not Plead Any Ascertainable Loss of
          Money or Property ................................................................. 26

## TABLE OF CONTENTS
### (continued)

**Page**

D.   Plaintiffs' Consumer Fraud Claims Fail to Set Forth a Prima Facie Violation of New Jersey's Consumer Fraud Act ......................29

 1.   Plaintiffs Fail to Plead Unlawful Conduct, Thus Warranting Dismissal of Their NJCFA Claim ........................31

 2.   Plaintiffs' Claim Under the NJCFA Fails Because There is No Ascertainable Loss .........................................................33

 3.   Plaintiffs Fail to Plead Causation Sufficiently.........................35

IV.   PLAINTIFFS' BREACH OF WARRANTY CLAIM FAILS AS A MATTER OF LAW UNDER CALIFORNIA, PENNSYLVANIA, AND NEW JERSEY LAW ...........................................................................36

A.   Plaintiffs Fail To Identify The Alleged Warranty Or Its Source .......36

B.   Plaintiff Fails To Plead Reliance........................................................39

CONCLUSION .........................................................................................................40

# TABLE OF AUTHORITIES

## CASES

*Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App. 3d
    1 (1989) ...................................................................................39

*Atlass v. Mercedes-Benz USA, LLC*, No. 07-2720, 2007 WL 2892803
    (D.N.J. Sept. 25, 2007)...................................... 17, 26, 28-29

*Baba v. Hewlett-Packard Co.,* No. C 09-05946 RS, 2010 WL
    2486353 (N.D. Cal. June 16, 2010)........................................11

*Bailey v. Nationwide Affinity Ins. Co. of Am.*, No. 10-520, 2010 WL
    3167544 (W.D. Pa. Aug. 10, 2010)........................................23

*Baptiste v. C.O. Lockowitz*, No. 09-4335, 2009 WL. 2905439 (D.N.J.
    Sept. 8, 2009)...........................................................................13

*Board of Trustees Of Teamsters Local 863 Pension Fund v.
Foodtown, Inc.*, 296 F.3d 164 (3d Cir. 2002) .........................14

*Beegal v. Park West Gallery*, 394 N.J. Super. 98 (App. Div. 2007)............20

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) ....................... 6, 38-39

*Bianchi v. Lazy Days R.V. Center, Inc.*, No. 06-1979, 2007 WL
    1959268 (D.N.J. July 5, 2007) ......................................... 29-30

*Brunwasser v. Trans World Airlines, Inc.*, , 541 F. Supp. 1338 (W.D.
    Pa. 1982)..................................................................................26

*CEC Energy Co., Inc. v. Public Serv. Commn' of the Virgin Islands*,
    891 F.2d 1107 (3d Cir. 1989)...................................................5

*California Public Employees' Retirement System v. Chubb Corp.*, 394
    F.3d 126 (3d Cir. 2004).............................................................12

*Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939 (S.D. Cal. 2007) .......23

*Clark v. Prudential Ins. Co. of Am.,* No. 08-6197, 2010 WL 352222
    (D.N.J. Sept. 9, 2010).............................................................18

*Cooper v. Samsung Electronics Am., Inc.*, No. 07-03853, 2008 WL
   4513924 (D.N.J. Sept. 30, 2008)........................................................ 9-10

*Cooper v. Samsung Electronics Am., Inc.*, No. 08-4736, 2010 WL
   1220946 (3d Cir. March 30, 2010)................................................... 7-8, 19

*Debra A. Fink, D.M.D., MS, PC v. Ricoh Corp.*, 365 N.J. Super. 520
   (Law Div. 2003) ........................................................................20

*Dewey v. Volkswagon AG*, 558 F. Supp. 2d 505 (D.N.J. 2008).............35, 38

*DiLucido v. Terminix Int'l, Inc.*, 676 A.2d 1237 (Pa. Super. Ct. May
   22, 1996)..................................................................................24, 25

*FDIC v. Bathgate, II*, 27 F.3d 850 (3d Cir. 1994)........................................32

*FTC v. Standard Oil Co. of California,* 449 U.S. 232 (1980)........................5

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007).............6, 11, 13, 29

*Grant v. Turner*, No. 09-2381, 2010 WL 988537 (D.N.J. March 12,
   2010)..........................................................................................14

*Gray v. Bayer Corp.*, No. 08-4716, 2009 WL 1617930 (D.N.J. June 9,
   2009).........................................................................................31

*Guilbealt v. R.J. Reynolds Tobacco Co.*, 84 F. Supp. 2d 263 (D.R.I.
   2000)........................................................................................16

*Hall v. Time, Inc.*, 158 Cal. App. 4th 847 (2008)........................ 23, 26-27, 29

*Heindel v. Pfizer*, 381 F. Supp. 2d 364 (D.N.J. 2004) ............... 10, 19-20, 22

*Herbert v. Mentor*, No. 04-413, 2007 WL 2893387 (D.N.J. Sept. 28,
   2007)........................................................................................39

*Herrington v. Johnson & Johnson Consumer Cos., Inc.,* No. C 09-
   1597, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) .........................24

*Hoffman v. Hampshire Labs, Inc.*, 405 N.J. Super. 105 (App. Div.
   2009).........................................................................................33

*Hunt v. U.S. Tobacco Co.*, 538 F.3d 217 (3d Cir. 2008)...............................23

*In re Actimmune Marketing Litig.*, 614 F. Supp. 2d 1037 (N.D. Cal. 2009).........................................................................................................18

*In re Advanta Corp. Sec. Litig.*, 180 F.3d 525 (3d Cir. 1999) .....................13

*In re Ford Motor Co. Ignition Switch Products Liability Litig.*, 174 F.R.D. 332 (D.N.J 1997) ..........................................................................8

*In re Nestlé Healthcare Nutrition, Inc.*, F.T.C. No. 092 ............................2, 4

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 06-5774, 2009 U.S. Dist. LEXIS 58900 (D.N.J. July 10, 2009).......15

*In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009)..........................................17

*In re Toshiba Am. HD DVD Marketing and Sales Practices Litig.*, MDL No. 1956, 2009 WL 2940081 (D.N.J. Sept. 11, 2009) ................................................................. 28, 30-31

*Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372 (N.J. 2007) ....................................................18

*Jetter v Brown & Williamson Tobacco Corp.*, 113 Fed. App'x 465, (3d Cir. 2004) ......................................................................................40

*Johns v. Bayer Corp.*, No. 09CV1935, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010)....................................................................................24

*Kanady v. GMAC Mortg., LLC*, No. CV F 10-1742, 2010 WL 4010289 (E.D. Cal. Oct. 13, 2010).........................................................11

*Kester v. Zimmer Holdings, Inc.*, No. 2:10-cv-00523, 2010 WL 2696467 (W.D. Pa. June 16, 2010) ........................................................37

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ..........................7

*Kwanzaa v. Brown*, No. 05-5976, 2006 WL 2403978 (D.N.J. Aug. 17, 2006)..........................................................................................................6

*Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. 2005).........22

*Lebergern v. Forman*, 471 F.3d 424 (3d Cir. 2006)......................................19

*Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 2004) .................................13

*Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206 (E.D. Pa. 2000) ...........................20

*Mason v. Costco Wholesale Corp.*, No. 09-361, 2009 WL 2634871
(D.N.J. Aug. 26, 2009) ...........................................................................34

*Mayer v. Belichick*, 605 F.3d 223 (3d Cir. 2010)...........................................6

*Mirkin v. Wasserman*, 858 P.2d 568 (Cal. 1993) .........................................18

*Monserrate v. Rabbitt*, No. 10-2260, 2010 WL 2179148 (D.N.J. May
19, 2010)..................................................................................................13

*Nelson v. Xacta 3000, Inc.*, No. 08-5426, 2009 WL 4119176 (D.N.J.
Nov. 24, 2009).........................................................................................32

*Net2Phone, Inc. v. Superior Court*, 109 Cal. App. 4th 583 (2003)..............17

*New Jersey Citizen Action v. Schering-Plough Corp.*, 864 A.2d 174
(N.J. Sup. Ct. 2003).................................................................................31

*Nikolin v. Samsung Electrics Am., Inc.*, No. 10-1456, 2010 WL
4116997 (D.N.J. Oct. 18, 2010) ................................................ 17, 21-22

*Parker v. Howmedica Osteonics Corp.*, No. 07-02400, 2008 WL
141628 (D.N.J. Jan. 14, 2008).................................................................30

*Payne v. Fujifilm U.S.A., Inc.*, No. 07-385, 2010 WL 2342388 (D.N.J.
May 28, 2010) .........................................................................................36

*Petruska v. Gannon University*, 462 F.3d 294 (3d Cir. 2006) ........................6

*Pfizer, Inc. v. Superior Court*, 182 Cal. App. 4th 622 (2010)......................25

*Pratt v. Panasonic Consumer Electrics Co.*, 2006 WL 1933660 (N.J.
Super. Ct. July 12, 2006).........................................................................22

*Princess Cruise Lines, Ltd. v. Superior Court*, 179 Cal. App. 4th 36
(2009) ......................................................................................................17

*Real v. Radir Wheels, Inc.*, 198 N.J. 511 (2009)...........................................18

*Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998)..................................................................................................13

