**SKOLOFF & WOLFE, P.C.**
*A Professional Corporation*
   David B. Wolfe
   Jonathan W. Wolfe
   Barbara A. Schweiger
293 Eisenhower Parkway
Livingston, N.J. 07039
(973) 992-0900
Email: dwolfe@skoloffwolfe.com
      jwolfe@skoloffwolfe.com
      bschweiger@skoloffwolfe.com

**NICHOLAS & BUTLER, LLP**
   Matthew B. Butler (*Pro Hac Vice*)
225 Broadway, 19th Floor
San Diego, California 92101
Telephone:   (619) 325-0492
Facsimile:   (619) 325-0496
Email: mbutler@nblaw.org

Attorneys for Plaintiff Maria Johnson

**THE ROSEN LAW FIRM, P.A.**
   Laurence Rosen
   Phillip Kim (*Pro Hac Vice*)
236 Tillou Road
South Orange, New Jersey 07079
Telephone:   (973) 313-1887
Facsimile:   (973) 833-0399
Email: lrosen@rosenlegal.com

275 Madison Avenue, 34th Floor
New York, New York 10018
Telephone:   (212) 686-1060
Fax:   (202) 202-3827

Attorneys for Plaintiff Kurt Scheuerman

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KURT SCHEUERMAN, an individual, on behalf of himself and all others similarly situated, and ROES 1 through 100, inclusive,<br><br>             Plaintiffs,<br><br>vs.<br><br>NESTLÉ HEALTHCARE NUTRITION, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br><br>Defendants. | CASE NO.:  2:10-CV-03684 (FSH) (PS) |

---

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

| | |
|---|---|
| MARIA JOHNSON, an individual, on behalf of herself and all others similarly situated, and ROES 1 through 100, inclusive,<br><br>Plaintiffs,<br><br>vs.<br><br>NESTLÉ HEALTHCARE NUTRITION, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br><br>Defendants. | CASE NO.: 2:10-CV-05628 (FSH) (PS)<br><br>**AMENDED CLASS ACTION COMPLAINT:**<br> (1) **VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT N.J. STAT. ANN. §§56:8-1 *ET SEQ.* ("NJCFA");**<br> (2) **NEGLIGENT MISREPRESENTATION;**<br> (3) **BREACH OF WARRANTY;**<br> (4) **VIOLATION OF CAL. BUSINESS & PROF. CODE §§ 17200 *ET SEQ.***<br> (5) **VIOLATION OF CAL. BUS. & PROF. CODE §§ 17500 *ET SEQ.***<br> (6) **VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT, CAL. CIV. §§ 1750 *ET SEQ.***<br> (7) **VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 PA. STAT. ANN. § 201-1 *ET SEQ.* ("UTPCPL")**<br><br>**DEMAND FOR JURY TRIAL.** |

     Plaintiffs Maria Johnson and Kurt Scheuerman, individually and on behalf of all others similarly-situated, hereby complain and allege on information and belief as follows:

## I.

## INFORMATION PURSUANT TO LOCAL CIVIL RULE 10.1

1.   The names and addresses of the parties are as follows:

    a.  Plaintiff MARIA JOHNSON ("Mrs. Johnson") resides at 7335 El Fuerte Street, Carlsbad, California 92009.

    b.  Plaintiff KURT SCHEUERMAN ("Mr. Scheuerman") resides at 7743 Albright Avenue, Elkins Park, Pennsylvania 19027.

    c.  Defendant Nestlé Healthcare Nutrition, Inc. ("Nestlé") has its principal place of business at 12 Vreeland Road, Florham Park, New Jersey 07932.

## II.

## INTRODUCTION

2.   This is a class action brought on behalf of certain states' consumers who purchased

Defendant's drink products called "BOOST Kid Essentials" (sometimes referred to as "BOOST" or the "Product"). Defendants market and sell BOOST Kid Essentials, targeting children, particularly those aged 1 through 13, and their parents, and extolling purported health benefits that are supposedly "clinically shown."  Defendants claim, expressly and impliedly, among other things, that BOOST:

      a.    prevents upper respiratory tract infections in children,

      b.    provides "Immunity Protection,"

      c.    is a "Nutritionally Complete Drink with PROBIOTICS to Help Keep Kids Healthy,"

      d.    strengthens the immune system,

      e.    protects against cold and flu viruses,

      f.    reduces the duration of diarrhea, and that

      g.    BOOST actually reduces absences from daycare or school due to illness.

3.    These claims are all deceptive and misleading or have the capacity and are likely to deceive or mislead.  Defendants made these bold claims in advertisements and on the product containers, without any reasonable basis for doing so and without substantiating them.  In 2010, Nestlé settled a lawsuit filed by the Federal Trade Commission ("FTC").  The FTC alleged, as the plaintiffs do here, that Nestle's health claims about BOOST were misleading.

4.    For the types of marketing claims at issue, FTC rules require that Nestlé have competent and reliable scientific evidence for the Product's health claims at the time the claims are made.  However, Nestlé did not, and does not possess the requisite substantiation for these purported health claims. According to the FTC's complaint, which was made public on July 14, 2010, (and contrary to Nestlé's assertions about clinical studies allegedly supporting Nestlé's claims), "clinical studies do not prove that drinking BOOST Kid Essentials reduces the general incidence of illness in children, including respiratory tract infections, reduces the duration of acute diarrhea in children up to the age of thirteen, or strengthens the immunes system, thereby providing protection against cold and flu viruses."  Therefore, the FTC concluded, based upon its investigation of Nestlé and review of the purported health claims about the product that any such

representations by Nestlé "were, and are, false and misleading." Rather than refute the FTC's findings set forth in the FTC complaint, Nestlé agreed to the entry of a consent order concerning the allegations in the FTC complaint.

5.    By this Complaint, the Plaintiffs seek an injunction to halt Defendants' unlawful, unfair, and fraudulent conduct; as well as damages, restitution, and all other appropriate remedies to compensate all similarly-situated purchasers for their losses.

