## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KURT SCHEUERMAN, individually and on behalf of all other similarly situated,<br><br>          Plaintiff,<br><br>   v.<br><br>NESTLE HEALTHCARE NUTRITION, INC.,<br><br>        Defendant. | Civil Action No.: 10-CV-03684-FSH-PS<br><br>Motion Date: November 21, 2011-Oral Argument Requested |
| MARIA JOHNSON, an individual, on behalf of herself and all others similarly situated, and ROES 1 through 100, inclusive<br><br>        Plaintiffs,<br><br>v.<br><br>NESTLÉ HEALTHCARE NUTRITION, INC.,<br><br>        Defendant. | Civil Action No.: 10-CV-5628-FSH-PS |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

Geoffrey W. Castello
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, New Jersey 07054
(973) 503-5900

Daniel S. Blynn (*pro hac vice*)
KELLEY DRYE & WARREN LLP
3050 K Street, NW
Suite 400
Washington, DC 20007
(202) 342-8400

*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

INTRODUCTION ........................................................................................3

PROCEDURAL BACKGROUND.....................................................................5

BACKGROUND ........................................................................................7

    A.    Allegations of the Complaint ................................................7

    B.    The FTC's Complaint and Consent Order .............................8

ARGUMENT .........................................................................................10

I.    LEGAL STANDARD ON MOTION TO DISMISS ..................................10

II.    PLAINTIFFS' CLAIMS OF PRIOR SUBSTANTIATION SHOULD BE DISMISSED ...............................................................................11

    A.    The Doctrine of Prior Substantiation Does Not Apply to Scheuerman's NJCFA Claim .............................................13

    B.    Johnson's "Prior Substantiation" Theory Has Been Expressly Rejected Under California Law ........................................18

CONCLUSION.......................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arizona v. California,*
    460 U.S. 605 (1983)........................................................................22

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 554 (2007)........................................................................10

*CEC Energy Co., Inc. v. Pub. Serv. Comm'n of the Virgin Islands,*
    891 F.2d 1107 (3d Cir. 1989) ............................................................9

*Chavez v. Nestlé USA, Inc.,*
    No. CV 09-9192, 2011 WL 2150128 (C.D. Cal. May 19, 2011)................19, 21

*Farina v. Nokia, Inc.,*
    625 F.3d 97 (3d Cir. 2010) ...............................................................22

*Fraker v. Bayer Corp.,*
    No. 08-1564, 2009 WL 5865687 (E.D. Cal. Oct. 6, 2009) ........13, 18, 19, 20, 21

*Franulovic v. Coca Cola Co.,*
    No. 07-0539, 2009 WL 1025541 (D.N.J. Apr. 16, 2009) ................................16

*Franulovic v. Coca Cola Co.,*
    390 Fed. Appx. 125 (3d Cir. 2010)........................12, 13, 14, 15, 17, 18

*Frederico v. Home Depot,*
    507 F.3d 188 (3d Cir. 2007) .............................................................10

*FTC v. Standard Oil Co. of California,*
    449 U.S. 232 (1980)...........................................................................9

*In re Mercedes Benz Tele-Aid Contract Litig.,*
    267 F.R.D. 113 (D.N.J. 2010) ..........................................................22

*In re Nestlé Healthcare Nutrition, Inc.,*
    FTC No. 092 3087, Agreement Containing Consent Order at ¶ 5 ..................8, 9

*Johns v. Bayer Corp.,*
    No. 09CV1935, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010)................................9

*Kwanzaa v. Brown,*
  No. 05-5976, 2006 WL 2403978 (D.N.J. Aug. 17, 2006)...........................10, 11

*Mayer v. Belichick,*
  605 F.3d 223 (3d Cir. 2010) ...................................................................10

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.,*
  107 Cal. App. 4th 1336 (2003) ..........................................................15, 18

*Pelkey v. McNeil Consumer Healthcare,*
  No. 10-61853-CIV, 2011 WL 677424 (S.D. Fla. Feb. 16, 2011) ......................13

*Petruska v. Gannon Univ.,*
  462 F.3d 294 (3d Cir. 2006) ...................................................................10

*Serbin v. Ziebart Intl Corp.,*
  11 F.3d 1163 (3d Cir. 1993) ...................................................................15

*Yocham v. Novartis Pharms. Corp.,*
  736 F. Supp. 2d 875 (D.N.J. 2010)............................................................22

**STATUTES**

73 Pa. Stat. Ann. § 201-1 *et seq.*.......................................................3, 22, 23

15 U.S.C. §§ 41 *et seq.* .........................................................................14

15 U.S. C. § 45(a) ................................................................................14

Cal. Bus. & Prof. Code §§ 17200 *et seq.*.................................2, 13, 18, 19, 20, 21

