Geoffrey W. Castello
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, New Jersey 07054
(973) 503-5900

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KURT SCHEUERMAN, individually and on behalf of all other similarly situated, | Civil Action No.: 10-CV-3684-FSH-PS |
| Plaintiff, | Motion Date: May 7, 2012 - Oral Argument Requested |
| v. | |
| NESTLE HEALTHCARE NUTRITION, INC., | |
| Defendant. | |

| | |
|---|---|
| MARIA JOHNSON, an individual, on behalf of herself and all others similarly situated, and ROES 1 through 100, inclusive | Civil Action No.: 10-CV-5628-FSH-PS |
| Plaintiffs, | |
| v. | |
| NESTLÉ HEALTHCARE NUTRITION, INC., | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page(s)**

FACTS ........................................................................................................2

    A.    The FTC Investigation and Plaintiffs' Complaints .............................4

    B.    Scheuerman's Deposition Testimony ................................................9

    C.    Johnson's Deposition Testimony ......................................................10

ARGUMENT ............................................................................................12

I.      LEGAL STANDARD FOR SUMMARY JUDGMENT ............................12

II.     THE DOCTRINE OF PRIOR SUBSTANTIATION BARS
       SCHEUERMAN'S CFA CLAIM ..............................................................14

III.    JOHNSON'S "LACK OF SUBSTANTIATION" THEORY IS NOT
       A COGNIZABLE THEORY OF RECOVERY UNDER THE UCL,
       FAL, OR CLRA ......................................................................................17

IV.   PLAINTIFFS HAVE FAILED TO SATISFY THEIR BURDEN OF
       PROVING THAT THE CHALLENGED CLAIMS WERE MADE,
       OR THAT THEY WERE FALSE OR MISLEADING ..............................23

    A.    Plaintiffs Have Failed to Provide Extrinsic Evidence That
            Nestlé Made the Challenged Implied Claims ....................................24

    B.    Plaintiffs Have Not Met Their Burden of Demonstrating That
            Any Claims Were False or Misleading Under New Jersey,
            Pennsylvania, or California Law........................................................28

V.     NESTLÉ'S ADVERTISING CLAIMS ARE SUPPORTED BY
       COMPETENT AND RELIABLE SCIENTIFIC EVIDENCE IN ANY
       EVENT ....................................................................................................33

VI.   SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFFS'
       BREACH OF EXPRESS WARRANTY CLAIM .......................................38

VII.  NESTLÉ IS ENTITLED TO SUMMARY JUDGMENT ON
       SCHEUERMAN'S CFA AND UTPCPL CLAIMS ....................................41

    A.    Scheuerman Cannot Prove That Nestlé Committed Any
            Unlawful Conduct ..........................................................................42

    B.    Scheuerman Cannot Establish That He Suffered An
            Ascertainable Loss .........................................................................44

i

C.    Scheuerman Cannot Prove That Nestlé's Allegedly Unlawful
      Conduct Caused His Hypothetical Ascertainable Loss .....................50

VIII.  NESTLÉ IS ENTITLED TO SUMMARY JUDGMENT ON
       PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM..............51

IX.    SUMMARY JUDGMENT IS WARRANTED ON JOHNSON'S
       UCL, FAL, AND CLRA CLAIMS ...............................................................56

CONCLUSION.......................................................................................................60

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abercrombie & Fitch Co. v. Fed. Ins. Co.,*
589 F. Supp. 2d 937 (S.D. Ohio 2008) ............................................................... 14

*Abrams v. Toyota Motor Credit Corp.,*
No. 0171049, 2001 WL 1807357 (Pa. Super. Ct. Dec. 5, 2001) ........................ 33

*Agostino v. Quest Diagnostics, Inc.,*
No. 04-4362, 2010 WL 2710561 (D.N.J. July 7, 2010) ..................................... 13

*Am. Fed'n of State County and Mun. Employees v. Ortho-McNeil-Janssen*
*Pharms., Inc.,*
No. 08-cv-5904, 2010 WL 891150 (E.D. Pa. Mar. 11, 2010) ............................ 39

*Am. Home Prods. Corp. v. Johnson & Johnson,*
436 F. Supp. 785 (S.D.N.Y. 1977), *aff'd,* 577 F.2d 160 (2d Cir. 1978) ............ 26

*Am. Home Prods. Corp. v. Procter & Gamble Co.,*
871 F. Supp. 739 (D.N.J. 1994) ........................................................ 25, 26, 28, 29

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ..................................................................................... 12, 41

*Arcanda v. Brother Int'l Corp.,*
673 F. Supp. 2d 282 (D.N.J. 2009) .............................................................. 44, 45

*Avis Rent A Car Sys., Inc. v. Hertz Corp.,*
782 F.2d 381 (2d Cir. 1986) (Friendly, J.) ........................................................ 23

*Biovail Corp. Int'l v. Hoechst Aktiengesellschaft,*
49 F. Supp. 2d 750 (D.N.J. 1999) ....................................................................... 36

*Bosland v. Warnock Dodge, Inc.,*
964 A.2d 741 (N.J. 2009) ................................................................................... 41

*Bower v. AT&T Mobility, LLC,*
196 Cal. App. 4th 1545 (2011) .......................................................................... 56

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
  627 F. Supp. 2d 384 (D.N.J. 2009)........................................................23

*Carlson v. Arnot-Ogden Mem. Hosp.*,
  918 F.2d 411 (3d Cir. 1999) .................................................................13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..............................................................................12

*Chavez v. Nestlé USA, Inc.*,
  No. 09-9192, 2011 WL 2150128 (C.D. Cal. May 19, 2011) ..................passim

*Churchill Village LLC v. Gen. Elec. Co.*,
  169 F. Supp. 2d 1119 (N.D. Cal. 2000) (Patel, C.J.)............................26

*CKE Rest. v. Jack In The Box, Inc.*,
  494 F. Supp. 2d 1139 (C.D. Cal. 2007)..................................25, 27, 28

*Clorox Co. P.R. v. Proctor & Gamble Comm. Co.*,
  228 F.3d 24 (1st Cir. 2000)...................................................................26

*Com. v. Monumental Props., Inc.*,
  329 A.2d 812 (Pa. 1974)................................................................28, 41

*Comm. v. Parisi*,
  873 A.2d 3 (Pa. Cmwlth. 2005)......................................................42, 43

*Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*,
  450 F.3d 130 (3d Cir. 2006) .................................................................24

*Dewey v. Volkswagen AG*,
  558 F. Supp. 2d 505 (D.N.J. 2008).......................................................50

*Direct Mktg. Concepts, Inc. v. FTC*,
  581 F. Supp. 2d 115 (D. Mass. 2008)...................................................35

*Dworman v. Mayor and Bd. of Alderman, Governing Body of Town of
  Morristown*,
  370 F. Supp. 1056 (D.N.J. 1975)..........................................................13

*Fletcher v. Celsius Holdings, Inc.*,
  No. BC439055 (Cal. Super. Ct. Sept. 1, 2011) .......................56, 57, 58

*Fraker*, 2009 WL 5865687, at \*8 ................................................................22

*Fraker v. Bayer Corp.*,
No. 08-1564, 2009 WL 5865687 (E.D. Cal. Oct. 6, 2009) .......................passim

*Franulovic v. Coca Cola Co.*,
390 Fed. Appx. 125 (3d Cir. 2010)..............................................14, 15, 16, 46

*Franulovic v. Coca Cola Co.*,
No. 07-0539, 2009 WL 1025541 (D.N.J. Apr. 16, 2009) ..........................passim

*Franulovic v. Coca-Cola Co.*,
No. 07-539, 2008 WL 3166953 (D.N.J. Oct. 25, 2007).....................................43

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007) ...........................................................................50

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995) ............................................................................33

*FTC v. Chinery*,
No. 05-3460, 2006 WL 3878416 (D.N.J. Dec. 26, 2006) ................................35

*FTC v. Direct Mktg. Concepts, Inc.*,
569 F. Supp. 2d 285 (D. Mass. 2008)..............................................................34

*FTC v. Lane Labs-USA, Inc.*,
624 F.3d 575 (3d Cir. 2010) ...........................................................................32

*FTC v. Lane Labs-USA, Inc.*,
No. 00-CV-3174, 2007 WL 316462 (D.N.J. Jan. 30, 2007), *vacated on other grounds*, 626 F.3d 575 (3d Cir. 2010).......................................................33

*FTC v. Nat'l Urological Group, Inc.*,
645 F. Supp. 2d 1167 (N.D. Ga. 2008)........................................................34, 35

*FTC v. QT, Inc.*,
448 F. Supp. 2d 908 (N.D. Ill. 2006), *aff'd*, 512 F.3d 858 (7th Cir. 2008)........35

*FTC v. QT, Inc.*,
512 F.3d 858 (7th Cir. 2008) ......................................................................29, 36

*Gonzales v. Comcast Corp.*,
    No. 10-cv-01010, 2012 WL 10621 (E.D. Cal. Jan. 3, 2012)..............................59

*H. Rosenblum, Inc. v. Adler*,
    461 A.2d 138 (N.J. 1983) ................................................................................51

*Harvey v. Cytodyne Techs., Inc.*,
    No. MON-C-205-03, 2005 WL 1633729 (N.J. Super. Ch. May 9, 2005) .........33

*Haskell v. Time*,
    965 F. Supp. 1398 (E.D. Cal. 1997) .................................................................26

*Hemy v. Perdue Farms, Inc.*,
    No. 11-888, 2011 WL 60002463 (D.N.J. Nov. 30, 2011)....................41, 44, 48

*Hoffman v. Macy's, Inc.*,
    No. A-6131-08T3, 2011 WL 6585 (N.J. Super. A.D. June 28, 2010) ...............55

*Holloway v. Pigman*,
    884 F.2d 365 (8th Cir. 1989) ...........................................................................13

*In re Firearm Cases*,
    126 Cal. App. 4th 959 (2005) ..........................................................................33

*In re Nestlé Healthcare Nutrition, Inc.*,
    No. C-4312 (FTC Decision and Order entered Jan. 12, 2011)............................5

*In re Pfizer, Inc.*,
    81 FTC 23 (1972) ............................................................................................34

*In re Toshiba Am. HD DVD Mktg. and Sales Practices Litig.*,
    No. 08-939, 2009 WL 2940081 (D.N.J. Sept. 11, 2009)............................50, 51

*Int'l Union of Operating Engineers Local 68 Welfare Fund v. Merck & Co., Inc.*,
    929 A.2d 1076 (N.J. 2007) ..............................................................................45

*Ivans v. Plaza Nissan Ford*,
    No. A-3647-05T1, 2007 WL 1284936 (N.J. Super. A.D. May 3, 2007) ...........55

*Joc, Inc. v. Exxonmobil Oil Corp.*,
    No. 08-5344, 2010 WL 1380750 (D.N.J. Apr. 1, 2010) ...................................39

*Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm.*,
    19 F.3d 125 (3d Cir. 1994) .......................................................................26, 28

*Johnson v. Patenthealth*,
    No. 2:09-cv-05254 (C.D. Cal. Sept. 1, 2009).....................................6, 23, 28, 31

*Kraft, Inc. v. FTC*,
    970 F.2d 311 (7th Cir. 1992) ..........................................................................23

*Kury v. Abbot Labs., Inc.*,
    No. 11-803, 2012 WL 124026 (D.N.J. Jan. 17, 2012) ...............................38, 39

*Kwikset Corp. v. Superior Court*,
    246 P.3d 877 (Cal. 2011).......................................................................56, 57, 59

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.*,
    -- F. Supp. 2d --, 2011 WL 4414214 (D.N.J. Sept. 21, 2011)..........28, 36, 42, 49

*Loreto v. Procter & Gamble Co.*,
    737 F. Supp. 2d 909 (S.D. Ohio 2010) ......................................................44, 47

*Louis W. Epstein Family Partnership v. Kmart Corp.*,
    13 F.3d 762 (3d Cir.1994) ...............................................................................35

*Mango v. Pierce-Coombs*,
    851 A.2d 62 (N.J. App. Dev. 2004).................................................................42

*Mason v. Coca-Cola Co.*,
    774 F. Supp. 2d 699 (D.N.J. 2011)..................................................42, 49, 51, 55

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)........................................................................................13

*Merck-Medco Managed Care, Inc. v. Rite Aid Corp.*,
    22 F. Supp. 2d 447 (D. Md. 1998)...................................................................36

*Miller v. Indiana Hosp.*,
    843 F.2d 139 (3d Cir. 1988) ............................................................................12

*Nat'l Council Against Health Fraud, Inc. v. King Bio Parms., Inc.*,
    107 Cal. App. 4th 1336 (2003)...................................................................17, 28

*Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharms. Co.*,
129 F. Supp. 2d 351 (D.N.J. 2000), *aff'd*, 290 F.3d 578 (3d Cir. 2002)............28

*O'Neil v. Simplicity, Inc.*,
574 F.3d 501 (8th Cir. 2009) .............................................................................40

*Ortho-McNeil-Janssen Pharms.*, 2010 WL 891150, at *6 ......................................39

*Pelkey v. McNeil Consumer Healthcare*,
No. 10-61853, 2011 WL 677424 (S.D. Fla. Feb. 16, 2011)..............................15

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
72 Cal. App. 4th 861 (1999) .............................................................................27

*Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*,
902 F.2d 222 (3d Cir. 1990) ........................................................23, 24, 28, 29

*Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*,
401 F.3d 123 (3d Cir. 2005) .............................................................................41

*Singh v. Wal-Mart Stores, Inc.*,
No. 98-1613, 1999 WL 374184 (E.D. Pa. June 10, 1999) ................................44

*Slack v. Suburban Propane Partners, LP*,
No. 10-2548, 2010 WL 5392845 (D.N.J. Dec. 22, 2010) ..................................39

*Smajlaj v. Campbell Soup Co.*,
782 F. Supp. 2d 84 (D.N.J. 2011).......................................................................44

*Solo v. Bed Bath & Beyond, Inc.*,
No. 06-1908, 2007 WL 1237825 (D.N.J. Apr. 26, 2007) ....................44, 49, 50

*Sorrell v. IMS Health*,
131 S. Ct. 2653 (2011)........................................................................................23

*Stanley v. Bayer Healthcare LLC*,
No. 11cv862, 2012 WL 1132920 (S.D. Cal. Apr. 3, 2012)........................passim

*Steinberg v. CVS Caremark Corp.*,
No. 11-2428, 2012 WL 507807 (E.D. Pa. Feb. 16, 2012)..................................43

*Strong v. Wisconsin,*
    544 F. Supp. 2d 748 (W.D. Wisc. 2008) ............................................................ 14

*Thiedemann v. Mercedes-Benz USA, LLC,*
    872 A.2d 783 (N.J. 2005) ........................................................................... 44, 49

*Toy v. Metro. Life Ins. Co.,*
    928 A.2d 186 (Pa. 2007) .................................................................................. 50

*Transmodal Corp. v. EMH Assocs., Inc.,*
    No. 09-3057, 2010 WL 3937042 (D.N.J. Oct. 1, 2010) ............................... 12, 13

*Wendling v. Pfizer, Inc.,*
    No. A-1807-06T1, 2008 WL 833549 (N.J. Super. A.D. Mar. 31, 2008) ..... 43, 51

*William H. Morris Co. v. Group W, Inc.,*
    66 F.3d 255 (9th Cir. 1995) ............................................................................ 26

*Wilson v. Parisi,*
    549 F. Supp. 2d 637 (M.D. Pa. 2008) .............................................................. 49

STATUTES

73 P.S. § 201–9.2(a) ........................................................................................ 42, 50

73 Pa. Stat. §§ 201-1, *et seq.* ("UTPCPL") ................................................................ 1

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") .................................................... 1

Cal. Bus. & Prof. Code § 17204 .............................................................................. 56

California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*
    ("CLRA") ............................................................................................................ 1

CFA .................................................................................................................. passim

CLRA ............................................................................................................... passim

N.J.S.A. § 12A:2-313(1)(a)-(b) .............................................................................. 38

N.J.S.A. § 12A:2-607(3)(a) .................................................................................... 39

New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.* ("CFA") .................. 1

New Jersey UCC ........................................................................................ 39

UCC ......................................................................................................... 39

UCL ................................................................................................... passim

UTPCPL ............................................................................................. passim

UTPCPL. First .......................................................................................... 45

OTHER AUTHORITIES

16 C.F.R. § 3.2 ........................................................................................... 5

Fed. R. Civ. P. 56 ....................................................................................... 1

Fed. R. Civ. P. 56(c) ................................................................................ 12

FTC, *Dietary Supplements: An Advertising Guide for Industry* (April 2001) ..35, 36

FTC Press Release, *Nestlé Subsidiary to Settle FTC False Advertising
  Charges; Will Drop Deceptive Health Claims for BOOST Kid Essentials*
  (July 14, 2010) ...................................................................................... 5

"Phillips' Colon Health Probiotic" ("PCH") ........................................... 18

*Report of a Joint FAO/WHO Expert Consultation on Evaluation of Health
  and Nutritional Properties of Probiotics in Food Including Powder Milk
  with Live Lactic Acid Bacteria*, 5 (October 2001) ............................ 2, 3

*Supra* at 54 ............................................................................................. 59

*Supra* at 54-55 ....................................................................................... 59

Unfair Competition § 27:61 (4th ed.) ..................................................... 29

Defendant Nestlé Healthcare Nutrition, Inc. ("Nestlé") respectfully submits this memorandum of law in support of its motion for summary judgment on all counts – Counts I (violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.* ("CFA")); II (Negligent Misrepresentation); III (Breach of Warranty); VII (violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. §§ 201-1, *et seq.* ("UTPCPL")); V (violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL")); VI (violation of the California False Advertising Law, *id.* §§ 17500, *et seq.* ("FAL")); and VII (violation of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA")) – of plaintiff Kurt Scheuerman's ("Scheuerman") and plaintiff Maria Johnson's ("Johnson") (together, "Plaintiffs") Consolidated Class Action Complaint (the "Amended Complaint"), *Scheuerman* Dkt. No. 118,[1] under Fed. R. Civ. P. 56.

Plaintiffs' Amended Complaint and their entire prosecution of this case are based solely on allegations that Nestlé lacked substantiation to support various express and implied adverting claims for its Boost® Kid Essentials Drink ("BKE") product and, because Nestlé purportedly lacked such substantiation, the claims are necessarily false, deceptive, and misleading under New Jersey's, Pennsylvania's, and California's consumer protection statutes. Plaintiffs also assert negligent

---

[1]   All docket cites herein are to the *Scheuerman* docket unless otherwise noted.

misrepresentation and breach of warranty claims under New Jersey common law. This case, however, can proceed no further because, after prolonged discovery, the evidence leaves no room for genuine doubt: Plaintiffs have not carried their burden of proving that the claims they challenge, in fact, are false. Moreover, Nestlé's BKE advertising claims are supported by competent and reliable scientific evidence. As set forth more fully below, Nestlé is entitled to summary judgment as a matter of law based on the undisputed facts reflected in the record.

### FACTS

In the early-to-mid 2000s, numerous companies began selling yogurt-type and other products, which incorporated probiotics. "Probiotics" are beneficial bacteria – "live microorganisms which when administered in adequate amounts confer a health benefit to the host." World Health Organization, *Report of a Joint FAO/WHO Expert Consultation on Evaluation of Health and Nutritional Properties of Probiotics in Food Including Powder Milk with Live Lactic Acid Bacteria*, 5 (October 2001). Probiotics have existed for thousands of years – as long as humans have produced fermented milk-based foods, such as yogurts. There are hundreds of different strains of probiotic bacteria, which provide different health benefits. Further, there are differing levels of scientific support for the health benefits conferred depending on the specific strain of probiotic.

In September 2008, Nestlé entered the already well-established probiotic product market with its launch of BKE.  Apr. 13, 2012 Declaration of Jennifer Rope ("Rope Decl.") at ¶ 2.  BKE is a "nutritionally complete" drink product demonstrated by the fact that it meets or exceeds 100% of the Dietary Reference Intakes for protein, vitamins, and minerals for children ages 1-13.  *Id.*  In short, because it contains all of the nutrients necessary to sustain life, BKE can be used as a sole source of nutrition if necessary.  *Id.*  BKE came in a retail format – a carton attaching a separately-packaged straw, which contained the probiotic, *Lactobacillus reuteri* – and in a format without the probiotic straw that was sold only to medical institutions, such as hospitals and nursing homes.  *Id.* at ¶ 3.  Only the retail version of BKE is at issue in this litigation.  BKE was commercially available in 6-pack configuration only until April 2010.  At that time, Nestlé began offering BKE in 4-packs at Walmart; other retailers began selling BKE 4-packs in September 2010.  *Id.* at. ¶¶ 4-5.  BKE has never been available in any "case" format in retail stores.  *Id.* at ¶ 6.

Many of Nestlé's claims for BKE are and were "ingredient claims," meaning that they were not made about the BKE product itself but, rather, were limited to the specific ingredient to which they expressly referred.  *Id.* at ¶ 7.  For example, when discussing "immunity" health benefits, Nestlé carefully qualified its claims by referring to "immune-strengthening probiotics," "immune-supporting

probiotics," or the "immune-strengthening probiotics in the straw."  Am. Compl. at Exhs. A, C-D.  Likewise, the initial iteration of Nestlé's BKE website "Frequently Asked Questions," which appeared online from September 2008 until January 2009 (Rope Decl. at ¶¶ 14, 17), stated that: *Lactobacillus reuteri Protectis* (the probiotic found in [BKE]) has been shown to reduce the duration of diarrheal illness in children and reduce the number of days that infants miss daycare due to illness."[2]  Am. Compl. at Exh. B (italics in original).  All "clinically shown" representations also explicitly referred to the probiotic in the straw.  *See id.* at Exh. C ("Probiotic straw/Clinically shown to help strengthen the immune system"; "probiotics clinically shown to help strengthen the immune system").  Nestlé has never advertised that BKE "prevents upper respiratory tract infections in children" or that it "protects against cold and flu viruses."  The words "upper respiratory tract infection," "cold" and "flu" have never appeared in any BKE advertising or marketing material as alleged in the Amended Complaint.  Rope Decl. at ¶ 9.

A.    **The FTC Investigation and Plaintiffs' Complaints**

In early 2009, a few months after BKE was launched, the Federal Trade Commission ("FTC") opened an investigation into Nestlé's advertising and marketing practices relative to BKE.  In mid-July 2010, the investigation ended with a no-money settlement (without any formal litigation), which was

---

[2]   That statement included references to and identified the specific child and infant clinical studies supporting the respective claims.

memorialized in a Consent Order that became effective on January 12, 2011. *In re Nestlé Healthcare Nutrition, Inc.*, No. C-4312 (FTC Decision and Order entered Jan. 12, 2011).[3] Pursuant to Part 3 of the FTC Rules of Practice, 16 C.F.R. § 3.2, the FTC filed an administrative complaint and, at the same time, entered the Consent Order resolving the investigation and complaint. The FTC and Nestlé never litigated the issue of whether Nestlé possessed any scientific evidence regarding its advertising claims about BKE and no court ever made a decision on that issue. Importantly, the FTC never made any finding that Nestlé's advertising was false. In fact, the FTC expressly acknowledged the exact opposite: that there was "***not*** a finding or ruling that [Nestlé] has actually violated the law." FTC Press Release, *Nestlé Subsidiary to Settle FTC False Advertising Charges; Will Drop Deceptive Health Claims for BOOST Kid Essentials* (July 14, 2010) (emphasis added) (available at http://www.ftc.gov/opa/2010/07/nestle.shtm) (hereinafter, "FTC Press Release").

Eight days after the FTC announced its settlement with Nestlé and published the administrative complaint and Consent Decree on its website, Scheuerman filed his class action in this Court. Dkt. No. 1. His action is based entirely upon a legal conclusion that the FTC never actually made. Specifically, Scheuerman filed his lawsuit because of his mistaken belief – based solely on a blog entry that he read in

---

[3]     Available at http://www.ftc.gov/os/caselist/0923087/index.shtm.

philly.com – that the FTC found Nestlé's advertising for BKE to be false.  The FTC, however, never reached that conclusion.  Rather, it explicitly stated that it did not find or rule that Nestlé had violated the law.    FTC Press Release.  Scheuerman's complaint merely parroted the allegations contained in the FTC's administrative complaint – that Nestlé lacked a "reasonable basis" (*i.e.*, "competent and reliable scientific evidence") to support its BKE advertising claims – and attached photocopies of the same exhibits that were attached to the FTC complaint.  *Compare* Dkt. 1 at Exhs. A-E, *with* FTC Complaint at Exhs. A-1-E.[4]  Scheuerman repeatedly alleged that, because Nestlé lacked substantiation for its BKE claims, it violated the CFA and breached an express warranty.  Several months later, in September 2010, Scheuerman amended his complaint to assert a negligent misrepresentation claim as well.  Dkt. No. 9.

Several weeks after Scheuerman filed his complaint, Johnson, a licensed attorney in California, filed a similar class action in New Jersey Superior Court, which was removed to this Court on October 28, 2010.  *Johnson* Dkt. No. 1.  Johnson's complaint asserted CFA and negligent misrepresentation claims.  In November 2010, Scheuerman's and Johnson's actions were consolidated for discovery purposes.  Dkt. No. 18.  In December 2010, Plaintiffs filed a Consolidated Class Action Complaint, which asserted CFA, breach of express

---

[4]    Available at http://www.ftc.gov/os/caselist/0923087/index.shtm.

warranty, and negligent misrepresentation claims.  Dkt. No. 27.  On August 1, 2011, the Court dismissed the CFA claim as to Johnson but permitted her to assert a consumer fraud claim under California law in an amended complaint.  Dkt. No. 99 at 9.  The Court concluded that "all other claims asserted in the Consolidated Class Action Complaint will proceed."  *Id.* at 16.  Plaintiffs filed their Amended Complaint (Dkt. No. 118) on September 23, 2011.  In that pleading, Johnson added UCL, FAL, and CLRA claims, and despite the Court's prior limited holding allowing Johnson to amend, Scheurman added a claim for violation of the UTPCPL.  Dkt. No. 118.  Despite filing five complaints in this action, Plaintiffs' core allegation remains constant: that Nestlé lacked substantiation to make the claims it did about BKE.  They have never alleged anything else.

