**SKOLOFF & WOLFE, P.C.**
*A Professional Corporation*
    David B. Wolfe
    Jonathan W. Wolfe
    Barbara A. Schweiger
    Evan A. Showell
293 Eisenhower Parkway
Livingston, N.J. 07039
(973) 992-0900
Email: dwolfe@skoloffwolfe.com
        jwolfe@skoloffwolfe.com
        bschweiger@skoloffwolfe.com
        eshowell@skoloffwolfe.com

**NICHOLAS & BUTLER, LLP**
    Matthew B. Butler (*Pro Hac Vice*)
    Alex M. Tomasevic (*Pro Hac Vice*)
    Tracy J. Jones (*Pro Hac Vice*)
225 Broadway, 19th Floor
San Diego, California 92101
Telephone:  (619) 325-0492
Facsimile:   (619) 325-0496
Email: mbutler@nblaw.org

Attorneys for Plaintiff Maria Johnson

**THE ROSEN LAW FIRM, P.A.**
    Laurence Rosen
    Phillip Kim (*Pro Hac Vice*)
236 Tillou Road
South Orange, New Jersey 07079
Telephone:  (973) 313-1887
Facsimile:   (973) 833-0399
Email: lrosen@rosenlegal.com
275 Madison Avenue, 34th Floor
New York, New York 10018
Telephone:   (212) 686-1060
Facsimile:   (212) 202-3827
pkim@rosenlegal.com


Attorneys for Plaintiff Kurt Scheuerman

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARIA JOHNSON, an individual, and KURT SCHEUERMAN, an individual, on behalf of themselves and all others similarly situated, and ROES 1 through 100, inclusive,<br><br>       Plaintiffs,<br><br>v.<br><br>NESTLÉ HEALTHCARE NUTRITION, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br><br>      Defendants. | CASE Nos.:  2:10-CV-3684 (FSH) (PS)<br>      2:10-CV-5628 (FSH) (PS)<br><br>Motion Date:  May 21, 2012<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO NESTLÉ'S MOTION FOR SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................... 1

II. STATEMENT OF FACTS .................................................. 4

 A. NESTLÉ'S MARKETING CAMPAIGN FOR BOOST KID ESSENTIALS EMPHASIZED ITS PURPORTED "CLINICALLY SHOWN" "IMMUNITY PROTECTION" AS A WAY TO DISTINGUISH ITSELF FROM COMPETITORS. ...................... 4

 B. NESTLÉ'S CHARGED CONSUMERS A PREMIUM FOR BOOST KID ESSENTIALS BECAUSE OF THE "CLINICALLY SHOWN" IMMUNITY PROTECTION CLAIMS. ................................... 6

 C. THE FTC CHARGES NESTLÉ WITH MAKING FALSE AND MISLEADING STATEMENTS, AND NESTLÉ AGREES TO DISCONTINUE THEM. .......................... 7

 D. NESTLÉ'S REPRESENTATION THAT BOOST KID ESSENTIALS HAS "CLINICALLY SHOWN" "IMMUNITY PROTECTION" IS FALSE BECAUSE NESTLÉ HAD NO CLINICAL PROOF. ......................... 8

 E. NESTLÉ'S MARKETING SCHEME MISLEADS MARIA JOHNSON INTO PURCHASING BOOST KID ESSENTIALS. ................................................. 12

 F. NESTLÉ'S MARKETING SCHEME MISLEADS KURT SCHEUERMAN INTO PURCHASING BOOST KID ESSENTIALS. ........................................ 13

III. ARGUMENT ..................................................................... 14

 A. LEGAL STANDARD FOR SUMMARY JUDGMENT ................................................... 14

 B. SUMMARY JUDGMENT MUST BE DENIED BECAUSE AS A MATTER OF LAW, PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE PRIOR SUBSTANTIATION DOCTRINE. ................................ 16

  1. Maria Johnson is Not Claiming Lack of Prior Substantiation. .................................... 18
   a. *Stanley v. Bayer Healthcare LLC* ................. 19
   b. *Fraker v. Bayer Corp.* .................................... 21
   c. *Chavez v. Nestlé USA, Inc.* ........................... 22

  2. Kurt Scheuerman is Not Claiming Lack of Prior Substantiation. .............................. 22

**C.** **SUMMARY JUDGMENT MUST BE DENIED BECAUSE ABUNDANT EVIDENCE EXISTS PROVING NESTLE MADE MISLEADING REPRESENTATIONS.**.................................24

    **1.** **Nestlé Relies On Incompetent Evidence in Support of its Motion; That Evidence Should Be Disregarded.**.................................24

    **2.** **Nestlé's Expressly Advertised Claims Regarding BOOST Kid Essentials Are False.**.................28

    **3.** **Even if Nestlé's Advertised Claims Were Implied, Summary Judgment Is Still Inappropriate.**.................................30

    **4.** **Summary Judgment must be denied because Nestlé's Advertising Claim that BOOST Kid Essentials provided *Clinically Shown* Immunity Protection is Objectively False Under All of Plaintiffs Theories of Recovery or at a minimum Likely to Mislead.**.................................32

        **a.** **FTC Injunction Standards Do Not Apply.**.................33

        **b.** **Even if the FTC Standards Were Applicable, Nestlé's advertising was false.**.................35

        **c.** **Nestlé's Cited FTC Authority Does not Support Summary Judgment and Does Not Address "Clinically Shown" or "Clinically Proven" Assertions**.................36

        **d.** **State Consumer Standards Such as "Likely to Mislead" Do Not Require Actual Falsity and Present Questions of Fact, Not Susceptible to Summary Judgment.**.................41

    **5.** **Summary Judgment Must be Denied Because at a Minimum, There is a Battle of the Experts on Whether Nestlé's Claims Were Misleading.**.................45

**D.** **PLAINTIFFS WILL PREVAIL ON THEIR BREACH OF EXPRESS WARRANTY CLAIMS.**.................46

    **1.** **The UCC Pre-Litigation Notice Provision Does Not Apply to Consumers as Against Remote Manufacturers.**.................46

    **2.** **Plaintiffs Have Adduced Adequate Evidence that BOOST Kid Essentials Could Not Deliver What it Promised on the Label and in Advertising.**.................51

E.   PLAINTIFF JOHNSON SUFFERED AN INJURY IN FACT AND LOST MONEY BECAUSE OF NESTLÉ'S MISREPRESENTATIONS; SHE CAN RECOVER UNDER THE UCL, FAL, AND CLRA. ...................52

   1.   Johnson Has Standing Because She Suffered Economic Loss by Paying More For BOOST Kid Essentials. ........................................................52

   2.   It is Irrelevant that Johnson Cannot Calculate with Accuracy the Amount of Her Damages or Verify that Her Children Did Not Benefit From BOOST Kid Essentials. .............................54

F.   SCHEUERMAN SUFFERED AN ASCERTAINABLE LOSS. ..............................................54

   1.   Plaintiff Scheuerman Suffered an Ascertainable Loss. ...............................................54

   2.   Nestlé's Misrepresentations Caused Scheuerman' s Loss. .............................................57

G.   PLAINTIFFS WILL PREVAIL ON THEIR NEGLIGENT MISREPRESENTATION CLAIMS. ...................57

IV.   CONCLUSION .............................................................58

PLAINTIFFS' MEMO OF LAW IN OPPOSITION TO NESTLÉ'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF AUTHORITIES

### CASES

*Abrams v. Toyota Motor Credit Corp.*, No. Control 071049, 2001 WL 1807357 (Pa. Super. Ch. Div. Dec. 5, 2001) ....................................37

*Banks v. Int'l Rental & Leasing Corp.*, Nos. 08-1603, 08-2512, 2011 WL 7186340 at *2 (3d Cir. April 19, 2011) .....................................15

*Banks v. Int'l Rental & Leasing Corp.*, Nos. 08-1603, 08-2512, 2011 WL 7186340, at *2 (3d Cir. April 19, 2011) ...................................35

*Barry v. Arrow Pontiac, Inc.,* 100 *N.J.* 57, 69, 494 *A.*2d 804 (1985) ...................42

*Benson v. Kwikset Corp.*, 152 Cal. App. 4th 1254, 1275-76 (Ct. App. 2007) .............................................................................................30

*Castrol, Inc. v. Pennsoil Quaker State Co.*, No. Civ. A 00-2511, 2000 WL 1556019, *6 (D.N.J. Oct. 12, 2000) ...........................................30

*Castrol, Inc. v. Quaker State Corp.,* 977 F.2d 57, 63 (2d Cir.1992) ...................35

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ...........................14

*Celotex,* 477 U.S. at 330 .........................................................................15

*Chattin v. Cape May Greene, Inc.*, 216 N.J. Super. 618, 639 (App. Div.), *certif. denied*, 107 N.J. 148 (1987) ................................................32

*Chattin v. Cape May Greene, Inc.,* 216 *N.J.Super.* 618, 639, 524 *A.*2d 841 (App.Div.) ............................................................................................43

*Chavez v. Nestlé USA, Inc.*, No. CV-09-9192-GW (CWx), 2011 WL 2150128 (C.D. Cal. May 19, 2011) ...................................................18

*Churchill Village LLC v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1131 (N.D. Cal. 2000) .....................................................................................31

*Cox v. Sears Roebuck & Co.,* 138 *N.J.* 2, 17, 647 *A.*2d 454 (1994) .....................42

*Elec. Ins. Co. v. Electrolux No. Am., Inc.*, No. 09-3792(FSH), 2011 WL 5825981, at *4 (D.N.J. Sept. 19, 2011) ..............................16, 35

*Eli Lilly & Co. v. Actavis Elizabeth LLC,* 676 F. Supp. 2d 352, 360 (D.N.J. 2009) ......................................................................................16, 35

*F.T.C. v. Direct Marketing Concepts, Inc.*, 569 F. Supp. 2d 285 (D. Mass 2008) ..........................................................................................17

*F.T.C. v. Procter & Gamble Co.*, 386 U.S. 568, 572 (1967) ..................................1

*Fagan v. Nordic Prince, Inc.*, No. 91-5143, 1992 WL 361704, at *3 (D.N.J. July 17, 1992) .....................................................................15, 33

*Fed. Labs, Inc. v. Barringer Research Ltd.*, 696 F.2d 271, 275 (3d Cir. 1982) ...................................................................................................16, 35

*Feit v. Great-West Life & Annuity Ins. Co.*, No. 03-2948(HAA), 2005 WL 2665736, at *4 (D.N.J. October 18, 2005) ..............................16, 35

*Fraker v. Bayer Corp.*, No. CV F 08-1564 AWI GSA, 2009 WL 5865687 (E.D. Cal. Oct. 6, 2009) ..............................................................18

*Franulovic v. Coca Cola Co.,* 390 Fed. Appx. 125 (3d Cir. 2010) .......................17

*Franulovic v. Coca Cola Co.*, 390 Fed. Appx. 125, 127-28 (3d Cir. 2010) ....................................................................................................23

*Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) ....................................38

*FTC v. Direct Marketing Concepts, Inc.,* 569 F. Supp. 2d 285, 301 (D. Mass. 2008)....................................................................................................26

*FTC v. Direct Mktg. Concepts, Inc.,* 569 F. Supp. 2d 285, 299 (D. Mass. 2008)....................................................................................................39

*FTC v. Garden of Life,* – F. Supp. 2d --, No. (:06-cv-80226, 2012 WL 651773 (S.D. Fla. Feb 28, 2012) ....................................................................41

*FTC v. Lane Labs-USA, Inc.,* Civ. No. 00-CV-3174 (DMC), 2007 WL 316462 (D.N.J. Jan. 30, 2007) .....................................................................39

*FTC v. Nat'l Urological Grp., Inc.,* 645 F. Supp. 2d 1167 (N.D. Ga. 2008) ........................................................................................................40

*FTC v. Pfizer, Inc.,* 81 F.T.C. 23, 23 (1972) ............................................................1

*FTC v. QT, Inc.,* 448 F. Supp. 2d 908, 961-62 (N.D. Ill. 2006), *aff'd,* 512 F.3d 858 (7th Cir. 2008) ...........................................................................41

*Gillette Co. v. Norelco Consumer Prod. Co.,* 946 F. Supp. 115, 123-25 (D. Mass 1996) ......................................................................................17

*Glaxosmithkline Consumer Healthcare, L.P. v. Merix Pharm. Corp.,* No. 05-898 (DRD), 2005 WL 2230318 at *3 (D.N.J. Sept. 13, 2005) ..................................................................................................17

*Hafner v. Brooks*, 109 N.J.L. 44 (N.J.Err. & App.1932)....................................34

*Harvey v. Cytodyne Tecs., Inc.,* No. MON-C-205-03, 2005 WL 1633729 *2 (N.J. Super. Ch. Div. May 9, 2005).......................................37

*In re Firearm Cases*, 126 Cal. App. 4th 959, 980 (2005)....................................38

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,* MDL No. 09–2046, 2011 WL 6012598, *17 (S.D. Tex. Dec. 1, 2011) ........................................................................................................24

*In re Pfizer, Inc.,* 81 FTC 23 (1972); *FTC v. Chinery*, No. 05-3460, 2006 WL 3878416 (D.N.J. Dec. 26, 2006)..................................................41