*Sefton v. Toyota Motor Sales USA*, No. 09 C 3787, 2010 WL 1506709 (N.D. Ill. April 14, 2010...............................................................15

*Shannon v. Howmedica Osteonics Corp.*, No. 09-4171, 2010 WL 421096 (D.N.J. Feb. 1, 2010)...............................................................11

*Simmons v. Stryker Corp.*, Civ. Act. No 08-3451, 2008 WL 4936982 (D.N.J. Nov. 17, 2008) ........................................................37, 38

*Solo v. Bed Bath & Beyond, Inc.*, No. 06-1908, 2007 WL 1237825 (D.N.J. Apr. 26, 2007)...............................................................33

*Solomon v. Bristol-Myers Squibb Co.*, No. 07-1102, 2009 WL 5206120 (D.N.J. Dec. 30, 2009) .............................................13, 15

*Strain v. Nutri/System, Inc.*, No. 90-2772, 1990 WL 209325 (E.D. Pa. Dec. 12, 1990)...............................................................18

*Thiedemann v. Mercedes-Benz U.S.A.*, 183 N.J. 234 (2005) .......................30

*Thomas v. Chase Bank*, No. 09-3803, 2010 WL 1948266 (E.D. Pa. May 10, 2010) ...............................................................23

*Toy v. Metro. Life Ins. Co.*, 863 A.2d 1 (Pa. Super. Ct. 2004).....................25

*Toy v. Metro. Life Ins. Co.*, 928 A.2d 186 (Pa. 2007)..................................24

*Tran v. Metro. Life Ins. Co.*, 408 F.3d 130-140-41 (3d Cir. 2005)..............23

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ............12, 13

*Visual Commc'ns, Inc. v. Konica Minolta Bus. Solutions U.S.A., Inc.*, 611 F. Supp. 2d 465 (E.D. Pa. 2009) ......................................................40

*Wagner v. Future Planning Assocs. Inc.*, No. 09-971, 2010 WL 528437 (W.D. Pa. Feb. 11, 2010)...............................................................11

*Warma Witter Kreisler, Inc. v. Samsung Electronics Am. Inc.*, No. 08-
5380, 2009 WL 46730187 (D.N.J. Dec. 3, 2009) .............................13, 29

*Warriner v. Stanton*, 475 F.3d 497 (3d Cir. 2007) .........................................7

*Weinstein v. Saturn Corp.,* 303 Fed. App'x. 424 (9th Cir.2008) .................37

*Williams v. Dow Chem. Co.,* 255 F.Supp. 2d 219, 231 (S.D.N.Y.
2003)................................................................................................40

*Wilson v. Parisi*, 549 F. Supp. 2d 637 (M.D. Pa. 2008).........................27, 29

*Zafarana v. Pfizer*, 09-cv-4026, 2010 WL 2854170 (E.D. Pa. July 20,
2010)................................................................................................18

## STATUTES

13 Pa. Cons. Stat. § 2313(a) ...................................................................37, 39

13 Pa. Cons. Stat. § 2313 cmt. 1 ...................................................................37

73 Pa. Stat. Ann. §§ 201 *et seq.*...................................................................17

73 Pa. Stat. Ann. § 201-9.2(a) ......................................................................26

Cal. Bus. & Prof. Code § 17204 ...................................................................22

Cal. Com. Code § 2313(1)........................................................................37, 39

Cal. Com. Code § 2313, cmt. 1 ...................................................................37

Cal. Bus. & Prof. Code § 17200 *et seq.*........................................................17

N.J.S.A. § 12A:2-313 ...................................................................................37

N.J.S.A. §§ 56:8-1 *et seq.*.............................................................................16

N.J.S.A. § 56:8-2 .........................................................................................29

N.J.S.A § 56:8-19 .........................................................................................19

## FEDERAL RULES

Fed. R. Civ. P. 9(b)................................................................*passim*

Fed. R. Civ. P. 11(b)(3) ................................................................5

Fed. R. Civ. P. 12(b)(6) ................................................................6

## OTHER AUTHORITIES

Restatement (Second) Conflict of Laws § 148 *cmt. i*...................................20

Boost® Kid Essentials Drink ("BKE"), into a facial violation of New Jersey law.[1] The Consolidated Complaint alleges virtually no facts relating to Plaintiffs or the nationwide class they seek to represent.  Indeed, Plaintiffs' scant allegation against Nestlé amounts to their claim that Nestlé's nationwide marketing representations regarding BKE are "deceptive and misleading."  Consol. Compl. ¶ 3.

Plaintiffs' allegations that Nestlé's claims and representations about BKE are deceptive and misleading is based solely on a consent order ("Consent Order") that Nestlé entered into with the FTC in July 2010.  The terms of that Consent Order are very different, however, from Plaintiffs' allegation that Nestlé's claims about the health benefits of BKE are made without a reasonable basis.  *Id.* at ¶¶ 3, 8.  Moreover, Plaintiffs do not allege – because they cannot – that their respective children received no health benefits from BKE.

Plaintiffs assert three causes of action against Nestlé: the first under the New Jersey Consumer Fraud Act; the second alleging negligent misrepresentation; and the third alleging breach of warranty.  As explained more fully below, however, Plaintiffs have not alleged any actionable conduct by Nestlé and cannot demonstrate, as a matter of law, any injury resulting from any alleged

---

[1]     Plaintiff Scheuerman filed an original complaint in July 2010 (Docket No. 1) and a first amended complaint two months later in September (Docket No. 9).  Nestlé filed motions to dismiss each of those pleadings.  *See* Docket Nos. 7, 14.  Plaintiff Johnson filed a tag-along complaint in state court in late September 2010, which subsequently was removed to this Court. *See Johnson, et al. v. Nestlé Healthcare Nutrition, Inc., et al.,* No. 2:10-cv-05628-FSH-PS, Docket No. 1 at Exh. "A."  *Johnson* and this case were consolidated for pretrial purposes on November 15, 2010.  Docket No. 18.

misconduct on Nestlé's part.   Accordingly, Plaintiffs' Consolidated Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).

## BACKGROUND

### A.    Allegations of the Complaint

Plaintiff Johnson, a California resident (Consol. Compl. ¶ 5), alleges that she purchased BKE for her children.  *Id.*  She sets forth no significant facts regarding her experience with either Nestlé or BKE other than that she "routinely" purchased BKE as part of her regular grocery shopping and, presumably, read the packaging and saw some unspecified "print, media and online" BKE advertising, including marketing material that Nestlé purportedly provided to her pediatrician (rather than to her or the general public).  *Id.*  Like plaintiff Johnson, plaintiff Scheuerman baldly alleges that he purchased BKE for two of his children based on Nestlé's television commercials, print advertisements, and labeling.  *Id.* at ¶ 6. Both Plaintiffs, however, fail to allege exactly what they read in the BKE advertising, or on the BKE labeling or packaging.  Indeed, Plaintiffs neglect to plead when and where they were exposed to Nestlé's claims about BKE, where, specifically, they purchased it, or upon which specific claims they relied when they purchased BKE.  Notably, the Consolidated Complaint is bereft of any allegation that Plaintiffs received no health benefit from BKE.  Out of the 79 paragraphs

contained in the Consolidated Complaint, all we know about Plaintiffs is what we learn in two paragraphs.

Plaintiffs' claims boil down to a simple premise – based on nothing more than the FTC Consent Order, Plaintiffs allege that Nestlé's representations regarding BKE were "deceptive and misleading." *Id.* at ¶ 3.

## B.   The FTC's Complaint and Consent Order

In mid-July 2010, Nestlé and the FTC reached a settlement concluding the agency's investigation into Nestlé's advertising and marketing relating to BKE.  Pursuant to Part 3 of the FTC Rules of Practice, 16 C.F.R. § 3.2, the FTC filed an administrative complaint and, at the same time, entered the Consent Order resolving the complaint.