## III.

## PARTIES

6.    Plaintiff Mrs. Johnson is an individual who at all times herein relevant resided, and continues to reside in, and is a citizen of Carlsbad, San Diego County, California.  Since 2008, Mrs. Johnson  has been purchasing "BOOST Kid Essentials" for her young children, as a part of her regular grocery shopping.  Mrs. Johnson believed that the beverage product was clinically shown to provide health benefits for her children because of what Defendants said on the packaging of BOOST Kid Essentials; in its print, media and/or online advertising; and through marketing materials provided by her pediatrician.  She believed the benefits included preventing upper respiratory tract infections, strengthening the immune system thereby protecting against cold and flu viruses, reducing the duration of diarrhea, and reducing absences from daycare or school due to illness, among other health benefits.  Defendants' representations were a material and substantial factor in Mrs. Johnson's decision to purchase the BOOST Kid Essentials drink. After a recent purchase, Mrs. Johnson was upset to learn that the advertised health benefits were not clinically shown and were false and/or misleading.

7.    Plaintiff Mr. Scheuerman is an individual who at all times herein relevant resided, and continues to reside in and is a citizen of Elkins Park, Montgomery County, Pennsylvania. Mr. Scheuerman is the father of three children. During the fall of 2008 and continuing through the summer of 2010, Plaintiff regularly purchased the BOOST Kid Essentials drink at various retail outlets in Pennsylvania and New Jersey for two of his young children, ages four and one. At all relevant times herein, Mr. Scheuerman was exposed to and saw Defendants' claims about the purported health benefits of the Product for children and purchased the BOOST Kid Essentials

drink in reliance on such claims. Particularly, Mr. Scheuerman saw and relied on, among other things, the claims made and conveyed in Nestlé's stock television commercials, stock print advertisements, and BOOST Kid Essentials drink label. The purported health benefits conveyed by Nestlé's marketing and advertising campaign were the sole reason Mr. Scheuerman purchased the BOOST Kid Essentials drink. Mr. Scheuerman and Mrs. Johnson are collectively referred to hereinafter as "Plaintiffs."

8.    Plaintiffs are informed and believe that Defendant Nestlé is a Delaware corporation whose principal place of business is 12 Vreeland Road, Florham Park, Morris County, New Jersey.  Plaintiffs are informed and believe that Nestlé's advertising and marketing campaign regarding BOOST Kid Essentials was planned and/or executed from its principal place of business.  Plaintiffs are informed and believe Nestlé is a subsidiary or related corporate entity of Societé des Produits Nestlé, S.A. of Switzerland, a worldwide corporate conglomerate producing myriad consumer products. Nestlé dishonestly manufactured, marketed, and sold the BOOST Kid Essentials products, by misrepresenting expressly and impliedly to its customers that the product was clinically shown to and would have the health benefits mentioned above.  Despite Defendants' extensive marketing scheme made in advertisements; online; on product containers; and through pediatricians, Defendants did not possess or rely upon any reasonable basis that substantiated these purported health benefits.  Defendants' marketing team is based in Florham Park, New Jersey. Defendants' advertising and representations about BOOST Kid Essentials made to consumers was and continues to be conceived, reviewed, approved, and otherwise controlled from Nestlé's Florham Park, New Jersey headquarters.

9.    Plaintiffs are unaware of the true names, identities or capacities, whether individual, corporate, associate or otherwise, of those Defendants sued herein as DOES 1 through 100, inclusive.  Plaintiffs therefore sue said Defendants by such fictitious names.  Plaintiffs will seek leave to amend this Complaint to set forth the true names and capacities of these Defendants when they are ascertained.

10.   Plaintiffs are informed and believe, and on that basis allege, that Defendants sued herein as DOES 1 through 100, inclusive, and each of them, are in some way responsible for the

acts and events complained of herein, and proximately caused the injuries and damages to Plaintiffs which are described in this Complaint.  Plaintiffs will seek leave of court to amend this Complaint to more specifically set forth these Defendants' wrongful conduct when it has been ascertained. Nestlé and DOES 1 through 100, are collectively referred to in this complaint as "Defendants."

11.  Plaintiffs are informed and believe and on that basis allege that at all times herein mentioned, Defendants, and each of them, were the parent companies, subsidiary companies, agents, and/or employees of the remaining Defendants and, in doing the things herein complained of, were acting within the course and scope of such parent/subsidiary relationship, agency and/or employment, and that each and every Defendant when acting as a principal, was negligent in the selection and hiring of each and every other Defendant as an agent, employee and/or joint venturer.  All actions of each Defendant as alleged herein were ratified and approved by every other Defendant or their officers or managing agents.

## IV.

## JURISDICTION AND VENUE

12.  This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. § 1332(d)(2).

13.  The Court has jurisdiction over the named corporate Defendant, Nestlé, because Nestlé is an entity whose principal place of business at all times herein relevant was and is in the State of New Jersey. The matter in controversy, exclusive of interest and costs, exceeds the sum value of $5,000,000 and members of the class of plaintiffs are citizens of different states than Defendants.

14.  The Court has jurisdiction over each of the entity Defendants because each of them is licensed to do business in New Jersey, and/or has continuous and systematic business contacts with New Jersey, and has sufficiently and purposefully availed themselves of the benefits of doing business within New Jersey such that they may reasonably expect to be hailed into New Jersey courts.  Nestlé's headquarters are located in Florham Park, Morris County, New Jersey. Nestlé's marketing team is based in Florham Park, New Jersey. The false advertising campaign

alleged in this Complaint was originated and disseminated across the country from Florham Park, New Jersey.

15.   Venue is proper in this district pursuant to 28 U.S.C. §1391 because the acts and transactions giving rise to this action occurred in this district and because Nestlé is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district, does substantial business in this district; and is subject to personal jurisdiction in this district. Defendant Nestlé's principal place of business is in Morris County, New Jersey and Plaintiffs are informed and believe that Nestlé sells its products such as BOOST Kid Essentials in Morris County, New Jersey, including but not limited to supermarkets and grocery stores in Morris County. Also, the District of New Jersey encompasses Florham Park, Morris County, New Jersey, where the Defendants' headquarters are located and Defendants' marketing team is based in Florham Park, New Jersey. The false advertising campaign alleged in this Complaint was originated and disseminated across the country from Florham Park, New Jersey.

## V.

## FACTUAL ALLEGATIONS

16.   Plaintiffs allege and incorporate by reference each and every allegation contained above, as if set forth at this point.

17.   "Probiotics" are defined by the United Nations Food and Agricultural Organization and the World Health Organization as "live microorganisms, which, when administered in adequate amounts, confer a health benefit on the host." Any definition of probiotics, however, has been subject to debate. (Richard Walker & Merry Buckley, *Probiotic Microbes: The Scientific Basis*, at 2 (2006)[1].)  As part of a significant trend in the consumer food and drink trade to provide healthier and "greener" food options, many food and drink purveyors such as Defendants are resorting to the manufacture and sale of products containing probiotics in the American marketplace.