Cal. Bus. & Prof. Code §§ 17500 *et seq.*.................................2, 13, 18, 19, 20, 21

New Jersey Consumer Fraud Act ................................. 2, 13, 14, 15, 16, 17, 22, 23

**OTHER AUTHORITIES**

16 C.F.R. § 3.2 ....................................................................................8

Fed. R. Civ. 12(b)(6)........................................................................3, 10

Fed. R. Civ. P. 11(b)(3), (c)....................................................................9

Fed. R. Civ. P. 12(b)(6)...........................................................................10

Fed. R. Civ. P. 12(b)(6)..........................................................................1, 10

FTC Press Release, *Nestlé Subsidiary to Settle FTC False Advertising Charges; Will Drop Deceptive Health Claims for BOOST Kid Essentials* (July 14, 2010) ..........................................................................4

http://www.ftc.gov/opa/2010/07/nestle.shtm....................................4, 6, 9

http://www.ftc.gov/os/caselist/0923087/100714nestlecmpt.pdf .............9

http://www.ftc.gov/os/caselist/0923087/index.shtm. ...............................3

Defendant Nestlé Healthcare Nutrition, Inc. ("Nestlé") respectfully submits this memorandum of law in support of its motion for an order dismissing the First, Fourth, Fifth, Sixth and Seventh Claims of plaintiffs Maria Johnson's and Kurt Scheuerman's Amended Consolidated Class Action Complaint (the "Complaint") (*Scheuerman* Docket No. 118; *Johnson* Docket No. 74) pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

The Complaint asserts four new claims under California and Pennsylvania consumer protection statutes. It also corrects an alleged error regarding the initial date when Scheuerman allegedly purchased the Boost® Kid Essentials Drink ("BKE") product, and adds three new state-only subclasses to Plaintiffs' class definition. As explained more fully below, bringing in the four new state law claims and three new subclasses does nothing to save Plaintiffs' doomed pleading.

All of the allegations in this action are based on nothing more than an investigation conducted by the Federal Trade Commission ("FTC") regarding advertising claims about BKE. Once again, Plaintiffs attempt to do what the Third Circuit and two California courts would not allow—shoehorn an alleged violation of the FTC Act into a private cause of action. The investigation at issue here ended without any ruling or finding by the FTC that Nestlé falsely advertised or marketed

its BKE.  Notwithstanding the fact that the FTC made no findings in connection with its investigation of Nestlé, Plaintiffs here have filed their fourth complaint in the hopes of achieving a quick pay-day.  Like its predecessors, the Complaint alleges virtually no facts relating to Plaintiffs or the nationwide class they seek to represent.  Again, Plaintiffs provide absolutely no basis for their claims that Nestlé's nationwide marketing representations regarding BKE are "unsubstantiated" and, thus in their words, "deceptive and misleading."  Compl. ¶ 3.

Plaintiffs allege that Nestlé's claims and representations about BKE are deceptive and misleading based on nothing more than a consent order (the "Consent Order") that Nestlé entered into with the FTC in July 2010 at the conclusion of the FTC's investigation.  The terms of that Consent Order are very different, however, from Plaintiffs' allegation that Nestlé's claims about the health benefits of BKE are made without a reasonable basis.  *Id.* at ¶¶ 3, 8.  Moreover, Plaintiffs do not allege – because they cannot – that their respective children received no health benefits from BKE.

Plaintiffs assert causes of action against Nestlé under the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. §§ 56:8-1, *et seq.*; California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and Consumer

Legal Remedies Act ("CLRA"), Cal. Civ. §§ 1750 *et seq*.; and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201-1 *et seq*. They also maintain their negligent misrepresentation and breach of warranty claims. As explained more fully below, however, Plaintiffs have not alleged any actionable conduct by Nestlé.

## INTRODUCTION

On this, their fourth attempt at a complaint, Plaintiffs still do nothing to hide from the fact that this case is about nothing other than an investigation conducted by the FTC relating to certain express and implied claims that the FTC alleged Nestlé made about BKE. The FTC investigation ended with a no-money settlement (without any formal litigation), which was memorialized in the Consent Order. The Consent Order prohibits Nestlé from making the claims challenged by the FTC without possessing and relying upon "competent and reliable scientific evidence" as defined by a new, heightened legal standard set forth in the Consent Order, which did not previously exist.[1] The FTC and Nestlé never litigated the issue of whether Nestlé possessed such scientific evidence regarding its advertising claims about BKE and no court ever made a decision on that issue. Importantly, the FTC never made any finding that Nestlé's advertising was false. In fact, the FTC expressly acknowledged the exact opposite: that it was "***not*** a finding or

---

[1] Copies of the FTC complaint and consent decree are available at http://www.ftc.gov/os/caselist/0923087/index.shtm.

ruling that [Nestlé] has actually violated the law." FTC Press Release, *Nestlé Subsidiary to Settle FTC False Advertising Charges; Will Drop Deceptive Health Claims for BOOST Kid Essentials* (July 14, 2010) (emphasis added) (available at http://www.ftc.gov/opa/2010/07/nestle.shtm) (hereinafter, "FTC Press Release").