The Amended Complaint does little more than Plaintiffs' previous complaints.  Specifically, in the Amended Complaint, Plaintiffs allege that Nestlé claimed "expressly and impliedly . . . that [BKE]":

    a. prevents upper respiratory tract infections in children,
    b. provides "Immunity Protection,"
    c. is a "Nutritionally Complete Drink with PROBIOTICS to Help Keep Kids Healthy,"
    d. strengthens the immune system,
    e. protects against cold and flu viruses,
    f. reduces the duration of diarrhea, and that
    g. [BKE] actually reduces absences from daycare or school due to illness.

*Id.* at ¶ 3.  Plaintiffs also allege that Nestlé advertised that those challenged health benefit claims were "clinically shown."  *Id.*  Johnson claims that she bought BKE for her children based on those claims, which she allegedly saw on the "packaging of [BKE]; in its print, media and/or online advertising; and through marketing materials provided by her pediatrician."  *Id.* at ¶ 6.   Scheuerman claims that he purchased BKE for his two sons, K.S. and H.S., based on those claims, which he allegedly saw in "stock television commercials, stock print advertisements, and [BKE] label."  *Id.* at ¶ 7.

Underlying every claim in the Amended Complaint is a single premise: that Nestlé cannot substantiate its advertising claims.  *See id.* at ¶¶ 3 & 26 ("[Nestlé] made these bold claims in advertisements and on the product containers, without any reasonable basis for doing so and without substantiating them."); 4 ("Nestlé did not, and does not possess the requisite substantiation for these purported health claims"); 8; 33; 38; 46; 60 ("[Nestlé] violated the CFA by dishonestly representing [BKE] provided particular express and implied health benefits to children who ingested the Product when such claims were unsubstantiated by [Nestlé]."); 69 ("When [Nestlé] made the above-referenced representations about [BKE] being clinically shown to provide specific health benefits, [it] had no reasonable ground for believing them to be true."); 87 (Nestlé "violated the UCL by fraudulently and unfairly representing that [BKE] provided particular express and implied health

benefits to children . . . when such claims were unsubstantiated . . . and/or false."); 94 (Nestlé violated the FAL "by disseminating untrue or misleading advertising regarding [BKE] . . . when such claims were unsubstantiated"); 105 (Nestlé "violated the CLRA by misrepresenting that [BKE] provided particular express and implied health benefits to children . . . when such claims were unsubstantiated"). Nestlé moved to dismiss the Amended Complaint on October 24, 2011. Dkt. No. 124. That motion is still pending and will be considered together with this Motion. Dkt. No. 154 at 2.

### B.  **Scheuerman's Deposition Testimony**

On August 10, 2011, Nestlé deposed Scheuerman. *See generally* Aug. 10, 2011 Deposition of Kurt Scheuerman (hereinafter, "Scheuerman Dep.") (attached as Exhibit A to the April 13, 2012 Declaration of Geoffrey Castello ("Castello Decl.") During his deposition, Scheuerman testified that:

- the only BKE advertising or marketing he saw before purchasing BKE was a television commercial featuring a "family running around the park . . . talking about a product called BKE" (Scheuerman Dep. at 26:4-8; 28:24-29:9; 31:23-34:9; 38:18-21; 43:2-3);[5]

---

[5]  Scheuerman also claims to have seen a BKE advertisement in *Parenting*, *People*, and *Kids Health* magazines. *Id.* at 28:4-13; 116:7-10. However, BKE was advertised only in a single issue of *People* magazine in February 2009, more than a year before Scheuerman could have began purchasing BKE in the 4-pack configuration that he claims to have bought. It was not advertised in any other magazine. Rope Decl. at ¶¶ 5, 12-13.

- he purchased BKE in 4-packs only, but cannot remember the purchase prices (*Id.* at 30:7-9; 34:9-35:2);[6]

- sometimes he used coupons to purchase BKE (*Id.* at 34:9-15);

- he began giving H.S. BKE when H.S. was eight or nine months old, even though BKE is meant to be consumed by children between the ages of 1 and 13 (*Id.* at 29:10-25; 98:14-16);

- he never monitored either of his sons' health and cannot recall any specific instances of upper respiratory tract infections, colds or flus, or episodes of diarrhea, for either child before or after they began consuming BKE (*Id.* at 85:22-86:9; 86:11-87:14; 91:2-93:7; 94:9-97:8; 101:4-9; 101:14-17; 103:14-104:11);

- neither of his sons was diagnosed with any condition relating to a weak immune system after they began consuming BKE (*Id.* at 93:8-11; 103:10-13);

- he has never attempted to quantify his damages and believes that quantifying his loss is the responsibility of the Court (*Id.* at 140:16-141:7);

- he is unaware of any scientific study or other evidence that demonstrates that the challenged BKE advertising claims are false or deceptive, and that his sole support for his allegations is "the FTC and the FTC action" (*Id.* at 51:15-24; 53:13-54:5; 128:4-129:9; 167:6-168:6; 168:7-16:170:4-18; 173:24-174:8);

- he believes that the FTC concluded that Nestlé's advertising claims were, in fact, false based on a blog entry he read at philly.com, which summarized the FTC Press Release (*Id.* at 56:11-57:8; 67:4-19; 77:2-6; 167:24-168:6); and

- he would not have filed this lawsuit and "would probably still be behind the product" (*i.e.*, purchasing BKE) had the FTC not purportedly concluded that the advertising claims were false.  (*Id.* at 167:24-168:3; 179:14-22; 181:12-14).

## C.    <u>Johnson's Deposition Testimony</u>

---

[6]    Scheuerman claims that he also bought BKE in a case format.  However, BKE was never sold that way in any retail stores.  Rope Decl. at ¶ 6.

On June 22 and October 18 2011, Nestlé deposed Johnson.  *See generally* June 22 and October 18, 2011 Depositions of Maria Johnson (hereinafter, "Johnson Dep.") (collectively attached as Exhibit B to the Castello Decl.).   During her deposition, Johnson testified that:

- she had never seen the BKE website FAQs or any Internet advertising for BKE, the "Straw Power" television commercial, or the *People* magazine advertisement (copies of which she attached to the Amended Complaint) prior to her deposition in this action (Johnson Dep. at 30:16-18; 73:1-2; 73:24-74:13; 80:18-81:11; 100:17-101:10; 110:23-25; 136:20-22);

- she has seen a BKE television commercial but cannot remember where the commercial aired, when she saw it, or what the commercial even portrayed (*Id.* at 30:9-15);

- she has seen advertising in "parenting" magazines – although she can't remember any specific magazine where a BKE advertisement actually appeared – coupons that come in newspapers – but she can't recall the name of any such newspaper – and posters, which "potentially" might have been in doctors' offices (*Id.* at 10:12-12:20);[7]

- no pediatrician has ever provided her with any BKE marketing materials (*Id.* at 31:3-6);

- she purchased BKE in 6-packs only, but cannot remember the purchase prices or the number of units of BKE that she purchased (*Id.* at 52:18-53:14; 53:24-54:19);

- she "learn[ed] that the advertised health benefits were not clinically shown and were false and/or misleading," as alleged in the Amended Complaint, by "talking to other friends who have taken [BKE] before, other moms" and her attorneys (*Id.* at 38:19-40:4);

---

[7]   BKE was advertised in a single February 2009 edition of *People* magazine only; it was not advertised in any other magazine.  Rope Decl. at ¶¶ 12-13.

-11-

- she did not monitor or track her children's health, and cannot recall any specific instances of colds or flus, episodes or duration of diarrhea, absences from school, or instances of upper respiratory tract infections, either before or after they began consuming BKE (*Id.* at 31:20-32:25; 37:19-38:8; 56:24-58:15);

- none of her children ever have been diagnosed with having a poor immune system or any type of disease (*Id.* at 58:17-22);

- all of her children are generally healthy (*Id.* at 58:23-24);

- she has no scientific evidence that BKE does not strengthen the immune system (*Id.* at 38:16-18); and

- her "proof" that BKE's advertising claims are false or misleading consists of her own subjective observations of her children's health and her "general belief that they're false" (*Id.* at 36:13-21; 38:4-8; 51:1-23; 164:24-165:11; 167:22-168:5).

## **ARGUMENT**

### I.    **LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988).   The moving party has the initial burden to demonstrate either the absence of a material issue of fact and that it must prevail as a matter of law, "or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the

burden." *Transmodal Corp. v. EMH Assocs., Inc.*, No. 09-3057, 2010 WL 3937042, at *3 (D.N.J. Oct. 1, 2010) (Hochberg, J.); *Celotex*, 477 U.S. at 323-32.

Upon such showing, the burden shifts to the non-movant to present specific facts demonstrating that there is a genuine issue for trial and that summary judgment is not appropriate. *Transmodal*, 2010 WL 3937042, at *3. As the non-movant, Plaintiffs "must 'go beyond the pleadings and by [their] own affidavits, or by the depositions, [or] answers to interrogatories,'" come forth with "'specific facts'" to satisfy their burden. *Agostino v. Quest Diagnostics, Inc.*, No. 04-4362, 2010 WL 2710561, at *2 (D.N.J. July 7, 2010) (quoting *Celotex*, 477 U.S. at 324).

In other words, the lynchpin to avoiding summary judgment is the non-movant's presentation of "factual data" or evidence, not conclusory allegations or speculation. *Carlson v. Arnot-Ogden Mem. Hosp.*, 918 F.2d 411, 416 (3d Cir. 1999) (explaining that a "purely subjective impression without any factual support amounts to nothing of legal significance and is insufficient to defeat a motion for summary judgment."). Indeed, "[t]he nonmoving party 'must do more than simply show that there is some metaphysical doubt as to material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Finally, the plaintiff cannot defeat summary judgment, even where the facts are such that resolution of the dispute in favor of the plaintiff otherwise would be appropriate, if the plaintiff's legal theory is not cognizable under prevailing law.

*Dworman v. Mayor and Bd. of Alderman, Governing Body of Town of Morristown*, 370 F. Supp. 1056, 1065-66 (D.N.J. 1975) ("[t]he showing of a genuine issue for trial is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts"); *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989); *Abercrombie & Fitch Co. v. Fed. Ins. Co.*, 589 F. Supp. 2d 937, 940 (S.D. Ohio 2008) ("'to defeat summary judgment, the nonmovant must articulate a viable legal theory entitling it to relief should it prevail on the facts at trial'") (quoting James Wm. Moore, et al., Moore's Federal Practice ¶ 56.11[8] (3d ed. 2008)); *Strong v. Wisconsin*, 544 F. Supp. 2d 748, 764 (W.D. Wisc. 2008).

## II.   THE DOCTRINE OF PRIOR SUBSTANTIATION BARS SCHEUERMAN'S CFA CLAIM

The entire Amended Complaint rests on what is commonly referred to as the "prior substantiation" doctrine.[8] In other words, Scheuerman claims that Nestlé cannot substantiate the advertising claims that it made about BKE and which he now challenges. *See id.* at ¶¶ 3, 4, 8 26, 33, 38, 46, 60 & 69.  The Third Circuit, California federal courts, and others, however, have explicitly held that a false advertising case premised solely on allegations that the defendant lacks substantiation does not state a viable cause of action and must be dismissed. *See, e.g., Franulovic v. Coca Cola Co.*, 390 Fed. Appx. 125, 127-28 (3d Cir. 2010)

---

[8]   The origin of the prior substantiation doctrine is detailed in Nestlé's Motion to Dismiss the Amended Complaint.  Dkt. No. 124-1 at 14-15.

(hereinafter, "*Franulovic III*") ("a [CFA] claim cannot be premised on a prior substantiation theory of liability"); *Stanley v. Bayer Healthcare LLC*, No. 11cv862, 2012 WL 1132920 (S.D. Cal. Apr. 3, 2012) (granting summary judgment to probiotic supplement manufacturer in false advertising class action alleging violations of California's UCL and CLRA).[9]  Scheuerman's CFA claim must be dismissed as it too rests on a claim of lack of prior substantiation.

In *Franulovic*, the plaintiff asserted a CFA claim against Coca Cola on behalf of a putative class of consumers, alleging that the company engaged in fraudulent and deceptive marketing of its "Enviga" green tea soft drink in violation of the CFA.  Specifically, the plaintiff challenged the veracity of Coca Cola's advertisements, which stated that drinking three cans of Enviga daily would lead to weight loss.  This Court granted Coca Cola's motion for summary judgment and denied the plaintiff's motion for leave to file a fourth amended complaint, which, among other things, asserted that Coca Cola advertised Enviga as a calorie burning drink without prior substantiation.  *Franulovic v. Coca Cola Co.*, No. 07-0539,

---

[9]  *See also Chavez v. Nestlé USA, Inc.*, No. 09-9192, 2011 WL 2150128, at *5 (C.D. Cal. May 19, 2011); *Pelkey v. McNeil Consumer Healthcare*, No. 10-61853, 2011 WL 677424, at *4 (S.D. Fla. Feb. 16, 2011) (under Florida law, a plaintiff cannot state a false advertising violation based on an allegation that an advertiser does not have substantiation for a challenged advertising claim); *Fraker v. Bayer Corp.*, No. 08-1564, 2009 WL 5865687, at *2, *7 (E.D. Cal. Oct. 6, 2009) (dismissing complaint and holding that prior substantiation is not a cognizable claim under California law).