*In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) .........................................31

*Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994)..................................30

*Kwikset v. Super. Ct.*, 120 Cal. Rptr. 3d 741, 755 (Cal. 2011) .............................1

*Leon, supra,* 340 *N.J.Super.* at 469-72, 774 *A.*2d 674......................................42

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.,* Civ. No. 10-6196 2011 WL 4414214, *6 (D.N.J. Sept. 21, 2011).....................................24

*Merisant Co. v. McNeil Nutritionals, L.L.C.,* 515 F. Supp. 2d 509, 525 (E.D. Pa. 2009)...............................................................................................43

*Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc.,* 222 F.3d 123, 129 (3d Cir. 2000) ......................15

*Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 150 (2000) ..........15, 33

*Removatron Intern. Corp. v. F.T.C.*, 884 F.2d 1489 (1st Cir. 1989)...................17

*Removatron Intern. Corp.,* 884 F.3d at 1492 n.3................................................18

*Rodio v. Smith*, 123 N.J. 345 (1991) .................................................................43

*Smithkline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson et al.,* 906 F. Supp. 178, 182 (S.D.N.Y. 1995)....................................35

*Speyer, Inc. v. Humble Oil & Refining Co.,* 403 F.2d 766, 770 (3d Cir. 1968).........................................................................................15, 35

*Stanley v. Bayer Healthcare LLC,* No. 11cv862-IEG(BLM), 2012 WL 1132920 (S.D. Cal. Apr. 3, 2012)........................................................18

*Stanley,* 2012 WL 1132920...........................................................................19

*Stanley,* 2012 WL 1132920 at *1..................................................................19

*Union Ink Co., Inc. v. A.T.& T. Corp.,* 352 N.J. Super. 617, 645 (App. Div.), *certif.. denied*, 174 N.J. 547 (2002)........................................33

*Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617, 644-645 (App. Div.), *certif. denied*, 174 N.J. 547 (2002) ...............................42

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) ....................................15

## STATUTES

15 U.S.C. § 45 ................................................................................................19

## OTHER AUTHORITIES

*Federal Trade Commission's Approach to Regulating Health Care Claims in Food Advertising*, 3 Loy. Consumer L. Rep. 4, 6 (Fall 1990) ...................................................................................................1

## RULES

Fed. R. Civ. P. 56(c)(4)................................................................................28

PLAINTIFFS' MEMO OF LAW IN OPPOSITION TO NESTLÉ'S MOTION FOR SUMMARY JUDGMENT

## I.    <u>INTRODUCTION</u>

Labels and advertising campaigns matter. "Consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source." *Kwikset v. Super. Ct.*, 120 Cal. Rptr. 3d 741, 755 (Cal. 2011) (citing *F.T.C. v. Procter & Gamble Co.*, 386 U.S. 568, 572 (1967)). When an advertisement expressly states the level of substantiation such as "clinically proven" or "clinically shown" consumers expect that well-designed clinical tests and their results support the claim. Timothy T. Hughes, *Federal Trade Commission's Approach to Regulating Health Care Claims in Food Advertising*, 3 Loy. Consumer L. Rep. 4, 6 (Fall 1990) (citing *FTC v. Pfizer, Inc.,* 81 F.T.C. 23, 23 (1972)); *see also* CMF ¶¶ 30, 36. These expectations are reasonable given that numerous state and federal laws exist to protect consumer interests in accurate labeling and advertising, "because consumers rely on the accuracy of those representations in making their buying decisions." *See id.*

Here, the consumer deception arises out of Nestlé's efforts to convince consumers to purchase BOOST Kid Essentials to obtain "clinically shown" "immunity protection" for their children. In television commercials, a magazine ad, pediatrician's offices, coupons sent to consumers of competing brands, and on the product packaging itself, Defendant Nestlé Healthcare Nutrition, Inc.'s ("Nestlé")

uniformly promoted BOOST Kid Essentials as providing one benefit that distinguished it from the competitors -- immunity protection. Nestlé branded the product as clinically proven to provide such benefits. Plaintiffs Maria Johnson and Kurt Scheuerman were damaged by Nestlé's violation of consumer protection laws, breach of express warranty, and negligent misrepresentation when Nestlé falsely claimed in its marketing materials that BOOST Kid Essentials conferred "clinically shown" "immunity protection."

Nestlé filed this motion for summary judgment to escape liability for its misrepresentations. However, summary judgment is improper because genuine issues of material fact exist, including that Nestlé's advertisements are false or misleading. Plaintiffs retained three well-qualified experts—a marketing specialist, a probiotics expert, and a pediatric gastroenterologist. All concluded that it was false and misleading for Nestlé to claim that BOOST Kid Essentials provided *clinically-shown* "immunity protection" when relevant scientific evidence does not support Nestlé's claims. (*See infra* § III(C)(3).) Nestlé offers contrary expert testimony. To determine whether Nestlé's representations are false or misleading, the Court would have to entertain a "battle of the experts," wherein the Court would have to improperly weigh the evidence and make credibility determinations. The Court must deny summary judgment on these grounds alone.

Even absent significant disputed facts, as a matter of law, Nestlé cannot prevail. In its motion, Nestlé argues for a ***fifth time*** that Plaintiffs' claims are barred

by the doctrine of prior substantiation.  Yet, Plaintiffs' claims are not "lack of prior substantiation" claims.  Nestlé made "establishment claims" about its level of substantiation for BOOST Kid Essentials' "immunity protection" (*i.e.*, "clinically shown").  Because the product's purported "immunity protection" is not in fact "clinically shown," Nestlé made an affirmatively false representation rather than one which merely lacks substantiation.  Consequently, Nestlé's false representations are actionable.

Plaintiffs also survive Nestlé's arguments based on standing, causation, reliance, and pre-litigation notice.  Plaintiffs prove that they "lost money or property" or sustained an "ascertainable loss" as a result of Nestlé's misrepresentations, as required by the consumer fraud statutes.  Plaintiffs did not get the benefit of their bargain.  They bought a product based on representations made in a marketing campaign, advertisements, and on the packaging but did not get what was represented.  Irrelevant to this inquiry is Plaintiffs' ability to prove the quantity of BOOST Kid Essentials they purchased and whether their children's health was affected by BOOST Kid Essentials.  Moreover, no pre-litigation notice is required for Plaintiffs' breach of warranty claims.

The Court must deny Nestlé's motion for summary judgment because there are disputed issues of material fact underlying all of Plaintiffs' claims and, as a matter of law, Plaintiffs will prevail.

## II.   STATEMENT OF FACTS

### A.   NESTLÉ'S MARKETING CAMPAIGN FOR BOOST KID ESSENTIALS EMPHASIZED ITS PURPORTED "CLINICALLY SHOWN" "IMMUNITY PROTECTION" AS A WAY TO DISTINGUISH ITSELF FROM COMPETITORS.

Nestlé began marketing BOOST Kid Essentials in August 2008, but began selling it in September 2008.   (Plaintiffs' Counterstatement of Undisputed Material Facts ("CMF") ¶ 1.)   At the direction of BOOST Kid Essentials team leader Barbara McCartney, Nestlé's campaign focused on alleged immunity protection BOOST Kid Essentials offered to children aged 1-13.  (CMF ¶ 2.)  To promote BOOST Kid Essentials, Nestlé engaged in a widespread advertising campaign with an annual budget of ████████ which uniformly emphasized its immunity protection.  (CMF ¶ 3.)

As part of its marketing campaign, Nestlé (a) prepared network television commercials; (b) issued a press release; (c) maintained a web site; (d) visited pediatricians; (e) issued Free-Standing Inserts ("FSI"s -- essentially coupons); and (f) took out a national magazine ad.  Each communication, in addition to (g) the product container itself, uniformly stressed BOOST Kid Essentials' purported immunity benefits.  (CMF ¶ 4.)

It was also part of Nestlé's marketing strategy to tout the immunity protection as "clinically shown."   (CMF ¶ 5.)   For example, a nationwide TV commercial for BOOST Kid Essentials features a carton of the product that states

in text on the screen and in the voiceover: "clinically shown to help strengthen the immune system." (CMF ¶ 6.) Nestlé admits that this commercial had a broad reach and that it was important to its marketing efforts. (CMF ¶ 7.) Furthermore, a January 8, 2009 Nestlé press release titled "NESTLE NUTRITION LAUNCHES BOOST KID ESSENTIALS NUTRITIONALLY COMPLETE DRINK" describes the product as:

> ...an innovative product developed by Nestlé HealthCare Nutrition— is the only nutritionally complete drink that gives kids ages 1 through 13 the power of immune-strengthening probiotics plus complete, balanced nutrition. Probiotics delivered through the BOOST Kid Essentials straw, have been *clinically shown* to help strengthen the immune system to help keep kids healthy...

(CMF ¶ 8.) Nestlé advertised "clinically shown" immunity protection to boost its sales. Nestlé's advertisements stated the following:

- "*Lactobacillus reuteri Protectis* (the probiotic found in BOOST Kid Essentials Drink) has been shown to reduce the duration of diarrheal illness in children and reduce the number of days infants miss daycare due to illness." (Mov. Br. 25 (website FAQ).)

- *L. reuteri Protectis* has been clinically shown to help strengthen the immune system when consumed daily." (*Id.* (television commercial))

- "Probiotic Straw/Clinically shown to help strengthen the immune system" (*Id.*)

- "Probiotics clinically shown to help strengthen the immune system." (*Id.*)

(CMF ¶ 10.)

On its website, Nestlé also made claims that the probiotic found in BOOST Kid Essentials "has been shown to reduce the duration of diarrheal illness in children and reduce the number of days infants miss daycare due to illness." (CMF ¶ 9.)  Nestlé's advertising communicated to consumers like Ms. Johnson and Mr. Scheuerman that BOOST Kid Essentials was "clinically shown" to strengthen their children's immune systems.  (CMF ¶¶ 9, 30, 36.)

## B.    NESTLÉ'S CHARGED CONSUMERS A PREMIUM FOR BOOST KID ESSENTIALS BECAUSE OF THE "CLINICALLY SHOWN" IMMUNITY PROTECTION CLAIMS.

BOOST Kid Essentials was the first pediatric nutritional beverage to highlight immunity claims among its features.  (CMF ¶ 11.)  Nestlé marketed BOOST Kid Essentials as having clinically shown immunity protection so that it could charge a premium over competitors like Pediasure.  (CMF ¶ 12.)

Plaintiffs retained Dr. Warren J. Keegan to do a market research study to determine "whether there was a net change in the average retail price a typical purchaser of kid's nutritional drinks would be willing to pay for the BOOST Kid Essentials product if the immunity protection claims were not offered."  (CMF ¶ 13.)  In addition to his extensive business resume, Dr. Keegan also has over 40 years of experience designing and supervising research studies/surveys and analysis.  (CMF ¶ 14.)

Dr. Keegan conducted an online survey of 201 adults 18 years or older who: (a) have at least one child between the ages of 1 and 13, (b) are the primary grocery

shopper for that child/children; (c) indicated a willingness to purchase kids nutritional drinks; and (d) indicated a willingness to purchase BOOST Kid Essentials at a retail price of ████████ CMF ¶ 15.)

Those surveyed were shown a picture of the retail packaging of BOOST Kid Essentials with the immunity protection claim and asked how likely they were to purchase the product for ██████ (CMF ¶ 17.)  Those who responded "very likely," "likely," or "somewhat likely" were then shown a picture of the retail packaging of BOOST Kid Essentials without the immunity protection claim and asked how much they would be willing to pay for it.  (CMF ¶ 18.)  On average, likely purchasers of BOOST Kid Essentials said they would pay ████████████████████ less than the average retail price of BOOST Kid Essentials for the same product absent immunity.  (CMF ¶ 18.)  Dr. Keegan concluded that consumers valued the immunity benefit at an average of ████████ of the retail price[2].  (*Id.*)

## C.   THE FTC CHARGES NESTLÉ WITH MAKING FALSE AND MISLEADING STATEMENTS, AND NESTLÉ AGREES TO DISCONTINUE THEM.

On July 14, 2010, the FTC published a complaint charging Nestlé with misrepresenting that it had a reasonable basis to claim that BOOST Kid Essentials

---

[1] $10.99 was the average purchase price paid by consumers of BOOST Kid Essentials (6-unit pack) from 2008-2010.  (CMF ¶ 17.)

[2] Nestlé disclaims Dr. Keegan's survey as "flawed" but fails to provide any specific criticism of his method or results.

prevents upper respiratory tract infections in children, strengthens the immune system, reduces absences from daycare or school due to illness, reduces the general incidence of illness in children, and reduces the duration of acute diarrhea in children.  (CMF ¶ 19.)  The FTC charged that these representations "were, and are, false or misleading."  (*Id.*)

That same day, the FTC also announced it had settled the charges.  (CMF ¶ 20.)  The FTC's proposed settlement provided that in advertising any "covered product" -- including BOOST Kid Essentials -- Nestlé would not state that the product reduces the duration of acute diarrhea or reduces absences from daycare or school due to illness unless its claim was backed up by at least two adequate, well-controlled studies.  (*Id.*)  The only reasonable implication, of course, is that after more than a year of correspondence with and discovery provided to the FTC, Nestlé did not provide such required studies in support of its claims.