The Consent Order is merely a promise by Nestlé to change certain of its corporate practices and makes clear that "[t]his agreement is for settlement purposes only and ***does not constitute an admission by the proposed respondent that the law has been violated*** as alleged in the draft complaint, or that the facts as alleged in the draft complaint, other than the jurisdictional facts, are true." *In re Nestlé Healthcare Nutrition, Inc.*, FTC No. 092 3087, Agreement Containing Consent Order at ¶ 5 (emphasis added).[2]  Pursuant to the Consent Order, Nestlé made no admission that its advertising or marketing relating to BKE was false or

---

[2]    The Consent Order is available at:
http://www.ftc.gov/os/caselist/0923087/100714nestleorder.pdf.

misleading, and the FTC made no such finding.  *See id.*, Complaint[3] (stating that the FTC merely had "reason to believe" that Defendant violated the FTC Act) (available at http://www.ftc.gov/os/caselist/0923087/100714nestlecmpt.pdf).[4]

Plaintiffs' Consolidated Complaint is nothing more than a thinly veiled attempt to leverage the FTC administrative complaint and Consent Order into a private, nationwide consumer class action.   In fact, their Consolidated Complaint attaches exact photocopies of the exemplar BKE advertising and marketing material that were attached to the FTC's administrative complaint. *Compare* Docket No. 27 at Exhs. "A" through "D"; *with* FTC administrative complaint Exhs. "A1" through "C," and "E."[5]

---

[3]      Throughout their Consolidated Complaint, Plaintiffs characterize the administrative complaint as representing the FTC's "conclusions" and "findings."  *See* Consol. Compl. ¶¶ 3, 36. The FTC's administrative complaint, however, makes no such findings, much less any conclusions.   Like any other civil complaint, the "issuance of [an] FTC complaint averring reason to believe [that a] defendant violated [the FTC Act] *is not a definitive position* but a threshold determination that further inquiry is warranted, a prerequisite to a definitive position that defendant violated [the] Act."  *CEC Energy Co., Inc. v. Pub. Serv. Comm'n of the Virgin Islands*, 891 F.2d 1107, 1110 (3d Cir. 1989) (emphasis added) (citing *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 241 (1980)).   Plaintiffs' blatant mischaracterizations that the FTC concluded and found that Nestlé's BKE advertisements were false or misleading are untenable and border on sanctionable conduct.  *See* Fed. R. Civ. P. 11(b)(3), (c) (by signing a pleading, an attorney certifies that "the factual contentions have evidentiary support," and the Court may sanction the attorney if the allegations are not supportable).   Indeed, it is particularly troubling that plaintiff Scheuerman persists in his mischaracterization of the FTC's administrative complaint in such manner despite already having been informed by Nestlé, in response to his first amended complaint, that such characterizations are inappropriate and baseless.   Nestlé's Mem. of Law in Supp. Mot. to Dismiss Pl.'s First Amended Compl. (Docket No. 14-1), at 4 n.2.

[4]      The FTC's July 14, 2010 press release announcing the administrative complaint and Consent Order is equally explicit:

> The complaint is not a finding or ruling that the respondent has actually violated the law.  The consent agreement is for settlement purposes only and does not constitute admission by the respondent of a law violation.

(available at http://www.ftc.gov/opa/2010/07/nestle.shtm).

[5]      Available at http://www.ftc.gov/os/caselist/0923087/100714nestleexhibits.pdf.

## **ARGUMENT**

**I.    LEGAL STANDARD ON MOTION TO DISMISS**

A motion under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006). Dismissal under Rule 12(b)(6) is appropriate where the complaint "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). All well-pled factual allegations generally are taken to be true, but the Court need not accept or credit legal conclusions, inferences, allegations, or bald assertions that are unwarranted by the facts as presented in the complaint and its attachments. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007); *Mayer v. Belichick*, 605 F.3d 223, 229-30 (3d Cir. 2010).

To state a valid claim for relief, the complaint must sufficiently allege the essential elements of the legal claims asserted. *Frederico v. Home Depot*, 507 F.3d 188, 204 (3d Cir. 2007). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Kwanzaa v. Brown*, No. 05-5976, 2006 WL 2403978, at *12 (D.N.J. Aug. 17, 2006) ("any such claim alleged against defendant Commissioner Brown will be dismissed because there are no facts alleged to show that Brown had any personal involvement, knowledge, or acquiescence in these medical access and

device restrictions other than that based on a claim of supervisor liability, which is not cognizable in a § 1983 action").

## II.  CALIFORNIA AND PENNSYLVANIA LAW APPLY TO PLAINTIFFS' FRAUD CLAIMS BECAUSE THOSE STATES HAVE THE MOST SIGNIFICANT RELATIONSHIP TO THIS CASE

The Court applies the choice of law rules of the forum state in diversity cases such as this. *See Klaxon Co. v. Stentor Elec. Mfg. Co*. 313 U.S. 487, 496-97 (1941); *see also Warriner v. Stanton*, 475 F.3d 497, 499-500 (3d Cir. 2007). New Jersey, the forum state, follows the two-step "most significant relationship test," which requires application of the law of the state that has the most significant relationship to the issue before the court. *Cooper v. Samsung Elecs. Am., Inc*., No. 08-4736, 2010 WL 1220946, at *3 (3d Cir. March 30, 2010). The test "'embodies all of the elements of the [former] governmental interest test plus a series of other factors deemed worthy of consideration.'" *Id.*

The first step in the most significant relationship test is to determine whether a conflict exists between the laws of the interested states. *Id*. If a conflict exists, the Court must then weigh some or all of the factors set forth in the Restatement (Second) of Conflict of Laws that correspond to Plaintiffs' causes of action. *Id*. Section 148 of the Restatement (Second) addresses fraud and misrepresentation, and identifies the following relevant factors that must be weighed in determining which state has the most significant relationship to the

litigation where, as here, the *loci* of Plaintiffs' purchases of BKE and alleged reliance on Nestlé's claims are different than where the alleged false representations were made: (1) the place where Plaintiffs acted in reliance on Nestlé's representations; (2) the place where Plaintiffs received the representations; (3) the place where Nestlé made the representations; (4) the domicile, residence, place of incorporation, and place of business of the parties; and (5) "the place where a tangible thing which is the subject of the transaction between the parties was situated at the time." *Cooper*, 2010 WL 1220946, at \*4 (citing Restatement (Second) of Conflict of Laws § 148(2)).

Similar principles were applied in *In re Ford Motor Co. Ignition Switch Products Liability Litig.*, 174 F.R.D. 332 (D.N.J 1997), a putative consumer fraud class action involving allegedly defective auto ignition switches. The plaintiffs, there, argued that Michigan law applied because (1) the defendant's headquarters were in Michigan, (2) the subject vehicles were manufactured there, (3) decisions relating to the ignition switches were made there, and (4) any misrepresentations, statements, or advertisements regarding the vehicles originated in Michigan. *See id.* at 348. This Court, however, held that the laws of each of the plaintiff's home state must be applied because:

> Each plaintiff's home state has an interest in protecting its consumers from in state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws. These interests arise by

> virtue of each state being the place in which plaintiffs
> reside, or the place in which plaintiffs bought and used
> their allegedly defective vehicles or the place where
> plaintiffs' alleged damages occurred.

*Id.*

This Court reached the same conclusion in a putative consumer fraud class action involving certain Samsung televisions. *See Cooper v. Samsung Electronics America, Inc.*, No. 07-03853, 2008 WL 4513924 (D.N.J. Sept. 30, 2008), *aff'd*, No. 08-4736, 2010 WL 1220946 (3d Cir. March 30, 2010). In *Cooper*, Judge Linares found that a conflict existed between New Jersey and Arizona law with regard to the plaintiff's breach of implied warranty and consumer fraud claims, and applied Arizona law because the critical "consumer contacts" all pointed to Arizona (*i.e.* the plaintiff resided in Arizona and purchased the television in Arizona from an Arizona retailer). *Id.* at *5, *7.[6] The Third Circuit affirmed, holding that "Cooper, who purchased the television in his home state of Arizona, is not entitled to sue under the New Jersey consumer fraud statute. The transaction in question bears no relationship to New Jersey other than the location of Samsung's headquarters. Cooper's claim bears the most significant relationship with Arizona, the state in which the television was marketed, purchased, and used." *Cooper*, 2010 WL 1220946, at *4. Here, where a conflict between New

---

[6]     On appeal, the Third Circuit recognized that the district court in *Cooper* applied the "governmental interest" test, which was the applicable test when the case was before the District Court, but concluded that "the District Court's choice-of-law analysis was correct" in any event. 2010 WL 1220946, at *3 n.4.

Jersey, California, and Pennsylvania law exists, California and Pennsylvania law should apply because those states have more substantial consumer contacts with the litigation and, thus, a more significant relationship to it.

Plaintiff Johnson lives in California and, although, she fails to plead where she purchased and used BKE, or was exposed to Nestlé's alleged misrepresentations, presumably that occurred in California as well. *See* Consol. Compl. ¶ 5. Plaintiff Scheuerman lives in Pennsylvania; although he too fails to plead where he was exposed to the alleged claims regarding BKE, it is likely that any exposure occurred in Pennsylvania. *See id.* at ¶ 6. Conversely, the only connection that New Jersey has to this litigation is that the principal office of Nestlé, a Delaware corporation, is located in New Jersey and, allegedly, Nestlé's "marketing team" is located there as well. *Id.* at ¶ 7.

As this Court repeatedly has held, this lone New Jersey nexus is not sufficient to warrant application of New Jersey law when the consumer contacts all point to the consumers' individual home states. *See, e.g., Cooper*, 2008 WL 4513924, at *7; *see also Heindel v. Pfizer*, 381 F. Supp. 2d 364, 378 (D.N.J. 2004) (applying Pennsylvania, not New Jersey, law because plaintiffs were Pennsylvania residents and "the 'transaction' at issue here is [p]laintiffs' ingestion of prescription medicines that were prescribed, purchased, paid for, and allegedly damaged the [p]laintiffs in their home state"). Because California and

Pennsylvania have the more significant relationship to the parties and issues involved in this case, and the stronger interest in protecting their citizens with respect to goods sold within their own borders – and to the extent there is a conflict between the laws of California, Pennsylvania, and New Jersey – California and Pennsylvania law should apply to Plaintiffs' claims, respectively.