---

[1]   Available at <http://academy.asm.org/images/stories/documents/probioticmicrobesfull.pdf>.

18.  Any health benefits of probiotics and consumer products containing probiotics are disputed. For example, the American Academy for Microbiology's seminal study of probiotics' benefits, if any, in humans indicated that "there is no conclusive evidence that altering microbiota of a healthy human adult is beneficial."  (*Id.* at 4.)

19.  If probiotic bacteria do have any health benefits, they must survive the digestive tract in sufficient quantities to achieve the possible benefit.  However, there is no scientific consensus on the quantities of probiotics people might require to achieve a probiotic effect, or whether probiotics do have any such effect in healthy people.

20.  Beginning on or around January 2008, Defendant Nestlé began promoting BOOST Kid Essentials utilizing various media outlets, including but not limited to print advertisements, Internet websites, and television, as well as on the actual product packaging.  Further, Nestlé's advertising campaign extended to pediatricians, to whom Nestlé provided materials so that the pediatricians would promote BOOST Kid Essentials.

21.  Despite the lack of any hard and clear evidence regarding the efficacy of probiotics in adults and children, Defendants marketed and sold BOOST Kid Essentials across the United States, targeting children and their parents, and extolling purported health benefits that are supposedly "clinically shown."  Defendants made numerous claims in the marketing of their BOOST Kid Essentials product relating primarily to the probiotic ingredients.

22.  Defendants claim, expressly and impliedly, among other things, that BOOST Kid Essentials:

       a.     prevents upper respiratory tract infections in children,

       b.     strengthens the immune system,

       c.     protects against cold and flu viruses,

       d.     reduces the duration of diarrhea, and that

       e.     BOOST Kid Essentials actually reduces absences from daycare or school due to illness.

23.  Among other ways, Defendants claimed these supposed health benefits were obtained through "immune-strengthening probiotics in the straw" "to help kids stay healthy." In one

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

television advertisement, Defendants claim that the "Probiotic Straw" is "Clinically shown to help strengthen the immune system."   Defendants misleadingly claim explicitly and impliedly that these BOOST Kid Essentials has been proven to be effective against viruses.

24.   Defendants made these claims as part of a national marketing strategy, permeating all forms of media to advertise their BOOST Kid Essentials product. These claims were made on the product packaging distributed nationally, in television advertisements broadcast in markets across the United States, on the Internet, in national print publications and other media, and through pediatricians.

25.   Defendants' uniform marketing scheme and advertising message that BOOST Kid Essentials prevents illness in children is intentionally designed to cause consumers to buy its product.

26.   These claims are all deceptive and misleading or have the capacity and/or are likely to deceive or mislead.  Defendants made these bold claims in advertisements and on the product containers without any reasonable basis for doing so and without substantiating them.   The deceptive marketing and advertising campaign successfully caused Plaintiffs to purchase the Defendants' product.

27.   For example, on every label of BOOST Kid Essentials, Nestlé claimed that the product provided "Immunity Protection*," was a "Nutritionally Complete Drink with PROBIOTICS to Help Keep Kids Healthy," and a "Patented PROBIOTIC straw."

28.   On the side of the packaging label, Nestlé made the following additional claims:

Complete, Balanced Nutrition for Your Child's
Healthy Growth and Strong Immune System!

BOOST ®Kid Essentials provides complete, balanced nutrition for kids 1-13.

Only BOOST Kid Essentials has the vitamins and minerals kids need plus
immune-supporting probiotics and antioxidants to help keep them healthy!...

Talk to your pediatrician about using BOOST Kid Essentials as a supplement with a meal or as a snack. To learn more about immunity, probiotics, and antioxidants, visit www.kidessentials.com...

A copy of the stock BOOST Kid Essentials packaging is attached hereto as Exhibit A, and is incorporated herein by reference.

29.  On the Nestlé website for BOOST Kid Essentials, www.Kidessentials.com, titled "FAQ" (which stands for Frequently Asked Questions), Defendants listed several questions and answers relating to the health benefits of the Product. In the following series of questions and answers, Defendants made misrepresentations regarding probiotics:

Q:  When is it most beneficial to take probiotics?

A:  To gain the most benefits from probiotics, they should be consumed on a daily basis. By taking them regularly, probiotics are able to live in, or "colonize" the digestive tract and fight off bad bacteria. If your child has stomach problems, such as diarrhea caused by antibiotics, probiotics may help rebuild a healthy colony of good bacteria, which can aid the immune system when your child may need it most.[1-3]

. . .

Q:  What exactly do probiotics protect my kids from?

A:  Probiotics are healthy bacteria that must be consumed in order to build up in our digestive system – in the lining of the GI tract. While they occur throughout nature, they are less likely to be present in large numbers in our own GI tract, and therefore need to be consumed to derive a benefit. They help balance and keep levels of bad bacteria in check. Most importantly, they help keep our immune system healthy by increasing disease-fighting antibodies.[1,2]

. . .

Q:  Are probiotics effective against viruses?

A:  Yes, certain probiotics have been shown to help fight viruses such as Rotaviral diarrhea.[1] Lactobacillus reuteri Protectis (the probiotic found in BOOST Kid Essentials Drink) has been shown to reduce the duration of diarrheal illness in children[3] and reduce the number of days that infants miss daycare due to illness.[3]

. . .

(References omitted.) A copy of the FAQ is attached hereto as Exhibit B and is incorporated by this reference

30.  These types of representations have not been proven to be true.  In fact, studies cited by Defendants on Nestlé's website described above were not as conclusive as represented by Defendants. These studies do not support the claims made expressly or impliedly by the Defendants of the particular benefits of probiotics.

31.  One such study, *Probiotics in Gastrointestinal Diseases in Children: Hard and Not-*

*So-Hard Evidence of Efficacy*[2] cited in support of the above-quoted portion of Defendants' FAQ page on Nestlé's website for BOOST Kid Essentials, the authors make clear in the abstract of the article that "only a few of the potential health benefits attributed to probiotics have been confirmed in well-designed, well-conducted, randomized, controlled trials."  Hania Szajewska, et al., *Probiotics in Gastrointestinal Diseases in Children: Hard and Not-So-Hard Evidence of Efficacy*, 42 J. PEDIATRIC GASTROENTEROLOGY AND NUTRITION 454, 458 (2006). The authors did conclude there are some benefits to children with acute watery diarrhea.  There was evidence of "moderate beneficial effect" for diarrhea associated with consuming antibiotics but involved strains of probiotics not found in BOOST Kid Essentials. *Id.* at 460.