Based on a careful review of the many complaints filed by Plaintiffs in this action, including this most recent Complaint, it is now clear that but for the FTC action, the instant action would not exist. There are absolutely no facts plead to support the claims in this action absent the FTC complaint and Consent Decree. Once again, Plaintiffs make clear that their entire action relies exclusively on the FTC's investigation as the sole basis for their claim that Nestlé lacks substantiation for their allegation that BKE is not "clinically proven." They have nothing else to offer the Court. Moreover, Plaintiffs previously have advised the Court that this case concerns only Nestlé's "clinically shown" claim; they do not claim that BKE did not confer the benefits that Nestlé advertised – only that those advertised benefits were not clinically proven. *See* Complaint (Docket No. 118), at ¶ 2 ("Defendants market and sell BOOST Kids Essentials, targeting children, particularly those aged 1 through 13, and their parents, and extolling purported health benefits that are supposedly 'clinically shown.'"); *see also* Docket No. 73,[2] at 5 ("Plaintiff Johnson is not claiming that [BKE] made her children sick" and

---

[2]     All docket entry references herein are to the *Scheuerman* docket unless stated otherwise.

"Plaintiff's complaint is not whether in fact such benefits might exist, but rather, concerns the factual basis for Nestlé's claim that any such health benefits have been 'clinically shown'") & 24 (Scheuerman stating "[t]his case is about Defendant's claim that the benefits were 'clinically shown' was false and misleading.").

## PROCEDURAL BACKGROUND

Scheuerman filed his initial complaint in this action on July 22, 2010 – eight days after the FTC issued its press release announcing its settlement with Nestlé. Docket No. 1. On August 30, 2010, Nestlé moved to dismiss that complaint. Docket No. 7. Rather than oppose Nestlé's motion, on September 20, 2010, Scheuerman filed his first amended complaint. Docket No. 9. Nestlé moved to dismiss the first amended complaint on October 27, 2010. Docket No. 14.

On September 3, 2010, Johnson filed her first class action complaint in the Superior Court of New Jersey (*Johnson* Docket No. 1), which Nestlé removed to this Court. The Court consolidated the *Scheuerman* and *Johnson* actions on November 15, 2010 and allowed Plaintiffs to file a consolidated complaint by December 10, 2010. Docket No. 18. Plaintiffs took advantage of the Court's pre-trial consolidation order and filed their consolidated class action

complaint on December 10.  Docket No. 27[3].  For a third time, Nestlé moved to dismiss.  Docket No. 32.

On August 1, 2011, the Court granted in part and denied in part Nestlé's motion to dismiss Plaintiffs' consolidated complaint.  Docket No. 99.  The Court dismissed Johnson's New Jersey Consumer Fraud Act ("NJCFA") claim but stated that she "may seek permission to amend her Complaint should she seek to assert a consumer fraud claim under California law."  *Id.* at 9.  It made no mention of allowing Scheuerman to amend his complaint.  The Court denied Nestlé's motions to dismiss Plaintiffs' negligent misrepresentation and breach of express warranty claims, and Scheuerman's NJCFA claim.  With respect to the latter, the Court found that New Jersey, rather than Pennsylvania, law applied to Scheuerman's statutory fraud claim.  *Id.*

On September 23, 2011, Plaintiffs filed the Complaint (*Scheuerman* Docket No. 118; *Johnson* Docket No. 74).  Johnson added claims under California's UCL, FAL, and CLRA.  Despite the Court's previous finding that New Jersey – not Pennsylvania – law applies to Scheuerman's claims, he now inexplicably asserts a claim under Pennsylvania's UTPCPL.[4]  Plaintiffs also seek

---

[3]   Both Scheuerman and Johnson were deposed based on the allegations in that complaint.

[4]   Scheuerman vigorously opposed Nestlé's previous motion to dismiss his complaint arguing that the NJCFA, not the Pennsylvania UTPCPL should apply.  Docket No. 43 at 3-11.

to add three new sub-class definitions and correct the first date when Scheuerman allegedly purchased BKE.