2009 WL 1025541 (D.N.J. Apr. 16, 2009) (hereinafter, "*Franulovic II*"). Specifically, the proposed amendment alleged that "Coke made these claims [the challenged weight loss claims] without adequate prior substantiation for them," and that the "weight-loss representations for the product (whether express or implied) cannot be substantiated because the small number of studies that exist are conflicting and inadequate to substantiate the representations." *Franulovic* Dkt. No. 121-1, at ¶¶ 6, 19 (attached as Exh. C to Castello Decl.). These claims are strikingly similar to those made by Scheuerman. *Cf. Am. Compl.* ¶¶ 3, 8, 26, 30-33, 38, 46, 60, 69. This Court held that the proposed amendment to include a claim that Coca Cola did not have substantiation to support the challenged weight loss claims would be futile because "the [CFA] does not recognize this theory of liability." *Franulovic III*, 390 Fed. Appx. at 127 (explaining this Court's ruling). The Third Circuit affirmed, holding that "[n]o New Jersey or Third Circuit decision has applied the prior substantiation theory to the [CFA], and we, therefore, decline to do so here." *Id.* at 128.

Following *Franulovic*, this Court should reject Scheuerman's attempted reliance on the prior substantiation doctrine to establish a violation of the CFA. The prior substantiation doctrine has never been applied to the CFA. This doctrine originally was developed under the FTC Act, a federal statute that does not permit actions by private claimants – Scheuerman cannot identify any case in which a

New Jersey court has recognized an individual action for lack of prior substantiation under the CFA. In fact, now that the Third Circuit has spoken in *Franulovic*, Scheuerman is foreclosed from even attempting to argue that the prior substantiation doctrine can be utilized to establish an alleged violation of the CFA. Accordingly, because a lack of prior substantiation is not a viable legal theory to support a CFA claim, summary judgment should be granted.

### III. JOHNSON'S "LACK OF SUBSTANTIATION" THEORY IS NOT A COGNIZABLE THEORY OF RECOVERY UNDER THE UCL, FAL, OR CLRA

To state a claim for the false advertising or marketing of a product under California law, the plaintiff "has the burden to plead and prove facts that show that the claims that Defendant made in connection with the product are false or misleading." *Fraker*, 2009 WL 5865687, at *8; *Stanley*, 2012 WL 1132920, at *3. As the California Court of Appeal has explained, the California Legislature has granted prosecuting authorities, ***but not private plaintiffs***, the authority to demand substantiation for advertising claims. Where a plaintiff challenges the represented efficacy or health benefits of a product, the plaintiff bears the burden of coming forward with evidence sufficient to "establish[]" the "falsity of the advertising claims." *Nat'l Council Against Health Fraud, Inc. v. King Bio Parms., Inc.*, 107 Cal. App. 4th 1336, 1345-48 (2003). Nestlé is entitled to summary judgment on

Johnson's UCL, FAL, and CLRA claims because her attempt to allege a lack of substantiation does not constitute a cognizable claim under California law.

In three recent decisions – all involving nutritional supplements, including one decided ten days ago regarding a probiotic supplement that made "immunity support" advertising claims (*Stanley*) – California federal courts have conclusively held that an alleged lack of substantiation for an advertising representation is not sufficient to state a claim for violation of the UCL, FAL, and/or CLRA, or for breach of express warranty. *See Stanley*, 2012 WL 1132920, at *4-10 (granting summary judgment to defendant on CLRA, UCL, and express warranty claims); *Fraker*, 2009 WL 5865687, at *8-9 (dismissing CLRA, UCL, FAL, and express warranty claims); *Chavez*, 2011 WL 2150128, at *5 (dismissing UCL and FAL claims).

In *Stanley* – a case strikingly similar to this one – the plaintiff asserted that Bayer's advertising claims for its "Phillips' Colon Health Probiotic" ("PCH") line of supplements, including that the products supported a healthy immune system, violated the UCL and CLRA because the health benefit claims "'are not substantiated by the vast majority of generally accepted scientific literature currently available relating to probiotics.'"  2012 WL 1132920, at *2 (quoting complaint).   The plaintiff also alleged that PCH labeling and advertising constituted express warranties and that Bayer breached those warranties.   *Id.*

Bayer moved for summary judgment, arguing that "Plaintiff has not offered any evidence supporting her claim that [Bayer's] advertising and packaging of [PCH] is deceptive, untrue, or misleading." *Id.* at *4. Bayer also argued that the plaintiff's complaint was based entirely upon an alleged failure to substantiate, which is not actionable under California law. *Id.* The Southern District of California agreed with Bayer and granted summary judgment on all of the plaintiff's claims.

Chief Judge Gonzalez held that "a Plaintiff may not pursue a claim under the UCL or CLRA based upon a lack of substantiation." *Id.* at *6. Rather, the court found the burden was on the plaintiff to present affirmative evidence that the advertising claims are actually false or misleading, and because the plaintiff failed to meet her burden, summary judgment was appropriate. *Id.* at *9. More specifically, the court explained that the plaintiff's two scientific experts, who concluded that the current body of science did not did not support Bayer's advertising claims, could not save the plaintiff from summary judgment because neither explained why Bayer's claims "[were] actually false, or . . . how those statements might mislead a reasonable consumer." *Id.* at *5. Rather, like Plaintiffs' experts in this case, they "repeatedly assert[ed] the statements are rendered false or misleading due to a lack of substantiation." *Id.* Nor did the plaintiff's experts opine "that probiotics, or PCH in particular, are ineffective" for

-19-

providing the promised health benefits. *Id.* at *6 ("There is no evidence that [plaintiff's expert] himself has conducted research regarding the effectiveness of [the product].").

Finally, the court found that the plaintiff had failed to provide evidence that the product did not work for her or that the product did not work for the purposes for which it was advertised. *Id.* at *8. The court concluded that, absent affirmative evidence demonstrating that the advertising claims were false and misleading, or that Bayer's probiotic supplement did not provide the advertised health benefits, the plaintiff had failed to meet her burden under California law and that summary judgment on the UCL, CLRA, and breach of express warranty claims was warranted. *Id.* at *9-10.

In *Fraker*, the plaintiff challenged certain health benefit claims made by Bayer in marketing its "WeightSmart" multivitamin, alleging, as Johnson has here, that Bayer had "'no reasonable basis, consisting of competent and reliable scientific evidence to substantiate,'" the claims. *Compare Fraker*, 2009 WL 5865687, at *4 (quoting complaint); *with* Am. Compl. ¶¶ 3, 4, 8, 26, 33, 46, 87, 94, 105; *and* Johnson Dep. at 71:15-18 (describing her claims as "I'm saying that I don't think there is any support to prove [Nestlé's] type of advertising . . . that it [BKE] has health benefits."). The FTC previously had brought an action against Bayer resulting in a consent decree prohibiting the company from continuing with

such claims. *See Fraker*, 2009 WL 5865687, at *4. Calling the plaintiff's complaint an "attempt to shoehorn an allegation of violation of the [FTC] Act . . . into a private cause of action," *id*. at *7, the Central District of California explained that, although administrative agencies like the FTC may have the authority to require substantiation for advertising claims, California law provides "no private remedy for unsubstantiated advertising." *Id*. at *8 (citing and discussing *King Bio*). The court further elaborated that a private plaintiff cannot avoid her obligations to plead and prove that an advertisement is false or misleading by styling the claim as one for unsubstantiated advertising. *Id*. Rather, the court explained, a plaintiff must allege and ultimately prove that the challenged advertising is "***actually*** false or misleading," *id*. (emphasis added), and it found "no authority for the proposition that the absence of substantiation of an advertising claim is, itself, falsity or somehow misleading." *Id*. The court, thus, dismissed the UCL, FAL, and CLRA false advertising claims. *Id*. at *9.

Similarly, in *Chavez*, the plaintiff asserted UCL and FAL false advertising claims, alleging that Nestlé had misrepresented the health benefits of its "Juicy Juice" products for children's brain development, immune function, and digestion. 2011 WL 2150128, at *1-3. As in *Stanley*, *Fraker*, and here, the complaint alleged simply that "[Nestlé] does not possess requisite scientific evidence" for the claims. *Id*. at *1 (quoting complaint); *see also id*. at *5. Nestlé moved to dismiss, arguing

that false advertising claims under California law cannot be based upon a lack of substantiation theory. *Id.* at *5, *7 ("Plaintiffs' allegations regarding a lack of substantiation for [Nestlé's] product claims (as alleged here) cannot support a cause of action under the UCL or FAL.").

Relying on *Fraker*, the *Chavez* court expressly held that "false advertising claims cannot be based upon a lack of substantiation." *Id.* at *5. Indeed, according to the court:

> Plaintiff has provided no authority for the proposition that the absence of substantiation of an advertising claim is, itself, falsity or somehow misleading. . . . In short, the government, representing the Federal Trade Commission, can sue an advertiser for making unsubstantiated advertising claims; a private plaintiff cannot.

*Id.* (quoting *Fraker*, 2009 WL 5865687, at *8). Accordingly, the court dismissed the plaintiff's complaint.

As described above, *supra* at 8-9, the cornerstone to Johnson's UCL, FAL, and CLRA causes of action is the single allegation that Nestlé made the challenged BKE advertising claims without a "reasonable basis" or "competent and reliable scientific evidence," and, thus, the claims are unsubstantiated. *See* Am. Compl. ¶¶ 3, 4, 8. 26, 33, 46, 87, 94, and 105. The *Stanley*, *Chavez*, and *Fraker* courts made clear, however, that such a theory of liability – that Nestlé lacks substantiation for its advertising, marketing, and labeling – is not cognizable under California law. Further, Johnson failed to provide any evidence, expert or otherwise, affirmatively

demonstrating that Nestlé's BKE advertising claims, in fact, are false or that the product did not provide the advertised health benefits to her children.   Thus, summary judgment is proper on Johnson's UCL, FAL, and CLRA claims.

### IV.   PLAINTIFFS HAVE FAILED TO SATISFY THEIR BURDEN OF PROVING THAT THE CHALLENGED CLAIMS WERE MADE, OR THAT THEY WERE FALSE OR MISLEADING

There are two types of advertising claims: express and implied.   As their names suggest, "[e]xpress claims directly represent the fact at issue while implied claims do so in an oblique or indirect way." *Kraft, Inc. v. FTC*, 970 F.2d 311, 318 n.4 (7th Cir. 1992).   To determine the meaning of an advertising claim or message, a court must evaluate the claim in the context of the entire advertisement; advertising claims are not evaluated in a vacuum.   *Avis Rent A Car Sys., Inc. v. Hertz Corp.*, 782 F.2d 381, 385 (2d Cir. 1986) (Friendly, J.); *Johnson v. Patenthealth*, No. 2:09-cv-05254 (C.D. Cal. Sept. 1, 2009), Dkt. No. 47, at 6 (Order Denying Pl.s' Mot. for Prel. Inj.) (a copy of that Order is attached as Exh. D to the Castello Decl.).

The message also must be viewed from the perspective of the target audience.   *Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 229 (3d Cir. 1990).   The target audience's sophistication affects whether the advertisement is false or misleading.   *Id.* at 229-30.   For example, advertising targeting pediatricians and other healthcare professionals is evaluated from a much different

perspective than advertising directed to mainstream consumers because physicians are "'sophisticated and experienced' consumers." *Sorrell v. IMS Health*, 131 S. Ct. 2653, 2671 (2011); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 475 (D.N.J. 2009) ("Doctors are sophisticated, knowledgeable consumers who are not easily misled").  Indeed, in *Sandoz*, the Third Circuit recognized that distinction.  902 F.2d at 230 (rejecting claim that bar graph used in cough syrup advertising distributed to pediatricians was false and misleading, and noting that a target audience's special knowledge is highly relevant to any claim that the audience would be misled).  Importantly, as the Third Circuit has explained, "*[i]t is the objective message conveyed, not the subjective intent of the person sending the message, that is determinative.*"  *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 137 (3d Cir. 2006) (emphasis added).

As discussed below, Plaintiffs have failed to show that Nestlé made the implied claims that they challenge or that any claims – express or implied – are false or misleading.

### A.  Plaintiffs Have Failed to Provide Extrinsic Evidence That Nestlé Made the Challenged Implied Claims

Plaintiffs allege that Nestlé claimed "*that [BKE]*: a. prevents upper respiratory tract infections in children . . . d. strengthens the immune system, e. protects against cold and flu viruses, f. reduces the duration of diarrhea, and that g.

[BKE] actually reduces absences from daycare or school due to illness." Am. Compl. ¶ 2 (emphasis added). None of those claims, however, appear in any BKE advertising or marketing material. At most, Nestlé made carefully-crafted express ingredient claims *about the probiotic contained in the straw attached to BKE, not the product itself.* *See, e.g.*, *id.* at Exh. B (website FAQs stating "*Lactobacillus reuteri Protectis* (the probiotic found in BOOST Kid Essentials Drink) has been shown to reduce the duration of diarrheal illness in children and reduce the number of days that infants miss daycare due to illness.") (italics in original); *id.* at Exh. C ("Straw Power" television commercial stating "L. reuteri Protectis has been clinically shown to help strengthen the immune system when consumed daily. For more information about clinical trials involving L. reuteri Protectis, go to www.kidessentials.com"; "the power of immune strengthening probiotics"; "Immunity-strengthening probiotics"; "Probiotic straw/Clinically shown to help strengthen the immune system"; and "probiotics clinically shown to help strengthen the immune system"); *id.* at Exh. D (*People* magazine advertisement stating "The power of immune-strengthening probiotics" and "Immune-strengthening probiotics in the straw"). Further, the words "upper respiratory tract infections," "cold" and "flu" never appeared in any BKE advertising. Rope Decl. at ¶ 9.