In 2011, after discontinuing advertising claims of clinically shown immunity protection, Nestlé slashed the price of BOOST Kid Essentials to less than five dollars (4-unit pack).  (CMF ¶ 16.)

### D.   NESTLÉ'S REPRESENTATION THAT BOOST KID ESSENTIALS HAS "CLINICALLY SHOWN" "IMMUNITY PROTECTION" IS FALSE BECAUSE NESTLÉ HAD NO CLINICAL PROOF.

Nestlé misled consumers into purchasing BOOST Kid Essentials by

marketing it as clinically shown to provide immunity benefits.  In reality, Nestlé had no clinical proof that BOOST Kid Essentials provided the benefits claimed.

Plaintiffs' technical expert, Dr. Marc Meyers, concluded, among other things, that "[t]here is also no clinical data to support a claim for "Immunity Protection" from consuming LRP in non-hospitalized toddlers, or in the pediatric population between the ages of 3 and 13.  As such, the label included on every package of BOOST Kid Essentials was misleading." (CMF ¶ 22.)  Dr. Meyers reached his conclusion after an extensive analysis of materials Nestlé relied upon in making its product claims, packaging, advertising, communications to health professionals, internal Nestlé documents concerning the product, scientific journals, clinical studies, and transcripts of depositions of Nestlé employees and former employees. (CMF ¶ 23.)  He analyzed the age groups of study subjects and the rigor of the clinical studies to determine whether they provide sufficient evidence to support the product claims made by Nestlé.  (*Id.*)   In particular, he sought to determine whether the specific strain of *Lactobacillus reuteri Protectis* probiotic has been clinically shown to support Nestlé's claims.  (*Id.*)  Specifically he found:

> In reviewing the totality of the evidence, it is my professional opinion that:
>
> - There is no evidence presented by Nestlé that clearly shows that the BOOST Kid Essentials Product was clinically shown to provide any of the claimed benefits.
>
> - There is no support for the implied claim in Nestlé's advertising that the LRP probiotic in the BOOST Kid Essentials Product

protects against upper respiratory tract infections, colds and flu in children.

- There is no clinical support for Nestlé's claim that LRP probiotic in the BOOST Kid Essentials Product provides immunity protection over the entire age range of target consumers between 1 and 13 years old.

- Evidence specifically cited by Nestlé as support for the claim that the LRP probiotic content of the BOOST Kid Essentials Product provides immunity protection, (*i.e.*, the Weizman and two Shornikova studies), is insufficient to support an immunity protection claim over the entire target age range.

- There is limited support for a claim that the LRP probiotic in the BOOST Kid Essential Product reduces the duration of diarrhea in symptomatic children up to 3 years of age.

- There is limited support for the product claim that the LRP probiotic in the BOOST Kid Essentials Product can reduce absences for day-care aged children.

- The BOOST Kid Essential Product package was misleading on its face given the claim of "Immunity Protection."

  Given the lack of clinical data to support these various product claims, Nestlé's advertising and marketing of the BOOST Kid Essentials Product was misleading as explained in the conclusion section of this report.

(*Id.*)

Plaintiffs' rebuttal technical expert, board-certified pediatric gastroenterologist Dr. John Fortunato, similarly concluded that Nestlé's product claims were "not adequately supported by the existing clinical data so as to be reliable and are, indeed, potentially misleading given the current state of clinical knowledge." (CMF ¶ 25.) Dr. Fortunato reviewed the same evidence Nestlé relied

on to support its immunity protection and other claims and concluded that, while the evidence regarding potential health benefits available from the consumption of *L. reuteri Protectis* appeared promising enough to encourage further investigation, the science was simply not far enough along to merit changing current clinical practice.  In fact he noted in his report that "[a]ny good clinician will insist on strong prospective, randomized, placebo-controlled trials before altering standards of practice."  (*Id.*)

Dr. Fortunato recognized that the reports of Nestlé's experts "present compelling data for the future expanded application of *L. reuteri*.  However, while presenting a strong foundation for future hypotheses and research, ***the studies must actually be performed and analyzed before broad generalizations can be made***.  (*Id.*)  It is reasonable to believe that *L. reuteri* should be considered as a candidate for clinical application, but rigorous clinical science would not support using phrases such as 'the only pediatric drink to combine healthy growth support and probiotics immunity protection for kids ages 1 to 13' to market BOOST Kid Essentials without appropriate studies in this clinical category."  (*Id.*)

Nestlé cites relatively few sources for its product claims in advertising and promotional materials.  Cited sources were generally confined to studies of a related probiotic in a small subset of Nestlé's targeted consumer population.  (CMF ¶ 26.)  Even the materials supplied by Nestlé to the FTC as product claims substantiation contained only a handful of articles discussing the relevant probiotic, *L. reuteri*

*Protectis*.   Even those articles discussed only very limited subsets of Nestlé's targeted consumer population – chiefly toddlers 36 months old or younger, some acutely ill or in fact hospitalized with diarrheal disease.  (*Id.*)

Nestlé touted the benefits of "probiotics" generally in an apparent attempt to suggest that consumers would enjoy all of the various beneficial effects that might be provided by all probiotics by consuming BOOST Kid Essentials, notwithstanding that BOOST Kid Essentials contains only a single strain of the probiotic *Lactobacillus reuteri* known as *L. reuteri Protectis*.  (CMF ¶ 26.)  Nestlé ignored that the clinical benefits demonstrated by probiotics are strain specific, even though this is an established scientific fact written about and testified to by Nestlé's own Medical Director, Dr. José Saavedra, as well as its principal scientist, Norman Greenberg, Ph. D.  (*Id.*)  This is even confirmed by virtually all of Nestlé's supporting scientific materials  -- that the clinical benefits of probiotics are strain specific. (*Id.*)  In reality, Nestlé had no clinical proof that BOOST Kid Essentials provided the benefits claimed.

### E.    NESTLÉ'S MARKETING SCHEME MISLEADS MARIA JOHNSON INTO PURCHASING BOOST KID ESSENTIALS.

Plaintiff Maria Johnson began purchasing BOOST Kid Essentials sometime in 2008.  (CMF ¶ 27.)  Around that time, her son was beginning preschool, and he was frequently sick.  (CMF ¶ 28.)  Ms. Johnson began looking for a drink

supplement that would improve his immunities.  (*Id.*)  She saw a magazine or newspaper advertisement, a coupon, and a television commercial containing a picture of the retail packaging for BOOST Kid Essentials. (CMF ¶ 29.)  She also saw BOOST Kid Essentials was clinically shown to provide immunity protection. (CMF ¶ 30.)

In reliance on Nestlé's misrepresentations, Ms. Johnson began purchasing the product.  (CMF ¶ 31.)  Ms. Johnson stopped purchasing BOOST Kid Essentials in 2010.  (CMF ¶ 32.)  In the two years she was giving BOOST Kid Essentials to her children, she bought it hundreds of times.  (*Id.*)  Ms. Johnson testified that BOOST Kid Essentials was very expensive, and had she known about Nestlé's misrepresentations, she would have purchased regular milk instead.  (CMF ¶ 33.)

### F.   NESTLÉ'S MARKETING SCHEME MISLEADS KURT SCHEUERMAN INTO PURCHASING BOOST KID ESSENTIALS.

Mr. Scheuerman began purchasing BOOST Kid Essentials for his children in the fall of 2008.  (CMF ¶ 34.)  He began buying it after he and his children saw advertisements that the product boosts children's immunities.  (CMF ¶ 35.)  He saw a television advertisement and a magazine advertisement for BOOST Kid Essentials, but does not recall details of those ads.  (*Id.*)  He does, however, recall that the commercial said BOOST Kid Essentials was clinically shown to improve immunities.  (*Id.*)

Relying on Nestlé's advertisements regarding the product being clinically

shown to boost immunities, Mr. Scheuerman purchased it and gave it to his children at least once a day.  (CMF ¶ 37.)  In the summer of 2010, he saw an article regarding the FTC complaint suggesting that BOOST Kid Essentials was not clinically tested.  (CMF ¶ 38.)  He stopped purchasing BOOST Kid Essentials because he did not want to waste money for health benefits that were not clinically shown.  (CMF ¶ 39.)  He would not have purchased the product absent Nestlé's misrepresentations.  (*Id.*)

## III.  <u>ARGUMENT</u>

### A.   **LEGAL STANDARD FOR SUMMARY JUDGMENT**

The Court shall grant summary judgment only when the moving party proves that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party has the initial burden to prove the absence of disputed material facts and that it is entitled to judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[T]he party opposing the motion bears the burden of responding *only after* the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact.  *Id.*  However, the burden of persuasion on a party moving for summary judgment "is a stringent one which always remains with the moving party. If there remains any doubt as to whether a trial is necessary, summary judgment should not be granted."  *Fagan v. Nordic Prince, Inc.*, No. 91-5143, 1992 WL 361704, at *3 (D.N.J. July 17, 1992) (citing *Celotex,* 477 U.S. at 330).

Summary judgment must be denied where there is a dispute regarding the facts or the inferences that may be drawn from those facts. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The Court may consider any admissible evidence to determine whether there are genuine issues of fact, including pleadings, depositions, answers to written discovery, expert reports, and declarations. *See Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc.*, 222 F.3d 123, 129 (3d Cir. 2000). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 150 (2000).

"The matter of weighing the credibility and persuasiveness of expert opinion is the unique function of the trier of fact." *Speyer, Inc. v. Humble Oil & Refining Co.,* 403 F.2d 766, 770 (3d Cir. 1968), *abrogated on other grounds*, *Banks v. Int'l Rental & Leasing Corp.*, Nos. 08-1603, 08-2512, 2011 WL 7186340 at *2 (3d Cir. April 19, 2011). It is "inappropriate' for a court "to attempt to assess the weight and credibility of expert testimony in connection with" a summary judgment motion. *Feit v. Great-West Life & Annuity Ins. Co.*, No. 03-2948(HAA), 2005 WL 2665736, at *4 (D.N.J. October 18, 2005) That is why, "[s]ummary judgment is inappropriate where expert reports and affidavits present conflicting testimony as to a material fact" otherwise known as "the battle of the experts." *Elec. Ins. Co. v. Electrolux No. Am., Inc.*, No. 09-3792(FSH), 2011 WL 5825981, at *4 (D.N.J. Sept.

19, 2011) (citing *Fed. Labs, Inc. v. Barringer Research Ltd.*, 696 F.2d 271, 275 (3d Cir. 1982)); *see also Eli Lilly & Co. v. Actavis Elizabeth LLC,* 676 F. Supp. 2d 352, 360 (D.N.J. 2009).

Here, application of this standard mandates denial of Nestlé's motion for summary judgment since, at a minimum, there are extensive disputed material facts and diametrically opposed expert reports interpreting them.  Any other result would require the Court to weigh the evidence, determine disputed facts and make credibility determinations, all of which are improper on summary judgment.

## B.   SUMMARY JUDGMENT MUST BE DENIED BECAUSE AS A MATTER OF LAW, PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE PRIOR SUBSTANTIATION DOCTRINE.

Nestlé was granted permission by this Court to file a 60-page brief, yet, Nestlé spends over 10 pages rearguing for the ***fifth time*** that Plaintiffs' claims are barred by the doctrine of prior substantiation, when Plaintiffs' claims are clearly not prior substantiation claims.  (*See* Docket Nos. 69 at 3; 84-1 at 6-8; 109 at 9-16; 124-1 at 11-18.) [3]  In a prior substantiation claim, a plaintiff accuses a defendant of advertising the benefits of its product without having support showing the product possesses the claimed benefits.  *See Franulovic v. Coca Cola Co.,* 390 Fed. Appx. 125 (3d Cir. 2010).  In certain circumstances, prior substantiation claims are not

---

[3]  Unless otherwise specified, all docket references are to the Scheuerman Docket, Case No. 2:10-CV-3684 (FSH) (PS).

actionable under consumer fraud statutes because they do not allege that anything a defendant advertised is false. *Id.* at 128.

In contrast, Nestlé's advertisements contain "establishment claims." Establishment claims are "in effect statements 'that scientific tests establish that a product works.'" *Removatron Intern. Corp. v. F.T.C.*, 884 F.2d 1489 (1st Cir. 1989); *F.T.C. v. Direct Marketing Concepts, Inc.*, 569 F. Supp. 2d 285 (D. Mass 2008). One of the most common establishment claims is that a product is "clinically proven" or "clinically shown" to do something. *See e.g., Glaxosmithkline Consumer Healthcare, L.P. v. Merix Pharm. Corp.*, No. 05-898 (DRD), 2005 WL 2230318 at *3 (D.N.J. Sept. 13, 2005) (alleging false establishment claim that a product was "clinically proven" to prevent cold sores without satisfactory support); *Gillette Co. v. Norelco Consumer Prod. Co.,* 946 F. Supp. 115, 123-25 (D. Mass 1996) (alleging a false establishment claim that a product "has been 'clinically proven' to shave with less irritation than wet shavers"). Depending on the type of establishment claim made by the defendant, usually, two well-controlled scientific studies are required to support the claim. *Removatron Intern. Corp.,* 884 F.3d at 1492 n.3.[4]

Plaintiffs concede that in certain circumstances prior substantiation claims are not actionable by private individuals. Unfortunately for Nestlé, Plaintiffs'

---

[4] The FTC requirement that there be two well-controlled scientific studies is acknowledged by Nestlé. (Rosen Decl., Ex. 21, P. 86, p. 1.)

claims are not based on Nestlé's lack of prior substantiation; they are based on Nestlé's affirmative misrepresentation that BOOST Kid Essentials was "clinically shown" to provide "immunity protection."  Nestlé claimed BOOST Kid Essentials' immunity protection was clinically shown without having the clinical results to make its advertisement truthful.  This is the crux of Plaintiffs' claim, which is simply not a prior substantiation claim, as Defendant has argued *ad nauseum*.