## III.   PLAINTIFFS' CONSUMER FRAUD CLAIM FAILS AS A MATTER OF LAW UNDER CALIFORNIA, PENNSYLVANIA, OR NEW JERSEY LAW

### A.   Plaintiffs Fail to Plead Their Consumer Fraud Claim with Sufficient Particularity as Required by Fed. R. Civ. P. 9(b)

In a diversity action where state law governs fraud claims, the pleading requirements of the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 9(b), apply. *Frederico*, 507 F.3d at 200 (holding that Rule 9(b) applies to claims for fraud under the NJCFA); *Shannon v. Howmedica Osteonics Corp.*, No. 09-4171, 2010 WL 421096, at *3 (D.N.J. Feb. 1, 2010).[7] If Plaintiffs allege a "unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim," as they do here, then "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a

---

[7]     *See also Kanady v. GMAC Mortg., LLC*, No. CV F 10-1742, 2010 WL 4010289, at *6 (E.D. Cal. Oct. 13, 2010) ("In the Ninth Circuit, 'claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements.'") (citation omitted); *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353, at *2 (N.D. Cal. June 16, 2010) ("Rule 9(b)'s heightened pleading requirements apply to claims for violations of [California's Consumer Legal Remedies Act and Unfair Competition Law] where the claims are based on fraudulent conduct, such as . . . misstatements"); Wagner v. Future Planning Assocs., Inc., No. 09-971, 2010 WL 528437, at *4 n.7 (W.D. Pa. Feb. 11, 2010) (Rule 9(b) applies to claims of fraud under the UTPCPL).

whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003); *see also California Public Employees' Retirement Sys. v. Chubb Corp.*, 394 F.3d 126, 160-63 (3d Cir. 2004) (where plaintiffs' complaint, regardless of how artfully drafted, is premised on a "core theory of fraud," Rule 9(b)'s heightened pleading standard applies).

Here, by Plaintiffs' own admission, their two of their causes of action sound in fraud as they arise from Nestlé's nationwide marketing campaign for BKE, which, they allege was "deceptive and misleading."   Consol. Compl. ¶ 3. Plaintiffs' two fraud-based causes of action contain explicit or implicit allegations regarding fraudulent conduct.  *Id.* at ¶¶ 59, 63 (New Jersey Consumer Fraud Act) (Nestlé "fraudulently tout[ed]" the benefits of BKE and "violated the CFA by dishonestly representing [that BKE] provided particular express and implied health benefits to children who ingested [BKE] when such claims were unsubstantiated by Defendants"); *id.* ¶ 68 (Negligent Misrepresentation) ("When Defendants made the above-referenced representations about [BKE] being clinically shown to provide specific health benefits, they had no reasonable ground for believing them to be true").[8]  Thus, a fair reading of the Consolidated Complaint shows that, for their two fraud-based causes of action, Plaintiffs "allege a unified course of

---

[8]      The "above-referenced representations" alleged in Plaintiffs' Consolidated Complaint refer to Nestlé's nationwide marketing campaign for BKE, which Plaintiffs allege is "false and/or misleading." *Id.* at ¶ 5.

fraudulent conduct and rely entirely on that course of conduct as the basis of the claim[s]." *See Vess*, 317 F.3d at 1103; *Solomon v. Bristol-Myers Squibb Co.*, No. 07-1102, 2009 WL 5206120, at *8 (D.N.J. Dec. 30, 2009).

It is Black Letter law that plaintiffs must provide well-pled allegations of misrepresentation supporting each of their causes of action. *See Baptiste v. C.O. Lockowitz*, No. 09-4335, 2009 WL 2905439 (D.N.J. Sept. 8, 2009) (a complaint must plead facts sufficient to show that the plaintiff is entitled to relief); *Monserrate v. Rabbitt*, No. 10-2260, 2010 WL 2179148 (D.N.J. May 19, 2010). To satisfy this requirement, plaintiffs must allege the circumstances constituting fraud "with particularity."  Fed. R. Civ. P. 9(b).  To comply, plaintiffs must state "'the who, what, when, where, and how: the first paragraph of a newspaper story.'" *Warma Witter Kreisler, Inc. v. Samsung Electronics Am., Inc.*, No. 08-5380, 2009 WL 46730187, at *5 (D.N.J. Dec. 3, 2009) (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999)); *Frederico*, 507 F.3d at 200 ("[t]o satisfy [Rule 9(b)'s] standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation") (citing *Lum v. Bank of America*, 361 F.3d 217, 224 (3d Cir. 2004)).  Moreover, a complaint must do more than assert generalized facts; it must allege facts specific to the plaintiffs, themselves. *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658-59 (3d Cir. 1998) (where complaint failed to

allege "what actually happened to either" of the plaintiffs, it did not plead "fraud with the specificity required by Rule 9(b)").  Rule 9(b) must do more than provide defendants with that degree of notice that already is required by Rule 8(a), for that would render Rule 9(b) superfluous.  See *Grant v. Turner*, No. 09-2381, 2010 WL 988537, at *14 (D.N.J. March 12, 2010) (dismissing fraud-based claims, which were "minimally sufficient" under Rule 8(a), because they did not satisfy Rule 9(b)'s pleading requirements).

Plaintiffs' Consolidated Complaint lacks both the precision and adequate substantiation required when alleging fraud as they do here.  *Bd. of Trs. Of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 n. 10 (3d Cir. 2002) ("[t]he requirements of rule 9(b) may be satisfied if the complaint describes the circumstances of the alleged fraud with precise allegations of date, time, or place or by using some means of injecting precision and some measure of substantiation into their allegations of fraud").  All we know about Plaintiffs is what little information they provide in Paragraphs 5 and 6 of the Consolidated Complaint.  At bottom, Plaintiffs do nothing more than allege, without any concern about the requirements of Rule 9(b), that Nestlé conducted a nationwide advertising marketing campaign for BKE, and  provide a few examples of Nestlé's advertising and packing but not necessarily those that they either of them saw or relied upon.  They then broadly claim, again without precision or substantiation,

that they saw some unidentified BKE packaging and advertisements – though not necessarily the packaging attached as exhibits to the Consolidated Complaint – and allegedly purchased the product in reliance on these claims.  Consol. Compl. ¶¶ 5-6.  We know nothing more than that.

This Court and others, however, have not hesitated to dismiss similar complaints for failing to comply with Rule 9(b)'s heightened pleading requirements.  *See*, *e.g.*, *Solomon*, 2009 WL 5206120, at *10 (dismissing Texas Deceptive Trade Practices Act claim where "[p]laintiff fail[ed] to identify any specific advertisements he viewed, how he was misled by these advertisements, how these advertisements affected his prescription for [a pharmaceutical product] and how these advertisements caused any of his injuries"); *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 06-5774, 2009 U.S. Dist. LEXIS 58900, at *117 (D.N.J. July 10, 2009) (dismissing fraud and negligent misrepresentation claims where plaintiffs made "sweeping allegations" regarding defendants' promotion of pharmaceutical products, but failed to plead a single instance in which they, themselves, received a specific representation on which they relied); *Sefton v. Toyota Motor Sales USA*, No. 09 C 3787, 2010 WL 1506709, at *5 (N.D. Ill. April 14, 2010) (dismissing deceptive trade practices act claim because complaint failed to "identify any *specific* communications, nor point to the particular signs, advertisements, or manuals that were responsible for the

misrepresentation," even though the plaintiff in that action attached as an exhibit a "packet of materials" that purported to contain the alleged misrepresentation) (emphasis in original); *Guilbealt v. R.J. Reynolds Tobacco Co.*, 84 F. Supp. 2d 263, 269 (D.R.I. 2000) (when a plaintiff claims that a product advertisement or promotion led to his injuries, he must "identify specific advertising he ha[s] seen and how it ha[s] affected him" to satisfy Rule 9(b)).

Plaintiffs have done nothing to comply with their pleading requirements under Rule 9(b). Based on this Consolidated Complaint, we know nothing about the who, what, where, or why of their exposure to this alleged fraud. Indeed, they fail to plead even the minimum required amount of precision or substantiation to make a fraud claim. Instead, they leave both this Court and Nestlé, who is required to defend against these claims, completely in the dark. Accordingly, Plaintiffs' Consolidated Complaint should be dismissed for failing to plead with particularity under Rule 9(b).

**B.   Plaintiffs' New Jersey Consumer Fraud Claim Fails Because California and Pennsylvania Law Applies**

**1.   California's and Pennsylvania's Unfair Trade Practices and Consumer Protection Laws Conflicts With New Jersey's Consumer Fraud Act**

Plaintiffs assert that Nestlé violated New Jersey's Consumer Fraud Act ("NJCFA"), N.J.S.A. §§ 56:8-1 *et seq.*. *See* Consol. Compl. ¶¶ 54-66. There are, however, fundamental conflicts between the NJCFA and the statutory

consumer fraud laws in Plaintiffs' respective home states – California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* in the case of plaintiff Johnson,[9] and Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. §§ 201 *et seq.* in the case of plaintiff Scheuerman – with respect to, for example, (a) whether reliance is required to assert a prima facie case under the respective statutes; and (b) the circumstances regarding the availability of certain damages.[10]

Under both the UCL and UTPCPL, a plaintiff is required to prove reliance. *See In re Tobacco II Cases* 207 P.3d 20, 40 (Cal. 2009) (". . . we conclude that a plaintiff must plead and prove actual reliance" to satisfy the UCL); *Princess Cruise Lines, Ltd. v. Superior Court*, 179 Cal. App. 4th 36, 42-43 (2009); *Atlass*, 2007 WL 2892803, at *4 ("[t]o state a claim for relief under the UTPCPL, however, a plaintiff's complaint must allege that he 'justifiably relied on the defendant's wrongful conduct or representation' and that he suffered an ascertainable loss as a result of that reliance"). The NJCFA does not require reliance.[11] *Nikolin v. Samsung Elecs. Am., Inc.*, No. 10-1456, 2010 WL 4116997,

---

[9]       *See Net2Phone, Inc. v. Superior Court*, 109 Cal. App. 4th 583, 590 (2003) ("[t]he New Jersey Consumer Fraud Act . . . is similar in many ways to the UCL").