32.  Most notably, the authors concluded that there is no evidence to support a theory that probiotics can prevent upper respiratory infections or gastrointestinal infections in healthy children:

> We believe that there is a potential role for probiotics in preventing respiratory and gastrointestinal infections in healthy children. However, currently available evidence is not strong enough to give specific recommendation concerning these indications.

*Id.* at p. 464.

33.  While the studies were hopeful, but inconclusive at best, Defendants touted these studies – and the health benefits of probiotics – as proven fact, *i.e.*, "clinically shown." Defendants made these claims in advertisements without any support for the claims based on competent and reliable scientific evidence and/or without any basis in fact for doing so.

34.  Nestlé's stock television commercial is summarized as follows. A copy of the story board is attached hereto as part of the materials contained in Exhibit C to this Complaint and incorporated by reference herein:

(A girl pops into frame and takes a big enjoyable sip of Kid Essentials.).

---

[2]     Available at <http://journals.lww.com/jpgn/Fulltext/2006/05000/Probiotics_in_Gastrointestinal_Diseases_in.2.aspx#>.

*Female Announcer*: "Introducing NEW BOOST Kid Essentials, the only nutritionally complete drink that gives kids the power of immune strengthening probiotics."

**ON SCREEN**: *L. reuteri Protectis* has been clinically shown to help strengthen the immune system when consumed daily. For more information about clinical trials involving *L. reuteri Protectis*, go to www.kidessentials.com.

(The girl runs along playfully as the straw twirls around her. She encounters a boy who sneezes. The straw quickly forms a protective barrier around her. The girl continues on her way and as she approaches a basketball net, the straw forms stairs for her to step up on.)

**ON SCREEN:** muscle-building protein

*Female Announcer*: "Plus the power to grow strong – with muscle-building protein and 25 vitamins and minerals."
(She takes a shot and hits a perfect swoosh.)

**ON SCREEN:** 25 vitamins & minerals

(Cut to straw popping back into drink box. The vortex of wellness swirls around the box, highlighting product attributes.)

**ON SCREEN: Immunity strengthening probiotics/7 g protein/25 vitamins & minerals.**

*Female Announcer***:** "NEW BOOST Kid Essentials: complete nutrition for your child's healthy growth, **and probiotics clinically shown to help strengthen the immune system."**

(The straw bends forwards, and probiotics titles emerge, followed by animated probiotic bubbles and a twirling arrow.)

**ON SCREEN: Probiotic straw/Clinically shown to help strengthen the immune system.** (emphasis added).

(Close up of the girl grabbing the drink box and enjoying another sip)

*Female Announcer*: And that means the power to do anything is possible every day.

(She finishes her sip, turns and skips out of frame.)

**ON SCREEN:** BOOST Kid Essentials Nutritionally Complete Drink

KidEssentials.com. . . .

35.  Defendant Nestlé made similar false and misleading representations in a magazine advertisement in the materials attached as Exhibit D to this Complaint, one such advertisement

that appeared in the national magazine *People*:

> First Page:
> Do your kids have the  power?
> [Depiction of BOOST Kid Essentials package with the probiotic straw, which reads:
> NEW!
> BOOST
> Kid Essentials
> Nutritionally Complete Drink
> Immunity Protection*
> Patented PROBIOTIC Straw
> *Nutritionally Complete Drink with PROBIOTICS to Help
> Keep Kids Healthy]
>
> Second Page:
> The power of immune-strengthening probiotics1, 2
> Probiotic straw to help keep kids healthy
> [Depiction of the probiotic straw (continued from the previous page)
> forming a complete circle around a girl, while a boy sneezes in her
> direction]
> (referenced omitted).
>
> Third Page:
> The power to grow strong
> 25 vitamins & minerals
> 7g of muscle-building protein
> [Depiction of the probiotic straw (continued from the previous page) forming stairs for the
>     girl to climb, as she tosses a basketball into a basketball hoop]
>
> Fourth Page:
> The power
> to do anything!
> Every day.
>
> NEW BOOST® Kid Essentials
> Nutritionally Complete Drink:
> • Immune-strengthening probiotics in the straw
> • 25 vitamins & minerals + 7g of protein to support healthy growth
> • Kid preferred taste vs. Pediasure®...

A copy of the People Magazine print advertisement is attached hereto as Exhibit D, and is incorporated herein by reference.

36.     In 2010, Nestlé settled a lawsuit filed by the Federal Trade Commission ("FTC")[3] regarding their misleading health claims.  Nestlé agreed to discontinue the deceptive marketing and advertising campaign.

37.     The falsity and misleading nature of Nestlé's health claims about the product are

---

[3]     Complaint available at <http://www.ftc.gov/os/caselist/0923087/index.shtm>.

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

further demonstrated by the FTC's findings.   According to the FTC complaint, contrary to Nestlé's assertions about clinical studies supporting their claims about the Product, "clinical studies do not prove that drinking BOOST Kid Essentials reduces the general incidence of illness in children, including respiratory tract infections, reduces the duration of acute diarrhea in children up to the age of thirteen, or strengthens the immunes system, thereby providing protection against cold and flu viruses."   Therefore, the FTC concluded that any such representations by Nestle "were, and are, false and misleading."

38.   The FTC complaint also states that Nestlé had no reasonable basis that substantiated its claims that drinking the Product would: (a) prevent upper respiratory infections in children; (b) strengthen immune systems, thereby providing protection against cold and flu viruses; and (c) reduce absences from daycare or school due to illness.

39.   According to an announcement issued by the FTC on July 14, 2010, Nestle agreed to resolve the claims in the FTC complaint through an entry of a proposed consent order.   The proposed consent order was open for public comment until August 16, 2010.

40.   The consent order directs Nestle, for the next 20 years:

   a.   not to make any representations that the product "prevents or reduces the risk of upper respiratory tract infections, including, but not limited to, cold or flu viruses, unless the representation is specifically permitted in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990";

   b.   not to make any representations that the product "[r]educes the duration of acute diarrhea in children up to the age of thirteen; or reduces absences from daycare due to illness unless the representation is non-misleading and, at the time of making such representation, the respondent possesses and relies upon competent and reliable scientific evidence that substantiates that the representation is true";

   c.   not to "misrepresent, in any manner, expressly or by implication, the existence, contents, validity, results, conclusions, or interpretations of any test, study or research."