## **BACKGROUND**

### A.    **Allegations of the Complaint**

Plaintiff Johnson, a California resident (Compl. ¶ 6), alleges that she purchased BKE for her children. *Id.* She sets forth no significant facts regarding her experience with either Nestlé or BKE other than that she purchased BKE as part of her "regular grocery shopping" and, presumably, read the packaging and saw some unspecified "print, media and online" BKE advertising, including marketing material that Nestlé purportedly provided to her pediatrician (rather than to her or the general public). *Id.* Like Johnson, Scheuerman baldly alleges that he purchased BKE for two of his children based on Nestlé's television commercials, print advertisements, and labeling. *Id.* at ¶ 7. Both Plaintiffs, however, fail to allege exactly what they read in the BKE advertising, or on the BKE labeling or packaging. Indeed, Plaintiffs neglect to plead when and where they were exposed to Nestlé's claims about BKE, where, specifically, they purchased it, or upon which specific claims they relied when they purchased BKE. Notably, the Complaint is bereft of any allegation that Plaintiffs received no health benefit from BKE. Out of the 122 paragraphs contained in the Complaint, all we know about Plaintiffs is what we learn in two paragraphs.

Plaintiffs' claims boil down to a simple premise – based on nothing more than the FTC Consent Order, they allege only that Nestlé lacked the requisite substantiation to make its claims about BKE and that, therefore, the claims were misleading. *Id.* at ¶¶ 3, 8, 26, 33, 46, 69, 87. 94 and 105.

**B.    The FTC's Complaint and Consent Order**

In mid-July 2010, Nestlé and the FTC reached a settlement concluding the agency's investigation into Nestlé's advertising and marketing relating to BKE.  Pursuant to Part 3 of the FTC Rules of Practice, 16 C.F.R. § 3.2, the FTC filed an administrative complaint and, at the same time, entered the Consent Order resolving the investigation and complaint.

The Consent Order is merely a promise by Nestlé to change certain of its corporate practices based on allegations made by the FTC.  It makes clear that "[t]his [the Consent Order] is for settlement purposes only and ***does not constitute an admission that the law has been violated*** as alleged in the draft complaint, or that the facts as alleged in the draft complaint, other than the jurisdictional facts, are true."  *In re Nestlé Healthcare Nutrition, Inc.*, FTC No. 092 3087, Agreement Containing Consent Order at ¶ 5 (emphasis added).[5]  Pursuant to the Consent Order, Nestlé made no admission that its advertising or marketing relating to BKE

---

[5]    The Consent Order is available at http://www.ftc.gov/os/caselist/0923087/100714nestleorder.pdf.

was false or misleading, and the FTC made no such finding. *See id.*, Complaint[6]
(stating that the FTC merely had "reason to believe" that Defendant violated the
FTC Act) (available at http://www.ftc.gov/os/caselist/0923087/100714nestlecmpt.p
df).[7]

Despite multiple amendments, Plaintiffs' Complaint remains to be
nothing more than a thinly veiled attempt to leverage the FTC administrative
complaint and Consent Order into a private, nationwide consumer class action. In
fact, their Complaint attaches exact photocopies of the exemplar BKE advertising
and marketing material that were attached to the FTC's administrative complaint.

---

[6] Throughout their Complaint, Plaintiffs characterize the administrative complaint as representing the FTC's "conclusions" and "findings." *See* Compl. ¶¶ 4, 37. The FTC's administrative complaint, however, makes no such findings, much less any conclusions. Like any other civil complaint, the "issuance of [an] FTC complaint averring reason to believe [that a] defendant violated [the FTC Act] *is not a definitive position* but a threshold determination that further inquiry is warranted, a prerequisite to a definitive position that defendant violated [the] Act." *CEC Energy Co., Inc. v. Pub. Serv. Comm'n of the Virgin Islands*, 891 F.2d 1107, 1110 (3d Cir. 1989) (emphasis added) (citing *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 241 (1980)); *see also Johns v. Bayer Corp.*, No. 09CV1935, 2010 WL 476688, at *3 (S.D. Cal. Feb. 9, 2010) (explaining that FTC lawsuit that resulted in a settlement and consent decree was not an "adjudication on the merits and no admission of wrongdoing or fault on the part of [defendant]"). Plaintiffs' blatant mischaracterizations that the FTC concluded and found that Nestlé's BKE advertisements were false or misleading are untenable and border on sanctionable conduct. *See* Fed. R. Civ. P. 11(b)(3), (c) (by signing a pleading, an attorney certifies that "the factual contentions have evidentiary support," and the Court may sanction the attorney if the allegations are not supportable).

[7] The FTC's July 14, 2010 press release announcing the administrative complaint and Consent Order is equally explicit:

The complaint is not a finding or ruling that the respondent has actually violated the law. The consent agreement is for settlement purposes only and does not constitute admission by the respondent of a law violation.

(available at http://www.ftc.gov/opa/2010/07/nestle.shtm).

*Compare* Docket No. 27 at Exhs. "A" through "D"; *with* FTC administrative complaint Exhs. "A1" through "C," and "E."[8]

## ARGUMENT

**I.   LEGAL STANDARD ON MOTION TO DISMISS**

A motion under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006). Dismissal under Rule 12(b)(6) is appropriate where the complaint "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). All well-pled factual allegations generally are taken to be true, but the Court need not accept or credit legal conclusions, inferences, allegations, or bald assertions that are unwarranted by the facts as presented in the complaint and its attachments. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007); *Mayer v. Belichick*, 605 F.3d 223, 229-30 (3d Cir. 2010).