Where a plaintiff alleges that implied claims were made and that those claims were false, as Plaintiffs do here, it is incumbent that the plaintiff prove that, in fact, such implied claims actually were made. *Am. Home Prods. Corp. v. Procter & Gamble Co.*, 871 F. Supp. 739, 752-53 (D.N.J. 1994); *CKE Rest. v. Jack In The Box, Inc.*, 494 F. Supp. 2d 1139, 1143 (C.D. Cal. 2007) (in false advertising action asserting Lanham Act, UCL, and FAL claims, "'proof that the advertising actually conveyed the implied message . . . becomes critical'") (quoting *William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995)).   To meet that burden, a plaintiff generally must set forth extrinsic evidence of consumer perceptions – typically in the form of consumer surveys – as to the meaning the advertisement conveys. *Clorox Co. P.R. v. Procter & Gamble Comm. Co.*, 228 F.3d 24, 33 (1st Cir. 2000) (when claim is implied, plaintiff must show that the advertisement conveys a misleading message to the consuming public); *Am. Home Prods.*, 871 F. Supp. at 758; *Haskell v. Time*, 965 F. Supp. 1398, 1407 (E.D. Cal. 1997).[10]   Moreover, implied claims are actionable only if they mislead or confuse a significant segment of consumers. *Rhone-Poulenc*, 19 F.3d at 133-34 (7.5% of

---

[10]   Even if Plaintiffs' purported experts rendered or were competent to render testimony about the existence and meaning of an implied claim, courts generally do not give much weight to expert consumer perception testimony unsupported by empirical evidence.   *See Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm.*, 19 F.3d 125, 136 (3d Cir. 1994) (holding that an expert's personal opinion is not the standard used to measure actual consumer confusion); *Am. Home Prods. Corp. v. Johnson & Johnson*, 436 F. Supp. 785, 792 (S.D.N.Y. 1977) (consumer surveys are "recognized as the best evidence of what meaning consumers take from advertising"), *aff'd*, 577 F.2d 160 (2d Cir. 1978).

survey respondents deceived insufficient to prove advertising tends to mislead); *Churchill Village LLC v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1131 (N.D. Cal. 2000) (Patel, C.J.) (holding that, in UCL and FAL action, plaintiff had burden of demonstrating that a "significant portion" of consumers were mislead, and testimony of only two consumers that they were deceived was insufficient); *CKE Rest.*, 494 F. Supp. 2d at 1143 (plaintiff must demonstrate that implied message actually was conveyed and that a significant portion of consumers were misled).[11] The reasoning for such evidence is simple – an advertiser cannot be held liable for the idiosyncratic interpretations of advertising claims by a few individuals.

Plaintiffs have offered no consumer perception study or any other extrinsic evidence demonstrating that anyone else in the United States holds the same aberrant understandings or idiosyncratic interpretations, or shared the same contorted reading of Nestlé's BKE advertising as they did. In other words, there is no evidence that any implied claims actually were made. Absent such evidence, this Court should disregard Plaintiffs' allegations that any implied claims actually were made.

---

[11] *See also S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 896 (1999) (judgment in favor of defendant appropriate in UCL and FAL action where plaintiff failed to provide "substantial evidentiary support that anyone actually was misled or likely to be misled").

**B.     Plaintiffs Have Not Met Their Burden of Demonstrating That Any Claims Were False or Misleading Under New Jersey, Pennsylvania, or California Law**

In order to prevail on the fraud-based causes of action asserted in the Amended Complaint (*i.e.*, all but their breach of express warranty claim), Plaintiffs have both the burden of producing evidence and the burden of affirmatively proving that each challenged BKE advertising claim, in fact, is false or misleading, not merely that the claim is unsubstantiated. *Rhone-Poulenc*, 19 F.3d at 129; *Sandoz*, 902 F.2d at 228 (plaintiff "bears the burden of showing that a challenged advertisement is false or misleading, not merely that it is unsubstantiated by acceptable tests or other proof") (quotation and citation omitted); *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharms. Co.*, 129 F. Supp. 2d 351, 357 (D.N.J. 2000) (holding the same in a false advertising action brought under the CFA and Lanham Act), *aff'd*, 290 F.3d 578 (3d Cir. 2002);[12] *Am. Home Prods.*, 871 F. Supp. at 752-53 ("the burden remains squarely on

---

[12]     Because the UTPCPL is based upon and shares a strong similarity to the Lanham Act, the Pennsylvania law is interpreted consistently with the federal statute. *Com. v. Monumental Props., Inc.*, 329 A.2d 812, 817-18 (Pa. 1974). This Court, too, when analyzing the CFA, has relied on Lanham Act false advertising decisions. *See, e.g., Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, -- F. Supp. 2d --, 2011 WL 4414214, at *7 (D.N.J. Sept. 21, 2011). It is also appropriate for the Court to rely on Lanham Act false advertising decisions when construing the UCL, FAL, and CLRA, and Johnson's burden of proof thereunder, given that the Lanham Act's "definition of false advertising is similar to that under California law," *Patenthealth*, No. 2:09-cv-05254, Dkt. No. 47, at 5 (Castello Decl. Exh. D), and "actions pursuant to [the UCL] are 'substantially congruent' to claims made under the Lanham Act." *CKE Rest.* 494 F. Supp. 2d at 1147 (quotation and citation omitted).

plaintiff throughout this case to prove affirmatively that [the challenged claims] are both present in the challenged advertising *and* are false, not merely unsubstantiated.") (emphasis in original).[13]   The burden is not on Nestlé to produce evidence and/or demonstrate that the challenged BKE advertising claims are true or even substantiated.

Further, whether or not Nestlé had competent and reliable scientific evidence is immaterial to Plaintiffs' burden of proving that the challenged advertising claims are actually false, because Plaintiffs must "not merely [show] that pre-advertising clinical or market tests in support of each advertising claim were improperly conducted. *The advertising claims may be true even though the testing basis for the claims may not support them.*"   5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:61 (4th ed.) (emphasis added); *Sandoz*, 902 F.2d at 228-29 (holding that it is not sufficient for a plaintiff to show that advertising claims are inadequately substantiated; plaintiff "bears the burden of showing that a challenged advertisement is false or misleading"); *Am. Home Prods.*, 871 F. Supp. at 756 ("plaintiff bears the burden of showing that a claim is

---

[13]   *See also Stanley*, 2012 WL 1132920, at *9-10; *Chavez*, 2011 WL 2150128, at *5; *Fraker*, 2009 WL 5865687, at *8; *Patenthealth*, Dkt. No. 47, at 5-6 (Castello Decl. Exh. D) (under UCL and FAL, burden is on the plaintiff to prove that the challenged claims were false or misleading, not on defendant to prove "adequate substantiation"); *King Bio*, 107 Cal. App. 4th at 1344-48 (plaintiff in UCL and FAL action has both the burden of producing evidence and proving that challenged advertising claims are affirmatively false or misleading; the burden does not shift to defendant to show substantiation).

misleading, not that it is merely unsubstantiated by acceptable tests.").[14]   Simply

put, it is not Nestlé's burden to show that the challenged advertising claims are

substantiated in order to prevail in this litigation (although, as discussed in Section

V, *infra*, substantial competent and reliable scientific evidence exists to support the

challenged claims).

Plaintiffs have not provided a shred of evidence showing that the challenged

BKE advertising claims are, in fact, false.  Scheuerman's entire action is based on

nothing more than his incorrect belief that the FTC found that the BKE advertising

claims were false and deceptive.  Scheuerman Dep. at 167:6-168:6 (stating that the

entirety of his evidence that Nestlé's claims are false and deceptive is the "FTC

sa[ying] that's [the advertising claims] not true.. . . Sorry that I believe my

government but that's the basis I follow."); *id.* at 168:7-16 (acknowledging that

he's not aware of "any studies . . . that determined that the claims Nestlé makes

regarding BKE are false and deceptive" other than "the FTC and the [FTC Press

Release]"); *id.* at 170:4-18 (stating that he's not aware of any evidence other than

the FTC complaint).  The FTC, however, never made such a finding.  Likewise,

Johnson's "proof" of falsity is her own peculiar, subjective observations that BKE

was not providing the promised health benefits to her children and her "general

---

[14]     *See also FTC v. QT, Inc.*, 512 F.3d 858, 861 (7th Cir. 2008) (Easterbrook, J.)
("a statement that is plausible but has not been tested in the most reliable
way cannot be condemned out of hand.  The burden is on the Commission to
prove that the statements are false.").

belief that they're [Nestlé's advertising claims] false." Johnson Dep. at 36:13-21;38:4-8;51:1-23; 164:24-165:11; 167:22-168:5.

Plaintiffs also tender the reports of Marc Meyers and John Fortunato, which do nothing more than criticize the designs and some of the results of the more than thirty studies and scientific review articles upon which Nestlé relies as support for the challenged advertising claims.[15]   However, what is missing from Drs. Meyers' and Fortunato's reports is fatal to Plaintiffs' claims in this action.

Specifically, Dr. Meyers fails to cite a single scientific study or any other evidence showing that the BKE advertising claims are false or misleading, or that BKE does not provide the promised health benefits, nor does Dr. Meyers explain how he supports his net opinion that "Nestlé's advertising and marketing of the [BKE] Product was misleading."   Castello Decl. Exh. E at 9.   As the Central District of California found with respect to Dr. Meyers' similar opinions offered in support of a preliminary injunction motion filed in another false advertising action, criticisms "rais[ing] questions about the Defendants' claims" do not suffice to satisfy plaintiffs' burden of demonstrating falsity or that the challenged claims are misleading:

> [T]he Court cannot conclude, based on the evidence submitted by
> Plaintiffs – i.e., Dr. Meyers' opinions – that the claims are false or
> misleading, or are likely to be found false of misleading.   For

---

[15]   Copies of Drs. Meyers' and Fortunato's reports are attached as Exhibits E and F to the Castello Declaration, respectively.

-31-

example, Dr. Meyers does not cite to scientific studies that show that the claims are false or misleading, nor does Dr. Meyers explain how he can conclude that Trigosamine FA "does not cause improved mobility in three days," or that a consumer will **not** ["]lose 400% more weight using Apatrim." There is an inadequate factual basis stated for Dr. Meyers' opinions.

*Patenthealth*, Dkt. No. 47 at 4 (Castello Decl. Exh. D) (emphasis in original and internal citation omitted). Similarly, while acknowledging that *Lactobacillus reuteri* – the probiotic in the BKE straw – (1) has a statistically significant effect on reducing the duration of and preventing diarrhea in children in day-care centers, and (2) effectively colonizes in the GI tract and increases B and T lymphocytes (the major cellular components contributing to immune response), and that (3) "[v]ery good basic data has been presented," Castello Decl. Exh. F at 4-11, Dr. Fortunato quibbles only about study designs and the "clinical and economic significance" of the study results. *Id.* at 6. Importantly, he does not provide any analysis or scientific support to conclude that the challenged BKE advertising claims are affirmatively false. He also cites no evidence nor concludes that BKE did not provide the advertised health benefits. Neither Dr. Meyers nor Dr. Fortunato claim to have conducted their own independent tests on BKE.

Raising questions about or disagreeing with the support underlying the challenged claims does not demonstrate that the claims, in fact, are false or misleading, which is Plaintiffs' burden. *See Stanley*, 2012 WL 1132920, at *9-10; *see also FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575, 584-85 (3d Cir. 2010)

(holding that "clinically shown" and "clinically proven" claims for calcium supplement were supported by "competent and reliable scientific evidence" even though "[i]t is undisputed that no such clinical research exists," the animal studies that defendants relied upon did not administer the supplement, the data upon which defendants relied was "extrapolated" to support the advertising claims, and experts disagreed on whether the scientific evidence supported the challenged claims). In short, Plaintiffs have failed to present any affirmative evidence that the challenged BKE advertising claims are false or misleading, thus, summary judgment is warranted on all of their fraud-based claims.