### 1.  Maria Johnson is Not Claiming Lack of Prior Substantiation.

In support of the proposition that Ms. Johnson's California consumer fraud claims are barred by the doctrine of prior substantiation, Nestlé relies heavily upon three inapposite cases:  *Stanley v. Bayer Healthcare LLC,* No. 11cv862-IEG(BLM), 2012 WL 1132920 (S.D. Cal. Apr. 3, 2012);[5] *Fraker v. Bayer Corp.*, No. CV F 08-1564 AWI GSA, 2009 WL 5865687 (E.D. Cal. Oct. 6, 2009); and *Chavez v. Nestlé USA, Inc.*, No. CV-09-9192-GW (CWx), 2011 WL 2150128 (C.D. Cal. May 19, 2011).  Each is distinguishable.  None deals squarely with an establishment claim. *Stanley* held that the plaintiff's claims based on prior substantiation were not actionable, but then found that the plaintiff did not have standing to allege false establishment claims because she did not purchase the product that was advertised using "clinically tested" language.  *Stanley,* 2012 WL 1132920.  *Fraker* and *Chavez* stand for the propositions that (a) plaintiffs cannot enforce an FTC order under 15

---

[5] *Stanley v. Bayer Healthcare LLC* is the only new case in this argument not previously cited by Nestlé in its motion to dismiss.  (*See* Docket No. 124-1.)

U.S.C. § 45 and (b) plaintiffs alleging violations of California consumer fraud statutes cannot shift their burden of proof to show that defendant had no prior substantiation.  Neither precedent is instructive here because Plaintiffs' claims are not based on Nestlé's lack of prior substantiation.

a.   *Stanley v. Bayer Healthcare LLC*

In *Stanley*, the plaintiff alleged violations of the CLRA and UCL and breach of express warranty regarding the defendant's false advertising of Phillips' Colon Health Probiotic products.  *Stanley,* 2012 WL 1132920 at *1.  Without seeing any advertisements prior to purchasing, the plaintiff bought a 30-count bottle of one of the products, which contained the following representations:

- "replenishes GOOD BACTERIA to promote overall digestive health";

- "helps NATURALLY PROMOTE REGULARITY";

- "supports a HEALTHY IMMUNE SYSTEM";

- "contains the most common and most studied bacteria for digestive health (*Lactobacillus* and *Bifidobacterium*) which closely resemble your body's natural good bacteria"; and

- "there's scientific evidence that *Lactobacillus* and *Bifidobacterium* help relieve gas, diarrhea, and constipation and other GI discomforts."

*Id.* at *1-2, *5.  Plaintiff claimed the representations were false because there was "a complete lack of scientific or clinical data to support its claims" and "claims about the benefits of the Products 'are not substantiated by the vast majority of

generally accepted scientific literature currently available regarding probiotics.'" *Id.* at *2. Neither of the plaintiff's experts reviewed any of the 161 articles defendant produced regarding the usefulness of probiotics and both experts testified that probiotics may provide benefits. *Id.* at *5-6. The defendant successfully argued that "lack of substantiation was not a basis for relief under the UCL or CLRA and plaintiff has failed to show any of the statements made regarding the Products are false or misleading." *Id.* at *3.

Significantly, the 30-count bottle purchased by the plaintiff did not state that the product was "clinically proven" or "clinically shown" to provide the health benefits claimed. *Id.* at *10. However, the 45-count bottle, which the plaintiff did not purchase, stated, "[c]ontains a proprietary blend of 3 *clinically tested* strains of good bacteria." *Id.* (emphasis added). The "clinically tested" claims were not advertised to the public. *Id.* Because the plaintiff did not purchase and was not otherwise exposed to the "clinically tested" claims, the court found she had no standing to allege false advertising claims under the UCL and CLRA. *Id.* The court did not reach the question of whether her claims would have survived summary judgment had she purchased the 45-count bottle. *Id.*

The *Stanley* decision is distinguishable because, the plaintiff's claim was truly a prior substantiation claim -- *i.e.*, that the defendant made claims about the product without having satisfactory support. The court in *Stanley* seemed to address the "clinically tested" claim on the back of the 45-count bottle separately,

because if plaintiff had purchased the 45-count bottle she might have been able to show an actionable false establishment claim.  There are no similar problems here. Plaintiffs' claims in this action are based upon a false establishment claim -- that Nestlé falsely advertised that BOOST Kid Essentials was "clinically shown" to provide "immunity protection" -- regarding a product that Plaintiffs actually purchased.

### b.    *Fraker v. Bayer Corp.*

In *Fraker*, after an FTC complaint was filed, the plaintiff civilly sued the defendant for its representations that One-A-Day WeightSmart increased metabolism, in violation of an FTC order requiring that Bayer cease and desist from making such unsupported representations.  2009 WL 5865687, *2-3.  The plaintiff in *Fraker* alleged violations of the same California consumer fraud statutes as Ms. Johnson.  *Id*. at *1.  The defendant filed a motion to dismiss.  The court determined that the plaintiff's complaint was pled in such a manner that, in effect, the plaintiff was improperly attempting to enforce an FTC order under 15 U.S.C. § 45, where no private right of action exists.  *Id*. at *7-8.  The court found that the plaintiff in *Fraker* could allege California consumer fraud claims, but that the facts plead in the plaintiff's complaint failed to allege the false or misleading nature of the advertisement; i.e., the plaintiff relied wholly on the existence of the FTC consent order without any independent factual allegations.  *Id*. at *8.

The Court dismissed the complaint in *Fraker* because it was inadequately

pled.   Plaintiffs' complaint does not suffer from the same defects.   Plaintiffs undertook extensive factual investigation that enabled them to prove that Nestlé actually made false claims about BOOST Kid Essentials being "clinically shown" to provide "immunity protection."   While the FTC complaint and consent order support Plaintiffs' claims, there are independent facts proving Nestlé's marketing campaign was false and misleading.  (*See infra* § C.)

<blockquote>c.    *Chavez v.* Nestlé *USA, Inc.*</blockquote>

Finally, in *Chavez,* the plaintiff alleged that the defendant's advertisements regarding Juicy Juice implied misleadingly that the drink provided immunity protection from germs.  2011 WL 2150128 at *3.  The defendant's advertisements did not include a claim that the immunity protection from germs was "clinically shown."  *Id*.  The complaint was based solely upon the defendant's lack of prior substantiation that the product helped support immunity.  *Id.* at *2.  The defendant filed a motion to dismiss arguing that, as a matter of law, the plaintiff did not state a claim under the UCL and FAL.  *Id.* at *4.  Citing *Fraker*, the court dismissed the plaintiff's claims because "lack of substantiation" is not a cognizable theory under the UCL and FAL.  *Id.* at *5.  Here, Plaintiffs' claims are not based on "lack of substantiation," so *Chavez* is entirely distinguishable.

<blockquote>**2.    Kurt Scheuerman is Not Claiming Lack of Prior Substantiation.**</blockquote>

Nestlé also contends that Plaintiff Scheuerman's claims under the NJCFA

and UTPCPL are barred by the doctrine of prior substantiation. Nestlé relies upon two distinguishable cases—*Stanley* and *Franulovic v. Coca Cola Co.*, 390 Fed. Appx. 125, 127-28 (3d Cir. 2010). *Stanley* is distinguishable regarding Scheuerman's NJCFA and UTPCPL claims for the same reasons cited above.

In *Franulovic*, the plaintiff filed a NJCFA claim against the defendant alleging that the defendant falsely advertised its tea drink as a "calorie burner" and stated that drinking three cans per day would lead to weight loss. 390 Fed. Appx. at 126. Plaintiff did not allege that the defendant claimed its product was "clinically shown" to cause weight loss or burn calories. *Id.* The plaintiff's claims were based entirely on the defendant's failure to adequately substantiate its advertising claims prior to marketing the beverage. *Id.* at 127. The Third Circuit affirmed the district court's grant of summary judgment based on prior substantiation claims not being actionable under the NJCFA.

Mr. Scheuerman's claims are more similar to those of the plaintiff in *Lieberson v. Johnson & Johnson Consumer Cos., Inc*., Civ. No. 10-6196 2011 WL 4414214, *6 (D.N.J. Sept. 21, 2011), who alleged that the defendant violated the NJCFA by advertising its products as "clinically proven to help babies sleep better" when there were no clinical studies showing the product's ability to help babies sleep. The court found that while the plaintiff lacked standing, the defendant's representations regarding its product's "clinically proven" benefits were unlawful conduct under the NJCFA. *Id.* Claims that a product is "clinically

proven" to achieve a specific result are actionable because the representation is "both specific and measurable."  *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,* MDL No. 09–2046, 2011 WL 6012598, *17 (S.D. Tex. Dec. 1, 2011) (discussing *Lieberson,* 2011 WL 4414214 at *7).

Plaintiff Scheuerman claims, like the *Lieberson* plaintiff, that Nestlé's affirmative representation that BOOST Kid Essentials' supposed "immunity protection" was "clinically shown"-- is actually false because there are no clinical results.  Nestlé's argument fails because Nestlé did more than merely advertise "immunity protection." It advertised the product with a specific level of substantiation -- that the "immunity protection" was "clinically shown."  In such circumstance, the doctrine of prior substantiation does not bar Plaintiffs' claims.

### C.   SUMMARY JUDGMENT MUST BE DENIED BECAUSE ABUNDANT EVIDENCE EXISTS PROVING NESTLÉ MADE MISLEADING REPRESENTATIONS.

#### 1.   Nestlé Relies On Incompetent Evidence in Support of its Motion; That Evidence Should Be Disregarded.

Rule 56 of the Federal Rules of Civil Procedure specifies the quality of proofs required on a motion for summary judgment.  Rule 56(c)(4) dictates that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show

that the affiant or declarant is competent to testify on the matters stated."

Here, the Moving Declaration of Geoffrey Castello, Esq. ("Castello Decl.") (Scheuerman Docket # 167-4) annexes as Exhibit U several scientific journal articles asserted to have been produced by Nestlé in the course of discovery. (Castello Decl. at ¶ 22.) Although Nestlé cleverly avoids characterizing the documents in any fashion in counsel's declaration, Nestlé's Statement of Undisputed Facts In Support of Defendant's Motion for Summary Judgment ("Defendant's Fact Statement" or "DFS") relies on the Castello Declaration and asserts that the documents annexed to that declaration as Exhibit U were produced in response to Plaintiffs' discovery request seeking "the substantiation underlying the various BKE advertising claims. . . "  (DFS at ¶ 44.)  Thus, Nestlé is not merely stating that these particular documents were produced in discovery, it is making a representation that they constitute Nestlé's claims substantiation materials.  Nestlé cannot, however, cure a fatal flaw in its proofs by downplaying the nexus between the Castello Declaration and the asserted purpose of the Exhibit U documents in Defendant's Fact Statement.  Quite simply, the scientific studies Nestlé attempts to introduce through Exhibit U to the Castello Declaration are being offered to support the proposition that Nestlé's product claims for BOOST Kid Essentials had been "clinically shown."  Nestlé has not offered those articles through a witness with personal knowledge who can say what materials Nestlé relied upon to make the product claims it did for BOOST Kid Essentials.  Accordingly, Exhibit U to the

Castello Declaration is incompetent evidence, inadmissible on Nestlé's motion for summary judgment.  It must be disregarded.  *FTC v. Direct Marketing Concepts, Inc.,* 569 F. Supp. 2d 285, 301 (D. Mass. 2008).

In *Direct Marketing*, upon which Nestlé relies (Mov. Br. 34), the Court was confronted with a similar situation and ruled the evidence inadmissible:

> The defendants have also proffered thirty binders of studies attached to the affidavit of Andrew Aldrich which purport to contain substantiation for the challenged claims. The FTC has moved, however, to strike these materials from the record because they do not meet the standard established by Federal Rules of Civil Procedure 56(e)(1), which requires that affidavits opposing a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." I agree with the FTC that the materials do not satisfy that standard and therefore grant the motion to strike them from the record. The thirty binders supposedly represent "the materials relating to these products that were in the possession of and reviewed by [Direct Marketing] at the time these shows were aired," (Aldrich Aff. ¶ 5), and the "materials [that are] available in the public domain that would provide substantiation for the claims made in each of the subject infomercials" ( *d.* ¶ 6), and would speak to the general benefits of the products advertised therein. Because Aldrich was not employed by the defendants at the time either infomercial was aired, ( *Id.* ¶ 5), he has not demonstrated the personal knowledge necessary to attest to what the defendants possessed at that time.
>
> Moreover, to the extent that Aldrich could establish personal knowledge as to any of the proffered documents, they are inadmissible hearsay. The exhibits are clearly offered for the truth of the matter asserted therein; the defendants wish me to find that the studies' findings and conclusions reliably substantiate the claims in their infomercial. Because Aldrich would be unable to testify at trial for these reasons [FN8], the evidence would be inadmissible at trial and therefore may not be considered at summary judgment. *See Casas Office Machs., Inc. v. Mita Copystar Am., Inc.,* 42 F.3d 668, 681 (1st

Cir.1994) ("Under Rule 56(e), affidavits supporting or opposing summary judgment must set forth facts that would be admissible in evidence.").