[10]       The UTPCPL also "has a more rigorous pleading requirement than the NJCFA." *See Atlass v. Mercedes-Benz USA, LLC*, No. 07-2720, 2007 WL 2892803, at *4 (D.N.J. Sept. 25, 2007).

[11]       Plaintiffs agree that reliance is not an essential element of a NJCFA claim. Reply Br. in Further Supp. of Pls.' Mot. for Consolidation (Docket No. 30), at 3. Plaintiffs, however, appear to believe that the alleged uniform nature of the BKE advertising representations is enough, in

at *3 (D.N.J. Oct. 18, 2010) (Brown, C.J.).  Further, treble damages generally may

not be awarded under the UCL; and treble damages are discretionary under the

UTPCPL, requiring a finding that the defendant willfully and knowingly

committed the unlawful act.  *See Clark v. Prudential Ins. Co. of Am.*, No. 08-6197,

2010 WL 3522223, at *19 (D.N.J. Sept. 9, 2010) ("[u]nder the UCL, which is

equitable in nature, 'prevailing plaintiffs are generally limited to injunctive relief

and restitution'") (citation omitted); *id.* at *30 (noting that, in a recent decision,

"the Supreme Court of California had determined . . . that an award of restitution

under the UCL 'is not subject to . . . trebling . . . '"); *Heindel*, 381 F. Supp. 2d at

---

and of itself, for liability to be imposed on Nestlé.  *Id.* (". . . the factual allegations in each of the complaints about **Defendants' conduct toward consumers in general is the basis of the liability inquiry**, regardless of whether the inquiry is conducted under the Scheuerman or Johnson – or the consolidated – complaint.") (emphasis added)  Although the NJCFA does not require proof that a consumer actually has relied on any wrongful conduct or misrepresentation, the New Jersey Supreme Court recently has made clear that plaintiffs alleging claims under the NJCFA cannot rely on a "fraud on the market" theory as Plaintiffs do here; that theory is viable only in federal securities fraud litigation.  *Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 397 (N.J. 2007) ("Fraud on the market is essentially a creature of federal securities litigation.. . . The theory therefore presumes reliance.. . . We have rejected the fraud on the market theory as being inappropriate in any context other federal securities fraud litigation."); *see also Real v. Radir Wheels, Inc.*, 198 N.J. 511, 523 n.9 (2009); *Zafarana v. Pfizer, Inc.*, 09-cv-4026, 2010 WL 2854170, at *7 (E.D. Pa. July 20, 2010).  Likewise, a plaintiff asserting UCL or UTPCPL class claims cannot prevail on a fraud on the market theory; rather, in order to satisfy the reliance requirement of those statutes, each named plaintiff (and class member) must "narrate a story which includes individualized proof of which advertisements he saw and whether [he acted] in reliance of those advertisements.  There are no shortcuts."  *Strain v. Nutri/System, Inc.*, No. 90-2772, 1990 WL 209325, at *6 (E.D. Pa. Dec. 12, 1990) (denying certification in action alleging violation of the UTPCPL); *see also In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1054 (N.D. Cal. 2009) ("the court looks askance at any attempt on the part of plaintiffs' [sic] to use a fraud-on-the-market theory to circumvent the reliance element of the [UCL] claims.  The court will not let plaintiffs escape their burden to plead and prove the element of reliance by using a market-based fraud theory to handwave the requirement that there be a connection between the misdeed complained of and the loss suffered under state law"); *Mirkin v. Wasserman*, 858 P.2d 568, 570-74 (Cal. 1993) (declining to adopt "fraud on the market" doctrine in California fraud cases because the "body of law that has developed under Rule 10b-5 is not sufficiently analogous to the law of fraud to justify its importation into the latter").

18

374 (under the UTPCPL, "those assessments [treble damages and attorneys' fees] are discretionary").   On the other hand, the NJCFA allows for treble damages, plus reasonable attorney's fees and costs, to a successful plaintiff.  *See Heindel*, 381 F. Supp. 2d at 374*; see also* N.J.S.A § 56:8-19.

Because there are readily identifiable conflicts between the NJCFA and the UCL and UTPCPL, this Court must proceed to evaluate which state has the more significant relationship to this litigation.

### 2.    California and Pennsylvania Law Should Apply to the Consumer Fraud and Negligent Misrepresentations Claims

The second question that must be addressed under the "most significant relationship" test is which state has the greatest interest in having its law apply to the particular issue being litigated.  *Cooper*, 2010 WL 1220946, at *3. Courts primarily will "look[] at each state's contacts to the litigation and assess[] the policies behind each state's laws."  *Lebergern v. Forman*, 471 F.3d 424, 431 (3d Cir. 2006).  Plaintiffs Johnson and Scheuerman are residents of California and Pennsylvania, respectively.  Consol Compl. ¶¶ 5-6.  Although plaintiff Johnson fails to allege where she purchased BKE, it can be assumed that she purchased it in California; and plaintiff Scheuerman, a Pennsylvania resident, claims to have purchased BKE in Pennsylvania and New Jersey.  *Id*.  While plaintiff Scheuerman fails to state how many times he purchased BKE in New Jersey, it is clear that the only true alleged contacts to New Jersey are the location of Nestlé's corporate

headquarters and Plaintiffs' claim that Nestlé developed its marketing claims there. *Id.* at ¶ 7.

Under New Jersey's choice of law principles, however, "[t]he place of business or residence of the plaintiff is more important than are similar contacts on the part of the defendant. Therefore, in a consumer fraud class action, a putative class member's residence is a contact greater in significance than a defendant's principle [sic] place of business." *Beegal v. Park West Gallery*, 394 N.J. Super. 98, 125 (App. Div. 2007) (citing *Debra A. Fink, D.M.D., MS, PC v. Ricoh Corp.*, 365 N.J. Super. 520, 592 (Law Div. 2003)).[12]   Further, any marketing efforts allegedly directed from Nestlé's New Jersey headquarters are unavailing. *Heindel*, 381 F. Supp. 2d at 377 ("[g]enerally, courts weighing the competing interests of the state where a corporation is domiciled against those of the consumer's home state do not engage in a microanalysis of specific marketing and promotion practices and their relative significance").

---

[12]    *See also* Restatement (Second) Conflict of Laws § 148 *cmt. i* ("The plaintiff's domicil [sic] or residence, if he is a natural person . . . are contacts of substantial significance when the loss is pecuniary in its nature . . . This is so because a financial loss will usually be of the greatest concern to the state with which the person suffering the loss has the closest relationship . . . ***The domicil [sic], residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant.***") (emphasis added); *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 215 (E.D. Pa. 2000) (holding that, under Section 148 of the Restatement (Second), the consumer fraud acts of the states where the putative class members resided, rather than the Illinois Consumer Fraud Act, applied where "the only contacts this case has with Illinois are that (1) defendant's principal place of business is located in Illinois; (2) misrepresentations were initially disseminated from Illinois; and (3) some putative class members may reside in Illinois").

In October 2010, Chief Judge Brown performed a choice of law analysis in a strikingly similar case – *Nikolin v. Samsung Elecs. Am., Inc.*, No. 10-1456, 2010 WL 4116997 (D.N.J. Oct. 18, 2010) – and concluded that New Jersey did not have the most significant relationship to the claims asserted in a consumer class action. Specifically, in *Nikolin*, the plaintiff was a Texas resident, purchased one of the defendant's televisions from a retailer in Texas, and used the television in Texas. *Id.* at *1. She alleged that the defendant, a New York corporation headquartered in New Jersey, deceptively advertised its television as an LED television when, in fact, it was an LCD television and, therefore, violated the NJCFA. *Id.* at *1-2. Chief Judge Brown, however, held that Texas, not New Jersey, had the most significant relationship to the litigation and, thus, the Texas consumer protection statute would apply:

> . . . Plaintiff is a resident of Texas; she received the information about Samsung's televisions in Texas; she purchased her television from a retail store in Texas; and, she used the television in Texas, where it appears the television is currently located. Although Plaintiff alleges that Samsung's headquarters are in New Jersey, the weight of this factor is diminished by Samsung's state of incorporation, which the parties agree is New York . . .

> Because of the numerous contacts with Texas in this case – Plaintiff resides in Texas, she purchased and used the television in Texas, she was exposed to the allegedly deceptive conduct in Texas, and the television seemingly still remains in Texas – this Court finds that Texas has the most significant relationship with the instant litigation. Accordingly, the Court will apply the [Texas consumer protection statute] to Plaintiff's consumer fraud claim.