> d. Nestle also agreed not to make any representations about the health performance, benefits, and efficacy, of the Product unless such representations are not misleading at the time made and Nestle relies upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.

(Agreement & Consent Order, *In the Matter of Nestlé Healthcare Nutrition, Inc.*, File No. 092 3087 (May 18, 2010)[4].)

## VI.

## <u>CLASS ALLEGATIONS</u>

41.     Plaintiffs allege and incorporate by reference each and every allegation contained above, as if set forth at this point.

42.     This action may properly be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

43.     Plaintiffs bring this Complaint on behalf of the Class.  The Class and subclasses are defined as:

> **NATIONWIDE CLASS:  All persons in the United States who purchased BOOST Kid Essentials from July 22, 2004 to the present.**

> **CALIFORNIA SUBCLASS:   All persons who purchased BOOST Kid Essentials in California from July 22, 2004 to the present.**

> **NEW JERSEY SUBCLASS:   All persons who purchased BOOST Kid Essentials in New Jersey from July 22, 2004 to the present.**

> **PENNSYLVANIA SUBCLASS:  All persons who purchased BOOST Kid Essentials in Pennsylvania from July 22, 2004 to the present.**

44.     **Numerosity**:  Plaintiffs are informed and believe that the Class and each subclass consists of thousands, hundreds of thousands and even millions of consumers throughout the

---

[4]     Available at <http://www.ftc.gov/os/caselist/0923087/100714nestleorder.pdf>.

United States who purchased BOOST Kid Essentials.  The members of the Class and each subclass are so numerous that separate joinder of each member is impractical.  However, appropriate discovery can determine the number of class members.  The disposition of claims in a class action will provide substantial benefits to the parties and the Court.

45.     **Commonality**:  The claims of the representative Plaintiffs raise questions of law and fact that are common to questions of law and fact raised by the claims of each member of the Class and each subclass..

46.     **Typicality**:  Plaintiffs' claims are typical of the claims of the Class and each subclass in that the claims of all members of the Class and each subclass result from Defendants' sale and marketing of BOOST Kid Essentials as having specific, clinically shown health benefits, while Defendants had no clinical showing or reason to believe their product provided such health benefits.  The marketing campaign and resulting representations originated from Defendants' principal place of business in New Jersey and was uniform throughout the respective states mentioned herein..

47.     **Representation**:  There is no conflict between the representative Plaintiffs and other members of the Class or any subclass with respect to this action, or with respect to the claims for relief herein set forth.

48.     The named Plaintiffs are the representative parties for the Class and respective subclasses and are able to and will fairly and adequately protect the interests of the Class.

49.     **Predominance**:  The questions of law or fact common to the claims of the representative Plaintiffs and the claims of each member of the class and each subclass predominate over any questions of law or fact affecting individual members of the Class or subclasses.  Class representation is superior to other available methods for the fair and efficient adjudication of this controversy.

50.     Questions of law and/or fact that are common include, but are not limited to:

(A)     Whether Defendants had a reasonable basis for making the above claims, *e.g.*, whether Defendants conducted any reliable clinical studies regarding the Product's alleged health effects and whether or not those purported studies reasonably supported Defendants'

claims.

(B)     Whether or not the Defendants' above-described health claims were indeed "clinically shown."

(C)     What Defendants said about the alleged health benefits of BOOST.  For example, Plaintiffs are informed and believe that Defendants, in a uniform and pervasive manner, deceptively marketed the express and implied health benefits of BOOST.

(D)     Whether Defendants misrepresented the health benefits, expressly and impliedly, of BOOST Kid Essentials.

(E)     Whether Defendants engaged in unlawful conduct in violation of the Consumer Fraud Act, N.J.S.A. 56:8-2.

(F)     Whether Defendants engaged in unfair, deceptive, and/or unlawful practices that violated the Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*

(G)     Whether Defendants engaged in unfair, fraudulent, and/or unlawful practices that violated the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

(H)     Whether Defendants engaged in false advertising that violated Cal. Bus. & Prof. Code §§ 17500 *et seq.*

(I)     Whether Defendants engaged in conduct that violated the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*

(J)     Whether Defendants engaged in conduct that violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1 *et seq.*

(K)     Whether Defendants made a materially false statement to induce consumers to purchase BOOST.

(L)     Whether the Defendants unfairly or unlawfully received and/or retained revenue acquired through the scheme alleged in this Complaint.

(M)     Whether Plaintiffs and Class members sustained monetary or other losses and the proper measure of those losses;

(N)     Whether Plaintiffs and Class members are entitled to declaratory relief;

(O)     Whether Plaintiffs and Class members are entitled to injunctive relief.

51.     A class certified for injunctive relief is appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class and/or any subclass, thereby making appropriate final injunctive relief with respect to the Class and/ or each subclass as a whole.

52.     Conjunctively or alternatively, a class certified for damages is also appropriate. Common questions of law and fact predominate over individual questions.  For instance, all injuries sustained by any member of the class or subclass arise out of the singular conduct of Defendants in uniformly providing false and misleading information, expressly and impliedly, regarding BOOST Kid Essentials and in offering and selling their Product through unfair and illegal conduct and false and misleading advertising and misrepresentations.

53.     **Superiority**:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because class actions are generally considered the superior form of disposing of cases involving consumer fraud, especially where there is a common nucleus of law and facts, and the amount of money at stake for each potential member is too small to warrant prosecution of separate actions.  Even if any group of class members itself could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court.

54.     Unless a class is certified, Defendants will retain monies as a result of their unlawful conduct that were taken from Plaintiffs and proposed Class members.

**VII.**

**FIRST CLAIM**
**(Violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. ("CFA"))**
**(Against All Defendants by Plaintiff Kurt Scheuerman, individually**
**and on behalf of similarly-situated individuals, including the Nationwide Class and the New Jersey Subclass)**

55.     Plaintiff Kurt Scheuerman, individually and on behalf of similarly-situated individuals, including the Nationwide Class and the New Jersey Subclass alleges and incorporates by reference each and every allegation contained above, as if set forth at this point.