To state a valid claim for relief, the complaint must sufficiently allege the essential elements of the legal claims asserted. *Frederico v. Home Depot*, 507 F.3d 188, 204 (3d Cir. 2007). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Kwanzaa v. Brown*, No. 05-5976, 2006 WL 2403978, at *12 (D.N.J. Aug. 17, 2006).

---

[8]      Available at http://www.ftc.gov/os/caselist/0923087/100714nestleexhibits.pdf .

## II.   PLAINTIFFS' CLAIMS OF PRIOR SUBSTANTIATION SHOULD BE DISMISSED

Plaintiffs' entire Complaint rests on the single premise that Nestlé cannot substantiate the advertising claims that it made about BKE and which Plaintiffs now challenge. *See id.* at ¶¶ 3 & 26 ("[Nestlé] made these bold claims in advertisements and on the product containers, without any reasonable basis for doing so and without substantiating them."); 4 ("Nestlé did not, and does not possess the requisite substantiation for these purported health claims"); 8 ("Despite [Nestlé's] extensive marketing scheme made in advertisements; online; on product containers; and through pediatricians, [Nestlé] did not possess or rely upon a reasonable basis that substantiated these purported health benefits."); 33 ("[Nestlé] made these claims in advertisements without any support for the claims based on competent and reliable scientific evidence and/or without any basis in fact for doing so."); 46 ("the claims of all members of the Class and each subclass result from [Nestlé's] sale and marketing of [BKE] as having specific, clinically shown health benefits, while [Nestlé] had no clinical showing or reason to believe [its] product provided such health benefits"); 60 ("[Nestlé] violated the CFA by dishonestly representing [BKE] provided particular express and implied health benefits to children who ingested the Product when such claims were unsubstantiated by [Nestlé]."); 69 ("When [Nestlé] made the above-referenced representations about [BKE] being clinically shown to provide specific health

benefits, [it] had no reasonable ground for believing them to be true."); 87 ("[Nestlé] violated the UCL by fraudulently and unfairly representing [BKE] provided particular express and implied health benefits to children who ingested [BKE] when such claims were unsubstantiated by [Nestlé] and/or false."); 94 ("[Nestlé] violated Section 17500 by disseminating untrue and misleading advertising regarding [BKE], including advertisements claiming [BKE] possessed particular express and implied health benefits for children who ingested [BKE] when such claims were unsubstantiated by [Nestlé]."); and 105 ("[Nestlé] violated the CLRA by misrepresenting that [BKE] provided particular express and implied health benefits for children who ingested [BKE] when such claims were unsubstantiated by [Nestlé].").

The Third Circuit, California state and federal courts, and others, however, have held that a false advertising case premised on allegations that the defendant lacks substantiation does not state a viable cause of action and must be dismissed. *See, e.g., Franulovic v. Coca Cola Co.*, 390 Fed. Appx. 125, 127-28 (3d Cir. 2010); *Chavez v. Nestlé USA, Inc.*, No. CV 09-9192, 2011 WL 2150128, at *5 (C.D. Cal. May 19, 2011) ("Plaintiff has provided no authority for the proposition that the absence of substantiation of an advertising claim is, itself, falsity or somehow misleading. . . . In short, the government, representing the Federal Trade Commission, can sue an advertiser for making unsubstantiated

advertising claims; a private plaintiff cannot."); *Pelkey v. McNeil Consumer Healthcare*, No. 10-61853-CIV, 2011 WL 677424, at *4 (S.D. Fla. Feb. 16, 2011) (under Florida law, a plaintiff cannot state a false advertising violation based on an allegation that an advertiser does not have substantiation for a challenged advertising claim); *Fraker v. Bayer Corp.*, No. 08-1564, 2009 WL 5865687, at *2, *7 (E.D. Cal. Oct. 6, 2009) (dismissing UCL, FAL, and CLRA complaint and holding that prior substantiation is not a cognizable claim under California law).

Plaintiffs' NJCFA, UCL, and CLRA must be dismissed because they all rest on claims of a lack of prior substantiation.

## A. The Doctrine of Prior Substantiation Does Not Apply to Scheuerman's NJCFA Claim

The Third Circuit has recently held that the theory of "prior substantiation" is not a cognizable legal theory under the NJCFA. *See, e.g., Franulovic*, 390 Fed. Appx. 127-28 (affirming district court's refusal to allow plaintiff to amend her complaint to assert a NJCFA claim alleging that defendant was required to adequately substantiate its advertising claims because "a [NJCFA] claim cannot be premised on a prior substantiation theory of liability" and such amendment would be futile).