## V.    NESTLÉ'S ADVERTISING CLAIMS ARE SUPPORTED BY COMPETENT AND RELIABLE SCIENTIFIC EVIDENCE IN ANY EVENT

Even though it is Plaintiffs' burden in this case to prove falsity or that the challenged advertising claims are misleading – a showing that Plaintiffs have not even attempted to meet – and not Nestlé's to prove that its claims are substantiated, there is overwhelming record evidence supporting such conclusion. In order to have a "reasonable basis" (*i.e.*, substantiation) to make "clinically shown" or health benefit claims like the claims challenged by Plaintiffs in this case, an advertiser must possess "competent and reliable scientific evidence."[16]  *FTC v. Lane Labs-*

---

[16]    Although not binding, in interpreting the CFA, UTPCPL, UCL, FAL, and CLRA, courts give great deference to FTC advertising decisions, guidelines, and standards. *See, e.g., Harvey v. Cytodyne Techs., Inc.*, No. MON-C-205-03, 2005 WL 1633729, at *1 (N.J. Super. Ch. May 9, 2005) (incorporating

*USA, Inc.*, No. 00-CV-3174, 2007 WL 316462, at *1 (D.N.J. Jan. 30, 2007), *vacated on other grounds*, 626 F.3d 575, 584-85 (3d Cir. 2010) (affirming district court's holding that competent and reliable scientific evidence supported "clinically proven" and "clinically shown" claims for calcium supplement); *FTC v. Direct Mktg. Concepts, Inc.*, 569 F. Supp. 2d 285, 299 (D. Mass. 2008) ("For health-related efficacy and safety claims, the FTC has commonly insisted on 'competent and reliable scientific evidence.'") (citing cases), *aff'd*, 624 F.3d 1 (1st Cir. 2010); *FTC v. Nat'l Urological Group, Inc.*, 645 F. Supp. 2d 1167, 1186 (N.D. Ga. 2008) ("The FTC requires advertising claims that pertain to a health benefit to be substantiated by competent and reliable scientific evidence.").

The "reasonable basis" standard held sway for nearly 40 years (including the time that Nestlé marketed BKE). *See In re Pfizer, Inc.*, 81 FTC 23 (1972). The FTC has never determined that Nestlé lacked a reasonable basis for its claims about BKE. In fact, when the claims were made, Nestlé possessed a reasonable basis (competent and reliable scientific evidence) to make those claims – and still does. The FTC merely changed the standard upon which Nestlé could make future claims about BKE. That is not the basis for a cause of action.

---

FTC "competent and reliable scientific evidence" standard in order resolving CFA false advertising action); *Abrams v. Toyota Motor Credit Corp.*, No. 0171049, 2001 WL 1807357, at *8 n.10 (Pa. Super. Ct. Dec. 5, 2001); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (applying FTC deception standard in UCL, FAL, and CLRA action); *In re Firearm Cases*, 126 Cal. App. 4th 959, 980 (2005).

Plaintiffs acknowledge that "competent and reliable scientific evidence" is the appropriate standard against which Nestlé's advertising claims are to be judged. Am. Compl., ¶ 4. "Competent and reliable scientific evidence" is defined as:

> Tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.

*FTC v. Chinery*, No. 05-3460, 2006 WL 3878416, at *3 (D.N.J. Dec. 26, 2006). "This is the same standard the FTC applies to any industry making health-related claims." FTC, *Dietary Supplements: An Advertising Guide for Industry*, 9 (April 2001) (hereinafter "*FTC Guide*"). The "competent and reliable scientific evidence" standard to which advertisers must adhere is a "flexible standard" that "has been developed over many years by [FTC] enforcement precedent and guidance from the FTC." *Direct Mktg. Concepts, Inc. v. FTC*, 581 F. Supp. 2d 115, 118 (D. Mass. 2008) ("the standard is not a uniform, self-executing rule").

There are "many variations [that] the 'competent and reliable scientific evidence' [can] take . . ." *Id.* The standard is "context specific and permits different variations . . . depending on what pertinent professionals would require for the particular claim made." *Nat'l Urological Group*, 45 F. Supp. 2d at 1187. The "competent and reliable scientific evidence" standard does not require that

there be two "gold standard" (randomized, double-blinded, and placebo-controlled) studies;[17] one study can be enough. *FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 961-62 (N.D. Ill. 2006) (agreeing with FTC experts that, for health claims for "ionized" pain-relieving bracelet, "*at least one* well-conducted, placebo-controlled, randomized, double-blind or sham-controlled study clinical trial would be required" to satisfy "competent and reliable scientific evidence standard," and holding that "with medical, health-related claims, "*a* . . . gold standard *study* should have been conducted.  That is the level of substantiation defendants must have to make a [health benefit] claim."") (emphasis added), *aff'd*, 512 F.3d 858 (7th Cir. 2008); *see also FTC Guide*, at 10 ("there is no requirement that a dietary supplement claim be supported by any specific number of studies").

---

[17] The Consent Order that was entered into between Nestlé and the FTC is prospective only and rigidly defines "competent and reliable scientific evidence" as requiring, among other things, "at least two adequate and well-controlled human clinical studies of the product . . ." FTC Consent Order, at ¶¶ II, III.  That is a new, heightened private standard that necessarily goes beyond what the law required at the time the challenged BKE advertising, marketing, labeling, and packaging were disseminated, and still generally requires. *See Louis W. Epstein Family Partnership v. Kmart Corp.*, 13 F.3d 762, 771 (3d Cir.1994) (stating that an injunction "that merely enjoins a party to obey the law does not give the restrained party fair notice of what conduct will risk contempt" and is therefore improper); *FTC v. Garden of Life, Inc.*, -- F. Supp. 2d --, No. 9:06-cv-80226, 2012 WL 651773, at *6 (S.D. Fla. Feb. 28, 2012) (injunction cannot require respondent to simply "obey the law") (citing cases).  Moreover, as the Consent Order is merely a private settlement, only the FTC can enforce its provisions; Plaintiffs in this case cannot.  *Biovail Corp. Int'l v. Hoechst Aktiengesellschaft*, 49 F. Supp. 2d 750, 764 (D.N.J. 1999) (private litigant lacked standing to enforce FTC Consent Order); *Merck-Medco Managed Care, Inc. v. Rite Aid Corp.*, 22 F. Supp. 2d 447, 473 n.61 (D. Md. 1998) ("FTC . . . is the only party with standing to enforce the [FTC] consent decree").

In fact, as Judge Easterbrook explained in *QT, Inc.*, even something less than a gold standard study may suffice to support a health claim. 512 F.3d at 861 ("nothing in the Federal Trade Commission Act . . . requires placebo-controlled, double-blind studies.. . . Placebo-controlled, double-blind testing is not a legal requirement for consumer products."); *see also FTC Guide*, at 9. What is clear, however, is that the "competent and reliable scientific evidence" substantiation standard for advertising claims does not require "uncontroverted evidence." *Garden of Life*, 2012 WL 651773, at *7 (finding that advertising claims for defendants' calcium supplement were substantiated even though FTC's expert concluded to the contrary). In other words, there is room for disagreement between experts as to whether a claim is substantiated without that claim necessarily being found to be false.

In this case, Nestlé has produced more than thirty scientific studies and review articles that it relied upon at the time the claims were developed and made to support the challenged BKE advertising claims, *see* Castello Decl. Exh. U generally; and two clinicians (Drs. Bryan Vartabedian and Daniel Merenstein) and a scientist (Dr. José Bruno-Bárcena) have submitted expert reports concluding, without qualification, that each of the challenged advertising claims is truthful and supported by competent and reliable scientific evidence. *See* Vartabedian Rept. at

4-6; Merenstein Rept. at 3, 5; Bruno-Bárcena Rept. at 11, 14-15, 17.[18]   Moreover,

the testimony of the individuals deposed by Plaintiffs (including two scientists

(Drs. Fariba Roughead and Norman Greenberg) and a clinician (Dr. Jose Saavedra)

who were involved in the development of BKE and the advertising claims

associated therewith, and former Nestlé employees who have no incentive to

testify favorably for the company) has revealed that Nestlé had a reasonable basis

to make the claims contained in the various BKE advertising, marketing, and

labeling when they were made.   Castello Decl. Exh. J at 197:10-198:8; Exh. K at

71:20-72:1, 99:7-11; Exh. L at 111:6-18, 175:3-7; Exh. M at 58:20-59:12, 121:4-

10; Exh. N at 36:24-38:1, 38:15-39:1.

While Plaintiffs and their experts may disagree with the adequacy of the

scientific evidence, that is simply legally insufficient to render the challenged

claims unsubstantiated and certainly not enough to demonstrate that the claims are

actually false or misleading.   In short, Nestlé's BKE advertising claims are

supported by competent and reliable scientific evidence.

## VI.   SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFFS' BREACH OF EXPRESS WARRANTY CLAIM

Count III of the Amended Complaint alleges that Nestlé breached some

ambiguous warranty.   *See* Am. Compl. ¶¶ 76-80.   An express warranty is an

---

[18]   Drs. Vartabedian's, Merenstein's, and Bruno-Bárcena's expert reports are attached as Exhibits G, H, and I to the Castello Decl., respectively.

"affirmation of fact or promise made by the seller to the buyer which relates to the goods" or a "description of the goods[,]" which "becomes part of the basis of the bargain.. . ."   N.J.S.A.  §  12A:2-313(1)(a)-(b).  "[E]xpress  warranties  rest  on 'dickered' aspects of the individual bargain" *Id.* at § 12A:2-313 cmt. 1.  Plaintiffs' express warranty claim fails for two reasons.

Neither Plaintiff can prove that they provided the requisite pre-litigation notice of breach.  "New Jersey has adopted the Uniform Commercial Code's ('UCC') notice requirement for an express warranty claim." *Kury v. Abbot Labs., Inc.*, No. 11-803, 2012 WL 124026, at *7 (D.N.J. Jan. 17, 2012) (citing cases). Under the New Jersey UCC, "a buyer must within a reasonable time after he discovers . . . any breach [of warranty] notify the seller of breach or be barred from any remedy.. . ."   N.J.S.A.  §  12A:2-607(3)(a).   "[T]his statutory notice is a 'condition precedent to filing any suit for breach of warranty.'"  *Kury*, 2012 WL 124026, at *7 (quoting *Joc, Inc. v. Exxonmobil Oil Corp.*, No. 08-5344, 2010 WL 1380750, at *4 (D.N.J. Apr. 1, 2010)).   The purpose of the UCC notification requirement "is not intended to merely make the seller aware of the breach," *Am. Fed'n of State County and Mun. Employees v. Ortho-McNeil-Janssen Pharms., Inc.*, No. 08-cv-5904, 2010 WL 891150, at *6 (E.D. Pa. Mar. 11, 2010), rather, the requirement is designed to "inform[] the seller that the [particular] transaction is claimed to involve a breach, and thus open[] the way for normal settlement through

-39-

negotiation." *Slack v. Suburban Propane Partners, LP*, No. 10-2548, 2010 WL 5392845, at *5 (D.N.J. Dec. 22, 2010) (quoting N.J.S.A. § 12A:2-607, cmt. 4).

Because Plaintiffs failed to give notice of the alleged breach of warranty before they filed their respective lawsuits, Nestlé was "denied the opportunity to negotiate or settle this claim without judicial involvement." *Ortho-McNeil-Janssen Pharms.*, 2010 WL 891150, at *6. For that reason alone, summary judgment is appropriate on Plaintiffs' breach of express warranty claim. *Kury*, 2012 WL 124026, at *7.

Most important, however, is the fact that Plaintiffs fail to offer any proof that there was anything wrong with any of the BKE they allegedly purchased. Indeed, there is no evidence that either Plaintiff received anything less than what they were promised, or that BKE or the probiotic straw did not provide the health benefits advertised. Because Plaintiffs received the benefit of their bargain – *i.e.*, a nutritionally complete drink containing the advertised levels of vitamins and minerals, and the probiotic straw – and because Plaintiffs have provided no evidence that BKE or the probiotic straw failed to provide the advertised health benefits, Nestlé did not breach any express warranty and summary judgment is appropriate. *See O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 504 (8th Cir. 2009) ("because [the plaintiffs'] crib has not exhibited the alleged defect, they have necessarily received the benefit of their bargain").

## VII.   NESTLÉ IS ENTITLED TO SUMMARY JUDGMENT ON SCHEUERMAN'S CFA AND UTPCPL CLAIMS

Even if Scheuerman's claims were not entirely grounded upon a lack of substantiation theory (which they are), his CFA and UTPCPL claims still both fail as a matter of law.  Given that the two consumer protection statutes share the same three core essential elements, they can be discussed and disposed in tandem.

In order to prove his CFA claim, Scheuerman must establish (1) unlawful conduct by Nestlé; (2) an "ascertainable loss"; and (3) a causal relationship between Nestlé's unlawful conduct and his ascertainable loss.  *Franulovic II*, 2009 WL 1025541, at *4; *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009) ("Each of the elements . . . is, without any question, a prerequisite to suit."). The unlawful practices prohibited by the CFA fall into three general categories: (1) affirmative acts; (2) knowing omissions; and (3) regulatory violations.  *Hemy v. Perdue Farms, Inc.*, No. 11-888, 2011 WL 60002463, at *12 (D.N.J. Nov. 30, 2011).  This action involves only the first category – affirmative acts – as Plaintiffs have not alleged any knowing omission or regulatory violation by Nestlé. Similarly, a plaintiff asserting an action under any section of the UTPCPL must prove the common law fraud elements, including falsity, reliance, and causation. *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 136 (3d Cir. 2005).  As the UTPCPL's "underlying foundation is fraud prevention," *Comm. v.*

*Monumental Props., Inc.*, 329 A.2d 812, 816 (Pa. 1974), it follows that the UTPCPL is inapplicable where no fraud exists.

Scheuerman cannot meet his burden here because there is no evidence from which a reasonable jury could return a verdict in his favor on either his CFA or UTPCPL claim. *See Anderson*, 477 U.S. at 249. In fact, as discussed below, Nestlé is entitled to summary judgment on at least three separate and independent grounds. First, Scheuerman has failed to demonstrate that any reasonable consumers were misled by the challenged advertising claims or that the claims, themselves, were false. As such, Nestlé could not have engaged in any unlawful conduct. Second, he cannot prove an ascertainable loss, especially one resulting from any justifiable reliance. Third, he cannot prove a causal relationship between Nestlé's allegedly unlawful conduct and any ascertainable loss.