569 F. Supp. 2d at 301 (footnote omitted).

Counsel clearly lacks personal knowledge of what Nestlé used for claims substantiation materials and would be incompetent to testify as to the content of the articles in any event.  Accordingly, the Court should decline to consider them on Nestlé's application.  Moreover, Nestlé should not be permitted to cure this evidentiary defect in a reply declaration.  The only individual identified by Nestlé as a person with paramount knowledge of, and responsibility for, gathering Nestlé's claims substantiation materials was its principal scientist, Norman Greenberg, Ph. D.  Notwithstanding that Dr. Greenberg gathered the claims support materials and was their principal custodian, at his deposition he testified that he was unable to recall what specific materials constituted Nestlé's claims substantiation materials.  (*See* Rosen Decl., Ex.12, Greenberg Dep. Tr.  142:2-25.) Thus, a rehabilitative reply declaration would raise precisely the type of credibility issues a Court is charged to avoid determining on summary judgment.

Paragraph 6 of the Declaration of Jennifer Rope (Scheuerman Docket #167-3) suffers from a similar evidentiary defect.  Ms. Rope indicates that "BKE has never been available in "case" format at retail stores." (*Id.*)  Unless Ms. Rope is moonlighting as a Wal-Mart, Target or Albertson's employee, she lacks personal

knowledge of how BOOST Kid Essentials was sold at retail.  Although she may be a competent witness with respect to how Nestlé *intended* BOOST Kid Essentials to be sold, she lacks personal knowledge of what retail outlets actually did in practice.  Thus, she is incompetent to testify on the subject and paragraph 6 of her declaration and the corresponding paragraph 6 of DSF should be disregarded.  Fed. R. Civ. P. 56(c)(4).

### 2. Nestlé's Expressly Advertised Claims Regarding BOOST Kid Essentials Are False.

It is undisputed that, at a minimum, Nestlé's advertisements stated the following:

- "*Lactobacillus reuteri Protectis* (the probiotic found in BOOST Kid Essentials Drink) has been shown to reduce the duration of diarrheal illness in children and reduce the number of days infants miss daycare due to illness." (Mov. Br. 25 (website FAQ).)

- *L. reuteri Protectis* has been clinically shown to help strengthen the immune system when consumed daily." (*Id.* (television commercial))

- "Probiotic Straw/Clinically shown to help strengthen the immune system" (*Id.*)

- "Probiotics clinically shown to help strengthen the immune system."  (*Id.*)

Nestlé argues that these advertising claims are implied rather than express, because they refer to the probiotics or the probiotic straw rather than BOOST Kid Essentials itself.  Nestlé contends that as a matter of law it should prevail because

Plaintiffs must, but supposedly cannot, prove that a significant segment of consumers were misled.  (Mov. Br. 26-27.)

Nestlé mischaracterizes the nature of its advertising claims.  A main part of the BOOST Kid Essentials' product is its straw.  The "Probiotic Straw" was uniformly emphasized as a unique component of BOOST Kid Essentials.  Nestlé's nationwide television commercial advertised that the BOOST Kid Essentials' "Probiotic Straw" is "[c]linically shown to strengthen the immune system."  It is actually false that any part of BOOST Kid Essentials, including its probiotic straw, is *clinically shown* to help strengthen the immune system.  (*See infra,* § III(C)(3).)

If the challenged advertisement is literally or expressly conveying a false message on its face, relief may be granted without any resort to extrinsic evidence of consumer reaction.  *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994) (discussing liability under the Lanham Act); *Castrol, Inc. v. Pennsoil Quaker State Co.*, No. Civ. A 00-2511, 2000 WL 1556019, *6 (D.N.J. Oct. 12, 2000) ("if a plaintiff proves literal falsity it need not prove consumer confusion"); *see also Benson v. Kwikset Corp.*, 152 Cal. App. 4th 1254, 1275-76 (Ct. App. 2007) (where false claims as opposed to misleading claims are alleged, Lanham Act standards of proof are instructive regarding the UCL, FAL, and CLRA).

Nestlé's claims about BOOST Kid Essentials are expressly false.  The

Court need not examine any further evidence that consumers were misled to hold

Nestlé liable.

### 3. Even if Nestlé's Advertised Claims Were Implied, Summary Judgment Is Still Inappropriate.

Even if Plaintiffs are required to prove consumers were misled, Plaintiff's

evidence is sufficient to show consumers were likely to be misled.  Nestlé argues

that because Plaintiffs did not conduct a consumer survey they cannot prevail.

Nestlé's argument simply proves the existence of a genuine issue of material fact

because for the Court to determine whether consumers were likely to be misled

would require it to improperly weigh evidence.  *See Reeves,* 530 U.S. at 150.

Even if there were no disputed factual issues, Plaintiffs provide enough

evidence to show consumers were likely to be misled.  Nestlé's argument relies

almost exclusively on cases dealing with the Lanham Act.  The standards of proof

under the Lanham Act do not apply to claims that advertisements were likely to

mislead under the UCL, FAL, and CLRA.  *Benson*, 152 Cal. App. 4th 1254, 1275-

76.

Proving that members of the public are likely to be deceived requires a low

evidentiary threshold.  Under the UCL and FAL a defendant may be held liable if

reasonable members of the public are *likely to be deceived* by the advertisement.

*In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009).  Surveys and expert

testimony concerning consumer expectations may be offered, but are not required,

to show a likelihood of confounding purchasers --anecdotal evidence may suffice. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008).

Nestlé cites *Churchill Village LLC v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1131 (N.D. Cal. 2000), for the proposition that the declarations of two consumers were insufficient to show a significant portion of consumers were likely to be mislead. *Churchill* is distinguishable. There, the plaintiffs submitted two declarations that contained conclusory and inadmissible statements about feeling deceived. *Id.* at 1131-32. The plaintiffs had no expert testimony or other evidence to supplement the declarations.

Here, in addition to their own testimony, each of Plaintiffs' three highly-qualified experts concluded that Nestlé's advertisement of BOOST Kid Essentials as clinically proven to provide immunity protection was misleading to consumers. This evidence is sufficient to show that that the advertisements were likely to mislead. Moreover, capacity to mislead average consumers is within the ordinary experience of jurors. *See, e.g.*, *Chattin v. Cape May Greene*, *Inc*., 216 N.J. Super. 618, 639 (App. Div.), *certif. denied*, 107 N.J. 148 (1987) ("Although there may be some circumstances in which an advertisement is so patently deceptive that a violation of the Consumer Fraud Act may be found as a matter of law, the determination whether an advertisement is misleading is ordinarily for the trier of fact -- here the fact finder -- to decide. Indeed, a fact finder would appear

especially well suited to determine the impact of an advertisement upon "'an average consumer.'")

Summary judgment must be denied because there are triable issues of fact as to the misleading nature of Nestlé's advertising campaign.  Plaintiff's evidence is shows consumers were likely to be misled.

### 4. Summary Judgment must be denied because Nestlé's Advertising Claim that BOOST Kid Essentials provided *Clinically Shown* Immunity Protection is Objectively False Under All of Plaintiffs Theories of Recovery or at a minimum Likely to Mislead.

Perhaps realizing that the myriad genuine issue of material fact will prevent it from obtaining summary judgment, Nestlé nevertheless appears determined to go down swinging by attempting to impose upon Plaintiffs a burden they do not face.  Nestlé argues that it is Plaintiffs' burden in this case to prove that the challenged advertising claims are misleading.  (Mov. Br. 33.)  While it may be Plaintiffs' burden *at trial* to prove that the challenged claims have the capacity to mislead, on the instant motion Plaintiffs need only show that there are genuine issues of material fact – nothing more.[6]  A party opposing summary judgment does not bear the burden of persuasion on any issue and the Court must draw all reasonable inferences in that party's favor. *Fagan v. Nordic Prince, Inc.*, No. 91-

---

[6] *Union Ink Co., Inc. v. A.T.& T. Corp.*, 352 N.J. Super. 617, 645 (App. Div.), *certif.. denied*, 174 N.J. 547 (2002)(advertisement that is literally true may still be actionable under Consumer Fraud Act if overall impression created by it is misleading and deceptive to ordinary consumer).  Thus, Plaintiffs do not concede that they even have to prove Nestlé's product claims to be false in order to prevail on their claims.

5143, 1992 WL 361704, at *3 (D.N.J. July 17, 1992) (citing *Celotex,* 477 U.S. at 330); *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 150 (2000).

Nestlé's reliance on FTC standards is misplaced and the cited cases distinguishable.  Even if the FTC standards were applied, Nestlé does not have the clinical proof to support its "clinically proven" and/or "clinically shown" advertisements.  State standards such as "likely to mislead" apply, and require a finder of fact to determine the misleading nature of Nestlé's advertising.

### a.  FTC Injunction Standards Do Not Apply.

Nestlé relies upon FTC injunction cases that it acknowledges are inapplicable to argue the application of the "competent and reliable" scientific evidence standard.  (Mov. Br. 33-38.)  Nestlé fails to cite a single state consumer protection statute case that applies the competent and reliable scientific evidence standard to a private consumer's claim for equitable relief or money damages.  Presumably, if such a case existed, Nestlé would cite it.

Nestlé effectively concedes the fact-driven nature of the inquiry facing the Court when it argues that the applicable determination is whether Nestlé had a "reasonable basis" for making the challenged advertising claims.  (Mov. Br. 33.)  Questions of "reasonableness" are fundamentally fact questions that may not appropriately be determined on summary judgment, but must be left for weighing by a fact finder.  *Hafner v. Brooks*, 109 N.J.L. 44 (N.J.Err. & App.1932)(whether defendant had reasonable basis for filing criminal charge question of fact for a fact

finder on malicious prosecution claim).

Nestlé posits that in order to have a reasonable basis for advertising clinically shown immunity protection, it only needed "competent and reliable scientific evidence," (Mov. Br. 33), and concludes that it has that evidence. (Mov. Br. 34). Those contentions amount to a virtual engraved invitation to the Court to engage in a weighing of the evidence – in this case competing expert opinions – which is manifestly improper on summary judgment. *Speyer, Inc. v. Humble Oil & Refining Co.,* 403 F.2d 766, 770 (3d Cir. 1968) *abrogated on other grounds*; *Banks v. Int'l Rental & Leasing Corp.*, Nos. 08-1603, 08-2512, 2011 WL 7186340, at *2 (3d Cir. April 19, 2011); *Feit v. Great-West Life & Annuity Ins. Co.*, No. 03-2948(HAA), 2005 WL 2665736, at *4 (D.N.J. October 18, 2005) *Elec. Ins. Co. v. Electrolux No. Am., Inc.*, No. 09-3792(FSH), 2011 WL 5825981, at *4 (D.N.J. Sept. 19, 2011) (citing *Fed. Labs, Inc. v. Barringer Research Ltd.*, 696 F.2d 271, 275 (3d Cir. 1982)); *see also Eli Lilly & Co. v. Actavis Elizabeth LLC,* 676 F. Supp. 2d 352, 360 (D.N.J. 2009).

Nestlé further argues that "there is room for disagreement between experts as to whether a claim is substantiated without the claim necessarily being false." (Mov. Br. 37.)  It does so in reliance on a parade of FTC cases which it concedes are "not binding in interpreting the CFA, UTPCPL, UCL, FAL and CLRA." (Mov. Br. 33 n.16.)  Unfortunately for Nestlé, as a matter of law, when an establishment claim is not supported by adequate substantiation, it is deemed to be

false.  *See Castrol, Inc. v. Quaker State Corp.,* 977 F.2d 57, 63 (2d Cir.1992) (stating that where the "defendant's ad explicitly or implicitly represents that tests or studies prove its product superior, plaintiff satisfies its burden by showing that the tests did not establish the proposition for which they were cited.") *Smithkline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson et al.,* 906 F. Supp. 178, 182 (S.D.N.Y. 1995).

Thus, to the extent the parties' experts disagree and a reasonable fact finder could conclude that Nestlé lacked adequate substantiation for its establishment claims, those claims would necessarily be false.

### b. Even if the FTC Standards Were Applicable, Nestlé's advertising was false.

Nestlé ends its argumentative point by asserting that its advertising claims are" supported by competent and reliable scientific evidence." (Mov. Br. 38). Nestlé misstates the facts.  Here, there is no disputing: (1) Nestlé did not conduct any independent testing of the BOOST Kid Essentials.  (Rosen Decl., Ex. 11, Saavedra Dep. Tr. 39:22-41:21.)  (2) Nestlé has no studies covering the entire target age range of pediatric consumers for whom the BOOST Kid Essentials product was intended.  (Castello Decl., Ex. U; *see generally* Response to Nestlé's Disputed Material Facts, ¶ 44.)  (3) Nestlé relies on studies of acutely ill infants and toddlers to project a benefit onto a general, substantially older, and healthy pediatric population; and relies on studies of entirely different probiotic species and strains of bacteria to suggest an "immunity protection" benefit for BOOST

Kid Essentials.  Plaintiffs' three qualified experts conclude that advertising the product as "clinically proven" or "clinically shown" is actually misleading and/or materially false – resulting in monetary benefit to Nestlé.  (CMF ¶¶ 16, 23, 24, 25.)