21

*Id.* at *4 (internal citation omitted).

Just as the *Nikolin* court found that the plaintiff's numerous contacts to Texas in that case required application of that State's law, given the disparity of the contacts in this case, California and Pennsylvania have the most significant relationship to this litigation and the most interest in protecting their citizens. Accordingly, the UCL and UTPCPL properly apply to plaintiffs Johnson's and Scheuerman's consumer fraud claim. *See Heindel,* 381 F. Supp. 2d at 377; *see also Pratt v. Panasonic Consumer Elecs. Co.*, 2006 WL 1933660, at *13 (N.J. Super. Ct. July 12, 2006) ("[I]t is questionable whether [applying the Consumer Fraud Act to residents of other states] would be appropriate in a case such as this where the plaintiff is not a resident of New Jersey and the transaction in question did not occur here").

### C.   Plaintiffs' Consumer Fraud Claim Fails to Set Forth a Prima Facie Violation of California's UCL or Pennsylvania's UTPCPL

Although Plaintiffs' statutory consumer fraud claim might be made under the UCL and/or UTPCPL, Plaintiffs have not asserted a viable cause of action under either statute.  To sue under the UCL, a private party must plead that she "suffered injury in fact and lost money or property as a result of" the defendant's allegedly deceptive or false advertisements.  Cal. Bus. & Prof. Code § 17204; *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005); *see also Tobacco II Cases*, 207 P.3d at 40 (plaintiff must prove actual reliance to state

a claim under the UCL). In other words, a plaintiff must plead both causation –
*i.e.*, a nexus between the alleged violation and the plaintiff's harm – and reliance.
*See Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 947-49 (S.D. Cal. 2007)
(reliance and causation are required for standing under the UCL). Similarly,
"[w]hen a plaintiff files a fraud-based claim under the UTPCPL, the plaintiff must
prove the elements of common law fraud by alleging: (1) a speaker fraudulently
uttered a misrepresentation; (2) the speaker made the misrepresentation while
intending to induce the recipient to act; (3) the recipient justifiably relied on the
misrepresentation; and (4) the recipient sustained damages as a result of the fraud."
*Thomas v. Chase Bank*, No. 09-3803, 2010 WL 1948266, at *2 (E.D. Pa. May 10,
2010); *see also Tran v. Metro. Life Ins. Co.*, 408 F.3d 130-140-41 (3d Cir. 2005).
Plaintiffs have not pled all the essential elements of either a UCL or UTPCPL
claim. Therefore, the consumer fraud claim of their Consolidated Complaint
should be dismissed.

### 1. Plaintiffs Cannot Demonstrate Reliance Under The UCL or UTPCPL As A Matter Of Law

In order to assert a claim under either the UCL or UTPCPL, a plaintiff
must demonstrate that he or she justifiably relied upon the alleged
misrepresentation. *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 859 (2008); *Hunt v.
U.S. Tobacco Co.*, 538 F.3d 217, 221-24 (3d Cir. 2008); *Bailey v. Nationwide
Affinity Ins. Co. of Am.*, No. 10-520, 2010 WL 3167544, at *5-6 (W.D. Pa. Aug.

10, 2010).   Moreover, the plaintiff's reliance cannot be on the entirety of a defendant's advertising campaign but, rather, he or she must point to specific misrepresentations upon which he relied when making her purchase(s).   *See Herrington v. Johnson & Johnson Consumer Cos., Inc.*, No. C 09-1597, 2010 WL 3448531, at *7-8 (N.D. Cal. Sept. 1, 2010) (holding that, although plaintiffs ostensibly saw "'at least the representation on the [baby bath] product labeling itself,'" "this is nevertheless insufficient because they do not plead upon which representations they relied when making their purchases"); *Johns v. Bayer Corp.*, No. 09CV1935, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) (plaintiff must allege reliance on specific misrepresentations or advertisements rather than nationwide marketing campaign); *DiLucido v. Terminix Int'l, Inc.*, 676 A.2d 1237, 1241-42 (Pa. Super. Ct. May 22, 1996), *overruled on other grounds, Toy v. Metro. Life Ins.* Co., 928 A.2d 186 (Pa. 2007).

In *Johns*, for example, the Southern District of California dismissed a UCL class action complaint, which, like Plaintiffs' Consolidated Complaint here, was based upon the entry of a Consent Decree resolving FTC allegations that Bayer Corporation deceptively marketed one of its dietary supplement products. *See* 2010 WL 476688, at *1-2. Specifically, the court held that the plaintiff could not establish that he justifiably relied upon any of Bayer's nationwide advertising other than the product packaging for the supplement, which contained the specific

24

alleged misrepresentation set forth in his complaint. *Id.* at *5. *See also Pfizer, Inc. v. Superior Court*, 182 Cal. App. 4th 622, 633-34 (2010) (finding that plaintiff, who only viewed Listerine packaging, could not maintain a UCL class action challenging the entirety of defendant's nationwide marketing campaign).

Similarly, in *DiLucido*, the Pennsylvania Superior Court denied class certification in a UTPCPL action because the class representatives could not establish that they justifiably relied on any specific misrepresentation in Terminix's national advertising campaign. *See DiLucido*, 676 A.2d at 1241-42; *see also Toy v. Metro. Life Ins. Co.*, 863 A.2d 1, 9-10 (Pa. Super. Ct. 2004) (discussing *DiLucido*). Indeed, the *DiLucido* plaintiffs testified that they relied, not on any specific Terminix advertisement, but, rather, on Terminix's nationwide advertising campaign, generally. *DiLucido*, 676 A.2d at 1241 (one plaintiff testified that he "did not see anything specific from Terminix . . . I had seen their advertising all over the place").

Plaintiffs here do not identify any specific alleged misrepresentation that they received and relied upon; they do not even identify any specific packaging or advertisement that they observed or heard. Rather, plaintiff Johnson merely alleges that, "what [Nestlé] said on the [BKE] packaging," and in advertising and "marketing materials provided by her pediatrician" was a

"material" factor in her decision to purchase BKE.  Consol. Compl. ¶ 5.  In turn,

plaintiff Scheuerman broadly states that he:

> was exposed to and saw Nestlé's claims about the
> purported health benefits of the Product for his children
> and purchased the Product in reliance on such claims.
> Particularly, Plaintiff saw and relied on, among other
> things, the claims made and conveyed in Nestlé's stock
> television commercials, stock print advertisements and
> Product label.  The purported health benefits conveyed
> by Nestlé's marketing and advertising campaign was the
> sole reason Plaintiff purchased the Product.

Id. at ¶ 6.  Those are not factual allegations, but, rather, pure legal conclusions,

which do not pass muster to meet the requirement of reliance.  Therefore, Plaintiffs

have failed to plead that essential element of either a UCL or UTPCPL claim, and

their consumer fraud cause of action should be dismissed.

### 2. Plaintiffs Have Not Plead Any Ascertainable Loss of Money or Property

Plaintiffs' consumer fraud claim also fails because they cannot

demonstrate that they suffered any "loss of money or property" (*i.e.*, damages), as

a result of their purchase of BKE, which is required under both the UCL and

UTPCPL.  *See Hall*, 158 Cal. App. 4th at 854 ("a plaintiff suffers an injury in fact

for purposes of standing under the UCL when he or she has . . . lost money or

property"); *Atlass*, 2007 WL 2892803, at *7 ("[t]he final element that Plaintiff

must allege under the UTPCPL is an 'ascertainable loss of money or property'")

(quoting 73 Pa. Stat. Ann. § 201-9.2(a)); *Brunwasser v. Trans World Airlines, Inc.*,

541 F. Supp. 1338, 1347 (W.D. Pa. 1982) (noting that the ascertainable loss requirement of the UTPCPL is to insure that individuals bringing suit have in fact been damaged by a deceptive trade practice).

Plaintiffs' only allegation in support of their claim that they suffered cognizable UCL or UTPCPL injury is that they have "sustained ascertainable losses as a result of Defendants' wrongful conduct." Consol. Compl. ¶ 63.  To meet the requirement of pleading an ascertainable loss, Plaintiffs were required to affirmatively plead that they did not receive the promised health benefits of, or overpaid for BKE.  *See Hall*, 158 Cal. App. 4th at 855 (affirming dismissal of UCL class action and holding that "[plaintiff] did not allege he suffered an injury in fact . . . He expended money by paying [defendant] $29.51- but he received a book in exchange.   He did not allege he did not want the book, the book was unsatisfactory, or the book was worth less than what he paid for it."); *Wilson v. Parisi*, 549 F. Supp. 2d 637, 670 (M.D. Pa. 2008) (granting summary judgment to defendant on UTPCPL claim where plaintiffs failed to show that they paid more than fair market value for houses purchased because of alleged inflated appraisals). Like the plaintiffs in *Hall*, plaintiffs here failed  to allege injury in fact.

Plaintiffs' claim of ascertainable loss fails because they did not allege that BKE did not work as Nestlé said it would.  Instead, all they alleged is that plaintiff Johnson "was upset to learn that the advertised health benefits were not

clinically shown and were false and/or misleading," Consol. Compl. ¶ 5, and that

both Plaintiffs and the putative class members "received something less than, and

different from what they reasonably expected . . ." *Id.* at ¶ 64. That is not enough.