56.     The Consumer Fraud Act ("CFA"), <u>N.J.S.A.</u> 56:8-2, makes it unlawful for companies like Defendant Nestlé to employ "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, . . . in connection with the sale or advertisement of any merchandise . . . whether or not any person has in fact been misled, deceived, or damaged thereby . . . ."

57.     Plaintiffs, other members of the Class, and Nestlé are "persons" within the meaning of the CFA.

58.     The BOOST Kid Essentials manufactured and sold by Nestlé are "merchandise" within the meaning of the CFA, and Plaintiffs and other members of the Class are "consumers" within the meaning of the CFA and thus entitled to the statutory remedies made available in the CFA.  Nestlé's production, marketing, advertising, sales and/or distribution of BOOST at issue met the definition of "advertisement" and "sale" within the meaning of the CFA.

59.     Moreover, a person who suffers "any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under" the CFA "may bring an action . . . therefore in any court of competent jurisdiction" for "legal or equitable relief," including treble damages "sustained by any person in interest," pursuant to <u>N.J.S.A.</u> 56:8-19.

60.     Defendants violated the CFA by dishonestly representing BOOST Kid Essentials provided particular express and implied health benefits to children who ingested the Product when such claims were unsubstantiated by Defendants.  Defendants misrepresentations include that BOOST Kid Essentials was "clinically shown" to :

     a.     Prevent upper respiratory tract infections;

     b.     Strengthen the immune system;

     c.     Protect against cold and flu viruses;

     d.     Reduce the duration of diarrhea; and

     e.     Overall reduce absences from daycare or school due to illness.

61.     These misrepresentations and omissions of Defendants were intended to result and did result in the sale of products sold and/or manufactured by Defendants to the consuming public

and violated and continue to violate the CFA.

62.     Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate.

63.     As a result of Defendants' conduct, Plaintiffs and the Class are entitled to restitution and damages equal to the amounts that they expended in the purchase of BOOST. Plaintiffs also seek treble damages pursuant to the CFA.

64.     In the alternative, Plaintiffs and the Class are entitled to restitution and damages equal to the amounts that they paid in excess of what they would have paid for similar consumer products that did not fraudulently tout such non-existent health benefits.  Plaintiffs also seek treble damages pursuant to the CFA.

65.     Plaintiffs have standing to bring an action pursuant to the CFA on behalf of themselves and the Class because Plaintiffs and the members of the Class have sustained ascertainable losses as a result of Defendants' wrongful conduct, *i.e.*, Plaintiffs and the members of the Class received something less than, and different from, what they reasonably expected in view of Nestlé's representations on the Product packaging.

66.     Plaintiffs have incurred attorneys' fees and costs in connection with the filing of this Complaint and anticipate incurring additional attorneys' fees and costs in connection with the prosecution of this action.  An award of attorneys' fees, filing fees, and reasonable costs of suit is therefore appropriate pursuant to, among other grounds, N.J.S.A. 56:8-19.

67.     The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

## VIII.

### SECOND CLAIM
### (Negligent Misrepresentation)
### (Against All Defendants)

68.  Plaintiffs allege and incorporate by reference each and every allegation contained above, as if set forth at this point.

69.  When Defendants made the above-referenced representations about BOOST Kid

Essentials being clinically shown to provide specific health benefits, they had no reasonable ground for believing them to be true.

70.  Defendants made the above-referenced representations with the intention of inducing Plaintiffs to act in reliance on these express and implied representations by purchasing BOOST Kid Essentials.

71.  Defendants had superior knowledge and information regarding the truth about BOOST Kid Essentials and the Class members did not have access to this information.

72.  Defendants' unlawful conduct arose, was directed, and emanated from New Jersey to the detriment and injury of Class members throughout the United States, including Plaintiffs.

73.  Plaintiffs and the Class members reasonably relied on the Defendants' representations regarding clinically-shown health benefits and had no reason to believe they were false.  The Defendants' representations and omissions concerned issues material to the transactions in question.  Plaintiffs and other Class members would not have purchased BOOST Kid Essentials, absent Defendants' misrepresentations, if the true facts had been known.

74.  The foregoing misrepresentations and practices proximately caused Plaintiffs and the Class members to suffer damages in that they purchased the Product without knowing that the alleged express and implied health benefits of BOOST Kid Essentials were not clinically shown, in general, and specifically in comparison to alternative, and significantly less expensive, children's drinks.

75.  As a direct and proximate result of Defendants' wrongful acts, Plaintiffs and the Class have suffered and continue to suffer damages.  Plaintiffs seek compensatory damages in an amount to be proven at time of trial.

**IX.**
**THIRD CLAIM**
**(Breach of Warranty)**
**(Against All Defendants)**

76.  Plaintiffs allege and incorporate by reference each and every allegation contained above, as if set forth at this point.

77.  Plaintiffs, and each member of the Class, formed a contract with Nestlé at the time

Plaintiffs and the Class members purchased the Product. The terms of that contract include the promises and affirmations of fact made by Nestlé on its Product labels and through its marketing campaign, as described above.   This product labeling and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiffs and the Class on the one hand, and Nestlé on the other.

78. All conditions precedent to Nestlé's liability under these contracts has been performed by the Plaintiffs and the Class.

79. Nestlé has breached the terms of these contracts, including the express warranties, with Plaintiffs and the Class by not providing the Product which could provide the benefits described above.

80. As a result of Nestlé's breach of its contract, Plaintiffs and the Class have been damaged in the amount of the purchase price of the Product.

**IX.**
**FOURTH CLAIM**
**(Violation of Cal. Bus. & Prof. Code §§ 17200 *et seq*.)**
**(Against All Defendants by Maria Johnson, individually**
**and on behalf of similarly-situated individuals, including the Nationwide Class and**
**California Subclass)**

81. Plaintiff Maria Johnson, individually and on behalf of similarly situated individuals, including the Nationwide Class and the California Subclass allege and incorporate by reference each and every allegation contained above, as if set forth at this point.

82. California Business and Professions Code section 17200, commonly referred to as the Unfair Competition Law or "UCL," prohibits "any unlawful, unfair or fraudulent business act or practice."

83. "Unlawful" business acts are those which are in violation of any federal state or municipal statutes or codes, as well as state and federal regulations.

84. Business acts or practices are "unfair" if they tend to harm or threaten to harm competitors or to destroy competition.

85. "Fraudulent" business acts or practices are those that are likely to deceive

members of the public.