Following *Franulovic*, this Court should reject Scheuerman's attempted reliance on the prior substantiation doctrine to establish a violation of the NJCFA for several reasons. First, the prior substantiation doctrine has never

been applied to the NJCFA; it is a doctrine originally developed under the FTC Act, a federal statute that does not permit actions by private claimants. Plaintiffs cannot identify any case in which a New Jersey court has recognized an individual action for lack of prior substantiation under the NJCFA. In fact, now that the Third Circuit has spoken in *Franulovic*, Plaintiffs are foreclosed from even attempting to argue that the prior substantiation doctrine can be utilized to establish an alleged violation of the NJCFA.

Notwithstanding the Third Circuit's clear holding in *Franulovic*, Plaintiffs continue to try to introduce into the NJCFA the concept of "prior substantiation." The prior substantiation doctrine was developed solely in the context of the FTC Act and, even then, only allowing the FTC to seek, pursuant to its statutorily authorized pre-complaint investigatory powers, substantiation for advertising claims. The FTC Act is a federal statute authorizing the FTC to identify and prosecute a wide range of practices and to fashion corrective action. 15 U.S.C. §§ 41 *et seq*. The FTC is an independent regulatory agency granted exclusive enforcement power under the FTC Act to protect the public. *See* 15 U.S. C. § 45(a).

It is well established that the FTC Act does not authorize actions by private claimants such as Plaintiffs. The prior substantiation doctrine, therefore, developed within the FTC Act case law has no application to Plaintiffs' NJCFA

14

claim.  *See Franulovic*, 390 Fed. Appx. at 128; *see also Serbin v. Ziebart Intl Corp.*, 11 F.3d 1163, 1178-79 (3d Cir. 1993).  In any event, the FTC, like other plaintiffs, has the burden of proving falsity once it files a lawsuit; the burden is not on the defendant to provide evidence that, in fact, its claims have a reasonable basis.  *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th  1336, 1349-1350 (2003) ("Regardless of the level of substantiation required . . . [in litigation], the FTC still bears the burden of proving advertising claims are false or misleading.  In other words, the FTC may administratively impose on an advertiser the burden of producing evidence to substantiate its advertising claims, but the FTC, in an action for false advertising, bears the burden of proving the advertising claim is, in fact, false or misleading.") (internal citations omitted).

The Third Circuit has expressly refused to extend the FTC's prior substantiation doctrine applicable to false advertising cases under the NJCFA.  For example, in *Franulovic*, the plaintiff asserted an NJCFA claim against Coca Cola on behalf of a putative class of consumers, alleging that the company engaged in fraudulent and deceptive marketing of its "Enviga" green tea soft drink in violation of the NJCFA.  Specifically, the plaintiff challenged the veracity of Coca Cola's advertisements, which stated that drinking three cans of Enviga daily would lead to weight loss.  This Court granted Coca Cola's motion for summary judgment and

denied the plaintiff's motion for leave to file a fourth amended complaint, which, among other things, asserted that Coca Cola advertised Enviga as a calorie burning drink without prior substantiation. *Franulovic v. Coca Cola Co.*, No. 07-0539, 2009 WL 1025541 (D.N.J. Apr. 16, 2009). Specifically, the proposed fourth amended complaint alleged that "Coke made these claims [the challenged weight loss claims] without adequate prior substantiation for them," and that the "weight-loss representations for the product (whether express or implied) cannot be substantiated because the small number of studies that exist are conflicting and inadequate to substantiate the representations." *Franulovic* Docket No. 121-1, at ¶¶ 6, 19.[9]

In opposition to the plaintiff's motion for leave to amend, Coca Cola argued, among other things, that it is the plaintiff's burden under the NJCFA to affirmatively prove that the challenged representation is false; the burden cannot be shifted to the defendant to prove that the claim, in fact, is true and substantiated. *See Franulovic* Docket No. 124, at 15-16. This Court held that the proposed amendment to include a claim that Coca Cola did not have substantiation to

---

[9]     *See also id.* at ¶ 28 ("There is in fact no substantiation or reasonable basis for claiming that Enviga (or the amounts of EGCG and caffeine in three cans of Enviga) has any effect on caloric balance or weight for the majority of adults, who are not young, healthy, and thin."). The proposed amended complaint also claimed that the study Coke relied upon "neither substantiates nor provides a reasonable basis for the claims made by Coke regarding Enviga." *Id.* at ¶ 27.

support the challenged weight loss claims would be futile because "the [NJCFA] does not recognize this theory of liability." *Franulovic*, 390 Fed. Appx. at 127 (explaining this Court's ruling). The Third Circuit affirmed, holding that "[n]o New Jersey or Third Circuit decision has applied the prior substantiation theory to the [NJCFA], and we, therefore, decline to do so here." *Id.* at 128.