## A. Scheuerman Cannot Prove That Nestlé Committed Any Unlawful Conduct

As noted above, Scheuerman's CFA and UTPCPL claims can survive only if he can prove unlawful conduct on the part of Nestlé. *Lieberson*, 2011 WL 4414214, at *5; *Franulovic II*, 2009 WL 1025541, at *4; 73 P.S. § 201–9.2(a). For the challenged BKE claims to amount to a CFA violation for an affirmative act of deception or fraud, or a UTPCPL violation, Scheuerman must show that the challenged representations are false. *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 703 (D.N.J. 2011); *Mango v. Pierce-Coombs*, 851 A.2d 62, 69 (N.J. App.

Dev. 2004) (explaining that, under the CFA, an affirmative representation is "one which is material to the transaction and which is a statement of fact, ***found to be false***, made to induce the buyer to make the purchase") (emphasis added); *see also Comm. v. Parisi*, 873 A.2d 3, 11 (Pa. Cmwlth. 2005) (dismissing UTPCPL claim where plaintiff failed to allege that defendant's advertising was false).

As described in detail in Section IV, *supra*, Scheuerman has not demonstrated that the BKE advertising claims he challenges actually were made and/or are false or misleading. Indeed, the entirety of Scheuerman's "evidence" of falsity is his misplaced belief that the FTC actually found the BKE claims to be false, Scheuerman Dep. at 56:11-57:8; 67:4-19; 77:2-6; 167:24-168:6, and Drs. Meyers' and Fortunato's mere disagreement with Nestlé's quantum and method of substantiation. The FTC, however, reached no such conclusion and, absent an affirmative showing by Scheuerman that the challenged BKE advertising claims are factually "incorrect" – *i.e.*, false – his CFA claim cannot stand. *Wendling v. Pfizer, Inc.*, No. A-1807-06T1, 2008 WL 833549, at *4 (N.J. Super. A.D. Mar. 31, 2008) (granting summary judgment to defendant in action alleging negligent misrepresentation and violation of the CFA arising out of advertising that defendant's veterinary product would "prevent and control parasites every day" where plaintiff failed to prove falsity); *Parisi*, 873 A.2d at 1.

Moreover, even though it is not the company's burden, Nestlé has provided substantial competent and reliable scientific evidence supporting the challenged claims. *See supra* at Section V. Thus, there is no unlawful conduct on the part of Nestlé and this defeats Scheuerman's CFA claim.

### B.   Scheuerman Cannot Establish That He Suffered An Ascertainable Loss

Ascertainable loss is a "key element of a [CFA] claim" and a claim brought under the UTPCPL. *Franulovic v. Coca-Cola Co.*, No. 07-539, 2008 WL 3166953, at *12 (D.N.J. Oct. 25, 2007) (hereinafter, "*Franulovic I*"); *Steinberg v. CVS Caremark Corp.*, No. 11-2428, 2012 WL 507807, at *7-8 (E.D. Pa. Feb. 16, 2012). An ascertainable loss is "a definite, certain and measurable loss, rather than one that is merely theoretical." *Franulovic II*, 2009 WL 1025541, at *4; *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 793 (N.J. 2005) (ascertainable loss must be "cognizable and calculable"). In cases involving alleged misrepresentations, such as here, "'either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle.'" *Solo v. Bed Bath & Beyond, Inc.*, No. 06-1908, 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007) (dismissing complaint with prejudice for failure to meet ascertainable loss requirement in action alleging that defendant advertised bed sheets as being "1000 Thread Count" when, in fact, the thread count was only 492) (citation omitted); *Singh v. Wal-Mart Stores, Inc.*, No. 98-1613, 1999 WL 374184,

-44-

at *10 (E.D. Pa. June 10, 1999) ("'ascertainable loss of money or property' is a prerequisite to a cognizable UTPCPL claim"). However, "[t]o be clear, 'what New Jersey Courts require for that loss to be ascertainable is for the consumer to *quantify the difference in value between the promised product and actual product received.*'" *Hemy*, 2011 WL 6002463, at *18 (emphasis in original and quoting *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011)).

"A consumer has not suffered ascertainable loss where the consumer gets what he/she paid for." *Loreto v. Procter & Gamble Co.*, 737 F. Supp. 2d 909, 922 (S.D. Ohio 2010) (citing *Arcanda v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 301 (D.N.J. 2009)). Nor is there an ascertainable loss "where a plaintiff simply contends that the price charged for the misrepresented product 'was higher than it should have been as a result of defendant's fraudulent marketing campaign[.]'" *Id.* (quoting *Int'l Union of Operating Engineers Local 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1088 (N.J. 2007)). Scheuerman has no evidence from which a reasonable jury could conclude that he suffered a "cognizable and calculable" claim of loss due to the alleged CFA or UTPCPLviolations.

Scheuerman cannot prove ascertainable loss under either the CFA or UTPCPL. First, Scheuerman has failed to demonstrate that BKE did not provide his children with each and every health benefit that he claims Nestlé advertised. In fact, at his deposition, Scheuerman acknowledged that he did not keep any type of

-45-

health journal or diary, or otherwise monitor his sons' health either before or after they began consuming BKE so that he could determine whether BKE was effective or not.  *See* Scheuerman Dep. at 85:22-86:9 (neither Scheuerman nor his wife maintained a journal or diary of K.S.'s health even though K.'S.'s doctor gave them a book because "we don't have the time to keep up with that kind of information"); 86:11-87:14 (unable to recall any upper respiratory tract infections, or the number of cold and flu viruses or episodes of diarrhea before K.S. began consuming BKE); 91:2-93:7 (acknowledging that he did not monitor or track K.S.'s health or specific instances of diarrhea, upper respiratory tract infections, or cold and flu viruses); 94:9-97:8 (unable to recall specific instances of upper respiratory tract infections or diarrhea for H.S. before he began consuming BKE); 101:4-9 (H.S. was not diagnosed with an upper respiratory tract infection after he began consuming BKE); 101:14-17 (unable to recount how many episodes of diarrhea suffered by H.S. after he began consuming BKE).

Indeed, Scheuerman has admitted that he does not have the slightest idea whether BKE did or did not provide the advertised health benefits:

> Q.    After you started giving BKE to [K.S.], do you know if he received any health benefits from BKE?
>                 * * *
> A.    I couldn't tell you.. . .
> Q.    So sitting here today, do you know if [K.S.] did or did not receive any health benefits from consuming BKE?
> A.    I wouldn't be able to tell you.  I'm not a doctor.
> Q.    Would the answer be the same for [H.S.]?

> A.   For [H.S.]?
> Q.   For [H.S.].
> A.   Yes.

*Id.* at 103:14-104:11.[19]   Moreover, Scheuerman's sons were not diagnosed with

any condition relating to a weak immune system after they began consuming BKE.

Scheuerman Dep. at 93:8-11; 103:10-13.   Just as the *Franulovic* plaintiff's failure

to monitor her weight or calorie-intake was fatal to her CFA challenge to Coca-

Cola's purported weight-loss drink advertising, Scheuerman's failure to monitor

his sons' health to determine whether they received the health benefits provided by

BKE demonstrates that his CFA and UTPCPL claims cannot be sustained.   *See*

*Franulovic II*, 2009 WL 1025541, at *5-6; *see also Loreto*, 737 F. Supp. at 922 (no

ascertainable loss where "there are no factual allegations . . . that the [cold

medicines] were actually ineffective in treating or relieveing the symptoms of

Plaintiffs' cold or flu").

Second, Scheuerman has failed to quantify any losses that he allegedly

suffered.   For example, in his interrogatory responses, Scheuerman stated that he

could not recall the price he paid for BKE, the number of units purchased, or the

total amount he spent purchasing the product.   Castello Decl. Exh. R at Interrog.

Response 17.   And, in response to an interrogatory seeking the amount and

---

[19]   While the Court denied dismissal and found that, at that stage of the litigation, Scheuerman had alleged an ascertainable loss – his allegation that BKE did not provide the promised health benefits – Dkt. No. 99 at 11 n.12, at summary judgment, simple complaint allegations do not suffice; facts are required.

calculation of Scheuerman's damages, he responded only that he would "produce expert disclosures."[20] *Id.* at Interrog. Response 23. Later, at his deposition, when explicitly asked to quantify the "ascertainable losses" that he alleged in the complaint, Scheuerman answered that he has not attempted to determine his damages and that he "figured that would be up to the judge." Scheuerman Dep. at 140:16-141:7.[21] Scheuerman's admitted inability and his commensurate failure to provide any evidence of a "measurable" or "calculable" out-of-pocket loss or loss in value demonstrates that he cannot satisfy the essential "ascertainable loss" requirement of the CFA or UTPCPL.

When he purchased BKE, Scheuerman received a drink product that contained all the listed ingredients and provided all the health benefits advertised.

---

[20]  Despite this promise, Plaintiffs' purported damages expert, Warren Keegan, does nothing to quantify Scheuerman's damages. Rather, he conducted a fatally flawed survey to determine the value that a small subset of consumers – not Scheuerman – would place on the "immunity protection" claim only, which appeared on the packaging for 6-packs of chocolate-flavored BKE – a product that Scheuerman admittedly did not purchase. *Compare* Castello Decl. Exh. S; *with id.* Exh. T at ¶¶ 13-16, 20, 37.

[21]  It bears noting that, although Scheuerman broadly testified that he is seeking "the money I spent for the two years I was buying the product," Scheuerman Dep. at 140:20-21, he could not have purchased BKE for more than, at most, three months. More specifically, he claims that he purchased BKE in 4-pack and case configurations only. *Id.* at 30:7-9; 34:24-35:2. BKE, however, was never commercially available in retail stores in a case format, so Scheuerman could not have purchased any cases of BKE. Rope Decl. at ¶ 6. Moreover, the 4-pack of BKE only became available at a single retailer – Walmart – in April 2010 (three months before he filed his complaint); other retailers began selling BKE in 4-packs in September 2010, several months after Scheuerman's initial complaint was filed. *Id.* at ¶¶ 4-5. Regardless, Scheuerman has consistently been unable to provide any evidence of out-of-pocket loss or loss in value, as is required to support the "ascertainable loss" element of a CFA or UTPCPL claim.

Scheuerman simply has no evidence to the contrary. Nor can he provide any evidence that he experienced any out-of-pocket loss because of his purchases, or that the BKE that he purchased was worth an amount of money less than the BKE that his sons consumed. In fact, Scheuerman has not provided any evidence of the difference in value between the promised BKE and the actual product received. These are the exact same shortcomings that have led to the dismissal of CFA and UTPCPL claims in similar false advertising class actions. *See, e.g., Hemy*, 2011 WL 6002463, at *18 (dismissing CFA action challenging "Humanely Raised" and "Raised Cage Free" advertising claims for defendant's chicken products even though plaintiffs alleged that they paid a "premium" for the products and would not have purchased the products had they known that the defendant inhumanely raised and slaughtered its chickens); *Lieberson*, 2011 WL 4414214, at *8 (no ascertainable loss where plaintiff failed to allege the price of infant bath products or the cost of any allegedly comparable products); *Wilson v. Parisi*, 549 F. Supp. 2d 637, 670 (M.D. Pa. 2008) (granting summary judgment to defendants where plaintiffs failed to show that they paid more than fair market value for their homes due to inflated appraisal).

At most, Scheuerman simply claims that his expectations of BKE were disappointed. That, however, is not sufficient to satisfy his burden of providing evidence of "ascertainable loss." *Mason*, 774 F. Supp. 2d at 704; *Solo*, 2007 WL

-49-

1237825, at *3 (dismissing CFA claim where plaintiff failed to allege that "the sheets were worth an amount of money less than the sheets he was promised, or that he experienced a measurable out-of-pocket loss because of his purchase"); *Thiedemann*, 872 A.2d at 795 ("subjective assertions without more are insufficient to satisfy the requirement of an ascertainable loss that is expressly necessary for access to the [CFA] remedies").

    **C.**    **Scheuerman Cannot Prove That Nestlé's Allegedly Unlawful Conduct Caused His Hypothetical Ascertainable Loss**

In addition to demonstrating that Nestlé committed some unlawful conduct and that he suffered an ascertainable loss, under the CFA and UTPCPL, Scheuerman must provide evidence of a causal nexus between his ascertainable loss and Nestlé's alleged unlawful conduct – *i.e.*, that his ascertainable loss was suffered "as a result of" Nestlé's unlawful conduct. *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 526 (D.N.J. 2008); *Solo*, 2007 WL 1237825, at *4 (citing N.J.S.A. § 56:8-19); 73 P.S. § 201–9.2(a). In other words, Scheuerman must specifically show that Nestlé's "unlawful practice *caused* his loss." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (emphasis added). Scheuerman also must present facts – not merely conjecture and conclusions – that he would not have purchased BKE but for the alleged misrepresentations. *See In re Toshiba Am. HD DVD Mktg. and Sales Practices Litig.*, No. 08-939, 2009 WL 2940081, at

*13 (D.N.J. Sept. 11, 2009). Further, due to the UTPCPL's causation requirement, a plaintiff must prove justifiable reliance to prevail under that statute. *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 202 (Pa. 2007).