The fundamental disagreement between plaintiffs' experts and Nestlé's experts, of course, is an ultimate issue for the fact finder to decide.  That is why Nestlé's motion for summary judgment must be denied.

### c. Nestlé's Cited FTC Authority Does not Support Summary Judgment and Does Not Address "Clinically Shown" or "Clinically Proven" Assertions.

Even the FTC cases Nestlé relies on do not support its claimed entitlement to summary judgment.[7]  First, they are not binding, as Nestlé concedes.  (Mov. Br. at 33.)  They are not even persuasive.

Nestlé relies on *Harvey v. Cytodyne Tecs., Inc.*, No. MON-C-205-03, 2005 WL 1633729 *2 (N.J. Super. Ch. Div. May 9, 2005).  *Harvey* merely incorporated the "competent and reliable scientific evidence" definition into the definition section of a consent order resolving an injunction claim brought by the Attorney General, not a private consumer. Id at *2.  It did not apply that standard, nor did it analyze the merits.  It also did not involve an advertisement that the product was

---

[7]  Given the weakness of Nestlé's clinical proofs it is not surprising that it spends a significant section of its brief arguing for use of an inapplicable legal standard in an effort to keep the Court from focusing on the shockingly inconclusive nature of the studies upon which it relied and to deflect the Court's attention from the existence of literally dozens of different strains of *L. reuteri* evident in the scientific literature.

"clinically shown" or "clinically proven." *Harvey* is of no utility.

Nestlé also mistakenly relies on *Abrams v. Toyota Motor Credit Corp.*, No. Control 071049, 2001 WL 1807357 (Pa. Super. Ch. Div. Dec. 5, 2001); (Mov. Br. at 34 n.16). The cited footnote merely states that a reviewing court ***may*** look to decisions under the FTC Act, but cautions that those decisions are not binding. 2001 WL 1807357, at *8 n.10. The case involved early termination provisions in a lease, not an advertisement that a product was "clinically shown" or "clinically proven."

Nestlé relies upon *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995), (Mov. Br. at 34 n.16). It does not, as Nestlé suggests, apply an FTC deception standard to UCL, FAL and CLRA actions. Rather, the court used a "reasonable consumer" standard to measure deception under the asserted causes of action rather than using the "unwary consumer" standard plaintiff had urged. 68 F.3d at 289. The Ninth Circuit also noted that the reasonable consumer standard was common to false advertising, unfair competition, securities fraud, deceit and misrepresentation, and common law unfair competition and that "the list no doubt could be much expanded." *Id.* Thus, the Ninth Circuit was not advocating for use of a standard unique to FTC claims in UCL, FAL, and CLRA actions, as Nestlé suggests. (Mov. Br. 34 n.16) *In re Firearm Cases*, 126 Cal. App. 4th 959, 980 (2005), (Mov. Br.34 n.16), is no different, in that it merely recognizes FTC cases as not binding but persuasive. Neither case involved advertising claims with

"clinically shown" or "clinically proven" assertions.

It is also unremarkable that a Court would choose to apply the FTC Act to claims brought by the FTC alleging violations of that Act, such as, for example, *FTC v. Lane Labs-USA, Inc.*, Civ. No. 00-CV-3174 (DMC), 2007 WL 316462 (D.N.J. Jan. 30, 2007), on which Nestle relies. (Mov. Br.at 33-34.)[8]   Moreover, *Lane Labs* is thin, tangential authority that is not even persuasive.   *Lane Labs* involved an appeal of denial of a motion to seal and the cited standard was simply incorporated into an FTC consent order.   Significantly, the "subsequent history" instructs that abstracts of scientific articles do not constitute competent and reliable scientific evidence.   624 F.3d 575 at 584 n.10 (3d Cir. 2010).   Nestlé submitted several abstracts to the FTC as part of its claims substantiation materials and submitted another to Plaintiffs in discovery.   (*See* Castello, Ex. U, SCHMAN 1263, 1358, 1359 (submitted to the FTC), SCHMAN 2796 (submitted during discovery).)

*FTC v. Direct Mktg. Concepts, Inc.*, 569 F. Supp. 2d 285, 299 (D. Mass. 2008), relied on by Nestlé, (Mov. Br.  34), does mention the competent and reliable evidence standard.   However, it raise a much more fundamental problem for Nestlé to the extent the Court finds this District of Massachusetts case

---

[8]   Nestlé's reference to subsequent history for *Lane Labs* is incorrect.   The Third Circuit decision cited by Nestlé related to a different order than the one on which Nestlé relies, which was the denial of a motion to seal documents.   There again, incompetent and reliable scientific evidence standard was incorporated into an FTC consent order.

persuasive; namely, that all of the studies Nestlé purports to introduce as claims support, annexed as Exhibit U to the Declaration of Geoffrey Castello, Esq., are inadmissible on summary judgment.  569 F. Supp. 2d 285, 301 (D. Mass 2008) (thirty binders of studies introduced by party on summary judgment as claims substantiation material inadmissible as affidavit to which they were annexed was not made on personal knowledge).

Moreover, to the extent Nestlé seeks to cure this fatal evidentiary flaw via a reply declaration of Norman Greenberg, Ph.D., the person principally responsible for assembling claims support materials, Greenberg's recollection as to what studies constituted part of Nestlé's claims substantiation was so nebulous at his deposition that any *ex post facto* rehabilitation attempts would raise serious credibility questions not appropriate for resolution on summary judgment.  (Rosen Decl. Ex. 12, Greenberg Dep. Tr. 71:24-72:17; 83:17-88:12; 92:13-93:20) (cannot recall whether particular studies were part of BOOST Kid Essentials claims substantiation materials).[9]

More fundamentally, *Direct Marketing* notes that the competent and reliable evidence standard applies to non-establishment claims.  The case at hand involves an establishment claim.  Arguably, the competent and reliable scientific evidence standard does not even apply, and Nestle is conflating the reasonable

---

[9]Moreover, neither Fariba Roughead nor Dr. Saavedra had substantial involvement in assembling claims substantiation materials; it was Greenberg's responsibility and job function.  Rosen Decl., Ex. 12, Greenberg Dep. Tr. 50:15-19

basis and competent and reliable scientific evidence standards. *Direct Mktg.*, 569 F. Supp. 2d. at 301.

Additionally, *FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167 (N.D. Ga. 2008), (Mov. Br. at 34), does not support Nestlé's contention that Plaintiffs must prove the challenged advertising claims to be literally false. *See* 645 F. Supp. 2d at 1190 (reciting standards of proof for "falsity theory" and "reasonable basis" theory under FTC Act; holding what constituted competent and reliable scientific evidence in this specific case was question of fact for expert interpretation).[10]

While Nestlé argues further that the FTC has never determined that it lacked a reasonable basis for its claims about BOOST Kid Essentials, (Mov. Br. 34), that is only because Nestlé chose to settle the FTC's claims against it.  Nestlé has not argued, nor could it, that the FTC lacked cause for instituting an enforcement action against it.  Otherwise, Nestlé would have been free to pursue Rule 11 sanctions against the FTC for a frivolous pleading, since the FTC was required to have a good faith basis for the charges in its complaint.  Fed. R. Civ. P. 11 (signatory of pleading required to have good faith basis in law and fact for

---

[10]   Similarly, the other FTC cases on which Nestlé relies all involve FTC enforcement actions; none deal with claims by a consumer under a state consumer protection statute. *See In re Pfizer, Inc.,* 81 FTC 23 (1972); *FTC v. Chinery*, No. 05-3460, 2006 WL 3878416 (D.NJ. Dec. 26, 2006)(FTC complaint for injunctive relief); *FTC v. QT, Inc.,* 448 F. Supp. 2d 908, 961-62 (N.D. Ill. 2006), *aff'd*, 512 F.3d 858 (7th Cir. 2008)(FTC injunction and damages claim *in prior substantiation case*); *FTC v. Garden of Life,* – F. Supp.

claims asserted).

**d. State Consumer Standards Such as "Likely to Mislead" Do Not Require Actual Falsity and Present Questions of Fact, Not Susceptible to Summary Judgment.**

Nestlé's argument for application of the FTC Act standards to a garden variety consumer fraud action might be persuasive if courts in New Jersey, Pennsylvania and California had not set forth evidentiary standards applicable to claims under the respective consumer protection statutes. In short, there is no need for the Court to resort to FTC cases by analogy where direct precedent applies.[11]

As the Appellate Division has noted:

> In an action under the Consumer Fraud Act, the test is whether an advertisement has the capacity to mislead the average consumer. *Cox v. Sears Roebuck & Co.,* 138 *N.J.* 2, 17, 647 *A.*2d 454 (1994); *Barry v. Arrow Pontiac, Inc.,* 100 *N.J.* 57, 69, 494 *A.*2d 804 (1985); *Leon, supra,* 340 *N.J.Super.* at 469-72, 774 *A.*2d 674; *Chattin v. Cape May Greene, Inc. (I),* 216 *N.J.Super.* 618, 639, 524 *A.*2d 841 (App.Div.), *certif. denied,* 107 *N.J.* 148, 526 *A.*2d 209 (1987); *Miller, supra,* 284 *N.J.Super.* at 74, 663 *A.*2d 643 (Ch.Div.1995). Even if an advertisement is literally true, it may be actionable if "the overall impression [it] create [s] ... is misleading and deceptive to an ordinary reader." *Id.* at 87, 663 *A.*2d 643. Whether an advertisement is misleading presents a question of fact in most cases. *Chattin (I), supra,* 216 *N.J.Super.* at 639, 524 *A.*2d 841.

*Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617, 644-645 (App. Div.), *certif. denied*, 174 N.J. 547 (2002). Thus, even if the Court were persuaded that the applicable legal standard was the competent and reliable scientific evidence standard urged by Nestlé, it would still be the province of the fact finder to determine whether Nestlé satisfied that standard under settled New Jersey and

---

2d --, No. (:06-cv-80226, 2012 WL 651773 (S.D. Fla. Feb 28, 2012)(FTC contempt proceeding for violating order).

California law, since the misleading nature of advertisements presents a question of fact.

Significantly, and directly contrary to Nestlé's argument, in *Union Ink,* the Appellate Division declined to interpret *Rodio v. Smith*, 123 N.J. 345 (1991) "as requiring a plaintiff to prove a misstatement of a material fact to recover under the [Consumer Fraud] Act."  352 N.J. Super. at 379; *see also Leon v. Rite Aid Corp.*, 340 N.J. Super.  462, 468-69 (App. Div. 2001).  As the Court noted in *Leon*, whether advertisements are misleading is fundamentally a jury question.

> Advertisements allegedly in violation of the Act, but not the subject of a specific regulation, are best left for jury determination. In *Chattin v. Cape May Greene, Inc.,* 216 *N.J.Super.* 618, 639, 524 *A.*2d 841 (App.Div.), *certif. denied,* 107 *N.J.* 148, 526 *A.*2d 209 (1987), we stated:
>
>> But when an advertisement is not covered by a specific rule or regulation, it must be determined through adjudication 'whether the ad itself is misleading to the average consumer.' *Barry v. Arrow Pontiac, Inc.,* 100 *N.J.* 57, 69 [494 *A.*2d 804] (1985); *see also Kugler v. Romain,* 58 *N.J.* 522 [279 *A.*2d 640] (1971); *D'Ercole Sales, Inc. v. Fruehauf Corp.,* 206 *N.J.Super.* 11, 25-32 [501 *A.*2d 990] (App.Div.1985). Although there may be some circumstances in which an advertisement is so patently deceptive that a violation of the Consumer Fraud Act may be found as a matter of law, the determination whether an advertisement is misleading is ordinarily for the trier of fact-here the jury-to decide. Indeed, a jury would appear especially well suited to determine the impact of an advertisement upon 'an average consumer.'

340 N.J. Super. at 468-69.

Courts in Pennsylvania take a similar view with respect to claims pursuant to state consumer protection statutes.  *See. e.g.*, *Merisant Co. v. McNeil Nutritionals, L.L.C.*, 515 F. Supp. 2d 509, 525 (E.D. Pa. 2009)(denying summary judgment on

---

[11] Moreover, the FTC cases upon which Nestlé relies involve requests for injunctive relief by the FTC.  As the Court is well aware, an injunction is an equitable remedy conferring no right to a jury trial.

Lanham Act and Pennsylvania consumer protection act claim challenging impliedly false advertising since alleged falsity of claim was question of fact for the jury).