For example, in *Atlass*, this Court found that the product at issue in that case would

no longer work after a certain date, and that, while the defendant knew that fact, it

failed to disclose it to the purchasers of the product.   Specifically, this Court

explained:

> Defendant's argument, that Plaintiff has suffered no
> ascertainable loss because he has not alleged any
> problem with his Tele Aid service, again, falls short.
> Plaintiff is not complaining about the Tele Aid service
> itself, but rather that Defendant sold him a product, that
> without analog wireless service, has no value or at least a
> decreased value. ***The quality of the Tele Aid service
> itself is not at issue in this case.***   The Court has
> concluded that Plaintiff's contentions, even if they may
> be difficult to prove, sufficiently allege an ascertainable
> loss on the part of the Plaintiff.

*Atlass*, 2007 WL 2892803, at *8 (emphasis added).  That is not the case here.  In

this case, the quality of BKE is squarely at issue; indeed, the cornerstone to

Plaintiffs' Consolidated Complaint is that BKE did not perform as advertised.  *See*

Consol. Compl. ¶¶ 29, 64.  In order to plead an ascertainable loss in this case,

Plaintiffs were required to allege that BKE provides no health benefits and, thus,

has no value or that they paid more than fair market value for BKE.  *See In re*

*Toshiba Am. HD DVD Mktg. and Sales Practices Litig.*, MDL No. 1956, 2009 WL

2940081, at \*13 (D.N.J. Sept. 11, 2009) ("In *Atlass*, the plaintiffs had purchased [a product] which would cease to function on a certain date . . . In contrast, the Plaintiffs' HD DVD Players still function; there is no allegation that the HD DVD Players are no longer capable of playing HD DVDs"). Plaintiffs, however, have not alleged that BKE does not provide health benefits, or any benefit at all for that matter. Because Plaintiffs have failed to allege all of the essential elements of either a UCL or UTPCPL claim, their consumer fraud causes of action should be dismissed. *See Hall*, 158 Cal. App. 4th at 855; *Parisi*, 549 F. Supp. 2d at 670.

### D.   Plaintiffs' Consumer Fraud Claims Fail to Set Forth a Prima Facie Violation of New Jersey's Consumer Fraud Act

Even if the NJCFA did apply to Plaintiffs' claims (which it does not), they fail to meet the pleading requirements necessary for such a claim under the NJCFA to survive dismissal in any event. To state a claim under the NJCFA, a plaintiff must allege (1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *See Frederico*, 507 F.3d at 200; *Warma Witter*, 2009 WL 4730187, at \*5. For the first element, there are three general categories of unlawful acts: (1) affirmative acts, (2) knowing omissions, and (3) regulation violations. N.J.S.A. § 56:8-2, § 56:8-4; *see Bianchi v. Lazy Days R.V. Center, Inc.*, No. 06-1979, 2007 WL 1959268 at \*4 (D.N.J. July 5, 2007). If the violation is an affirmative act, the plaintiff need not prove the defendant's intent to commit an

unlawful act; if the allegation is an omission, however, intent is an essential element of the claim. *Bianchi*, 2007 WL 1959268, at *4.

The second element – ascertainable loss – is a "real and measurable loss of property or moneys" or a "cognizable and calculable" loss, which is neither "hypothetical" nor "illusory." *Thiedemann v. Mercedes-Benz U.S.A.*, 183 N.J. 234, 248, 255 (2005). A bald assertion or formulaic recitation of ascertainable loss is not enough to raise a right to relief above the speculative level and warrants dismissal. *See Toshiba Am.*, 2009 WL 2940081, at *13 (dismissing NJCFA claim for failure to plead ascertainable loss because "Plaintiffs fail to plead where (and for all Plaintiffs but three – when) they purchased their HD DVD Players; how much they paid for the HD DVD Players; and how much regular DVD players cost at the time (i.e., how much of a 'premium' they claim to have paid for their HD DVD Players)."); *Parker v. Howmedica Osteonics Corp.*, No. 07-02400, 2008 WL 141628, at *4 (D.N.J. Jan. 14, 2008) (dismissing NJCFA claims in a putative class action for failure to sufficiently allege ascertainable loss and holding that when "a plaintiff 'fails to give particulars' regarding their ascertainable loss, and when they offer 'broad and conclusory allegations,' the ascertainable loss requirement has not been met") (citations omitted). That is exactly all that Plaintiffs offer here: broad and conclusory allegations, but no ascertainable loss.

The final element – causation – requires that plaintiffs plead and prove "a causal nexus between the alleged act of consumer fraud and the damages sustained." *New Jersey Citizen Action v. Schering-Plough Corp.*, 864 A.2d 174, 178 (N.J. Sup. Ct. 2003). Accordingly, this Court has dismissed a claim on Rule 9(b) grounds under this third element when the plaintiff "does not specify what misrepresentations she relied upon or when and how she was exposed to those misrepresentations" and, thus, fails to specify how the alleged misrepresentations caused the ascertainable loss. *Gray v. Bayer Corp.*, No. 08-4716, 2009 WL 1617930, at *3 (D.N.J. June 9, 2009); *see also Toshiba Am.*, 2009 WL 2940081, at *13 ("[r]egarding the causation, Plaintiffs fail to allege when Toshiba made its alleged misrepresentations and when, if ever, the Plaintiffs were exposed to those representations").

Here, Plaintiffs fail to plead any of the elements with any particularity, much less with the detail required to meet Rule 9(b).

### 1.   Plaintiffs Fail to Plead Unlawful Conduct, Thus Warranting Dismissal of Their NJCFA Claim

Any alleged unlawful conduct or aggravating circumstances on Nestlé's part is entirely unclear in Plaintiffs' Consolidated Complaint. The only statement to identify the time, date, and place of the alleged fraud in this Consolidated Complaint is the general averment that Plaintiffs saw something on the BKE packaging and in some non-specific BKE advertising. Consol. Compl. at

¶¶ 5-6.  Plaintiffs fail to specify the time, date, and place of exposure to the claims; fail to specify the time, date, and place of when they saw the alleged claims; and fail to specify the time, date, and place of their purchases of the product at issue. At a minimum, Plaintiffs were required to advise this Court and Nestlé which of the alleged misrepresentations they were exposed to and how.  They fail to do that and fail to identify any facts that allegedly were misrepresented or the specifics of when, where, and how they saw or were exposed to the alleged misrepresented facts.  Indeed, they provide little information concerning Nestlé's alleged conduct.

In a recent case before this Court, *Nelson v. Xacta 3000, Inc.*, No. 08-5426, 2009 WL 4119176, at *5 (D.N.J. Nov. 24, 2009), the Court noted that the plaintiffs made specific allegations regarding the content of the alleged misrepresentations only with regard to one defendant.  As to the other defendant, the plaintiffs referred only to the representations on the product packaging.  The Court held that "[m]erely referring to the product's purported purpose is insufficient to withstand a motion to dismiss under the NJCFA."  *Id.*; *see also FDIC v. Bathgate, II*, 27 F.3d 850, 876-77 (3d Cir. 1994).   This Court's jurisprudence makes clear that generalized or unclear pleadings of the type here cannot survive Rule 9(b) scrutiny.

2.  **Plaintiffs' Claim Under the NJCFA Fails Because There is No Ascertainable Loss**

As with the unlawful conduct prong, Plaintiffs fail to plead with specificity any ascertainable loss, which is required to state a claim under the NJCFA. *Hoffman v. Hampshire Labs, Inc.*, 405 N.J. Super. 105, 113 (App. Div. 2009) ("Accordingly, to state a claim under the CFA, a private litigant must allege specific facts that, if proven, would establish . . . an ascertainable loss on the part of the plaintiff"). Indeed, Plaintiffs broadly allege in conclusory fashion only that they suffered an "ascertainable loss." Consol. Compl. ¶ 64. The Consolidated Complaint, however, does not assert or describe the loss in value that Plaintiffs allegedly experienced as a result of purchasing BKE. Indeed, it fails even to identify the initial cost of BKE to Plaintiffs, much less the loss in value. Instead, the Consolidated Complaint relies on general statements that Plaintiffs suffered an "ascertainable loss," but no substance regarding that alleged loss. Indeed, nowhere does the Consolidated Complaint identify a specific ascertainable loss to Plaintiffs. This Court has found, in similar cases, that such lack of specificity doomed plaintiffs' NJCFA claims.

For example, in *Solo v. Bed Bath & Beyond, Inc.*, No. 06-1908, 2007 WL 1237825 (D.N.J. Apr. 26, 2007), the plaintiff filed a class action alleging that the defendant violated the CFA when it misrepresented the thread count in its bedding. The defendant moved to dismiss, arguing that the plaintiff failed to

adequately identify his ascertainable loss. In granting the defendant's motion, the Court explained that general allegations that "'Plaintiff and the proposed Class and Subclass Members have suffered an ascertainable loss in that they purchased linens that were of a lower quality and less valuable than the linens they were promised,'" were insufficient to demonstrate an ascertainable loss. *Id.* at *3.