86.     Defendants' practices regarding BOOST Kid Essentials are unlawful under the UCL because they violated Sections 12 and 15 of the Federal Trade Commission Act which prohibits unfair or deceptive acts or practices and the making of false advertisements in or affecting commerce.  Defendants also violated the NJCFA. as described in the First Claim above, as well as California's False Advertising Laws (Cal. Business & Professions Code, Sections 17500 *et seq.*), and California's Consumer Legal Remedies Act (Cal. Civil Code, Sections 1750 *et seq.*).  Defendants also violated FTC and FDA regulations and sections of the FTC Act as identified herein and/or within the FTC complaint.

87.     Defendants also violated the UCL by fraudulently and unfairly representing that BOOST Kid Essentials provided particular express and implied health benefits to children who ingested the Product when such claims were unsubstantiated by Defendants and/or false. Defendants' misrepresentations include that BOOST Kid Essentials was "clinically shown" to:

> f.     Prevent upper respiratory tract infections;
>
> g.     Strengthen the immune system;
>
> h.     Protect against cold and flu viruses;
>
> i.     Reduce the duration of diarrhea; and
>
> j.     Reduce overall  absences from daycare or school due to illness.

88.     Defendants' misrepresentations and omissions were intended to result and did result in the sale of products sold and/or manufactured by Defendants to the consuming public and violated and continue to violate the UCL.  Mrs. Johnson lost money or property as a result of Nestlé's unfair competition.  Plaintiff Maria Johnson was exposed to, saw, and relied on these misrepresentations.  These misrepresentations were a material and substantial factor in plaintiff Maria Johnson's decision to purchase BOOST.  Mrs. Johnson saw these representations, among other places, in print, both on the BOOST product packaging itself, as well as in Nestlé's print advertisements such as those appearing in newspapers and magazines.

89.     Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate.

90.     As a result of Defendants' conduct, Plaintiffs and the Class are entitled to restitution.

91.     Plaintiffs have incurred attorneys' fees and costs in connection with the filing of this Complaint and anticipate incurring additional attorneys' fees and costs in connection with the prosecution of this action.  An award of attorneys' fees, filing fees, and reasonable costs of suit is therefore appropriate pursuant to, among other things, Cal. Civ. Pro. § 1021.5, the substantial benefit doctrine, and the common fund doctrine.

**IX.**
**FIFTH CLAIM**
**(Violation of Cal. Bus. & Prof. Code §§ 17500 *et seq*.)**
**(Against All Defendants by Maria Johnson, individually**
**and on behalf of similarly-situated individuals, including the Nationwide Class and**
**California Subclass)**

92.     Plaintiff Maria Johnson, individually and on behalf of similarly situated individuals, including the Nationwide Class and the California Subclass allege and incorporate by reference each and every allegation contained above, as if set forth at this point.

93.     California Business and Professions Code section 17500 ("Section 17500"), prohibits any company from disseminating untrue or misleading advertising regarding its products or services, which is known to be, or by the exercise of reasonable care the company should know to be untrue or misleading.

94.     Defendants violated Section 17500 by disseminating untrue or misleading advertising regarding BOOST Kid Essentials, including advertisements claiming BOOST Kid Essentials possessed particular express and implied health benefits for children who ingested the Product when such claims were unsubstantiated by Defendants.  Defendants falsely advertised that BOOST Kid Essentials was "clinically shown" to:

k.     Prevent upper respiratory tract infections;

l.     Strengthen the immune system;

m.     Protect against cold and flu viruses;

n.     Reduce the duration of diarrhea; and

o.     Reduce overall absences from daycare or school due to illness.

95.   Defendants knew or should have known that their advertisements regarding Boost Kid Essentials, and its purported "clinically proven" health benefits, were misleading. Defendants' marketing and advertising mislead its customers into purchasing BOOST Kid Essentials.

96.   Plaintiff Johnson and the public relied on Defendants' advertising regarding the purported health benefits of BOOST Kid Essentials.  Plaintiffs had no reason to doubt the claims made by Defendants regarding the alleged health benefits of BOOST Kid Essentials. Plaintiff Maria Johnson was exposed to, saw, and relied on these misrepresentations.   These misrepresentations were a material and substantial factor in plaintiff Maria Johnson's decision to purchase BOOST.  Mrs. Johnson saw these representations, among other places, in print, both on the BOOST product packaging itself, as well as in Nestlé's print advertisements such as those appearing in newspapers and magazines.

97.   Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate.

98.   As a result of Defendants' conduct, Plaintiffs and the Class are entitled to restitution.

99.   As a result of Defendants' false advertising, Plaintiff Johnson and the Class have lost money or property.

100.   Plaintiffs have incurred attorneys' fees and costs in connection with the filing of this Complaint and anticipate incurring additional attorneys' fees and costs in connection with the prosecution of this action.  An award of attorneys' fees, filing fees, and reasonable costs of suit is therefore appropriate pursuant to, among other things, Cal. Civ. Pro. § 1021.5, the substantial benefit doctrine, and the common fund doctrine.

**IX.**
**SIXTH CLAIM**
**(Violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. §§ 1750 *et seq*.)**
**(Against All Defendants by Maria Johnson, individually**
**and on behalf of similarly-situated individuals, including the Nationwide Class and**
**California Subclass)**

101.   Plaintiff Maria Johnson, individually and on behalf of similarly situated individuals, including the Nationwide Class and the California Subclass allege and incorporate by reference each and every allegation contained above, as if set forth at this point.

102.   The Consumer Legal Remedies Act ("CLRA"), specifically California Civil Code Section 1770(a) makes it unlawful to "represent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which they do not have" or to "advertise goods or services with intent not to sell them as advertised" in the process of a transaction intended to result or resulting in the sale of goods to a consumer.

103.   Plaintiff Johnson is a "consumer" within the meaning of the CLRA as she is an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family or household purposes.

104.   BOOST Kids Essentials is a good purchased for personal, family, or household purposes within the meaning of the CLRA

105.   Defendants violated the CLRA by misrepresenting that BOOST Kid Essentials provided particular express and implied health benefits to children who ingested the Product when such claims were unsubstantiated by Defendants.  Defendants misrepresentations include that BOOST Kid Essentials was "clinically shown" to:

  p.   Prevent upper respiratory tract infections;

  q.   Strengthen the immune system;

  r.   Protect against cold and flu viruses;

  s.   Reduce the duration of diarrhea; and

  t.   Reduce overall absences from daycare or school due to illness.