The Third Circuit has clearly recognized that the prior substantiation doctrine applicable under the FTC Act is inappropriate for use in false advertising litigation under the NJCFA. *Franulovic*, 390 Fed. Appx. at 127-128. This Court should not extend the concept of prior substantiation to private plaintiffs under the NJCFA, because to do so would subject companies like Nestlé to significant risk and expense from constant litigation by private claimants, especially private claimants who have no independent basis for their claims such as these Plaintiffs. If private claimants are not required to provide evidence that advertising claims are false, and that there is a causal link between the alleged deceptive advertising and the alleged harm, a plaintiff's baseless claims would subject companies to a litigation process that would include extensive discovery, expense and disruption simply to defend against such claims. This is exactly what these Plaintiffs have done to Nestlé. They offer this Court absolutely no basis for alleging their claims that Nestlé lacked substantiation for the advertisement claims that it made about BKE other than the FTC Consent Decree. The Third Circuit has clearly held that

claims based on allegations of a lack of substantiation must be dismissed. *Franulovic*, 390 Fed. Appx. at 127-128. Plaintiffs' attempt to infuse the concept of prior substantiation into the NJCFA must, therefore, fail.

### B. Johnson's "Prior Substantiation" Theory Has Been Expressly Rejected Under California Law

Similar to New Jersey, California law does not provide for a private right of action for unsubstantiated advertising claims: "the government, representing the Federal Trade Commission, can sue an advertiser for making unsubstantiated advertising claims; a private plaintiff cannot." *Fraker*, 2009 WL 5865687, at *8 (citing *King Bio*, 107 Cal. App. 4th at 1349-1350); *Chavez*, 2011 WL 2150128, at *5. Yet that is exactly what Johnson attempts to do in her most recent Complaint (apparently, like Scheuerman, in an attempt to overcome her inability to support her claims with specific facts).

Specifically, Johnson alleges that Nestlé violated California's UCL and CLRA by "fraudulently and unfairly representing [BKE] provided particular express and implied health benefits to children who ingested [BKE] when such claims were unsubstantiated by [Nestlé] and/or false" Compl. at ¶ 87; "disseminating untrue and misleading advertising regarding [BKE], including advertisements claiming [BKE] possessed particular express and implied health benefits for children who ingested [BKE] when such claims were unsubstantiated by [Nestlé]"; *Id.* at ¶ 94; ("[Nestlé] violated the CLRA by misrepresenting that

[BKE] provided particular express and implied health benefits for children who ingested [BKE] when such claims were unsubstantiated by [Nestlé]." *Id.* at ¶ 105.

Just a few months ago, in *Chavez v. Nestlé USA, Inc.*, the Central District of California adopted its tentative ruling dismissing a class action complaint, which claimed that Nestlé violated the UCL and FAL based on alleged deceptive marketing and advertising practices in connection with its Juicy Juice Immunity and Brain Development beverages. 2011 WL 2150128, at *5, *7. Like Plaintiffs here, the plaintiff in *Chavez* alleged that Nestlé's advertising claims about its products were false and deceptive because they were unsubstantiated. Nestlé moved to dismiss, arguing that false advertising claims cannot be based upon a lack of substantiation theory; the court agreed and dismissed ***without leave to amend***. *Id.* at *5, *7 ("Plaintiffs' allegations regarding a lack of substantiation for [Nestlé's] product claims (as alleged here) cannot support a cause of action under the UCL or FAL.").

Relying on the Eastern District of California's prior decision in *Fraker* (discussed *infra*), the *Chavez* court expressly held that "false advertising claims cannot be based upon a lack of substantiation." *Id.* at *5. Indeed, according to the court:

> Plaintiff has provided no authority for the proposition that the absence of substantiation of an advertising claim is, itself, falsity or somehow misleading. . . . In short, the government, representing the Federal

> Trade Commission, can sue an advertiser for making unsubstantiated advertising claims; a private plaintiff cannot.

*Id.* (quoting *Fraker*, 2009 WL 5865687, at *8).

In *Fraker*, the Eastern District of California dismissed the plaintiff's allegations that the Bayer Corporation lacked substantiation for its One-A-Day WeightSmart vitamin supplement advertising claims and, therefore, violated the CLRA, UCL, and FAL, holding that prior substantiation is not a cognizable claim under California law. *Fraker*, 2009 WL 5865687, at *2, *7. Like Plaintiffs here, the plaintiff in *Fraker* filed her class action complaint against Bayer after the FTC settled its lawsuit against the company alleging violations of the FTC Act. The FTC settlement, which was memorialized in a consent decree, prohibited Bayer from, among other things, advertising unsubstantiated claims regarding the ability of One-A-Day WeightSmart to enhance metabolism or promote weight loss. The plaintiff claimed that Bayer's advertising claims were not substantiated by reliable scientific evidence and, in turn, violated the CLRA, UCL, and FAL.

Calling the plaintiff's complaint an "attempt to shoehorn an allegation of violation of the [FTC] Act . . . into a private cause of action," the court recognized that the FTC, not private plaintiffs, retains ***exclusive*** jurisdiction over ensuring that advertising claims are substantiated. *Id.* at *7 ("[T]he [FTC] Act vests remedial power ***solely*** in the Federal Trade Commission and ***a regulation under the FTCA does not create a private right of action.***") (emphasis added).

The court further elaborated that a private plaintiff cannot avoid her obligations to plead and prove that an advertisement is false or misleading by styling the claim as one for unsubstantiated advertising:

> To successfully allege a claim for false advertising, ***Plaintiff has the burden to plead and prove facts that show that the claims that Defendants made in connection with [the] product are false or misleading. Plaintiff has provided no authority for the proposition that the absence of substantiation of an advertising claim is, itself, falsity or somehow misleading.*** . . . [T]he court is unwilling to make that leap. If Plaintiff is going to maintain an action against Defendant for false or misleading advertising, then Plaintiff will be required to adduce evidence sufficient to present to a jury to show that Defendant's advertising claims with respect to [the] Product are actually false; not simply that they are backed up by scientific evidence.

Id. at *8 (emphasis added and internal citation omitted).

Just like the plaintiffs' California law claims in *Chavez* and *Fraker*, Johnson's CLRA, UCL, and FAL causes of action are based entirely on her allegation that Nestlé lacks substantiation for the challenged advertising claims. The *Chavez* and *Fraker* courts made clear, however, that such a theory of liability is not cognizable under California law. Thus, all of Johnson's causes of action under California law should be dismissed.

## III.   THE "LAW OF THE CASE" DOCTRINE REQUIRES APPLICATION OF NEW JERSEY LAW, NOT PENNSYLVANIA'S, TO SCHEUERMAN'S STATUTORY FRAUD CLAIM

In its August 1, 2011 Order on Nestlé's motion to dismiss Plaintiff's initial consolidated complaint, the Court rejected Nestlé's argument that

Pennsylvania law applied to Scheuerman's statutory fraud claim and held that New Jersey law applies to Scheuerman's claim. Docket No. 99 at 6, 9. Further, the Court noted that Nestlé could renew its argument that Pennsylvania law applied, but only if Nestlé could prove that Scheuerman is not a New Jersey consumer of BKE. *Id.* at 9 n.10. Thus, the Court accepted Scheuerman's arguments made in opposition to Nestlé's first motion to dismiss and held that the NJCFA rather than UTPCPL applies to his claims. It would be inequitable for Scheuerman to now assert the very same Pennsylvania UTPCPL claim, which he argued so strongly against. Moreover, the "law of the case" doctrine requires that the Court reject Scheuerman's attempt to pile a Pennsylvania statutory fraud claim on Nestlé after the Court already has rejected the application of Pennsylvania law.

"The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Farina v. Nokia, Inc.*, 625 F.3d 97, 117 (3d Cir. 2010) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). Moreover, "the state with the most significant relationship to the occurrence will determine the law of the case." *Yocham v. Novartis Pharms. Corp.*, 736 F. Supp. 2d 875, 883 n.2 (D.N.J. 2010); *In re Mercedes Benz Tele-Aid Contract Litig.*, 267 F.R.D. 113, 138 n.8 (D.N.J. 2010) (once a court determines which state's law applies under a choice of law analysis, the application of that state's law becomes the "law of the

case"). In this case, the Court already has undertaken a detailed choice of law analysis and determined that New Jersey, not Pennsylvania, has the most significant relationship to the parties and claims. Based on Scheuerman's own arguments in opposition to Nestlé's first motion to dismiss, this Court accepted his arguments and held that the NJCFA applies to his claims. Inexplicably, he now argues that the UTPCPL should apply. This Court should not countenance such inconsistent arguments from a litigant on his fourth complaint. Thus, under the law of the case doctrine, the Court's prior decision that New Jersey law applies should continue to govern Scheuerman's claims (as he requested in Plaintiff's opposition to the initial motion to dismiss). Accordingly, the Court should dismiss his UTPCPL claim.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' first, fourth, fifth and sixth claims.

Dated:  October 24, 2011                          KELLEY DRYE & WARREN LLP


By:    *s/ Geoffrey W. Castello*
Geoffrey W. Castello
200 Kimball Drive
Parsippany, New Jersey 07054
(973) 503-5900

Daniel S. Blynn (*pro hac vice*)
KELLEY DRYE & WARREN LLP
3050 K Street, NW
Suite 400
Washington, DC 20007
(202) 342-8400

*Attorneys for Defendant*
*Nestlé Healthcare Nutrition, Inc.*