At his deposition, Scheuerman was unable to state that, in fact, he would not have purchased BKE but for the misrepresentations alleged. At best, he was ambivalent, concluding that he "***[m]ost likely***" would not have purchased BKE under those circumstances. Scheuerman Dep. at 136:25-137:4 (emphasis added). In other words, while Scheuerman "most likely" would not have purchased BKE but for the challenged advertising claims, he still might have. Scheuerman's uncertainty about whether or not he would have bought BKE under those circumstances does not suffice to establish the requisite causal connection between the alleged misrepresentations and his purported loss. *In re Toshiba*, 2009 WL 2940081, at *13. Scheuerman has failed to provide evidence supporting any of the essential elements of his CFA or UTPCPL, much less all of them as is his burden. Thus, summary judgment is appropriate on both claims.

## VIII. NESTLÉ IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM

"[I]n order to sustain a cause of action based on negligent misrepresentation, the plaintiff must establish that the defendant negligently made an incorrect statement of a past or existing fact, that the plaintiff justifiably relied on it and that his or her reliance caused a[n economic] loss or injury" *Wendling*, 2008 WL

833549, at *5; *Mason*, 774 F. Supp. 2d at 704; *H. Rosenblum, Inc. v. Adler*, 461 A.2d 138, 142-43 (N.J. 1983).  As demonstrated above, Plaintiffs have failed to provide any evidence that Nestlé's advertising claims are either false or misleading, or for that matter, incorrect.  *See supra* at Section IV(B).  For that reason alone, summary judgment is warranted.

Even if there was evidence of falsity (which there is none), Plaintiffs simply have not demonstrated the justifiable reliance and causal injury elements required for a negligent misrepresentation claim.  For example, when asked in an interrogatory to "[i]dentify which aspects of [Nestlé's] advertising claims regarding BKE you relied upon," Scheuerman failed to identify a single claim on which he specifically relied.  Rather, he simply characterized what he believes to be "Nestlé's marketing scheme for [BKE]" by identifying the express and implied advertising claims alleged in the Amended Complaint, and stated that he recalled seeing BKE marketing material and labeling generally.  *See* Dkt. No. 73 at 34 (response to Interrog. 19).  At his deposition, Scheuerman explained that he purchased BKE because of a television advertisement, which he thinks made claims that BKE would "prevent upper respiratory infections, flu and boost children's immunity . . ."  Scheuerman Dep. at 22:23-23:8.  Based on his description of that commercial – a "family running around the park . . . and talking about [BKE]" (Scheuerman Dep. at 31:23-34:5) – the only commercial that

Scheuerman might have seen, however, was the "Kid Essentials Taste Challenge" commercial, which focused on BKE's taste superiority; none of the claims identified by Scheuerman at his deposition appeared in that commercial.   Rope Decl. at ¶ 11 & Exh. 4 thereto.

Johnson fares no better than Scheuerman in providing evidence of reliance. At her deposition, the best that Johnson could muster in support of the "reliance" element was a broad reference to her "reliance on the claims that [Nestlé] made in selling [BKE] and having mothers like myself believe that – me, personally, that this would be something that helps their kids with immunity and health."  Johnson Dep. at 110:6-10; *see also id.* at 131:14-15 ("I relied on the various factors that I originally put in my complaint on purchasing the drink");  154:16-155:15 (testifying that she relied on the express and implied claims contained in the Amended Complaint, which appeared in non-specific "[v]arious print, online, [and in] media").

Plaintiffs have done nothing more in discovery than restate the legal conclusions contained in their Amended Complaint.  Such generalized allegations of reliance based on vague recollections of advertising representations – many of which do not even appear in any BKE advertising – in the absence of specific facts is not enough to meet Plaintiffs' burden of demonstrating at summary judgment, through evidence, that they justifiably relied on any of Nestlé's representations.

-53-

Thus, they have failed to satisfy the "reliance" element of their negligent misrepresentation claim.

Finally, for the same reasons described above with respect to his CFA claim, *see* Section VII(B) *supra*, Scheuerman has not demonstrated any economic loss or cognizable injury to support his negligent misrepresentation claim.   Johnson, similarly, has been unable to muster any evidence of loss or injury.  She does not claim that BKE did not provide her children with the advertised health benefits; in fact, she completely disavowed such claim.  *See* Dkt. No. 135 at 12 ("Thus, no matter how much torque Nestlé applies, it still cannot credibly spin Ms. Johnson's deposition testimony into an allegation that this case in any way involves a dispute about whether [BKE] actually failed to provide to Ms. Johnson's children the health benefits Nestle claims.  In fact, that question has never been implicated in this action.").[22]

In short, there is no evidence that Johnson did not receive exactly what she purchased.  Further, just as with Scheuerman, Johnson has completely failed to provide any evidence of (1) the price she paid for BKE; (2) the price differential between the BKE she purchased and what was promised; or (3) her damages.  Castello Decl. Exh. Q at Interog. Response 23 ("[Johnson] will produce expert disclosures in due course," in response to interrogatory seeking her damages)];

---

[22]   Johnson is prohibited from making such assertion.  Dkt. No. 136 at 2.

Johnson Dep. at 101:22-102:5 (describing her losses as non-specific "out-of-pocket expenses"); *id.* at 104:15-105:23 ("I don't know how to quantify that [her damages] . . . I don't know."); *id.* at 107:19-25 (admitting that she has not quantified her damages); *id* at 172:7-174:4 ("I don't recall how much money.  I don't know exactly how much money I've spent over the course of many years purchasing this drink.  I don't know.  I don't know.. . . It's a very difficult question that you're asking me to quantify, and I can't do it . . .").

In fact, Johnson has admitted to having no knowledge of or the ability to calculate any purported losses she may have suffered: "Yeah, I don't know the extent of my damages.  I'm relying on my attorney to tell me what my damages are."  Johnson Dep. at 103:20-22.  Perhaps that is because, as Johnson describes it, her "loss" and "damages" are nothing more than her "unhapp[iness]" with BKE. *Id.* at 111:1-12 ("I'm unhappy with the false claims and misleading of the benefits of the drinks.  So the health and the immunity and the probiotics, yeah, I'm unhappy with that.").  Mere disappointment with a product, however, is not a cognizable loss under New Jersey law. *See, e.g., Mason*, 774 F. Supp. 2d at 704; *Hoffman v. Macy's, Inc.*, No. A-6131-08T3, 2011 WL 6585, at *4 (N.J. Super. A.D. June 28, 2010); *Ivans v. Plaza Nissan Ford*, No. A-3647-05T1, 2007 WL 1284936, at *8 (N.J. Super. A.D. May 3, 2007).

Plaintiffs have not presented any evidence of either of their alleged losses, nor could they. Because Plaintiffs have failed to provide any facts demonstrating that they met their burden of proving each essential element of their negligent misrepresentation claim, that claim fails and Nestlé is entitled to summary judgment.

## IX.   SUMMARY JUDGMENT IS WARRANTED ON JOHNSON'S UCL, FAL, AND CLRA CLAIMS

Even if summary judgment were not appropriate as to Johnson's UCL, FAL, and CLRA claims based on her prior substantiation theory of liability – a conclusion directly at odds with the clear holdings of the *Stanley*, *Chavez*, and *Fraker* courts – or on her failure to demonstrate that the challenged advertising claims actually were made and, in fact, were false or deceptive, Johnson still has failed to raise a genuine issue of material fact that she has suffered an "injury in fact," an essential element common to her UCL, FAL, and CLRA claims.

To prevail on her UCL, FAL, and CLRA claims, Johnson must show that, among other things, she "suffered injury in fact and lost money or property as a result of" Nestlé's allegedly deceptive or false advertisements. Cal. Bus. & Prof. Code § 17204; *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1555-56 (2011). The California Supreme Court has summarized the test for the "injury in fact" requirement as follows:

> [A] party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claims.

*Kwikset Corp. v. Superior Court*, 246 P.3d 877, 884-885 (Cal. 2011). Using the *Kwikset* test, the Superior Court of California recently held in an action challenging dietary supplement advertising claims, that it is not sufficient for a plaintiff to merely allege that she was "deceived into buying a product that did not live up to its advertising." *Fletcher v. Celsius Holdings, Inc.*, No. BC439055 (Cal. Super. Ct. Sept. 1, 2011), Order Granting Defendant's Motion for Summary Judgment, at 8.[23] To permit claims under this low standard "expands Kwikset beyond its intended boundaries. It assumes that plaintiff's expectations are objectively reasonable . . . it imposes strict liability beyond the reach of summary judgment." *Id.* at 8. Rather, the court held that:

> Defendant has a right to demand, at the summary judgment stage, that plaintiff produce admissible evidence to raise a triable issue of fact that, given plaintiff's unique circumstances, he has suffered an injury in fact. This requires that he show, not just that he spent money and was disappointed, but that the fact that *he* gained or failed to lose weight, given *his* unique circumstances, was due to some shortcoming of Defendant Celsuis' product.

*Id.* at 8-9 (emphasis in original).

---

[23]    A copy of the *Fletcher* Order is attached as Exhibit P to the Castello Decl.

The question in *Kwikset*, according to the *Fletcher* court, was not whether the product at issue, a door lock, "worked as promised," because the alleged deception in advertising did not involve how the lock worked but, rather, whether the lock's parts were made in the United States.  In *Fletcher*, however, the alleged deceptive advertising was entirely centered on the fact that the product did not perform as promised.   If the product's performance was not at issue, "its advertising would not be 'false' and would not have caused [plaintiff] to wrongfully part with his money." *Id.* at 9.  It is the plaintiff's burden to show that the product failed to work as promised in order for there to be cognizable injury or harm under the UCL, FAL, or CLRA.  *Id.* at 13.  Specifically, the plaintiff had to show that that product, which promised to burn up to 100 calories per drink, did not work as advertised.  *Id.*

The plaintiff, however, pled that the product did not cause him to lose weight.  As the court explained, weight loss is influenced by a variety of different factors, including lifestyle choices.  *Id.* at 10.  The plaintiff alleged only that he drank the product in varying amounts at different times; he did not measure, while drinking the product, the amount of calories he burned, his metabolism, his caloric consumption, or his weight.  *Id.* at 11.  Moreover, he testified that he was not sure if the product did or did not burn the calories promised, and that he did not know if he burned more calories than he otherwise would have while drinking the product.

-58-

*Id.* at 12.   As a result, the court held that such failures meant that the plaintiff would never be able to establish whether or not the product "worked as promised" and, thus, would never be able to show that he was deceived by the product's label and, as a result, wrongfully parted with his money.  *Id.* at 13.  Accordingly, the court found that he suffered no injury and lacked standing to bring his UCL, FAL, and CLRA claims.  *Id.*

Like the plaintiff in *Fletcher*, Johnson cannot establish that BKE failed to provide the promised health benefits.  She admittedly did not monitor or track her children's health either before or after they began consuming BKE – she cannot recall any specific instances of colds or flus, episodes or duration of diarrhea, absences from school, or instances of upper respiratory tract infections.   Johnson Dep. at 31:20-32:25; 37:19-38:8; 56:24-58:15.   None of her children have ever been diagnosed with having a poor immune system or any type of disease, and they are all generally healthy.  *Id.* at 58:17-24.  Thus, Johnson has no factual proof – scientific or otherwise – that BKE did not work as promised and, accordingly, she cannot show that she was deceived by the label and suffered a monetary injury.[24]

Beyond an obvious lack of evidence that Johnson did not receive exactly what she purchased, she has completely failed to provide any evidence of (1) the

_____

[24]   In any event, Johnson does not even claim that BKE did not provide her children with the advertised health benefits and she is prohibited from making such argument.  *See supra* at 53 & 54 n.22.

price she paid for BKE; (2) the price differential between the BKE she purchased and what was promised; or (3) her damages.  *Supra* at 54.  Further, Johnson has admitted to having no knowledge of or the ability to calculate any purported losses she may have suffered.  *Supra* at 54-55.   She is simply "unhappy" with the product.  Johnson Dep. at 111:1-12.  Unhappiness with a product, however, is not a cognizable loss under California law.  *See, e.g., Kwikset*, 246 P.3d at 884-85 (injury in fact under UCL or FAL requires loss of "money or property"); *Gonzales v. Comcast Corp.*, No. 10-cv-01010, 2012 WL 10621, at *5 (E.D. Cal. Jan. 3, 2012) (UCL and CLRA require proof of "economic loss").

Because Johnson has failed to demonstrate that she has suffered a cognizable loss or harm, her UCL,  FAL, and CLRA claims fail and summary judgment is appropriate.

## CONCLUSION

For the foregoing reasons, Nestlé respectfully requests that this Court enter summary judgment in its favor on all counts of the Amended Complaint.

Dated:  April 13, 2012          KELLEY DRYE & WARREN LLP


By:   /s/ *Geoffrey W. Castello*
          Geoffrey W. Castello
200 Kimball Drive
Parsippany, NJ 07054
(973) 503-5900

Daniel S. Blynn (*pro hac vice*)
KELLEY DRYE & WARREN LLP
3050 K Street, NW
Suite 400
Washington, DC 20007
(202) 342-8400

*Attorneys for Defendant*
*Nestlé Healthcare Nutrition, Inc.*