Similarly, the California Supreme Court states:

The fraudulent business practice prong of the UCL has been understood to be distinct from common law fraud. "A [common law] fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements are required to state a claim for injunctive relief" under the UCL. (*Day v. AT & T Corp.*(1998) 63 Cal.App.4th 325, 332, 74 Cal.Rptr.2d 55; see *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1105, 53 Cal.Rptr.2d 229.)   This distinction reflects the UCL's focus on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices. (*Fletcher v. Security Pacific National Bank* (1979) 23 Cal.3d 442, 453, 153 Cal.Rptr. 28, 591 P.2d 51.)

*In re Tobacco II Cases*, 46 Cal. 4th 298, 312, (2009).   In California, whether advertising has the capacity to mislead is a fact question for the fact finder.   In *Paduano v. Am. Honda Motor Co., Inc.,* 169 Cal. App. 4th 1453 (Cal. Ct. App. 2009), the 4th District noted, in overruling in part a grant of summary judgment:

A UCL cause of action "'may be based on representations to the public which are untrue, and " 'also those which may be accurate on some level, but will nonetheless tend to mislead or deceive.... A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under' " the UCL.' [Citation.]" ( *Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 134, 61 Cal.Rptr.3d 221.) "Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides....' [Citations.]" ( *Id.* at pp. 134–135, 61 Cal.Rptr.3d 221.)

169 Cal. App. 4th at 1469.   The court noted that the moving party must demonstrate that its advertising "could not mislead a reasonable person, as a matter

of law."  Id.  Instead, the court found that a fact finder could conclude that statements the defendant made in brochures "constitute misrepresentations or are misleading to the public."  Id. at 1470.  These are the applicable standards to Nestlé's advertisements in California.

Federal courts in California have also recognized under California law that the nature of advertising claims in unfair competition actions are fact questions not susceptible of resolution on summary judgment.  *Silicon Image, Inc. v. Analogix Semiconductor*, 642 F. Supp. 2d 957, 968-69 (N.D. Cal. 2008)(*citing cases*).

The problem with Nestlé's insistence on applying an FTC false advertising claim standard is that Nestlé is not litigating an FTC Act claim against the FTC.  There is no need for this Court to apply that standard when the applicable consumer protection statutes apply different standards and make plain that whether an advertisement is misleading is fundamentally a fact question for a fact finder.

With respect to the contentions of Nestlé's purported experts on scientific subject matter, Nestlé has not explained in it Moving Brief why the Court should accept its expert's word as gospel and reject Plaintiffs' experts out of hand.  Nestlé's expert's contentions are directly rebutted by Plaintiffs' experts and those disagreements raise genuine issues of material fact.  In order for the Court to grant Nestlé's motion it will have to engage in an impermissible weighing of the evidence.

While Nestlé claimed to have more than thirty scientific studies and review articles to support the challenged advertising claims, the FTC took a different view. Rather than contesting the merits of the FTC's position, Nestlé agreed to an order barring it from advertising probiotic benefits associated with BOOST Kid Essentials without supplying two clinical studies that satisfied FTC criteria. That agreement is an admission that Nestlé did not have such studies at the time.

The disagreement between Nestlé's experts, employees and former employees and Plaintiffs' experts regarding the reasonableness of Nestlé's product claims given the character of supporting evidence is fundamentally a jury question. Weighing the credibility of the experts and employees and assessing the quality of the supporting evidence is a fact finder's job and Plaintiffs raise sufficient disputed material facts to survive summary judgment.

### 5. Summary Judgment Must be Denied Because at a Minimum, There is a Battle of the Experts on Whether Nestlé's Claims Were Misleading.

In deciding a summary judgment motion, the court may not make credibility determinations or weigh the evidence. *Reeves,* 530 U.S. at 150. "The matter of weighing the credibility and persuasiveness of expert opinion is the unique function of the trier of fact." *Speyer, Inc.,* 403 F.2d at 770. "It is inappropriate for this Court to attempt to assess the weight and credibility of expert testimony in connection with this motion [for summary judgment]." *Feit*, 2005 WL 2665736 at *4. That is why "[s]ummary judgment is inappropriate where expert reports and affidavits

present conflicting testimony as to a material fact" otherwise known as "the battle of the experts." *Electric Ins. Co.,* 2011 WL 5825981 at *4; *see also Eli Lilly & Co,* 676 F.Supp.2d at 360.

Whether Nestlé's representations were false or misleading is a genuine issue of material fact. In order to make that determination, the Court would have to engage in a classic three-on-three battle of the experts. Such weighing of expert testimony and credibility must be left to the fact finder. The Court should deny Nestlé's summary judgment motion on this basis alone.

### D. PLAINTIFFS WILL PREVAIL ON THEIR BREACH OF EXPRESS WARRANTY CLAIMS.

#### 1. The UCC Pre-Litigation Notice Provision Does Not Apply to Consumers as Against Remote Manufacturers.

In New Jersey, California, and Pennsylvania, the UCC pre-litigation notice requirement does not apply to consumers as against remote manufacturers if the consumers purchased the product in question from an intermediate seller. In any event, the filing of a timely complaint in such cases provides adequate notice. Notice is a question of material fact, defeating summary judgment.

Under the Uniform Commercial Code ("UCC"), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." N.J.S.A. § 12A.2-313(1)(a); Cal. Comm. Code § 2313(1)(a); 13 Pa. Cons. Stat. Ann. § 2313(a)(1); *et al.* Nestlé's feigned ignorance

of the affirmations of fact and promises on its label and in its own advertising -- that were false and misleading and formed the very feature that was supposed to set BOOST Kid Essentials apart from the competition -- is astonishing.  The complaint by the Federal Trade Commission ("FTC") outlined such affirmations.   The factually-detailed complaint, significant motion practice, and discovery in this matter also described in detail the aspects of the BOOST Kid Essentials product that did not conform to the affirmations and promises on Nestlé's label, packaging, marketing materials, and advertisements.  Among other things, Nestlé promised that the BOOST Kid Essentials product provided clinically shown immunity benefits. (*See supra* § II(C).)

In *Cipollone v. Liggett Group, Inc.*, 683 F. Supp. 1487 (D.N.J.1988), the District Court considered the issue of whether, under the UCC, a consumer must provide pre-litigation notice to a remote manufacturer pursuant to N.J.S.A. § 12A:2-607(3)(a) and answered "no."  *See id.*  Although the New Jersey Supreme Court had not -- and still has not -- ruled on this issue, *Cipollone* predicted that "the New Jersey Supreme Court would find that notice of breach was not required in this case [because] [t]he Supreme Court held that the previously applicable Uniform Sale of Goods law did not require notice of defective merchandise in an action against a manufacturer who was not the immediate seller of the product" and concluded that N.J.S.A. § 12A:2–607(3)(a) does not apply to claims of breach against a remote manufacturer that was not the immediate seller of the product.

*Id.*; *see also Coyle v. Hornell Brewing Co.*, Civ. No. 08-2797 (JBS), 2010 WL 2539386, *6 (D.N.J. June 15, 2010) (observing that "this Court has predicted more than once that the New Jersey Supreme Court would not require a buyer to give notice of breach of warranty to a remote manufacturer who is not the immediate seller under Section 2-607 before commencing suit"); *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233 (D.N.J. 2008) ("[P]laintiffs need not give notice of the breach against a manufacturer who was not the immediate seller of the product, and, in any event, a civil complaint would satisfy any such notice requirement under N.J.S.A. 2-607(3)(a)."); *Taylor v. JVC Am. Corp.*, Civil Case No. 07-4059, (FSH), 2008 WL 2242451, *6 & n.6 (D.N.J. May 30, 2008) ("The Kentucky Supreme Court and New Jersey federal courts have held that U.C.C. § 2-607(3)(a) does not require pre-litigation notice to a defendant."); *Strzakowlski v. Gen'l Motors Corp.*, No. 04-4740, 2005 WL 2001912, *3 (D.N.J. Aug.16, 2005) ("even if notice to [Defendant] is necessary under section 2-607(3)(a), the filing of Plaintiffs' Complaint satisfied this requirement").

Most of the cases cited by Nestlé are inapposite, as they involve breach of warranty claims arising from commercial transactions between commercial entities or contractual activity between consumers and direct sellers, not consumer claims against remote manufacturers regarding purchases of retail products. For example, *Joc, Inc. v. Exxonmobil Oil Corp.*, No. 08-5344 (FSH), 2010 WL 1380759, at *4 (D.N.J. April 1, 2010), (Mov. Br. 39), involved a claim by gas station franchisees

against Exxon over gas prices and volumes delivered, rent waivers, and other issues related to the franchises that were governed by written contracts, a completely different situation in which the notice provision is in full force because the defendant is the direct seller.

In *Brown v. Abbott Labs., Inc.*, No. 10 C 6674, 2011 WL 4496154 (N.D. Ill. Sept. 27, 2011), which involved a consumer breach of warranty claim against a manufacturer under New Jersey law, the defendant made the same argument about failure to provide pre-litigation notice of breach, further arguing that the holding in *Cipollone* should be disregarded and that *Joc* and *Slack v. Suburban Propane Partners, L.P.*, Civ. No. 10-2548 (JLL), 2010 WL 5392845 (D.N.J. Dec. 22, 2010), [cited in Mov. Br. 39-40], should apply. 2011 WL 4496154 at *6. In denying the defendant's motion to dismiss the breach of express warranty claim for failure to provide pre-litigation notice, the court explained:

> *Joc* and *Slack*, both of which involved claims by buyers against immediate sellers, did not discuss the issue addressed in *Cipollone*. And although Abbott argues that the case is no longer good authority, it has been cited in more recent decisions for the proposition that a plaintiff need not notify a "remote manufacturer" before pursuing a claim for breach of an express warranty. *See Coyle v. Hornell Brewing Co.,* Civil No. 08–02797(JBS), 2010 WL 2539386, *6 (D.N.J. June 15, 2010) ("[T]his Court has predicted more than once that the New Jersey Supreme Court would not require a buyer to give notice of breach of warranty to a remote manufacturer who is not the immediate seller under Section 2–607 before commencing suit.") (collecting cases). Even assuming that notice was required, "notice-by-lawsuit" is appropriate in some cases. *See Coyle*, 2010 WL 2539386, *6; *Strzakowlski v. General Motors Corp.*, No. Civ.A. 04–4740, 2005 WL 2001912, *3-4 (D.N.J. Aug.16, 2005); *Cipollone*, 683 F. Supp. at

1498. Whether it was sufficient in this particular case is a question of fact. See *Strzakowlski*, 2005 WL 2001912, *3 ("As indicated in *Cipollone*, whether this notice-by-suit was provided within a reasonable time is a question for the fact finder. Therefore, the timing question is beyond the scope of a motion to dismiss for failure to state a claim"). Abbott's motion to dismiss Count VII is denied.

*Brown*, 2011 WL 4496154 at *6.[12]

The Supreme Court of California, which also distinguishes between a breach of warranty claim by a consumer against a manufacturer with whom he or she has not dealt and one between parties to a direct commercial transaction, explained the reason for treating the notice provision differently in the case of a remote seller: "[I]t becomes a booby-trap for the unwary.  The injured consumer is seldom 'steeped in the business practice which justifies the rule,' . . . and at least until he has had legal advice it will not occur to him to give notice to one with whom he has had no dealings.'" *Greenman v. Yuba Power Prods., Inc.*, 59 Cal.2d 57, 62

---

[12]  *Kury v. Abbott Labs., Inc.*, Civ. No. 11-803 (FLW), 2012 WL 124026 (D.N.J. Jan. 17, 2012), is wrongly decided on this issue.  While *Kury* involved consumer claims against a remote manufacturer, it relies on *Joc* and *Slack*, both of which involve breach of warranty claims by parties who had direct relationships with sellers.  Nevertheless, *Cipollone* and *Elias* are still good law in this jurisdiction and hold that the filing of a complaint by a consumer against a remote manufacturer "within a reasonable time after plaintiff 'discovers or should have discovered any breach'" is adequate notice of a breach of warranty claim.  *Cipollone*, 683 F. Supp. at 1498 (internal citation omitted); *see also Elias*, 252 F.R.D. at 251 (citing *Cipollone* and *Strzakowlski*).  Here, Plaintiffs filed their complaints immediately after the FTC published its complaint against and proposed consent order with Nestlé, exposing Nestlé's deceptive and misleading claims.  Although it is difficult to believe that a f would find otherwise, whether the filing of the complaints occurred within a reasonable time after Plaintiffs discovered the breach is, of course, a fact question, *Cipollone*, 683 F. Supp. at 1498, and thus inappropriate for summary judgment.  Moreover, Nestlé has never challenged the timeliness of the filing of these actions as they relate to notice in its various dispositive motions, nor has it raised the lack of timeliness as a defense, as Nestlé has yet to answer the complaint.

(Cal. 1963) (internal citations omitted); *see also In re HP Inkjet Printer Litig.*, No. C 05-3580 JF, 2006 WL 563048, at \*5 (N.D. Cal. Mar. 7, 2006) (citing same); *accord Samuel-Bassett v. KIA Motors Corp.*, 34 A.3d 1, 16 n.17 (Pa. 2011) ("Nor does the statute [13 Pa. Cons. Stat. Ann. § 2–607(3)(a)] explicitly require the consumer to provide an opportunity to cure before filing suit for breach of warranty.")

### 2. Plaintiffs Have Adduced Adequate Evidence that BOOST Kid Essentials Could Not Deliver What it Promised on the Label and in Advertising.

Nestlé continues to deliberately obfuscate Plaintiffs' claims and the evidence. (Mov. Br. 40.)  Quite simply, Nestlé promised parents of one-to thirteen-year-olds that its product was clinically shown to provide immunity benefits and, despite all of the documents Nestlé provided to the FTC, the consent order says Nestlé cannot make these claims.  (*See supra* § (II)(A), (C).)  This promise formed the basis of the bargain, *i.e.*, "immunity protection" was the hook Nestlé used to lure consumers of other similar children's nutritional drinks.  (*See supra* § (II)(A).)

The only case Nestlé cites in support of its argument, (Mov. Br. 40), has no bearing here, as it involved a *potential* product defect that was the subject of a voluntary recall by the manufacturer and an offer to provide a retrofit repair kit, of which the plaintiffs did not avail themselves, and rather sought a refund.  *O'Neil v. Simplicity, Inc.* 574 F.3d 501, 502 (8th Cir. 2009).  Because the plaintiffs alleged

only that the product was at risk for manifesting the defect that was the subject of the voluntary recall, the Court of Appeals upheld the trial court's dismissal of the claim, *i.e.*, the plaintiffs failed to allege that the product they purchased was *actually* defective.  *Id.* at 503 ("It is not enough to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that their product actually exhibited the alleged defect."). Here, Plaintiffs allege and prove that they did not actually get the benefit of the bargain, *i.e.*, that BOOST Kid Essentials did not actually provide the "clinically shown" immunity protection" that Nestlé promised.  (*See infra* § III(E), (F)(1).)

### E.   PLAINTIFF JOHNSON SUFFERED AN INJURY IN FACT AND LOST MONEY BECAUSE OF NESTLÉ'S MISREPRESENTATIONS; SHE CAN RECOVER UNDER THE UCL, FAL, AND CLRA.

#### 1.   Johnson Has Standing Because She Suffered Economic Loss by Paying More For BOOST Kid Essentials.

Under the UCL, FAL, and CLRA, a plaintiff may recover if she has standing, meaning that she suffered an injury in fact and lost money or property as a result of the misrepresentation.  Cal. Bus. & Prof. Code §§ 17204, 17535; Cal. Civ. Code § 1770.  Nestlé concedes that the preeminent case on standing in California consumer fraud cases is *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011), yet Nestlé seems to ignore its holding.[13]  (Mov. Br. 56-57.)  In *Kwikset*,

---

[13] Nestlé also cites an unpublished California Superior Court Case, *Fletcher v. Celsius Holdings, Inc.,* No. BC439055 (Cal. Super. Ct. Sept. 1, 2011).  Unpublished California State Court decisions lack precedential value and must not be cited or relied upon by a court or a party in

plaintiffs purchased defendant's locksets in reliance on defendant's false labeling

of them as "Made in U.S.A." *Id.* at 318-19. They claimed that they lost money or

property under the UCL, FAL, and CLRA because the deceptive label caused

plaintiffs to buy products they did not want. *Id.* Defendant argued that plaintiffs

lost no money or property because "[p]laintiffs spent money to be sure but,…they

received locksets in return, locksets they did not allege were overpriced or

defective." *Id.* The California Supreme Court held that:

> A consumer who relied on a product label and challenges a
> misrepresentation contained therein can satisfy the standing
> requirement [if] he or she would not have bought the product but for
> the misrepresentation. That assertion is sufficient to allege
> causation—the purchase would not have been made but for the
> misrepresentation. It is also sufficient to allege economic injury.
> From the original purchasing decision we know the consumer valued
> the product as labeled more than the money he or she parted with;
> from the complaint's allegations we know the consumer valued the
> money he or she parted with more than the product as it actually is;
> and from the combination we know that because of the
> misrepresentation the consumer (allegedly) was made to part with
> more money than he or she otherwise would have been willing to
> expend, i.e., that the consumer paid more than he or she actually
> valued the product. That increment, the extra money paid, is the
> economic injury and affords the consumer standing to sue.

*Id.* at 330 (followed by *Montich v. Miele USA, Inc.*, Civ. No. 11–2725, 2012 WL

1005329, *5 (D.N.J. Mar. 27, 2012); *In re Ford Motor Co. E-350 Van Products

Liability Litigation (No. II)*, Civ. No. 03–4558 (GEB), 2011 WL 601279, *7

(D.N.J. Feb. 16, 2011)).

---

any other action. Cal. R. Ct. 8.1115(a); *In re Ryan,* 310 Fed. Appx. 980, 983 n.2 (9th Cir.
2009). Though *Fletcher* is distinguishable, further discussion of it is omitted.

PLAINTIFFS' MEMO OF LAW IN OPPOSITION TO NESTLÉ'S MOTION FOR SUMMARY JUDGMENT

Here, Plaintiff Johnson purchased BOOST Kid Essentials in reliance on Nestlé's marketing it as "clinically shown" to provide "immunity protection." (CMF ¶¶ 30.)  She would not have purchased the product had Nestlé not made that misrepresentation.  (CMF ¶§ 31, 33.)  Under *Kwikset,* Ms. Johnson has standing to allege violations of the UCL, FAL, and CLRA.

> ### 2.   It is Irrelevant that Johnson Cannot Calculate with Accuracy the Amount of Her Damages or Verify that Her Children Did Not Benefit From BOOST Kid Essentials.

Nestlé argues that Ms. Johnson cannot prevail as a matter of law because she does not know with certainty the amount of her damages/restitution or whether any of BOOST Kid Essentials benefited were conferred upon her children.  However, both are irrelevant to the Court's standing inquiry.  Ms. Johnson is not required to show the exact amount of damages or restitution to which she is entitled. Moreover, she not required to show that her children's health did not benefit from the product.  All she needs to prove, which she has proven, is that she purchased BOOST Kid Essentials in reliance on Nestlé's marketing it as "clinically shown" to provide "immunity protection" and that had Nestlé not made that misrepresentation, she would not have purchased the product.

### F.   SCHEUERMAN SUFFERED AN ASCERTAINABLE LOSS.

#### 1.  Plaintiff Scheuerman Suffered an Ascertainable Loss.

To prevail on his NJCFA claim, Mr. Scheuerman must have standing by showing he suffered an ascertainable loss as a result of Nestlé's unlawful conduct.

N.J.S.A. § 56:8-2.  Proving ascertainable loss requires consumers to quantify the difference in value between the promised product and the actual product received. *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 101-102 (D.N.J. 2011).  Nestlé claims that Mr. Scheuerman cannot prove ascertainable loss because he cannot show how much BOOST Kid Essentials he purchased and at what price. However, that is not what is required to show ascertainable loss.

For example, in *Smajlaj*, the plaintiffs alleged NJCFA claims against the defendant because the defendant mislabeled its regular tomato soup as "less-sodium".  *Id.*  The Court found that the plaintiffs suffered an ascertainable loss by alleging that they paid 20 to 80 cents more for the cans of soup they purchased because of the false labeling of the product as "less-sodium".  *Id.*

Similarly here, Plaintiffs assert three methods of calculating the total losses. First, the trier of fact could find given the materiality of the representation "clinically shown" or "clinically proven" that the full purchase price is the ascertainable loss – as well as the restitution amount and/or compensatory damage.

Second, plaintiffs assert that a premium price was paid for the allegedly "clinically proven" product – such premium could be found to be the ascertainable loss, restitution amount, and/or compensatory damage.  Plaintiffs' marketing expert conducted a consumer study that determined that consumers valued BOOST Kid Essentials' immunity protection benefits at 18.791% of the average

retail price meaning that on average they paid $2.07 more for BOOST Kid Essentials as advertised than the product was actually worth.  (*See* Casetello Decl., Ex. S, ¶ 72.)  The trier of fact can use that calculation to determine damages or restitution by multiplying $2.07 by the number of falsely labeled units purchased by consumers.

Third, Nestlé itself put a value on this purported benefit – when it stopped selling BOOST Kid Essentials with a "probiotic straw," it lowered its price to less than five dollars.  (CMF ¶ 16.)  A trier of fact could use Nestlé's price reduction after removal of the establishment claim of "clinically shown" from its marketing campaign.  This differential could be found to constitute the ascertainable loss, restitution amount, and/or compensatory damage.

It is irrelevant that Mr. Scheuerman can only estimate the number of units he purchased.[14]  If plaintiffs were required to prove the number of units of a product they purchased the NJCFA and UTPCPL would become unenforceable because few consumers keep accurate records of their household purchases.

It is also irrelevant that Mr. Scheuerman did not keep records of his son's health, because whether Scheuerman's children were healthy has no bearing on whether Mr. Scheuerman suffered an ascertainable loss.  Ascertainable loss does not require that a product actually be defective.  *Smajlaj,* 782 F. Supp. 2d at 99.

---

[14] Nestlé admits that Mr. Scheuerman at a minimum purchased three months of BOOST Kid Essentials.  (Mov. Br. 48 n. 21.)

BOOST Kid Essentials is not clinically shown to provide immunity benefits. (*See infra* § III(C)(3).)   Therefore, Mr. Scheuerman did not get the benefit of the bargain when he paid for a product he thought was clinically shown to provide immunity benefits but received one that was not.   This is enough to establish ascertainable loss under the NJCFA and UTPCPL.

### 2.  Nestlé's Misrepresentations Caused Scheuerman's Loss.

Nestlé challenges Mr. Scheuerman's causation and justifiable reliance under the NJCFA and UTPCPL.  (Mov. Br. 50-51.)  To satisfy these elements, Nestlé contends that Mr. Scheuerman must prove that he would not have purchased BOOST Kid Essentials absent Nestlé's misrepresentations. (*Id.*)  Mr. Scheuerman stopped purchasing BOOST Kid Essentials because he did not know why he should spend the extra money given that its health claims were not clinically shown. (*See* CMF ¶ 39.)  He also would not have purchased the product absent Nestlé's misrepresentations because it is much more expensive than similar products. (*Id.*)  Causation and justifiable reliance typically involve questions of fact; any genuine dispute regarding whether Mr. Scheuerman justifiably relied requires the Court to deny summary judgment. *See Toy v. Metropolitan Life Ins. Co.,* 928 A.2d 186, 208 (Pa. 2007).

### G.    PLAINTIFFS WILL PREVAIL ON THEIR NEGLIGENT MISREPRESENTATION CLAIMS.

Finally, Nestlé argues that as a matter of law, it is entitled to judgment on

Plaintiffs' negligent misrepresentation claims.  (Mov. Br. 51.)  Under California, New Jersey, and Pennsylvania law, the elements of negligent misrepresentation are the same:  a plaintiff must prove that the defendant negligently made a false statement upon which the plaintiff justifiably relief to his or her detriment.  *Dewey v. Volkswagen AG,* 558 F. Supp. 2d 505, 529 (D.N.J. 2000); *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 174 (2003); *Gibbs v. Ernst,* 647 A.2d 882, 898 (1994).

Plaintiffs will prevail on their negligent misrepresentation claims because each element has been met.  As described above, Nestlé's advertisements that BOOST Kid Essentials possessed "clinically shown" "immunity protection" are false statements of fact.  (*See supra* § (III)(C)(3).)  Plaintiffs purchased BOOST Kid Essentials in justified reliance upon Nestlé's statements[15].  (CMF ¶¶ 31, 37.)  As a result, Plaintiffs paid more for a product that they did not want absent the immunity protections it boasted.  (*See supra* §§ (III)(E)(F), (1).)  Therefore, as a matter of law, Plaintiffs should prevail on their negligent misrepresentation claims.

## IV.   CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request the Court deny

---

[15] Nestlé claims that Mr. Scheuerman could not have seen the commercial containing the false claims because he testified at his deposition that he saw a commercial with a family running around a park, and that commercial did not contain the representations.  (Mov. Br. 52.)  However, Mr. Scheuerman later testified that he did not remember the details of the commercial but he did remember it stating that it was clinically shown to boost immunities. (CMF ¶ 35.)

Nestlé's motion for summary judgment in its entirety.


                                          THE ROSEN LAW FIRM, P.A.


Dated:  May 8, 2012              By:      /s/
                                          _____
                                          Laurence Rosen
                                          236 Tillou Road
                                          South Orange, New Jersey 07079
                                          Telephone:   (973) 313-1887
                                          Facsimile:    (973) 833-0399
                                          Email: lrosen@rosenlegal.com

                                          Attorneys     for     Plaintiff   Kurt
                                          Scheuerman and the Proposed Class

                                          **SKOLOFF & WOLFE, P.C.**
                                          David B. Wolfe
                                          Jonathan W. Wolfe
                                          Barbara A. Schweiger
                                          293 Eisenhower Parkway
                                          Livingston, New Jersey 07039
                                          Telephone: (973) 992-0900
                                          dwolfe@skoloffwolfe.com
                                          jwolfe@skoloffwolfe.com
                                          bschweiger@skoloffwolfe.com

                                          **NICHOLAS & BUTLER, LLP**
                                          Matthew B. Butler (*Pro Hac Vice*)
                                          225 Broadway, 19th Floor
                                          San Diego, California 92101
                                          Telephone:   (619) 325-0492
                                           mbutler@nblaw.org

                                          Attorneys for Plaintiff Maria Johnson
                                          and the Proposed Class