This Court previously has dismissed even a slightly more specific pleading than Plaintiffs' Consolidated Complaint under Rule 9(b). On a Rule 9(b) challenge in *Mason v. Costco Wholesale Corp.*, No. 09-361, 2009 WL 2634871 at *4 (D.N.J. Aug. 26, 2009), the plaintiff argued that she sufficiently pled that she expected to receive certain savings by using the defendant's purchasing program, but that she did not receive those savings. This Court, however, held that, in order to argue that the defendant's program did not save her money as a general proposition, the plaintiff must plead that she paid more for the product than she would have paid not using the defendant's program. *Id.* In the absence of facts alleging that she did not save money on her purchase, the plaintiff's NJCFA claim failed. *Id.* Similarly, Plaintiffs, here, would need to plead that they suffered a specific loss from the use of BKE. Plaintiffs, however, make no attempt to plead specific facts relating to any ascertainable loss.

### 3.   Plaintiffs Fail to Plead Causation Sufficiently

Plaintiffs also fail to sufficiently allege the requisite causal nexus between the alleged unlawful conduct and any alleged injuries suffered. Plaintiffs merely allege that they saw something on the BKE packaging or in the product's advertising. Consol. Compl. ¶¶ 5-6. Nothing more. As described above, Plaintiffs fail to identify with specificity the alleged misrepresentations upon which they relied, or to plead where and when they encountered the alleged misrepresentations. Accordingly, they cannot show causation.

In *Dewey v. Volkswagon AG*, 558 F. Supp. 2d 505, 526-27 (D.N.J. 2008), the plaintiff alleged that she relied on alleged misrepresentations on the defendant's website and in the owner's manual without including any facts to demonstrate when the statements were made or at what point she was exposed to any of the statements in question. The Court dismissed the plaintiff's NJCFA claim, finding that general and conclusory allegations of reliance were not sufficient to satisfy Rule 9(b). *Id.* Indeed, the Court specifically recognized that the *Dewey* plaintiffs alleged that defendant's representations had the "cause and effect of inducing cautious consumers into leasing and/or purchasing the Class Vehicles," but held that such statements are "legal conclusions, not factual allegations that would, if true, establish a 'casual nexus.'" *Id.* at 526. Likewise,

these Plaintiffs' "but for" allegation is nothing more than a legal conclusion insufficient to withstand Rule 9(b) review.

## IV.   PLAINTIFFS' BREACH OF WARRANTY CLAIM FAILS AS A MATTER OF LAW UNDER CALIFORNIA, PENNSYLVANIA, AND NEW JERSEY LAW

Although, under a choice of law analysis, California's and Pennsylvania's law should govern Plaintiffs' breach of warranty claim (Count III), *see Payne v. Fujifilm U.S.A., Inc.*, No. 07-385, 2010 WL 2342388, at *9-10 (D.N.J. May 28, 2010) (Brown, C.J.) (recognizing that state breach of warranty laws "differ greatly" and holding that, in a nationwide class action alleging breach of warranty, "the prospective class members' home states each have the most significant relationship" with the breach of warranty claims),[13] under California, Pennsylvania, or New Jersey state law, Plaintiffs' breach of warranty claim fails. Therefore, that Count should be dismissed with prejudice.

### A.   Plaintiffs Fail To Identify The Alleged Warranty Or Its Source

In their third claim, Plaintiffs merely allege that Nestlé's "product labeling and advertising constitutes express warranties, [and] became part of the basis of the bargain" between Plaintiffs and Nestlé, and that Defendant breached

---

[13] In *Fujifilm*, the plaintiffs sought certification of a nationwide class of purchasers of a particular camera. In a well-reasoned choice of law analysis, Chief Judge Brown found that conflicts existed between New Jersey breach of warranty law and the laws of the plaintiffs' home states. *Id.* at *9. He also found that those states had the most significant relationships with the plaintiffs' breach of warranty claims. *Id.* at *10 ("The advertising, marketing, and sales of those cameras took place throughout the county, and each state has the most significant relationship with the individual transactions that took place in its state").

those warranties "by not providing the Product which could provide the benefits detailed above." Consol. Compl. ¶¶ 76, 78.  Such broad, conclusory allegations do not state a claim for breach of express warranty.

Under New Jersey, California, and Pennsylvania law, an express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." N.J.S.A. § 12A:2-313; *see also* Cal. Com. Code § 2313(1)(a); 13 Pa. Cons. Stat. § 2313(a). Express warranties are specific, "dickered," individualized representations communicated to a buyer to induce the purchase of a product.  Cal. Com. Code § 2313, cmt. 1 ("'Express' warranties rest on 'dickered' aspects of the individual bargain"); 13 Pa. Cons. Stat. § 2313 cmt. 1.  A plaintiff, therefore, cannot simply make a conclusory recitation of the elements of the claim, as Plaintiffs have done in this case.  They were required, at a minimum, to state with some specificity what representations they relied upon when they made their decisions to purchase BKE.  Where a complaint fails to allege facts to support an express warranty, the claim must be dismissed.  *See Weinstein v. Saturn Corp.*, 303 Fed. Appx. 424, 425 (9th Cir. 2008); *Kester v. Zimmer Holdings, Inc.*, No. 2:10-cv-00523, 2010 WL 2696467, at *10-11 (W.D. Pa. June 16, 2010); *Simmons v. Stryker Corp.*, Civ. Act. No. 08-3451, 2008 WL 4936982, at *2 (D.N.J. Nov. 17, 2008).

Plaintiffs make no allegation of any specific warranty by Nestlé. Instead, Plaintiffs flatly allege that Nestlé breached a cobbled together warranty consisting of purported "promises and affirmations of fact" on BKE labels and the entirety of Nestlé's marketing campaign." Consol. Compl. ¶¶ 76, 78. No further details are pled about the alleged warranty or its specific source.

In *Simmons*, 2008 WL 4936982, at *1-2, the Court dismissed an express warranty claim where the plaintiff's only allegations were that the defendants' publications, package inserts, and advertising expressly warranted that their product was fit, safe, and effective and proper for its intended purpose. The Court held that these allegations were "simply a conclusory recitation of the elements of the claim" and "identifie[d] no source whatsoever of any alleged warranty." *Id.* at *2. Similarly, in *Parker*, 2008 WL 141628, at *6, the Court dismissed the plaintiff's warranty claim, holding that "bald assertions" about press releases, verbal assurances, and false and misleading written information regarding the safety of a product failed to give defendant fair notice of the claim (quoting *Twombly*, 550 U.S. at 545). *See also Delaney*, 2009 WL 564242, at *5-6 (dismissing express warranty claim where the complaint "[did] not establish how or by whom a promise was made nor what exactly was promised").

The same is true here. While the Consolidated Complaint generally cites to Nestlé's "promises and affirmations" (Consol. Compl. ¶ 76), Plaintiffs

provide no factual content whatsoever of the alleged warranties. Moreover, Plaintiffs allege no support or basis for their claim that BKE does not provide health benefits other than by reference to the Consent Order, which made no such findings in the first instance. As the Supreme Court has explained, a plaintiff's obligation to provide the grounds for his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 554. Plaintiffs have not satisfied their burden of providing more than "labels and conclusions"; therefore, their breach of warranty claim should be dismissed.

### B. Plaintiff Fails To Plead Reliance

Plaintiffs also fails to allege that they (or the putative class) read or had knowledge of any purported warranty when they purchased BKE. To support an express warranty claim, a plaintiff must allege that the representation was part of the basis of the bargain between the consumer and the seller. *See* N.J.S.A. § 12A:2-313; Cal Com. Code § 2313(1)(a); 13 Pa. Cons. Stat. 2313(a)(1). This requires the buyer to be aware of the warranty at the time of purchase. *See Herbert v. Mentor*, No. 04-413, 2007 WL 2893387, at *6 (D.N.J. Sept. 28, 2007) (citation omitted); *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 34-35 (1989) (where buyer was not aware of any warranty at the time of purchase,

it could not proceed on an express warranty claim); *Visual Commc'ns, Inc. v. Konica Minolta Bus. Solutions U.S.A., Inc.*, 611 F. Supp. 2d 465, 469 (E.D. Pa. 2009) (no express warranty was created where plaintiff did not see alleged warranty).  Accordingly, a breach of warranty claim fails where, as here, Plaintiffs do not identify the alleged warranty upon which they relied, or even fail to allege that they, in fact, did rely on it in purchasing the product.  *See Jeter v. Brown & Williamson Tobacco Corp.*, 113 Fed. App'x 465, 468-69 (3d Cir. 2004); *Williams v. Dow Chem. Co.*, 255 F.Supp. 2d 219, 231 (S.D.N.Y. 2003).  The Consolidated Complaint fails to assert any *facts* showing that Plaintiffs read, saw, or relied on the alleged warranties and therefore the breach of warranty claim should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendant's motion to dismiss should be granted, along with such other relief as the Court deems proper and just.

Dated: January 7, 2010

KELLEY DRYE & WARREN LLP

By: /s/ *Geoffrey W. Castello*
    Geoffrey W. Castello
    200 Kimball Drive
    Parsippany, New Jersey 07054
    (973) 503-5900
    *Attorneys for Defendant*
    *Nestlé Healthcare Nutrition, Inc.*