106.   Defendants advertised or marketed BOOST Kids Essentials with the intent that transactions resulting in the sale of BOOST Kids Essentials occur.  As a result of Defendants'

advertisements containing misrepresentations, transactions resulting in the sale of BOOST Kids Essentials occurred.

107.    Defendants' unfair and deceptive acts or practices were material to Plaintiff's and other Class members' decision to purchase Defendants' product.  Plaintiff and the Class reasonably relied on the misrepresentations and misleading statements made by Defendants, including on every package of their product, and sustained injury in fact as a result of Defendants' misconduct, including but not limited to, the loss of money used to purchase the products, the diminution in value of the products, transaction costs, and loss of use of funds.  As a result of Defendants' conduct, Plaintiff and Class members have sustained damage.

108.    Pursuant to California Civil Code section 1782 ("Section 1782"), Plaintiffs notified Defendants in writing by certified mail of the particular violations of Section 1770 of the Act and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.  A copy of the letter is attached hereto as Exhibit E.

109.    As an actual and proximate cause of Defendants' willful violations of the CLRA, Plaintiff Johnson and the general public have been damaged and have lost money.  Plaintiff did not receive the benefit of her bargain.  She was promised a product that provided certain benefits, but received one which possessed no such benefits.  Plaintiff Johnson and the general public paid an elevated price for BOOST Kid Essentials because of the misrepresentations of Defendants.

110.    Pursuant to Section 1782(d), Plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices and for restitution and disgorgement.

111.    If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to Section 1782, Plaintiffs will amend this Complaint to add claims for actual, punitive and statutory damages, as appropriate.

112.    Plaintiffs have incurred attorneys' fees and costs in connection with the filing of this Complaint and anticipate incurring additional attorneys' fees and costs in connection with the prosecution of this action.  An award of attorneys' fees is therefore appropriate pursuant to,

among other things, Section 1780(d).

113.    Pursuant to Section 1780(d) of the Act, attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum.

# X.
## SEVENTH CLAIM
**(Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the UTPCPL), 73 Pa. Stat. Ann. § 201-1 *et seq.*)**
**(Against all defendants by Kurt Scheuerman, individually and on behalf of all others similarly situated, including the Nationwide Class and Pennsylvania Subclass)**

114.    Plaintiff Kurt Scheuerman, individually and on behalf of all others similarly situated, including the Nationwide Class and Pennsylvania Subclass alleges and incorporates by reference each and every allegation contained above, as if set forth at this point.

115.    Nestlé represented that BOOST Kid Essentials had characteristics, uses, and benefits that BOOST Kid Essentials does not have.  These misrepresentations constitute unfair or deceptive acts within the meaning of the UTPCPL.

116.    The transactions involved a good, namely, BOOST Kid Essentials.  The purchase of BOOST Kid Essentials by Plaintiffs and the Class were for Plaintiffs' personal family or household purposes.

117.    Specifically, Nestlé represented BOOST Kid Essentials was clinically shown to:

    a.  Prevent upper respiratory tract infections;

    b.  Strengthen the immune system;

    c.  Protect against cold and flu viruses;

    d.  Reduce the duration of diarrhea; and

    e.  Reduce overall absences from daycare or school due to illness.

118.    Plaintiffs justifiably relied on Nestlé's misrepresentations as set out in the above paragraph.  Defendants advertised BOOST Kid Essentials with the intent that Plaintiffs and the Proposed Class rely on the above misrepresentations.  Plaintiffs purchased BOOST Kid Essentials because they believed Defendants' advertisements.

119.    These misrepresentations were also guarantees or warranties given to Plaintiffs and

the Proposed Class of purchasers of BOOST Kid Essentials and Nestlé failed to comply with them.

120.     The misrepresentations were also fraudulent and deceptive conduct which created a likelihood of confusion or misunderstanding, because, among other things, Nestlé stated that health benefits of BOOST Kid Essentials were "clinically shown," consumers were likely to believe that the benefits were in fact clinically shown.

121.     As a result of Defendants' misconduct, the plaintiffs suffered an ascertainable loss, in that they did not receive what they thought they were purchasing:  Plaintiffs paid money for a drink advertised to have clinically shown benefits that did not have those benefits.

122.     Plaintiff request that this Court order, as it is empowered to order, the payment of actual damages, trebled damages, and attorneys' fees and costs in an amount to be proven at the time of trial.  Plaintiffs also request an order enjoining Defendants' unlawful practices.

# XI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1.    for an order certifying the Class;

2.    for damages, where allowable, in an amount to be proven at trial on all Claims;

3.    for an award of disgorgement and restitution of Defendants' revenues to Plaintiffs and the Class, including accrued interest;

4.    for declaratory relief finding that Defendants have engaged in unfair, unlawful, or fraudulent business acts or practices in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq*.;

5.    for declaratory relief finding that Defendants have engaged in unfair, unlawful, or fraudulent business acts or practices in violation of the UCL;

6.    for declaratory relief finding that Defendants have engaged in false advertising in violation of California Business and Professions Code section 17500;

7.   for declaratory relief finding that Defendants have violated California's CLRA;

8.   for declaratory relief finding that Defendants have violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law;

9.   for a temporary restraining order and a preliminary and permanent injunction enjoining Defendants and their officers, directors, agents, distributors, servants, employees, attorneys, and all others in active concert or participation with Defendants, or any of them, jointly and severally, during the pendency of this action and permanently thereafter from engaging in the scheme described above;

10.  for interest at the maximum rate allowed by law;

11.  for treble damages where allowable;

12.  for costs of suit;

13.  for attorneys' fees and all litigation expenses pursuant to N.J.S.A. 56:8-19, Cal. Civ. Pro. § 1021, the substantial benefit doctrine; and/or the common fund doctrine; and

14.  for such other and further relief as the Court may deem just and proper.

## X.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury for all issues so triable.


**SKOLOFF & WOLFE, P.C.**

**NICHOLAS & BUTLER, LLP**


Dated: September 23, 2011          By:  _/S/ David B. Wolfe_____
                                       David B. Wolfe
                                       Jonathan W. Wolfe
                                       Barbara A. Schweiger

                                       Matthew B. Butler

                                       Attorneys for Plaintiff Maria Johnson

**THE ROSEN LAW FIRM, P.A.**

Dated: September 23, 2011              By:  /s/ Laurence M. Rosen
                                           Laurence M. Rosen
                                           Attorneys for Plaintiff Kurt Scheuerman

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT